# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

|  |  |  |
|---|---|---|
| DARLENE GIBBS, STEPHANIE EDWARDS, LULA WILLIAMS, PATRICK INSCHO, LAWRENCE MWETHUKU, GEORGE HENGLE, TAMARA PRICE, and SHERRY BLACKBURN and, on behalf of themselves and all individuals similarly situated, | § § § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:18-CV-00676-MHL |
| v. | § § § | |
| MIKE STINSON, LINDA STINSON, THE 2009 STINSON 2009 GRANTOR RETAINED ANNUITY TRUST, 7HBF NO. 2, LTD., SEQUOIA CAPITAL OPERATIONS, LLC, SEQUOIA CAPITAL FRANCHISE PARTNERS, L.P., SEQUOIA CAPITAL GROWTH FUND III, L.P, SEQUOIA ENTREPRENEURS ANNEX FUND, L.P., SEQUOIA CAPITAL GROWTH III PRINCIPALS FUND, LLC, SEQUOIA CAPITAL GROWTH PARTNERS III, LP., STARTUP CAPITAL VENTURES, L.P., and STEPHEN J. SHAPER, | § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OF LAW IN SUPPORT OF THE SEQUOIA DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      THIS ACTION IS BARRED BY THE CLAIMS SPLITTING DOCTRINE ................... 3

II.     PLAINTIFFS' RICO CLAIMS ARE DEFICIENT ON MULTIPLE GROUNDS ........... 8

      A.     Venue Is Not Proper In The Eastern District of Virginia ...................................... 8

            1.    Venue Is Not Proper Under 28 U.S.C. § 1391(b) Because A
Substantial Part Of The Alleged Events Giving Rise To Plaintiffs'
RICO Claims Did Not Occur In Virginia ........................................................ 8

            2.    Venue Is Not Proper Under 18 U.S.C. § 1965 Because The "Ends Of
Justice" Do Not Require Haling Sequoia Into This Court .......................... 12

      B.     Plaintiffs' RICO Claims Fail Because Plaintiffs' Loans Were Not
Unlawful, As The Virginia Supreme Court Has Made Clear .............................. 15

      C.     Plaintiffs Lack Standing To Pursue RICO Claims Against Sequoia .................. 17

      D.     The Amended Complaint Otherwise Fails To State A Valid RICO Claim
Under Any Subsection ........................................................................................ 20

            1.    Plaintiffs' 18 U.S.C. § 1962(a) Claim Is Deficient On Its Face
Because Plaintiff Does Not Allege Sequoia Re-Invested Any Illicit
Proceeds Into The Enterprise ...................................................................... 21

            2.    Plaintiffs Fail To State A Valid Section 1962(b) Claim Because They
Do Not Allege That Sequoia Acquired An Interest In Think Finance
Via A Pattern Of Racketeering Activity ...................................................... 21

            3.    Plaintiffs' Section 1962(c) Claim Is Deficient In Multiple Respects .......... 22

            4.    Plaintiffs' Section 1962(d) Claims Are Likewise Meritless ....................... 25

III.    DISMISSAL OF PLAINTIFFS' STATE LAW CLAIMS IS WARRANTED
BECAUSE THIS COURT LACKS JURISDICTION OVER SEQUOIA FOR
THOSE CLAIMS ............................................................................................................ 27

IV.    IN ANY EVENT, PLAINTIFFS' STATE LAW CLAIMS ARE MERITLESS ............. 29

CONCLUSION ................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*800537 Ontario Inc. v. Auto Enters., Inc.*,
    113 F. Supp. 2d 1116 (E.D. Mich. 2000).............................................................................13

*AARP v. Am. Family Prepaid Legal Corp., Inc.*,
    604 F. Supp. 2d 785 (M.D.N.C. 2009) .............................................................................20

*Adams v. California Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007) ..........................................................................................6, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................3

*Bennett-Bagorio v. City & Cty. of Honolulu*,
    No. 13-00071 DKW-KSC, 2014 WL 296860 (D. Haw. Jan. 28, 2014)...............................6, 7

*Brown v. Transurban USA, Inc.*,
    144 F. Supp. 3d 809 (E.D. Va. 2015) ..................................................................................30

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) ...............................................................................................29

*Chambers v. King Buick GMC, LLC*,
    43 F. Supp. 3d 575 (D. Md. 2014)........................................................................................21

*Chisholm v. TransSouth Fin. Corp.*,
    95 F.3d 331 (4th Cir. 1996) ...................................................................................................18

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) .............................................................................................13

*D'Addario v. Geller*,
    264 F. Supp. 2d 367 (E.D. Va. 2003) ..................................................................................28

*Davis v. Hudgins*,
    896 F. Supp. 561 (E.D. Va. 1995) .......................................................................................25

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
  755 F.2d 239 (2d Cir. 1985)............................................................................23

*ESAB Group, Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) ...........................................................12, 13, 28, 29

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008) ....................................................................12

*Field Auto City, Inc. v. Gen. Motors Corp.*,
  476 F. Supp. 2d 545 (E.D. Va. 2007) ............................................................7

*Gardner v. GMAC, Inc.*,
  796 F.3d 390 (4th Cir. 2015) .......................................................................30

*Gatekeeper Inc. v. Straetch Sys., Ltd.*,
  718 F. Supp. 2d 664 (E.D. Va. 2010) ..........................................................27

*Gatoil (USA), Inc. v. Forest Hill State Bank*,
  No. 86-3579, 1987 WL 37817 (4th Cir. June 17, 1987).........................20

*GE Inv. Private Placement Partners II v. Parker*,
  247 F.3d 543 (4th Cir. 2001) .......................................................................25

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) .......................................................................15

*Goodrow v. Friedman & MacFadyen*,
  No. 3:11cv20, 2013 WL 3894842 (E.D. Va. July 26, 2013) .................17

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998) .......................................................................25

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)............................................................................................18

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)............................................................................18, 19, 20

*In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*,
  965 F. Supp. 716 (D. Md. 1997)...................................................................25

*In re Highland Constr. Mgmt. Servs., L.P.*,
  569 B.R. 673 (E.D. Va. 2017)..............................................................4, 5, 8

*In re XE Servs. Alien Tort Litig.*,
  665 F. Supp. 2d 569 (E.D. Va. 2009) ......................................................................22

*Ins. Co. of N. Am. v. United States*,
  76 F. Supp. 951 (E.D. Va. 1948) .............................................................................3

*Lee v. Norfolk S. Ry. Co.*,
  802 F.3d 626 (4th Cir. 2015) ...................................................................................3

*McPike v. Zero-Gravity Holdings, Inc.*,
  280 F. Supp. 3d 800 (E.D. Va. 2017) ....................................................................30

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004) ..............................................................................9, 10

*Moss v. BMO Harris Bank, N.A.*,
  258 F. Supp. 3d 289 (E.D.N.Y. 2017) ...................................................................20

*Myers v. Lee*,
  No. 1:10cv131, 2010 WL 3745632 (E.D. Va. Sept. 21, 2010).............................24

*Nutrimost, LLC v. Werfel*,
  No. 2:15-cv-531, 2016 WL 5107730 (W.D. Pa. Mar. 2, 2016).............................12

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
  117 F.3d 142 (4th Cir. 1997) ...........................................................................18, 23

*Podgortsky v. Morg. Elec. Registration Sys., Inc.*,
  No. 1:15-cv-01478, 2015 WL 9275664 (E.D. Va. Dec. 18, 2015)...............4, 5, 6, 7

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
  138 F.3d 65 (2d Cir. 1998)......................................................................................12

*Pueschel v. United States*,
  369 F.3d 345 (4th Cir. 2004) ...............................................................................4, 6

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).................................................................................................24

*Richards v. Jefferson Cty.*,
  517 U.S. 793 (1996)...................................................................................................7

*Rolls-Royce Corp. v. Heros, Inc.*,
  576 F. Supp. 2d 765 (N.D. Tex. 2008) ...................................................................13

*Rousseau v. Howard County*,
    No. JFM-09-cv-1079, 2009 WL 4018551 (D. Md. Nov. 19, 2009) ..................................4, 5, 6

*Sadighi v. Daghighfekr*,
    36 F. Supp. 2d 267 (D.S.C. 1999)................................................................... passim

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,
    329 F. Supp. 2d 574 (D. Md. 2004), *aff'd in part, rev'd in part*, 273 F. App'x
    256 (4th Cir. 2008)................................................................................................4, 7

*Settlement Funding, LLC v. Von Neumann-Lillie*,
    274 Va. 76 (2006) ......................................................................................... passim

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    226 F. Supp. 3d 589 (E.D. Va. 2017) .....................................................18, 19, 20

*Smithfield Packing Co., Inc. v. V. Suarez & Co., Inc.*,
    857 F. Supp. 2d 581 (E.D. Va. 2012) ...............................................................8, 9

*Superior Performers, Inc. v. Family First Life, LLC*,
    No. 1:14-cv-382, 2015 WL 471389 (M.D.N.C. Feb. 4, 2015) ....................... passim

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
    282 F. Supp. 3d 916 (E.D. Va. 2017) .................................................................8

*Taylor v. Bettis*,
    976 F. Supp. 2d 721 (E.D.N.C. 2013).................................................................28

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
    615 F.3d 312 (4th Cir. 2010) .............................................................................20

*United States v. Bergrin*,
    650 F.3d 257 (3d Cir. 2011)...............................................................................23

*United States v. Mouzone*,
    687 F.3d 207 (4th Cir. 2012) .............................................................................26

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987)...............................................................................23

*United States v. Turkette*,
    452 U.S. 576 (1981)...........................................................................................24

*Univ. of Md. v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993)................................................................25

*Walden v. Fiore*,
   571 U.S. 277 (2014)...............................................................................10, 28

*Walters v. McMahen*,
   795 F. Supp. 2d 350 (D. Md. 2011) ......................................................27

*Weinberger v. Tucker*,
   510 F.3d 486 (4th Cir. 2007) ..................................................................5

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017)............................................................................26

## STATUTES

9 U.S.C. § 3 ......................................................................................................1

18 U.S.C. § 1961(6) ........................................................................................23

18 U.S.C. § 1962 .............................................................................................17

18 U.S.C. § 1962(a) .........................................................................21, 25, 26

18 U.S.C. § 1962(b) ................................................................................21, 22

18 U.S.C. § 1962(c) .............................................................................. passim

18 U.S.C. § 1962(d) ................................................................................25, 26

18 U.S.C. § 1964(c) .........................................................................................17

18 U.S.C. § 1965 .................................................................................... passim

18 U.S.C. § 1965(a) .........................................................................12, 13, 14

18 U.S.C. § 1965(b) .........................................................................12, 13, 14

18 U.S.C. § 1965(d) ................................................................................13, 28

28 U.S.C. § 1332(d)(2) ...................................................................................27

28 U.S.C. § 1367 .............................................................................................27

28 U.S.C. § 1391 ..................................................................................................... passim

28 U.S.C. § 1406 ........................................................................................................8

Va. Code § 6.2-305(A)..............................................................................................30

Va. Code § 6.2-312 ...................................................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(3)....................................................................................1, 8, 30

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 3, 30

Section 10-1-201, Title 10 Chippewa Cree Tribal Code – Chippewa Cree Tribal
    Lending and Regulatory Code, *available at*
    https://www.plaingreenloans.com/content/assets/Uploads/title10.pdf ...................17

U.S. Dept. of Justice, Criminal Division, Organized Crime & Racketeering
    Section, *Civil RICO: A Manual for Federal Attorneys*, at 94-5, n.81 (Oct.
    2007), *available at* https://www.justice.gov/sites/default/files/usam/legacy/
    2014/10/17/civrico.pdf................................................................................................13

Defendant Sequoia Capital Operations, LLC and its named affiliates[1] (collectively, "Sequoia") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), as an alternative to Sequoia's motion to stay this action pending arbitration pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3.

## INTRODUCTION

This case is the latest in a series of putative class actions brought by these same Plaintiffs against alleged participants in the same RICO "enterprise" purportedly designed to evade state usury laws. Am. Compl. ¶ 1. While all of these lawsuits arise out of the same loan transactions, Plaintiffs chose to split their claims against a staged series of defendants in multiple, different lawsuits, the first of which has already been transferred to the Northern District of Texas. Am. Compl. ¶ 1 (noting that *Gibbs v. Rees*, No. 3:17-cv-00386 (E.D. Va. 2017), has been transferred to the Bankruptcy Court in the Northern District of Texas). This latest lawsuit, Plaintiffs' sixth in this Court, is brought against various shareholders (including Sequoia) in Think Finance, an entity that the Plaintiffs allege entered into various arrangements with tribal-affiliated lenders through which loans were made to consumers by those lenders. Am. Compl. ¶¶ 53–54. According to the Amended Complaint, shareholders like Sequoia "participated and operated Think Finance," Am. Compl. ¶¶ 92–101, thereby purportedly making them liable pursuant to various provisions of the federal RICO statute and Virginia's usury statute under the Plaintiffs' attenuated theory.

In response to the Plaintiffs' original complaint, Sequoia moved to dismiss on multiple, independent grounds. *See* ECF Nos. 23 & 24. Specifically, Sequoia noted that as a threshold

---

[1] The Sequoia Affiliates who are Defendants in this action are Sequoia Capital Franchise Partners, L.P., Sequoia Capital IX, L.P., Sequoia Entrepreneurs Annex Fund, L.P., Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Franchise Fund, L.P, and Sequoia Capital Growth Partners III, LP.

matter, Plaintiffs' attempt to litigate piecemeal against the persons purportedly involved in the alleged enterprise—and who therefore share an identity of interest according to Plaintiffs' own allegations—is expressly prohibited by the claims splitting doctrine, and thus Plaintiffs failure to bring all of their claims arising from the same transaction in a single lawsuit warranted dismissal.

Sequoia further argued that original complaint should have been dismissed for several other, independent reasons. For example, venue was not proper in the Eastern District of Virginia for Plaintiffs' RICO claims against Sequoia, as the original complaint did not identify any nexus between Sequoia's purported actions and this jurisdiction. Separately, all of Plaintiffs' claims were predicated on their presumption that the underlying loan agreements—each of which contains a choice-of-law provision invoking tribal law—are governed by Virginia law. But the Virginia Supreme Court squarely rejected this notion in *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76 (2006). The original complaint also failed to allege any direct relation between any injuries purportedly sustained by the Plaintiffs, as is required to establish standing under RICO, and also failed to allege plausible facts establishing a viable claim under any subdivision of RICO. Stripped away of any viable claim under RICO, Sequoia explained, this Court also lacked both subject matter jurisdiction over Plaintiffs' state-law claims and personal jurisdiction over Sequoia, and otherwise failed to allege facts sufficient to plead any state-law claims.

Plaintiffs responded to Sequoia's motion to dismiss by amending their complaint pursuant to Rule 15(a). ECF No. 43. Those amendments, however, focused almost exclusively on adding additional plaintiffs and defendants (including the Sequoia affiliates) to this action, and made no effort to address the numerous problems previously identified by Sequoia. Indeed, the Amended Complaint declined to remedy even basic problems like the original complaint's failure to cite the correct venue statute or to plead subject-matter jurisdiction for Plaintiffs' state-law claims

correctly. The Amended Complaint thus remains fatally deficient for multiple reasons, each of which independently warrants dismissal of this case with prejudice.

## ARGUMENT

To survive a motion to dismiss, the complaint must allege plausible facts that, if true, are sufficient to state a claim to relief. Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "formulaic recitation of a cause of action's elements" does not suffice; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. Applying that well-established standard here, the Amended Complaint is deficient in multiple, independent respects and should be dismissed.

## I.    THIS ACTION IS BARRED BY THE CLAIMS SPLITTING DOCTRINE.

By the Plaintiffs' own admission, this action is the latest in a series of class-action lawsuits aimed at Think Finance and its officers, directors, and shareholders, all of which are predicated on the same loans to Plaintiffs. Am. Compl. ¶ 1 ("This case involves a rent-a-tribe enterprise that was established to evade state usury laws. As the Court is aware, Plaintiffs filed four cases against other participants in the alleged enterprise."). Plaintiffs' acknowledged effort to roll out their claims in piecemeal litigation over the same legal issues against defendants who, their own Amended Complaint acknowledges, share an identity of interest is directly contrary to the claims splitting doctrine and warrants dismissal of this action outright.

The "rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015); *see also Ins. Co. of N. Am. v. United States*, 76 F. Supp. 951, 954 (E.D. Va. 1948) (acknowledging the "recognized doctrine proscribing the splitting of clauses of action"). This doctrine, which is a corollary to the principle of res judicata, exists to

"foster judicial economy, to protect parties from vexatious and expensive litigation, and to prevent piecemeal litigation." *Superior Performers, Inc. v. Family First Life, LLC*, No. 1:14-cv-382, 2015 WL 471389, at *4 (M.D.N.C. Feb. 4, 2015). Unlike res judicata, however, the claims splitting doctrine does not require the existence of a final adjudication in a prior suit, but instead applies when "two suits . . . are pending at the same time." *Id.* Thus, if a second lawsuit is duplicative of another pending federal court suit, dismissal of the second action is appropriate. *See, e.g.*, *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004), *aff'd in relevant part*, 273 F. App'x 256, 266 (4th Cir. 2008).

For the claims splitting doctrine to apply, two requirements must be met. First, the second suit must "arise[] out of the same transaction or series of transactions as the claims in the first suit." *Superior Performers, Inc.*, 2015 WL at 471389 at *4; *see also In re Highland Constr. Mgmt. Servs., L.P.*, 569 B.R. 673, 683 (E.D. Va. 2017) (same). That does not mean that the precise articulation of the claims must be identical; indeed, "[a]s the Fourth Circuit forewarned, 'were [the court] to focus on the claims asserted in each suit, [it] would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that a single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Podgortsky v. Morg. Elec. Registration Sys., Inc.*, No. 1:15-cv-01478, 2015 WL 9275664, at *3 (E.D. Va. Dec. 18, 2015) (alteration omitted) (quoting *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)). Rather, all that is required is that "the suits and the claims asserted therein arise out of the same transaction or series of transactions or the same core of operative facts." *Pueschel*, 369 F.3d at 355 (internal quotation marks omitted). Thus, when a second suit was factually distinct from a prior lawsuit "only in challenging fewer projects, slightly altering the defendants, and replacing several of the plaintiffs," the court in *Rousseau v. Howard*

*County* deemed it to be a "classic example of impermissible claim splitting," notwithstanding that "some different factual evidence is required" to adjudicate the claims in the second suit. No. JFM-09-cv-1079, 2009 WL 4018551, at *3 (D. Md. Nov. 19, 2009). Other courts in this circuit have held similarly.[2]

Second, the lawsuits at issue must "involve[] the same parties or their privies." *In re Highland Constr. Mgmt.*, 569 B.R. at 683. "Under both Fourth Circuit and Virginia decisions, the test for privity is the same: whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (internal quotation marks and brackets omitted). That test is satisfied when in "all Plaintiff's litigation, a single legal right is at issue," even if the named defendants differ in the actions. *Podgoretsky*, 2015 WL 9275664, at *3. Consistent with that standard, a court in this district concluded in a foreclosure suit that a mortgage servicing trustee (the defendant in the first action), and the mortgage's deed of trust beneficiary and its substitute trustee (the defendants in the second action) were "in privity . . . because all of the defendants' interests are identical"—"the lawfulness of foreclosure on Plaintiff's property." *Id.* Likewise, when dismissing a duplicative complaint under the claims splitting doctrine, the court in *Rosseau* noted that "the fact that some of the plaintiffs and defendants are different in the instant case does not cut against dismissal for claim splitting. The Defendants in this case who were not involved in [the first suit] should have been added in that case. Failure to add them does not justify bringing a

---

[2] *E.g.*, *Superior Performers*, 2015 WL 471389, at *5 (deeming a suit predicated on the defendants' employment agreements to arise out of the same nucleus of fact of an earlier lawsuit also involving those agreements—and thus constituted a "clear example of the type of situation that the prohibition against claim-splitting is designed to prevent"—even though "the particular clause at issue" differed in each action); *Podgoretsky*, 2015 WL 9275664 (holding that two suits, each of which involved different causes of actions, were the same for res judicata purposes because "[r]egardless how the claims are titled, each suit challenges financial entities' authority to enforce the Loan documents and foreclose on the Property").

duplicative suit." 2009 WL 4018551, at *3. Other courts have held similarly.[3]

Both of those requirements are met here. *First*, there can be no serious dispute that this action "arise[s] out of the same transaction or series of transactions or the same core of operative facts" as Plaintiffs' five previously filed lawsuits.[4] *Pueschel*, 369 F.3d at 355 (internal quotation marks omitted). Plaintiffs admit as much in the first paragraph of their Complaint when they state:

> This case involves a rent-a-tribe enterprise that was established to evade state usury laws and make illegal loans. As the Court is aware, Plaintiffs filed four cases against other participants in the alleged enterprise. *See Gibbs v. Rees*, Case No. 3:17-cv-00386 (E.D. Va. 2017) (transferred to the bankruptcy court sitting in the Northern District of Texas); *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-00495 (E.D. Va. 2017); *Gibbs v. Haynes Investments, LLC*, Case No. 3:18-cv-00048 (E.D. Va. 2018); *Gibbs v. Curry*, Case No. 3:18-cv-00654 (E.D. Va. 2018). The present case seeks to hold those participants who started, financed, and participated in the management of Think Finance, LLC (Think Finance") responsible for their role in the enterprise.

Am. Compl. ¶ 1. Indeed, the present lawsuit alleges many of the claims (violations of RICO sections (c) and (d), and Virginia's usury statute), predicated on the very same nucleus of facts (Think Finance's business model) as alleged in Plaintiffs' first-filed action, *Gibbs v. Rees*, 3:17-cv-00386 (E.D. Va. 2017) (transferred to the bankruptcy court sitting in the Northern District of Texas). Moreover, as noted in *Rousseau*, *Superior Performers*, and *Podgoretsky*, the fact that this

---

[3] *See, e.g.*, *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 691–92 (9th Cir. 2007) (affirming dismissal of second lawsuit as duplicative when the second complaint named five additional defendants, but those individuals maintained "a close relationship" as employees and agents of the original corporate defendant and thus possessed "an identity of interest with [the corporate defendant]"); *Bennett-Bagorio v. City & Cty. of Honolulu*, No. 13-00071 DKW-KSC, 2014 WL 296860, at *10–11 (D. Haw. Jan. 28, 2014) (claims splitting doctrine barred second suit against ten new defendants when all of those defendants were employees of the defendant sued in the original action, and were "named only because they are alleged to have 'conspired with one or more of the other Defendants to delay and whitewash the investigation of Plaintiffs' race and gender discrimination and retaliation claims'"—"the same larger conspiracy (albeit with additional details) that is one of the primary bases for the [first] action").

[4] Contemporaneous with the filing of the original complaint here, Plaintiffs filed yet another, substantially identical class action adversary proceeding on behalf of Virginia borrowers against Think Finance and related entities in the Bankruptcy Court for the Northern District of Texas. *See* Case No. 17-33964-hdh11, Doc. 1077 (Bankr. N.D. Tex.) (filed Oct. 12, 2018).

- 6 -

case may involve slightly different facts tailored to the specific defendants' alleged roles is irrelevant; all that matters is that both lawsuits arise out of the same core operative facts. There is no question here that Plaintiffs' five other RICO suits—each of which seeks to impose liability in connection with the same loans to Plaintiffs based upon the alleged existence of an enterprise designed to evade Virginia's usury statutes—satisfies that standard.

*Second*, the first-filed *Gibbs* suit and this one "involve[] the same parties or their privies." *Sensormatic Sec. Corp.*, 452 F. Supp. 2d at 626. Both lawsuits involve the same putative class: individuals who entered into a loan agreement with Plain Green and Great Plains. Both lawsuits also involve defendants who, as in *Podgoretsky*, *Rosseau*, *Adams*, and *Bennett-Bagorio*, have an identical interest in the key underlying legal issue here: the lawfulness of Plaintiffs' loans. Indeed, the legal relationship between Sequoia (as an alleged stockholder of Think Finance) and the Defendants in the first-filed *Gibbs* suit is nearly identical to that of the parties at issue in *Bennett-Bagorio*, as Sequoia is "named only because they are alleged to have 'conspired with one or more of the other Defendants to" devise and implement the purported rent-a-tribe scheme—"the same larger conspiracy (albeit with additional details) that is one of the primary bases for the [first] action." 2014 WL 296860, at *10-11; *see also supra* n.3. Accordingly, because Sequoia has the same legal interest as the defendants in *Gibbs*, it is considered for purposes of the claims splitting doctrine to be an "identical" party under Fourth Circuit law.[5]

---

[5] To be clear, that Sequoia shares an identity of interest with the defendants in the first-filed *Gibbs* action does not mean that it will be bound by any judgment entered against the defendants in that case. Indeed, unlike the claims splitting doctrine, Virginia preclusion law requires not only that the "parties to both proceedings, or their privies are the same" but also "that judgment was against the party against whom the doctrine is now to be applied." *E.g.*, *Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 557 (E.D. Va. 2007). The Supreme Court has likewise recognized that a nonparty to a litigation can be bound by a judgment entered in a lawsuit litigated by "someone with the same interests who is a party" only "in certain limited circumstances," none of which would apply here. *Richards v. Jefferson Cty.*, 517 U.S. 793, 798–

In sum, because the Amended Complaint here "involves the same parties or their privies and arises out of the same transaction or series of transactions" as the first-filed *Gibbs* action, Plaintiffs are barred from prosecuting this action by the claims splitting doctrine and the Amended Complaint should be dismissed. *In re Highland Constr. Mgmt.*, 569 B.R. at 683.

## II.     PLAINTIFFS' RICO CLAIMS ARE DEFICIENT ON MULTIPLE GROUNDS.

### A.     *Venue Is Not Proper In The Eastern District of Virginia.*

Under 28 U.S.C. § 1406, "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "Federal venue statutes govern the venue of all civil actions brought in the federal district courts." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 926 (E.D. Va. 2017) (quoting Moore's Federal Practice § 111.01[2] (3d ed.)). "Generally, the court must have proper venue for each separate claim in a complaint," and the "burden of establishing that venue is proper" is on the plaintiff. *Smithfield Packing Co., Inc. v. V. Suarez & Co., Inc.*, 857 F. Supp. 2d 581, 584–85 (E.D. Va. 2012).

Applying these principles here, neither the federal venue statute cited by the Plaintiffs (28 U.S.C. § 1391) nor the venue provision of the federal RICO statute (18 U.S.C. § 1965) makes the Eastern District of Virginia a proper venue for Plaintiffs' RICO claims. This Court should therefore dismiss these claims pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

### 1.     Venue Is Not Proper Under 28 U.S.C. § 1391(b) Because A Substantial Part Of The Alleged Events Giving Rise To Plaintiffs' RICO Claims Did Not Occur In Virginia.

The Amended Complaint asserts that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a majority of Plaintiffs are residents of this District and Division and a substantial

---

98 (1996). Accordingly, the identity of interest shared by Sequoia and the defendants in the first-filed *Gibbs* suit does not mean that those parties are one and the same for preclusion purposes.

part of Plaintiffs' claims occurred in Virginia." Am. Compl. ¶ 9. That contention misconstrues the "substantial part" test under Section 1391(b) and fails to properly address venue on a claim-by-claim basis, as is required, *see Smithfield Packing Co.*, 857 F. Supp. 2d at 584 (E.D. Va. 2012).

Where, as here, "federal jurisdiction is not founded solely on diversity jurisdiction and all defendants do not reside in the same state, venue is proper 'in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 275 (D.S.C. 1999) (quoting 28 U.S.C. § 1391(b)(2)); *see also Smithfield Packing*, 857 F. Supp. 2d at 584 (same). Importantly, the Fourth Circuit has clarified that when "determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should *not* focus only on those matters that are in dispute or that directly led to the filing of the action," as the Amended Complaint incorrectly suggests. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (emphasis added). "Rather, it should review the entire sequence of events underlying the claim." *Id.* (internal quotation marks omitted).

Applying this test to a civil RICO claim, one district court in this circuit concluded that venue was improper in South Carolina when "a substantial part of the events giving rise to the RICO claim did not occur in South Carolina." *Sadighi*, 36 F. Supp. 2d at 276. In *Sadighi*, the plaintiffs brought both state law claims and a civil RICO claim against a group of defendants on the grounds that the defendants "conspired to transfer Plaintiff Sadighi from" a Florida project to a South Carolina project, "where he was ultimately terminated from his employment by [another defendant] two months later." *Id.* The court concluded that such allegations were insufficient to render venue over the plaintiffs' RICO claims proper in South Carolina under Section 1391(b) because "[i]f there were such a conspiracy between [the defendants], then this agreement most likely occurred outside of this state." *Id.* The court rejected the plaintiffs' argument that "Sadighi

- 9 -

suffered injury in [South Carolina] as a result of this conspiracy and so venue should be proper in South Carolina." *Id.* Moreover, while the court held that the situs of the plaintiff's injury was relevant to whether a substantial part of the events giving rise to the state-law claims occurred in South Carolina—a holding which no longer passes muster in light of *Walden v. Fiore*, 571 U.S. 277 (2014), *see also infra* Part III—the court held that "Sadighi's injury in this state was not an event that gave rise to his claim for a RICO violation against the [defendants] within the meaning of section 1391(b)(2)" because the termination of the plaintiff in South Carolina "was not essential to the RICO conspiracy." *Id.*

The same is true here. As a preliminary matter, in an apparent effort to obscure the situs of the alleged events at issue here, the Amended Complaint deleted all allegations regarding the principal place of business of each defendant. Am. Compl. ¶¶ 18-31. The Amended Complaint thus fails to make even "a prime facie showing of venue," as it must to survive a motion to dismiss for improper venue. *Mitrano*, 377 F.3d at 405. In any event, as in *Sadighi*, Plaintiffs' RICO claims are predicated entirely on alleged actions taken by Sequoia *outside* Virginia. According to the Amended Complaint, Sequoia purportedly violated the federal RICO statute via its alleged participation in and operation of Think Finance. *E.g.*, Am. Compl. ¶ 96. The Amended Complaint alleges that Sequoia did so by "carrying out [Think Finance's] key decisions and strategies for developing and implementing the rent-a-tribe scheme," Am. Compl. ¶ 96, including the following:

- "Sequoia . . . attended regular board of director meetings with the officers and executives of Think Finance whereby they directed, reviewed, and approved key business decisions of Think Finance, including decisions related to the origination, marketing, underwriting, servicing, and collection of the loans," Am. Compl. ¶ 97;
- "Sequoia . . . provided the capital to Think Finance, which then used it to fund the scheme and make the loans in the name of the tribal enterprises," Am. Compl. ¶ 98;
- "Sequoia . . . [was] fully aware of and active participants in the practices of the enterprise and knew that the practices violated the law," Am. Compl. ¶ 99;
- Sequoia "either directly or indirectly aided, abetted, counseled and/or commanded Think

Finance and the other participants in its enterprise, including aiding and abetting the actions of the executives of Think Finance, including Kenneth Rees." Am. Compl. ¶ 100;

- "Sequoia . . . had knowledge of and participated in Think Finance's decision to challenge a cease and desist issued to Great Plains warning it to stop offering its illegal credit products to New York consumers," Am. Compl. ¶ 101;

- Sequoia . . . then participated in "a series of meetings in an attempt to enhance the [rent-a-tribe] model," Am. Compl. ¶ 108;

- "By July 2015, after a series of meetings with Think Finance's executives, [Sequoia determined with other defendants] to continue Think Finance's business model with Great Plains and Plain Green—with minor revisions to the structure that provided the tribal entities with a larger share of the profits," Am. Compl. ¶ 112.

Crucially, none of these activities are alleged to have taken place in Virginia. In fact, only one sentence of the Amended Complaint alleges a tenuous connection between Sequoia and Virginia, and that allegation is completely devoid of any details and does not otherwise claim that Sequoia (or any other defendant) had any direct contact with Virginia. Am. Compl. ¶ 117 ("Through their ownership of and control over Think Finance, Defendants participated in the collection of usurious loans in Virginia."). Moreover, the Amended Complaint itself acknowledges that Virginia was *not* the focal point of Sequoia's actions—and thus that the alleged injuries suffered by Virginia residents were "essential to the RICO conspiracy," *Sadighi*, 36 F. Supp. at 276—as it alleges only that the Defendants participated in a lending scheme to avoid state law *generally*, rather than Virginia law specifically. *See, e.g.*, Am. Compl. Part B ("The rent-a-tribe model was developed to evade state usury laws, *such as Virginia's*") (emphasis added).[6] Indeed, as detailed *infra* in Part III, the connection between Sequoia and Virginia is so attenuated that this Court cannot exercise personal jurisdiction over the Defendants in a manner that comports with the Due Process requirements of the Fourteenth Amendment.

---

[6] *See also* Am. Comp. Part C ("Think Finance developed the rent-a-tribe scheme to evade state usury laws, such as Virginia's" (emphasis added)); *id.* ¶ 38 (alleging that "Think Finance identified state regulation, including interest rate caps and prohibitions on payday lending to be their primary regulatory concern" but not alleging which specific state laws were identified).

As the foregoing reflects, there is *no* connection between Sequoia's alleged actions underlying Plaintiff's RICO claims and Virginia, let alone the requisite *prima facie* evidence that a "substantial part of the events or omissions giving rise to" plaintiffs' RICO claims occurred in the Eastern District of Virginia. 28 U.S.C. § 1391(b). "Consequently, a substantial part of the events giving rise to the RICO claim did not occur in [Virginia] so that venue is improper in this District under 28 U.S.C. § 1391(b)." *Sadighi*, 36 F. Supp. 2d at 276.

### 2. Venue Is Not Proper Under 18 U.S.C. § 1965 Because The "Ends Of Justice" Do Not Require Haling Sequoia Into This Court.

Although not cited by the Amended Complaint as a basis for venue (even after flagged by Sequoia's original motion to dismiss), Am. Compl. ¶ 9, the federal RICO statute contains its own venue provision at 18 U.S.C. § 1965. Relevant here, that statute provides that a civil RICO action "may be instituted in the district court of the United States" (1) "for any district in which such person resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965(a), and (2) "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court," 18 U.S.C. § 1965(b). Neither provision makes the Eastern District of Virginia a proper venue for Plaintiffs' RICO claims.

In *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997), the Fourth Circuit construed this statute to permit district courts to exercise personal jurisdiction over any RICO defendant served anywhere in the United States (a decision with which Sequoia disagrees and which it reserves the right to challenge on appeal).[7] In reaching that conclusion, however, the court

---

[7] Every other circuit to have considered the issue has reached a different conclusion from the Fourth Circuit. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998) ("Reading all of the subsections of § 1965 together, the court finds that § 1965 does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found."); *see FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008) (same); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) (same); *see also Nutrimost, LLC v. Werfel*, No. 2:15-cv-531, 2016 WL 5107730, at *6 (W.D. Pa. Mar. 2,

warned that the mere fact that a court could exercise personal jurisdiction over a defendant under 18 U.S.C. § 1965 did not also mean that *venue* was proper in any district court in the country. *See id.* at 627. To the contrary, the Fourth Circuit observed that "when the defendant is located within the United States, he must look primarily to federal venue requirements for protection from onerous litigation." *Id.* (internal quotation marks omitted).

*Sadighi* illustrates this principle. After rejecting plaintiffs' contention that venue over plaintiffs' RICO claim was proper under 28 U.S.C. § 1391(b), *see supra* Part II.A.1, the court there also rejected the argument that the civil RICO statute "provides an alternative source of venue for that claim in this District." 36 F. Supp. 2d at 276. The court first concluded that venue for plaintiffs' RICO claim was not proper under 18 U.S.C. § 1965(a) because the defendants were not residents of the forum state and the Plaintiffs did not "allege that the [defendants] transact any business in South Carolina, have an agent here, or that they may be 'found' in this state." *Id.* at 277. The court then further held that venue for plaintiffs' RICO claim was improper under Section 1965(b) because "[t]he 'ends of justice' do not require this court to find venue proper in this district." *Id.* In reaching that conclusion, the court observed that the "availability of an alternative forum is a significant, although not the sole, factor in the 'ends of justice' analysis," and noted that "Florida

---

2016) (anticipating Third Circuit would apply Second Circuit analysis); *800537 Ontario Inc. v. Auto Enters., Inc.*, 113 F. Supp. 2d 1116, 1127 (E.D. Mich. 2000) (applying Second Circuit analysis); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (adopting Second Circuit analysis). District courts in this circuit and the United States Department of Justice have likewise cast doubt on the validity of *ESAB*'s personal jurisdiction holding. *See Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 274 (D.S.C. 1999) ("If this court were not bound by Fourth Circuit precedent, it would apply the analysis of *Magic Toyota* and follow the Second Circuit's well-reasoned interpretation of section 1965."); *see also* U.S. Dept. of Justice, Criminal Division, Organized Crime & Racketeering Section, *Civil RICO: A Manual for Federal Attorneys*, at 94-5, n.81 (Oct. 2007) (available at https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/civrico.pdf) ("Some courts have indicated that 18 U.S.C. § 1965(d) provides for nationwide service of a summons against defendants. [citing *ESAB*] However, that positon arguably cannot be reconciled with the plain text of Section 1965 or its legislative history."). The Defendants agree that *ESAB*'s personal jurisdiction analysis is flawed.

is available as an alternative forum in this case." *Id.* That was true because a Florida court would have personal jurisdiction over the defendants, "[b]oth sets of Defendants have numerous contacts with that state," and "a substantial part of the events underlying the RICO claim against each [defendant] allegedly took place in that state." *Id.* Moreover, the *Sadighi* court held that it "need not find venue proper in this district so that Plaintiffs have a forum in which they can sue all Defendants that participated in the RICO conspiracy because that forum is already available in the Middle District of Florida." *Id.* Confronted with such facts, and "[w]ithout any other evidence demonstrating why the 'ends of justice' require haling the [defendants] into this district," the court found "that venue is improper under section 1965(b)." *Id.*

*Sadighi* is directly on point. As in that case, venue is improper here under § 1965(a) because the Amended Complaint does not allege that the Sequoia Defendants are Virginia residents, transact business in Virginia, maintain an agent here, or are otherwise "found" in Virginia. Venue is also improper under § 1965(b) because the "ends of justice" do not require that Sequoia be haled into this forum to adjudicate claims predicated on actions that have no connection to Virginia. As in *Sadighi*, there is no question that alternative fora exist in which plaintiffs could bring their claims, including Texas (where a substantial part of the alleged actions giving rise to Plaintiffs' RICO claims occurred). Indeed, this court has already deemed the Northern District of Texas to constitute a suitable forum for a similar lawsuit brought against Think Finance, its CEO Kenneth Rees, and other entities purportedly involved in the alleged enterprise at issue in the Amended Complaint here. *See Gibbs v. Rees*, No. 3:17-cv-386, 2018 WL 1460705, at *16 (Mar. 23, 2018) (finding that the "interest of justice weighs in favor of transferring this case to the District Court for the Northern District of Texas"). Because Plaintiffs have failed to proffer any other "evidence demonstrating why the 'ends of justice' require haling" Sequoia into the Eastern District of

Virginia, § 1965(b) does not provide a basis for venue in this district for Plaintiffs' RICO claims.

> B.   *Plaintiffs' RICO Claims Fail Because Plaintiffs' Loans Were Not Unlawful, As The Virginia Supreme Court Has Made Clear.*

Plaintiffs allege that three entities made unlawful "loans" to the Plaintiffs: Plain Green, Great Plains, and MobiLoans. MobiLoans, however, issued Plaintiffs "lines of credit," not loans, as the agreements referenced in the Amended Complaint make clear. *See* Decl. of Kim Palermo Ex. 1 at 1, 4, *Price v. MobiLoans*, No. 3:17-cv-711-MHL (E.D. Va. Jan. 1, 2019), ECF No. 12-6 (filed with this motion as Ex. B to the Declaration of Todd R. Geremia). Even if Virginia law applied to those lines of credit, there is no interest cap on such agreements under Virginia law. Va. Code § 6.2-312 (permitting "charges and fees at such rates and in such amounts" as agreed upon by the parties for lines of credit). Plaintiffs' Mobiloans-based RICO claims thus fail.

Plaintiffs' Plain Green- and Great Plains-based RICO claims likewise fail because they are predicated on the incorrect notion that the loans issued by the tribal lenders should be governed by Virginia's usury laws. The Loan Agreements entered into by the Plaintiffs—which are referenced in and integral to the Amended Complaint, *see* Am. Compl. ¶ 118, and thus are deemed incorporated by reference, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016))—expressly provide that the borrower "consents and agree that the loan is made within the tribe's jurisdiction and is subject to and governed by tribal law and not the law of the borrower's resident state," and that acceptance of the loan shall be deemed express "consent[] to tribal jurisdiction and express consent that the loan shall be governed by the laws of the tribe." *See* Decl. of Stephen Smith Ex. 1 at 2, *Gibbs v. Rees*, No. 3:17-cv-386-MHL (E.D. Va. Aug. 7, 2017), ECF No. 17-2 (filed with this motion as Ex. A to the Declaration of Todd R. Geremia). Under the Virginia Supreme Court's decision in *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76 (2006), such choice-of-law provisions in consumer loan agreements are enforceable even

where, as here, the chosen jurisdiction does not cap allowable interest rates for such loans. As a result, Plaintiffs' loans are governed not by Virginia law, but rather by tribal law, which permits the interest rates charged to the Plaintiffs.

*Settlement Funding* is clear on this point. There, an individual entered into a loan agreement which charged an interest rate that exceeded 12% per annum and which "contained a choice of law provision, stating all disputes would be determined in accordance with the laws of the State of Utah." 274 Va. at 78. The borrower subsequently defaulted on her loan payments. *Id.* When the lender brought suit for the remaining principal balance plus accrued interest and fees, the borrower raised the affirmative defense of usury under Virginia law. *Id.* at 79. The circuit court credited that defense, holding that the borrower "could collect only the principal sum of [the borrower's] loans, less credit for payments received, but could not recover interest or fees." *Id.* at 80.

The Virginia Supreme Court unanimously reversed, holding that "[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Id.* Specifically, the Court observed that "Paragraph 13 of the loan agreement provides that the loan transaction was completed in Utah, that the lender, WebBank, was doing business in Utah, and that the borrower agrees that 'any and all disputes arising from or concerning this Agreement . . . shall be determined in accordance with the laws of the State of Utah.'" *Id.* at 80–81. Confronted with this language in the loan agreement, the Supreme Court held that the "circuit court erred in refusing to apply Utah law in the construction of the loan agreement." *Id.* at 81. The Supreme Court reached that conclusion notwithstanding its observation that, per the citations to Utah law adduced during the circuit court proceeding, "Utah has not established any limits on maximum rates of interest for consumer loans." *Id.* Nor did the Supreme

Court credit any of the borrower's arguments (explicitly raised in her brief)[8] that enforcement of the choice-of-law clause would violate Virginia public policy.

*Settlement Funding* is directly on point and bars Plaintiffs' RICO claims in their entirety. As in that case, the loan agreements at issue here contain choice-of-law provisions specifying that they are governed by the lenders' tribal law, rather than the law of the borrower's home state. Smith Decl. Ex. 1 at 2; Smith Decl. Ex. 2 at 2; Smith Decl. Ex. 3 at 2; Smith Decl. Ex. 4 at 2; Smith Decl. Ex. 5 at 2. Like in *Settlement Funding*, under the invoked tribal law of the lenders, "there is no maximum Interest rate or charge, or usury rate restriction between or among Persons if they establish the Interest rate or charge by written agreement." *See, e.g.*, Section 10-1-201, Title 10 Chippewa Cree Tribal Code – Chippewa Cree Tribal Lending and Regulatory Code, *available at* https://www.plaingreenloans.com/content/assets/Uploads/title10.pdf. Under binding Virginia precedent, this "choice of substantive law should be applied," thereby rendering Plaintiffs' RICO claims meritless. *Settlement Funding*, 274 Va. at 80.

### C.    Plaintiffs Lack Standing To Pursue RICO Claims Against Sequoia.

Section 1964(c) of RICO provides that a plaintiff can bring suit only if they have been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "The Fourth Circuit has found that the 'by reason of' language in 18 U.S.C. § 1964(c) creates certain standing requirements before one can attempt to state a claim under 18 U.S.C. § 1962." *Goodrow v. Friedman & MacFadyen*, No. 3:11cv20, 2013 WL 3894842, at *20 (E.D. Va. July 26, 2013) (Lauck, J.) (internal quotation marks omitted). Specifically, "(1) the plaintiff must have

---

[8] Br. for Appellee, *Settlement Funding v. Von Neumann-Lillie*, No. 061373, 2006 WL 4701777, at *4-5 (Va. Jan. 5, 2007) (arguing that "the specific contract provision in question—the interest rate provision—is also against Virginia public policy" and that "[a]ssuming for the sake of argument that Utah law does not have any cap on allowable interest rates, this would be against Virginia's expressed public policy" because it "would completely eliminate Virginia's usury protection for its citizens").

detrimentally relied on the predicate acts of racketeering activity; (2) the predicate act must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury." *Id.* (internal quotation marks omitted).

In the context of the allegations in the Amended Complaint, this standing requirement demands that Plaintiffs plausibly allege that *Sequoia's purported actions* here were "not only [] a 'but for' cause of [Plaintiffs'] injury, but [] the proximate cause as well." *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). This proximate cause requirement—which mandates "some direct relation between the injury asserted and the injurious conduct alleged," *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)—serves as an important safeguard on the scope of civil RICO liability's treble damages by "limit[ing] a person's responsibility for the consequences of that person's own acts." *Holmes*, 503 U.S. at 268; *see also Chisholm v. TransSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996) ("The pertinent inquiry in determining the existence of proximate, or legal cause, is whether the conduct has been so significant and important a cause that the defendant should be held responsible." (internal quotation marks omitted)). Of equal importance, this proximate cause requirement must be satisfied as to each individual defendant; it does not suffice to attempt to establish proximate cause as to the alleged RICO enterprise as a whole. *See Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) ("[the plaintiff] must show that *each* RICO defendant conducted an enterprise through a pattern of racketeering activity, and that [the plaintiff] was injured . . . as a result of such conduct." (emphasis added) (citation omitted)). The Supreme Court has thus observed that allegations of "harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover" in a civil RICO suit. *Holmes*, 503 U.S. at 268–69.

*Slay's Restoration, LLC v. Wright National Flood Insurance Company*, 226 F. Supp. 3d

589 (E.D. Va. 2017), is instructive. There, a plaintiff brought a civil RICO suit against (among other parties) the subcontractor of an insurance carrier (a claims adjustment firm) after the plaintiffs' insurance claims for flood damage were denied. *Id.* at 591–92. The subcontractor filed a motion to dismiss, arguing that the plaintiff lacked standing because "they are not the proximate cause of Plaintiff's injury because the Parties never had a contractual relationship that required Defendants to disburse any of the [flood insurance] proceeds to Plaintiff." *Id.* at 595. The court agreed, holding that "[w]hile RICO does not explicitly state that Plaintiff must have a contractual relationship in order to file suit, RICO does require, as the court noted in *Holmes*, *that Plaintiff must show that Defendants proximately* caused Plaintiff's injury." *Id.* (emphasis in original). Because, based on the allegations in the complaint, "Plaintiff cannot show that Defendants proximately caused its injury because it is only tangentially connected to Defendants," the Court dismissed the Plaintiffs' complaint with prejudice. *Id.*

The same result is warranted here. As a preliminary matter, it is not clear that Plaintiffs have suffered an injury to their business or property at all, as the Amended Complaint alleges only the amount "received" from the named Plaintiffs, but not the principal amount of those loans. Am. Compl. ¶¶ 123–30. To the extent the Plaintiffs have repaid less than the principal amount borrowed, they have not suffered any injury. In any event, the Amended Complaint fails to allege any plausible facts establishing that any purported harm was the but-for and proximate cause of Sequoia's actions. By the Plaintiffs' own account, the Plaintiffs entered into loan agreements with the tribal lenders, who would in turn sign those loans to another non-party. Am. Compl. ¶¶ 53–54. At no point is *Sequoia* alleged to have been in a contractual relationship with the Plaintiffs. Moreover, nowhere do Plaintiffs allege in any detail that Sequoia played any role whatsoever in the collection of usurious loans. Instead, the Amended Complaint alleges in conclusory fashion

only that the "Defendants each received revenues collected on the loans." *E.g.*, Am. Compl. ¶ 189.

That is not enough. Such downstream, attenuated allegations are akin to the allegations deemed too far removed to meet RICO's proximate cause requirement in *Holmes* and its progeny, including *Slay's Restoration*. Because the Amended Complaint fails to allege facts establishing, if true, that Sequoia proximately caused Plaintiffs' purported injuries, Plaintiffs lack standing to pursue their RICO claims against Sequoia.

D.     *The Amended Complaint Otherwise Fails To State A Valid RICO Claim Under Any Subsection*.

Because RICO imposes the severe remedies of treble damages and attorneys' fees, the Fourth Circuit has repeatedly warned that district courts should "exercise caution" at the pleading stage to ensure that "RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)); *see also Gatoil (USA), Inc. v. Forest Hill State Bank*, No. 86-3579, 1987 WL 37817, at *5 (4th Cir. June 17, 1987) ("[RICO], properly read, is not a 'catch-all,' but is instead a powerful tool to be used against racketeers and organized crime. Too frequently, this statue is used by attorneys against legitimate businesses when the attorneys are more concerned with the possible recovery of treble damages and attorneys fees than with the proper use of RICO."); *AARP v. Am. Family Prepaid Legal Corp., Inc.*, 604 F. Supp. 2d 785, 796 (M.D.N.C. 2009) ("As the Fourth Circuit has cautioned, due to RICO's heightened penalties, courts should 'not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.'" (quoting *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988))). In light of this heightened level of scrutiny, it is unsurprising that "plaintiffs wielding RICO almost always miss the mark." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017).

Plaintiffs' civil RICO claims here are no different. In addition to the overarching, independently fatal defects already identified above, Plaintiffs' individual RICO causes of action also suffer from additional deficiencies which warrant dismissal of the Amended Complaint.

       1.      <u>Plaintiffs' 18 U.S.C. § 1962(a) Claim Is Deficient On Its Face Because Plaintiff Does Not Allege Sequoia Re-Invested Any Illicit Proceeds Into The Enterprise.</u>

"Section 1962(a) prohibits a person from receiving income from a pattern of racketeering activity and then using that income in the operation of an enterprise engaged in commerce." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 606 (D. Md. 2014). "To allege a violation of Section 1962(a), a plaintiff must show: (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise." *Id.* at 605.

The second element is completely absent from Plaintiff's Complaint. While the Amended Complaint alleges that the "Defendants received tens of millions of dollars derived from the collection of unlawful debt," Am. Compl. ¶ 6, it contains only a threadbare allegation that these "profits were then reinvested in the Think Finance enterprise" that is plainly insufficient to satisfy *Iqbal/Twombly* pleading standards. Am. Compl. 131. Equally insufficient is the Plaintiffs' allegation that the Sequoia Affiliates received profits from Think Finance "in the form of shares of Elevate," because according to Plaintiffs, "Elevate" is "*another* enterprise engaged in interstate commerce" (an allegation that is not supported by any factual allegations whatsoever). *Id.* (emphasis added). By its plain text, Section 1962(a) requires that the profits be re-invested into the *same* enterprise from which they are derived, something the Plaintiffs do not allege occurred here.

       2.      <u>Plaintiffs Fail To State A Valid Section 1962(b) Claim Because They Do Not Allege That Sequoia Acquired An Interest In Think Finance Via A Pattern Of Racketeering Activity.</u>

"Section 1962(b) prohibits the acquisition or maintenance of an interest in or control of an enterprise engaged in interstate or foreign commerce through a pattern of racketeering activity."

*In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 596 (E.D. Va. 2009). "Thus, to prevail on a claim alleging a violation of § 1962(b), the RICO plaintiffs must prove (i) that [the defendant] engaged in a pattern of racketeering activity, (ii) that through this pattern, he acquired an interest in, or control of, an enterprise (iii) that engaged in activities affecting interstate or foreign commerce, and (iv) that this acquisition of an interest or control caused property damage to the RICO plaintiffs." *Id.* Where, as here, "plaintiffs do not allege that [the defendant] acquired an interest in, or control of, an enterprise *as a result of his pattern of racketeering activity*," a section 1962(b) claim fails. *Id.* (emphasis added).[9]

According to the Amended Complaint, "Sequoia owned approximately 25% of the interest in Think Finance at all times relevant hereto," and participated in the alleged enterprise "[t]hrough its ownership of Think Finance." Am. Compl. ¶ 16. That allegation is identical to the one deemed insufficient to state a Section 1962(b) claim in *In re XE Services*. Moreover, even if this requirement could be met by acquiring an interest in a *different* enterprise, as the Amended Complaint alleges occurred when the Sequoia affiliates received Elevate shares, Am. Compl. ¶ 131, it contains no factual allegations whatsoever as to how Elevate itself meets the requirements of a RICO "enterprise." *See supra* Part II.D.3. Plaintiffs' Section 1962(b) claim therefore fails.

3.     Plaintiffs' Section 1962(c) Claim Is Deficient In Multiple Respects.

Plaintiffs also fail to state a claim under Section 1962(c) for at least three additional, independent reasons.

*First*, the Amended Complaint fails to allege that *Sequoia* engaged in any acts prohibited under the statute. Section 1962(c) makes it unlawful for any person "to conduct or participate,

---

[9] The court in *In re XE* continued: "Indeed, the complaints are completely devoid of any factual allegations suggesting that Prince acquired control over his 'RICO Enterprise' through his racketeering activities. Instead, plaintiffs merely plead that Prince's enterprise engages in illegal acts. This is plainly insufficient to prove a violation of § 1962(b)." 665 F. Supp. 2d at 596.

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). An "unlawful debt," is defined to mean "a debt (A) . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with . . . the business of lending money or a thing of a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

Relevant here, it is axiomatic that in order to face liability under substantive RICO, each individual defendant must be shown to have engaged in either a pattern of racketeering activity or the collection of an unlawful debt; it is not sufficient for only the enterprise as a whole to have done so. 18 U.S.C. § 1962(c); *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (noting that the plaintiff must prove that "each RICO defendant" engaged in a pattern of racketeering activity).[10] Nor is it sufficient to allege merely that "defendants engaged in a 'scheme'" of making and collecting usurious loans; rather, the complaint must "unequivocally allege that the defendants were in the business of making usurious loans." *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249–50 (2d Cir. 1985).

The allegations in the Amended Complaint fail this test. The Amended Complaint does not allege that Sequoia is in the "business of making usurious loans." Indeed, no named defendant is unequivocally alleged to be "in the business of making usurious loans," or to make loans at all. Nor does the Amended Complaint allege that Sequoia, as opposed to the enterprise as a whole, collected any debts from Plaintiffs. Indeed, Plaintiffs are very careful to allege only that the

---

[10] Other circuits have held the same. *E.g.*, *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'" (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244 (1989))); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise . . . .").

"Defendants each received *revenues* collected on the loans," Am. Compl. ¶ 189 (emphasis added), making clear that some other unnamed entity (the tribal lenders) collected payments on the loans. Absent a plausible allegation that *Sequoia*, rather than any other defendant or other entity, collected unlawful debts, Plaintiffs' Section 1962(c) claims against Sequoia fail.

*Second*, Plaintiffs' Section 1962(c) is baseless because it fails to allege that the amorphous "enterprise" here had a purpose distinct from the goals and objectives of those accused of perpetuating the racketeering activity. The Supreme Court has clarified that the "enterprise" for purposes of a RICO claim "is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Accordingly, a complaint that lacks "any allegations that the affairs of the enterprise are any different from the affairs of the defendants" and "does no more than allege that the defendants associated with themselves for the purpose of conducting . . . the other defendants' business affairs through entities created for that purpose" fails to state a Section 1962(c) claim. *Myers v. Lee*, No. 1:10cv131 (AJT/JFA), 2010 WL 3745632, at *4–5 (E.D. Va. Sept. 21, 2010). That is the case here: the Amended Complaint alleges that the Defendants came together for the express and sole purpose of providing and collecting on usurious loans with unlawful interest through the tribal lenders. Because those are the same activities that constitute the alleged wrongdoing, they cannot serve as the basis for an "enterprise" on a § 1962(c) claim.

*Third*, Plaintiffs fail to state a Section 1962(c) claim because they do not allege facts establishing that Sequoia participated in the operation or management of an enterprise through the collection of unlawful debts. "[L]iability [under RICO] depends on showing that the defendant conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in the original). For that reason, other

- 24 -

appellate courts have recognized that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *see also Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."). District courts in this circuit have held similarly.[11]

The Amended Complaint here, however, alleges only that Sequoia participated in the operation and management *of Think Finance*—an entity which is not alleged to be the enterprise, but rather only another participant in the undefined enterprise—and that Sequoia was "fully aware and active participants in the practices of the enterprise and knew that the practices violated the law." Am. Compl. ¶¶ 92–101. As set forth above, mere *knowledge of* an enterprises' activity is not enough; a complaint must allege facts establishing that the defendant "participated in the operation and management of the enterprise itself." No such well-plead allegations are found in the Amended Complaint, thus providing yet another reason why Plaintiffs' Section 1962(c) claim fails.

4.  Plaintiffs' Section 1962(d) Claims Are Likewise Meritless.

Plaintiffs' claim that Sequoia "violated § 1962(d) of RICO by entering into a series of agreements to conspire to violate §§ 1962(a) and (c)" fails for similar reasons. First, because "the pleadings do not state a substantive RICO claim under § 1962(c)" or any other RICO provision, "Plaintiffs' RICO conspiracy claim fails as well." *GE Inv. Private Placement Partners II v. Parker*,

---

[11] *E.g.*, *Davis v. Hudgins*, 896 F. Supp. 561, 567 (E.D. Va. 1995) (dismissing RICO claim where "none of the acts [alleged] suggests that any Defendants held a management role in the scheme"); *In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*, 965 F. Supp. 716, 723 (D. Md. 1997) (holding that even allegations that a defendant "aided and abetted the conduct of the enterprise" are not enough to sustain a § 1962(c) claim unless the defendant played a role in directing or managing the enterprise).

247 F.3d 543, 551 n.2 (4th Cir. 2001).

Plaintiffs' RICO conspiracy claim independently fails because the Amended Complaint does not plausibly allege that Sequoia knowingly entered into an "agreement to participate in an endeavor which, if completed would constitute a violation of the substantive statute." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012). The Fourth Circuit has "caution[ed] that the RICO conspiracy statute does not criminalize mere association with an enterprise." *Id.*. Rather, to state a claim under Section 1962(d), the plaintiff must provide that "each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and that each defendant knowingly and willingly agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *Id.*; *see also* 18 U.S.C. § 1962(d). The Amended Complaint alleges that this element is satisfied because the Defendants "enter[ed] into a series of agreements to conspire to violate § 1962(a) and (c), as evidenced by their agreement to provide millions of dollars of financing for the loans with the knowledge that the loans would be made in violation of state usury and licensing laws, including Virginia's." Am. Compl. ¶ 156. Sequoia, however, is not alleged to be a *party to any of the financing agreements* referenced by the Amended Complaint, and the Amended Complaint does not otherwise identify any agreement entered into by Sequoia. Plaintiffs' RICO conspiracy claim against Sequoia therefore fails.

Finally, Plaintiffs' RICO conspiracy claim against Sequoia fails under the intracorporate conspiracy doctrine. That doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Because a "corporation cannot conspire with its employees—and employees, when acting within the scope of their employment, cannot conspire amongst themselves," Section 1962(d) claims brought against corporate officers for actions taken

on behalf of the corporation fail as a matter of law. *Walters v. McMahen*, 795 F. Supp. 2d 350, 358–59 (D. Md. 2011). Plaintiffs' RICO conspiracy claim against Sequoia here is predicated entirely upon Sequoia's purported role as a stockholder of a corporation (Think Finance). Actions taken in that intracorporate role do not, as a matter of law, give rise to a conspiracy.

### III.   DISMISSAL OF PLAINTIFFS' STATE LAW CLAIMS IS WARRANTED BECAUSE THIS COURT LACKS JURISDICTION OVER SEQUOIA FOR THOSE CLAIMS.

As a preliminary matter, because the Amended Complaint fails to state a valid RICO claim, this Court lacks original jurisdiction over the state law claims brought against Sequoia and should decline to exercise supplemental jurisdiction over them. While the Amended Complaint alleges that this Court has diversity jurisdiction over those claims pursuant to 28 U.S.C. § 1332(d)(2), Am. Compl. ¶ 8, it fails to allege that the amount in controversy "exceeds the sum or value of $5,000,000, exclusive of interest of costs," as required by the statute.

Accordingly, the only statutory basis for jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction under 28 U.S.C. § 1367. As that statute makes clear, however, a district court has discretion to decline to exercise supplemental jurisdiction if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction"—as would be the case should this Court dismiss Plaintiffs' RICO claims. 28 U.S.C. § 1367(c)(3).

Also, regardless of whether this Court has original jurisdiction over Plaintiff's state law claims, this Court lacks personal jurisdiction over Sequoia. In the absence of general personal jurisdiction over a nonresident defendant like Sequoia (which is not and could not be plausibly alleged by Plaintiffs here), a plaintiff must establish personal jurisdiction over each defendant on a claim-by-claim basis. *E.g.*, *Gatekeeper Inc. v. Straetch Sys., Ltd.*, 718 F. Supp. 2d 664, 668 (E.D. Va. 2010). Consistent with that well-established principle, courts have recognized in the RICO context that when a RICO claim is dismissed for failure to state a claim, and that RICO claim

formed the sole basis for asserting personal jurisdiction over the defendant, "the court may, in its discretion, dismiss the remaining federal and state claims." *Taylor v. Bettis*, 976 F. Supp. 2d 721, 751 (E.D.N.C. 2013); *see also D'Addario v. Geller*, 264 F. Supp. 2d 367, 387–88 (E.D. Va. 2003) (noting that if "the court were to later to determine that the federal [RICO] claim(s) should be dismissed against a defendant, the state law claims against that defendant would also have to be dismissed, unless another basis for asserting personal jurisdiction exists").

That is the case here: the only basis for asserting personal jurisdiction over Sequoia in this lawsuit is pursuant to 18 U.S.C. § 1965(d)—as that statute has been interpreted erroneously by the Fourth Circuit in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997)—because the Amended Complaint fails to allege sufficient contacts between Sequoia and Virginia to satisfy Virginia's long-arm statute (which is coextensive with the Due Process Clause of the Fourteenth Amendment, *see D'Addario*, 264 F. Supp. 2d. at 387–88). The Supreme Court has clarified that for "a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Importantly, this relationship "must arise out of contacts that the defendant *himself* creates with the forum State"; the minimum contacts analysis cannot be satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (internal quotation marks omitted) (emphasis in original). Relatedly, the Supreme Court clarified that its "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Accordingly, "the plaintiff cannot be the only link between the defendant and the forum"; rather, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Consistent with this rule, the Fourth Circuit has held that due process requires a Complaint

to plausibly allege that the defendant "intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 (4th Cir. 2003); *see also ESAB*, 126 F.3d at 625 (requiring conduct to be "intentionally targeted at and focused on" the forum state to satisfy due process). Importantly, this standard is *not* satisfied by an allegation that a defendant "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting the" forum state." *ESAB*, 126 F.3d at 625.

The Amended Complaint consists entirely of Sequoia's generalized, non-Virginia specific activities of the type that the Fourth Circuit has previously deemed insufficient to confer specific personal jurisdiction over a defendant in *ESAB*. As described *supra* in Part II.A.1, the Amended Complaint does not allege that any action undertaken by Sequoia was "intentionally targeted at and focused on" Virginia, as opposed to individuals across the country generally. Indeed, the only allegation regarding any contact between Sequoia and Virginia whatsoever is the Plaintiffs' conclusory claim that Sequoia "participated in the collection of usurious loans in Virginia." Am. Compl. ¶ 117. This single allegation is far removed from any credible inference that Sequoia "intentionally directed its tortious conduct toward [Virginia], such that [Virginia] can be said to be the focal point of the tortious activity." *See Carefirst of Maryland*, 334 F.3d at 398. Thus, absent a valid RICO claim, this Court lacks specific jurisdiction over Sequoia, warranting dismissal.

## IV.    IN ANY EVENT, PLAINTIFFS' STATE LAW CLAIMS ARE MERITLESS.

Finally, even if this Court has personal jurisdiction over Sequoia in connection with Plaintiffs' state law usury and unjust enrichment claims (which it does not), the Amended Complaint fails to allege plausible facts sufficient to state a claim.

First, as already set out *supra* in Part II.B, the Virginia Supreme Court's decision in *Settlement Funding* has established that Virginia law does not apply to the loan agreements at all.

Plaintiffs' claims for purported violations of Virginia law are therefore meritless. Moreover, *Settlement Funding* aside, Virginia's usury statute only permits a consumer to file an action to recover excess payments "*from the person taking or receiving such payments*." Va. Code § 6.2-305(A) (emphasis added). The Amended Complaint does not allege that Sequoia directly took or received any payments on Plaintiffs' loans, let alone that any such payments were in "excess" of the underlying loan balance. Sequoia therefore cannot be held liable under Section 6.2-305(A).

Plaintiffs fail to state a claim for unjust enrichment under Virginia law for similar reasons. First, under Virginia law, "unjust enrichment claims are only appropriate in the absence of an enforceable contract." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 810 (E.D. Va. 2017). Because *Settlement Funding* dictates that the loan agreements are governed by tribal law, and because tribal law does not cap interest rates on consumer loans, the agreements here are binding and thus cannot give rise to an unjust enrichment claim. Second, "an action for unjust enrichment lies when one has money of another that he has no right to retain." *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 844 (E.D. Va. 2015). The Amended Complaint, however, fails to allege that Sequoia has money from the Plaintiffs that it has no right to retain, as it alleges only the amount "received" from the named Plaintiffs, but not the principal amount of those loans. Am. Compl. ¶¶ 123–30. Because Sequoia cannot be said to have "collected anything 'unlawfully'" if "it has yet to recoup the full principal amount of the loan," Plaintiffs' unjust enrichment claims fail. *See Gardner v. GMAC, Inc.*, 796 F.3d 390, 397 (4th Cir. 2015).

## CONCLUSION

Defendants therefore respectfully request that, in the event that this Court denies Sequoia's motion to stay this case pending arbitration, it dismiss this action for improper venue under Rule 12(b)(3) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:        February 15, 2019              Respectfully submitted,


                                             */s/ William V. O'Reilly*
                                             William V. O'Reilly  (VSB No. 26249)
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, DC  2001-2113
                                             Telephone: (202) 879-3939
                                             Facsimile: (202) 626-1700
                                             Email: woreilly@jonesday.com

                                             Stephen D. Hibbard *(Pro Hac Vice)*
                                             JONES DAY
                                             555 California Street, 26th Floor
                                             San Francisco, CA
                                             Telephone: (415) 875-5809
                                             Facsimile: (415) 875-5700
                                             Email: sdhibbard@jonesday.com

                                             Todd R. Geremia *(Pro Hac Vice)*
                                             JONES DAY
                                             250 Vesey Street
                                             New York, NY 10281-1047
                                             Telephone: (212) 326-3429
                                             Facsimile: (212) 755-7306
                                             Email: trgeremia@jonesday.com


                                             *Attorneys for Defendants,*
                                             *SEQUOIA CAPITAL OPERATIONS, LLC;*
                                             *SEQUOIA CAPITAL FRANCHISE PARTNERS,*
                                             *LLC; SEQUOIA CAPITAL IX, LP; SEQUOIA*
                                             *CAPITAL GROWTH FUND III, LP; SEQUOIA*
                                             *ENTREPRENEURS ANNEX FUND, LP; SEQUOIA*
                                             *CAPITAL GROWTH III PRINCIPALS FUNDS,*
                                             *LLC; SEQUOIA CAPITAL FRANCHISE FUND,*
                                             *LP; and SEQUOIA CAPITAL GROWTH*
                                             *PARTNERS III, LP*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed on this 15th day of February, 2019 with

the Clerk of the Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to all counsel of record.

<div style="margin-left: 40%;">

*/s/ William V. O'Reilly*
William V. O'Reilly (VSB No. 26249)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 2001-2113
Telephone: (202) 879-3939
Facsimile: 202-626-1700
Email: woreilly@jonesday.com

*Attorney for Defendants,*
*SEQUOIA CAPITAL OPERATIONS, LLC; SEQUOIA*
*CAPITAL FRANCHISE PARTNERS, LLC; SEQUOIA*
*CAPITAL IX, LP; SEQUOIA CAPITAL GROWTH FUND*
*III, LP; SEQUOIA ENTREPRENEURS ANNEX FUND,*
*LP; SEQUOIA CAPITAL GROWTH III PRINCIPALS*
*FUNDS, LLC; SEQUOIA CAPITAL FRANCHISE FUND,*
*LP; and SEQUOIA CAPITAL GROWTH PARTNERS III,*
*LP*

</div>