# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

|  |  |  |
|---|---|---|
| DARLENE GIBBS, STEPHANIE EDWARDS, LULA WILLIAMS, PATRICK INSCHO, LAWRENCE MWETHUKU, GEORGE HENGLE, TAMARA PRICE, and SHERRY BLACKBURN, on behalf of themselves and all individuals similarly situated, | § § § § § § § § |  |
| Plaintiffs, | § § | Civil Action No. 3:18-CV-00676-MHL |
| v. | § § § |  |
| MIKE STINSON; LINDA STINSON; THE STINSON 2009 GRANTOR RETAINED ANNUITY TRUST; 7HBF NO. 2, LTD.; SEQUOIA CAPITAL OPERATIONS, LLC; SEQUOIA CAPITAL FRANCHISE PARTNERS, L.P., SEQUOIA CAPITAL IX, L.P, SEQUOIA CAPITAL GROWTH FUND III, L.P., SEQUOIA ENTREPRENEURS ANNEX FUND, L.P., SEQUOIA CAPITAL GROWTH III PRINCIPALS FUND, LLC, SEQUOIA CAPITAL FRANCHISE FUND, L.P., SEQUOIA CAPITAL GROWTH PARTNERS III, LP., STARTUP CAPITAL VENTURES, L.P.; STEPHEN J. SHAPER, | § § § § § § § § § § § § § § § § § § |  |
| Defendants. | § § |  |

## DECLARATION OF TODD R. GEREMIA

I, TODD R. GEREMIA, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a partner in the law firm Jones Day, counsel for Sequoia Capital Operations,

LLC, Sequoia Capital Franchise Partners, L.P., Sequoia Capital IX, L.P., Sequoia Capital

Growth Fund III, L.P., Sequoia Entrepreneurs Annex Fund, L.P., Sequoia Capital Growth III

Principals Fund, LLC, Sequoia Capital Franchise Fund, L.P., and Sequoia Capital Growth

Partners III, L.P. (collectively, "Sequoia") in this matter.  I submit this declaration to put before

the Court documents that are referred to in Sequoia's motion to stay this action pending

arbitration, pursuant to 9 U.S.C. § 3, and its alternative motion to dismiss this action.

2.     As the Amended Complaint in this action alleges, Plaintiffs have filed four other

actions in this Court against the same alleged RICO "enterprise," seeking redress for the same

injuries, in connection with the same consumer loans at issue in this action.  *See* ECF No. 43,

Am. Compl. ¶ 1.  In this action, Plaintiffs did not attach copies of the lending agreements at issue

to their Complaint or their Amended Complaint.  In the first of the five actions that they filed in

this Court, however, Plaintiffs attached to their Complaint what they alleged were exemplary

copies of the challenged loan agreements:  one from Plain Green, LLC and the other from Great

Plains, LLC.  *See* ECF Nos. 1-3, 1-4, *Gibbs v. Rees*, No. 3:17-cv-386-MHL (E.D. Va.) (filed

May 19, 2017).  In opposing defendants' motion to compel arbitration in *Gibbs v. Rees*, Plaintiffs

also acknowledged that the copies of their loan agreements attached to the Declaration of

Stephen Smith (ECF No. 17-1, *Gibbs v. Rees*, No. 3:17-cv-386-MHL (E.D. Va.) (filed Aug. 7,

2017)) were authentic, and Plaintiffs did not contradict any of the statements in Mr. Smith's

Declaration.  *See* ECF No. 61, *Plaintiffs' Opposition to Defendants' Motion to Compel

Arbitration*, *Gibbs v. Rees*, No. 3:17-cv-386-MHL (E.D. Va.) (filed Sept. 11, 2017).

3.     Plaintiffs George Hengle, Tamara Price and Sherry Blackburn joined this action

with the filing of the Amended Complaint.  These three newly joined Plaintiffs have also filed a

previous action in this Court against who they alleged to be their lender MobiLoans, LLC.  *See*

ECF No. 1, *Price v. MobiLoans, LLC*, No. 3:18-cv-711-MHL (E.D. Va. Oct. 16, 2018).  In

support of its motion to dismiss for lack of jurisdiction or, alternatively, to compel arbitration,

MobiLoans, LLC submitted a Declaration of Kim Palermo and attached to it the version of the

MobiLoans Line of Credit Account Terms and Conditions that was in effect when the plaintiffs filed that lawsuit.  *See* ECF No. 12-6, *Price v. MobiLoans, LLC*, No. 3:18-cv-711-MHL (E.D. Va.) (filed Jan. 7, 2019).

4.     For the Court's convenience, Sequoia attaches as Exhibit A to this Declaration the Declaration of Stephen Smith as filed in *Gibbs v. Rees* and the exhibits attached to it.

5.     Sequoia also attaches as Exhibit B to this Declaration the Declaration of Kim Palermso as filed in *Price v. MobiLoans, LLC* and the exhibit attached to it.

6.     Sequoia references these documents in its motion for a stay pending arbitration and its alternative motion to dismiss this action.

7.     I declare under penalty of perjury that the foregoing is true and correct.


Executed in New York, New York, on February 15, 2019.


_____

TODD R. GEREMIA

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DARLENE GIBBS, STEPHANIE EDWARDS,
LULA WILLIAMS, PATRICK INSCHO, and
LAWRENCE MWETHUKU, *on behalf of*
*themselves and all individuals similarly situated,*

                Plaintiffs,

v.

KENNETH REES; THINK FINANCE, INC.;
THINK FINANCE SPV, LLC; TC DECISION
SCIENCES, LLC; TC LOAN SERVICE, LLC;
TAILWIND MARKETING, LLC; and GPL
SERVICING,

                Defendants.

Civil Action No.: 3:17-cv-386-MHL

---

**DECLARATION OF STEPHEN SMITH IN SUPPORT OF DEFENDANTS THINK**
**FINANCE INC., THINK FINANCE SPV, LLC, TC DECISION SCIENCES, LLC, TC**
**LOAN SERVICE, LLC, AND TAILWIND MARKETING, LLC'S MOTION TO**
**COMPEL ARBITRATION AND, IN THE ALTERNATIVE, DISMISS PURSUANT TO**
**RULE 12(b)(7) AND 12(b)(1)**

I, Stephen Smith, hereby declare:

1.     I am an employee of Think Finance, Inc. ("Think Finance"). I make this declaration in support of Defendants Think Finance, Inc., Think Finance SPV, LLC, TC Decision Sciences, LLC, TC Loan Service, LLC, and Tailwind Marketing, LLC's (the "Think Defendants") Motion to Compel Arbitration and, in the alternative, Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(7) and 12(b)(1). I make this declaration based on personal knowledge of the facts set forth herein, and the review of documents maintained by the Think Defendants in the regular course of business.

2.     I have been employed with Think Finance since June 2009, and currently serve as Chief Compliance Officer.  TC Decision Sciences, LLC ("Decision Sciences"), TC Loan Service, LLC ("Loan Service"), and Tailwind Marketing, LLC ("Tailwind Marketing"), subsidiaries of Think Finance, previously operated as service providers for Plain Green, LLC ("Plain Green"), which is a lending entity wholly owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation ("Chippewa Cree Tribe"), and currently operate as service providers for Great Plains, LLC ("Great Plains"), which is a lending entity wholly owned and operated by the Otoe-Missouria Tribe of Indians ("Otoe-Missouria Tribe"), both federally recognized Indian tribes (Plain Green and Great Plains are referred to collectively as the "Tribal Lenders").  The services these Think entities provided for Plain Green and Great Plains are marketing services, which included website maintenance, direct mail and electronic mail, as well as software and technology support services.

3.     Plaintiffs Darlene Gibbs, Stephanie Edwards, Lula Williams, Patrick Inscho and Lawrence Mwethuku have brought suit based on loans they entered into with Plain Green and/or Great Plains (the "Tribal lenders").  Through my employment with Think Finance and in connection with the provision of services to Plain Green and Great Plains by the above Think entities, I have access to and have gained familiarity with Plain Green's and Great Plains's loan documents, subject to the limitations set forth in paragraphs 4 – 8 below.

4.     Decision Sciences, Loan Service, and Tailwind Marketing began providing administrative services to Plain Green in 2011.

5.     On June 1, 2015, Decision Sciences and Tailwind Marketing and Plain Green entered into renegotiated administrative services contracts at Plain Green's request.

2

6.     In March 2016, at Plain Green's request, Decision Sciences and Tailwind Marketing and Plain Green again entered into negotiations concerning Plain Green's administrative services contracts.  These negotiations were unsuccessful and the contracts were terminated by Plain Green effective June 1, 2016.

7.     None of the Think Defendants have provided any services to Plain Green since June 1, 2016.  This Declaration is therefore limited to Plain Green's loan agreements and website prior to June 1, 2016.

8.     As of late March 2017, the Think Defendants stopped providing certain marketing services to Great Plains, including direct and electronic mail marketing services.

### Loan Application and Loan Documents

9.     Plain Green and Great Plains perform their lending operations online through their websites.

10.     When beginning the loan application process on Plain Green's or Great Plain's website, a customer first views the website's homepage.  On the homepage, the customer clicks on "apply now" or "Get Started Today" to start the loan application process.

11.     The customer next completes a loan application.  As part of the application process, the customer provides personal and financial information.  If Plain Green or Great Plains approves the application, the customer is asked to select a date for the first payment based on the timing of their application (and has the option to view a full payment schedule based on the date selected) and a loan amount.

12.     The customer is then asked to review and sign the loan agreement.  The customer is provided with a copy of the "Consumer Loan Agreement" (later titled the "Consumer Installment Loan Agreement"), which includes an agreement to arbitrate.  At this time, the

customer also chooses whether to receive the loan proceeds electronically or by U.S. Mail. The customer then types her full name to provide an electronic signature. The customer also types the phrase "I Agree" in a box on the screen to indicate her acceptance of the loan terms.

13.    Once the loan agreement is submitted, the customer has options to print and/or save the agreement.

14.    The customer is then directed to a final page that informs the customer that once her loan application information is verified, she will receive the funds from her loan.

15.    In connection with the provision of services to Plain Green and Great Plains, the Tribal Lenders provide Decision Sciences, Loan Service, and Tailwind Marketing access to records of loan agreements entered into between Plain Green and Great Plains and their respective borrowers.

### Plaintiffs' Loan Agreements

16.    Plaintiff Gibbs entered into a Consumer Installment Loan Agreement with Plain Green, loan number 72770294, for $1,200.00, on January 6, 2016. A true and correct copy of Plaintiff Gibbs's Consumer Installment Loan Agreement, loan number 72770294, dated January 6, 2016, is attached hereto as Exhibit "1."

17.    Plaintiff Williams entered into a Consumer Installment Loan Agreement with Great Plains, loan number 74097924, for $1,400.00, on October 5, 2016. A true and correct copy of Plaintiff Williams's Consumer Installment Loan Agreement, loan number 74097924, dated October 5, 2016, is attached as Exhibit "2."

18.    Plaintiff Edwards entered into a Consumer Installment Loan Agreement with Great Plains, loan number 73346057, for $1,300.00, on July 17, 2015. A true and correct copy

4

of Plaintiff Edwards's Consumer Installment Loan Agreement, loan number 73346057, dated July 17, 2015, is attached hereto as Exhibit "3.

19.     Plaintiff Inscho entered into a Consumer Installment Loan Agreement with Great Plains, loan number 73784134, for $1,700.00, on March 31, 2016.  A true and correct copy of Plaintiff Inscho's Consumer Installment Loan Agreement, loan number 73784134, dated March 31, 2016, is attached hereto as Exhibit "4."

20.     Plaintiff Mwethuku entered into a Consumer Loan Agreement with Plain Green, loan number 67893953, for $500.00, on May 28, 2013.  A true and correct copy of Plaintiff Mwethuku's Consumer Loan Agreement with Plain Green, loan number 67893953, dated May 28, 2013, is attached hereto as Exhibit "5."

21.     In addition to the above loan agreement, Plaintiff Mwethuku entered into a Consumer Loan Agreement with Plain Green, loan number 68693094, dated August 22, 2013. Plaintiff Mwethuku did not pay any interest or principal relating to this Consumer Loan Agreement with Plain Green.

### Arbitration Agreements

22.     Each Plaintiff signed Great Plains's Consumer Installment Loan Agreement, Great Plains's Consumer Loan Agreement, Plain Green's Consumer Installment Loan Agreement and/or Plain Green's Consumer Loan Agreement.  The loan agreements entered into by Plaintiffs all contain an arbitration agreement (the "Arbitration Agreement") that provides for all disputes related to the loan agreements to be resolved by binding arbitration.

23.     The Arbitration Agreements also provide a consumer with the opportunity to opt-out of the Arbitration Agreement by sending written notice via mail or email within sixty (60) days of signing the loan agreement.

24.     Both Tribes have their own standard operating procedures for handling consumers that opt-out of arbitration.  If a consumer opts-out of the Arbitration Agreement by sending written notice via mail or email within sixty (60) days of signing the loan agreement, a customer support agent, who is either an outsourced third-party vendor that has a contract with the Tribal Lender or a call center agent employed by the Tribe on the reservation, will check a box in the loan account management system indicating that the consumer opted out of arbitration.

25.     Based on a review of the records accessible in the loan origination and servicing platform used by the Tribes:

    a.  Plaintiff Gibbs never opted out of the Arbitration Agreement to which she agreed in her Consumer Installment Loan Agreement.

    b.  Plaintiff Edwards never opted out of any of the Arbitration Agreements to which she agreed in her Consumer Installment Loan Agreements or Consumer Loan Agreements.

    c.  Plaintiff Williams never opted out of any of the Arbitration Agreements to which she agreed in her Consumer Installment Loan Agreements.

    d.  Plaintiff Inscho never opted out of any of the Arbitration Agreements to which he agreed in his Consumer Installment Loan Agreement or Consumer Loan Agreements.

    e.  Plaintiff Mwethuku opted out of the Arbitration Agreement with respect to his Consumer Loan Agreement with Plain Green, loan number 68693094, dated August 22, 2013.

    f.  Other than his August 22, 2013 Consumer Loan Agreement with Plain Green, Plaintiff Mwethuku did not opt-out of any of the Arbitration Agreements to which

he agreed in his Consumer Installment Loan Agreements or Consumer Loan Agreements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on my personal knowledge and review of documents.

Executed on August 7, 2017.

STEPHEN SMITH

*EXHIBIT 1*

THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"

Plain Green Consumer Installment Loan Agreement

Loan Number: 72770294

Plain Green, LLC
93 Mack Road, Suite 600
PO Box 270
Box Elder, Montana 59521
(866) 420-7157

PLEASE READ THESE IMPORTANT DISCLOSURES CAREFULLY

HIGH COST CREDIT DISCLOSURE: THIS LOAN IS NOT INTENDED TO MEET LONG-TERM FINANCIAL NEEDS. THIS LOAN SHOULD BE USED ONLY TO MEET SHORT-TERM CASH NEEDS. RENEWING THE LOAN RATHER THAN PAYING THE DEBT IN FULL WILL REQUIRE ADDITIONAL FINANCE CHARGES.

THE LENDER (HEREINAFTER REFERRED TO AS "PLAIN GREEN, LLC" OR "PLAIN GREEN") IS THE TRIBAL GOVERNMENTAL LENDING ARM OF THE CHIPPEWA CREE TRIBE OF THE ROCKY BOY'S RESERVATION, MONTNA (HEREINAFTER REFERRED TO AS THE "TRIBE"). PLAIN GREEN IS OWNED BY THE TRIBE AND FORMED UNDER TRIBAL LAW FOR THE EXPRESS PURPOSE OF GENERATING REVENUE FOR TRIBAL GOVERNMENTAL PURPOSES. PLAIN GREEN OPERATES WITHIN THE TRIBE'S RESERVATION. BOTH THE TRIBE AND PLAIN GREEN ARE IMMUNE FROM SUIT IN ANY COURT UNLESS THE TRIBE, THROUGH ITS TRIBAL BUSINESS COMMITTEE, EXPRESSLY WAIVES THAT IMMUNITY. WAIVER MAY ONLY BE MADE THROUGH A FORMAL, WRITTEN TRIBAL RESOLUTION FROM THE TRIBAL BUSINESS COMMITTEE. PLAIN GREEN IS REGULATED BY THE TRIBAL CONSUMER PROTECTION BUREAU (THE "BUREAU"). CONSUMERS HAVE THE RIGHT TO SUBMIT COMPLAINTS TO THE BUREAU IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCESS SET FORTH IN THIS AGREEMENT AND SUBJECT TO THE REGULATORY AUTHORITY OF THE BUREAU IN ACCORDANCE WITH TRIBAL LAW.

| | |
|---|---|
| **Lender:** | **Borrower's Name:** |
| Plain Green, LLC | Darlene Jones Gibbs |
| **Origination Date:** 1/6/2016 | **Borrower's ID:** |
| This is the date you signed and submitted this Agreement to Plain Green. | *******7133 |
| **Disbursement Date:** On or about 1/6/2016 | **Borrower's Address:** |
| This is the date that the Loan proceeds are released. | REDACTED |
| **Effective Date:** 1/7/2016 | **Borrower's Bank and Account Number for ACH Transfers (the "Bank Account"):** |
| This is the date that interest begins to accrue. | Suntrust REDACTE |
| **Final Payment Due Date:** 4/2/2017 | |
| This is the Loan maturity date. | |

In this Plain Green Consumer Installment Loan Agreement (this "Agreement"), "you" and "your" refer to the Borrower identified above. "Tribal Law" means any tribal law or regulation duly enacted by the Chippewa Cree Tribe. "Loan" means the Plain Green consumer installment loan made by the tribal government lender to Borrower under this Agreement.

IMPORTANT DISCLOSURE OF THE TERMS AND CONDITIONS OF THIS LOAN

THE BORROWER EXPRESSLY CONSENTS AND AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND IS SUBJECT TO AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF THE BORROWER'S RESIDENT STATE. THE BORROWER IS STRONGLY CAUTIONED THAT IF THE BORROWER DOES NOT UNDERSTAND THIS CONSENT, OR DOES NOT WISH TO EXPRESSLY CONSENT TO TRIBAL JURISDICTION OR DOES NOT WISH TO HAVE THE LOAN GOVERENED BY LAWS OF THE TRIBE, THEN THE BORROWER SHOULD REFRAIN FROM ACCEPTING THIS LOAN OR RESCIND THE LOAN WITHIN THE TERMS OF THIS AGREEMENT. ACCEPTING THIS LOAN SHALL BE DEEMED EXPRESS CONSENT TO TRIBAL JURISDICTION AND EXPRESS CONSENT THAT THE LOAN SHALL BE GOVERNED BY THE LAWS OF THE TRIBE. THE BORROWER'S RESIDENT STATE'S LAW MAY HAVE INTEREST RATE LIMITS AND OTHER CONSUMER PROTECTION PROVISIONS THAT ARE MORE FAVORABLE TO THE BORROWER. IF THE BORROWER WISHES TO HAVE THE BORROWER'S RESIDENT STATE'S LAW APPLY TO ANY LOAN THAT THE BORROWER OBTAINS,

THE BORROWER SHOULD CONSIDER OBTAINING A LOAN FROM A LICENSED LENDER IN THE BORROWER'S STATE. IN ANY EVENT, THE BORROWER SHOULD CAREFULLY EVALUATE THE BORROWER'S FINANCIAL OPTIONS BEFORE OBTAINING ANY LOAN.

PLAIN GREEN LOANS CARRY A HIGH INTEREST RATE AND ARE NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR A BORROWER'S FINANCIAL NEEDS.

PLEASE CONSIDER YOUR ABILITY TO REPAY A LOAN. IF YOU ARE HAVING FINANCIAL DIFFICULTIES, YOU SHOULD SEEK THE ASSISTANCE OF FINANCIAL COUNSELORS. BEFORE SIGNING THIS AGREEMENT, PLEASE CAREFULLY READ ITS TERMS. YOUR SIGNATURE AND ACCEPTANCE OF THIS LOAN WILL BE DEEMED PROOF THAT YOU HAVE READ THIS AGREEMENT, YOU HAVE APPROVED OF ALL OF ITS TERMS, YOU HAVE EXPRESSLY CONSENTED TO TRIBAL JURISDICTION, YOU HAVE PROVIDED THE PLAIN GREEN WITH THE MOST CURRENT AND ACCURATE EMPLOYMENT, CREDIT, INCOME, AND ASSET HISTORY REQUIRED FOR PLAIN GREEN TO ASSESS YOUR ELIGIBILITY AND CREDITWORTHINESS, AND YOU AFFIRMATIVELY ACKNOWLEDGE THAT YOU ARE ABLE TO REPAY THIS LOAN ACCORDING TO THE TERMS OF THIS AGREEMENT.

**TRUTH IN LENDING DISCLOSURES**:  Plain Green provides the following Truth-In-Lending disclosures so that you can compare the cost of this Loan to other loan products you might obtain in the United States. Plain Green's inclusion of these disclosures does not mean that Plain Green consents to the application of state or federal law to Plain Green, to the Loan, or this Agreement.

**TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after making all payments as scheduled. |
|---|---|---|---|
| 277.92% | $3,051.06 | $1,200.00 | $4,251.06 |

**PAYMENT SCHEDULE:** Your Payment Schedule will be as set forth in the following table, with each due date being referred to herein as a "Payment Due Date":

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 14 | $283.41 | 2/2/2016, 3/2/2016, 4/2/2016, 5/2/2016, 6/2/2016, 7/2/2016, 8/2/2016, 9/2/2016, 10/2/2016, 11/2/2016, 12/2/2016, 1/2/2017, 2/2/2017, 3/2/2017 |
| 1 | $283.32 | 4/2/2017 |

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See the Agreement below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

---

**Itemization of Amount Financed:**

| | |
|---|---|
| Amount given to you directly: | $1,200.00 |
| *Plus,* Amount paid on your account with Lender - Loan #_____: | $0.00 |
| *Equals,* Amount Financed: | $1,200.00 |

---

**PROMISE TO PAY:** You promise to pay to the order of Plain Green or to any assignee of Plain Green or subsequent holder of this Agreement the principal sum of $1,200.00 plus interest from the Effective Date of this Loan at the rate of 279.9915% per year until this Loan is repaid in full. You agree to make payments in the amounts and on or before the Payment Due Dates shown in the Payment Schedule above. You also promise to pay to Plain Green or to any assignee of Plain Green or subsequent holder of this Agreement all other fees and charges provided for under this Agreement.

**INTEREST:** Interest will accrue daily on the unpaid principal balance of this Loan, beginning on the Effective Date, until paid in full. Plain Green calculates interest based on a 365-day year. In calculating your payments, Plain Green has assumed you will make each payment on the day and in the amount due. If any payment is received after the Payment Due Date, you must pay any additional interest that accrues after the Payment Due Date. If any payment is made before a Payment Due Date, the interest due on the scheduled payment will be reduced, and you will owe less interest. The amount of any decrease or increase in interest due will affect the amount of your final payment.

If the amount of any payment is not enough to pay the interest due, the unpaid interest will be paid from your next payment(s), if any, and will not be added to the principal balance. If your payments are less than the interest due, you will owe more money and it will become very difficult to pay off your Loan. Time is of the essence, which means that there are no grace periods for when payments must be made. There are no separate late charges if you fail to make payments in accordance with the Payment Schedule. However, if you do not make each payment in full on the Payment Due Dates as agreed, Plain Green may continue to charge interest on past due amounts at the interest rate set forth in the "Promise to Pay" section. The interest rate and other charges under this Agreement will never exceed the highest rate or charge allowed by Tribal Law or this Agreement. If the amount collected is found to exceed the highest rate or charge allowed, Plain Green will refund an amount necessary to comply with Tribal Law and this Agreement.

**PAYMENTS:** Plain Green will apply your payments in the following order: (1) to any fees due, (2) to accrued but unpaid interest, and (3) to principal amounts outstanding. If you choose to pay via ACH Authorization, each scheduled payment, plus any fees due to Plain Green (if applicable), will be debited from your Bank Account on each Payment Due Date. See the ACH Authorization below for further information. If you choose to receive your Loan proceeds via check and to repay all amounts due pursuant to this

Agreement via check, money order or certified check, please mail each payment payable to Plain Green, LLC, Payment Processing, PO Box 42560, Philadelphia, PA 19101 (or by overnight mail or courier service to Plain Green, LLC c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, PA 19007), in time for Plain Green to receive the payment by 5:00 p.m. Eastern Time on the Payment Due Date.

**PREPAYMENT:**  You may prepay this Loan in whole or in part at any time without penalty. If you prepay in part, you must still make each later payment according to the Payment Schedule above until this Loan is paid in full. Any amounts you prepay will not continue to accrue interest.

**RIGHT OF RESCISSION:**  You may rescind or cancel this Loan if you do so on or before 5:30 p.m., Eastern Time, on the fifth business day after the Origination Date (the "Rescission Deadline"). To cancel, call Plain Green at (866) 420-7157 and request to rescind or cancel this Loan. Then, provide Plain Green written notice of rescission as directed by the customer service representative.

*If you have provided an ACH Authorization:*  If Plain Green timely receives your written notice of rescission on or before the Rescission Deadline but before the Loan proceeds have been credited to your Bank Account, Plain Green will not deposit your Loan proceeds to your Bank Account and both Plain Green's and your obligations under this Agreement will be rescinded. If Plain Green timely receives your written notice of rescission on or before the Rescission Deadline but after the Loan proceeds have been credited to your Bank Account, Plain Green will debit your Bank Account for the principal amount owing under this Agreement. If Plain Green receives payment of the principal amount via the debit, Plain Green's and your obligations under this Agreement will be rescinded. If Plain Green does not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

*If you have elected to receive your Loan proceeds via check delivered by mail:*  If Plain Green timely receives your written notice of rescission on or before the Rescission Deadline, and (a) if Plain Green has not cashed the check representing the Loan proceeds to you or (b) if you have not cashed the check representing the Loan proceeds, then Plain Green will cancel the check and both Plain Green's and your obligations under this Agreement will be rescinded. If you have cashed the check representing the Loan proceeds, you must return the full amount of cash you received to Plain Green by the Rescission Deadline. If Plain Green receives the full amount by the Rescission Deadline, Plain Green's and your obligations under this Agreement will be rescinded. If Plain Green does not receive the full amount by the Rescission Deadline, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

Any pre-assessed fee shall not be deemed security for this Loan and shall be returned by a credit entry to your Bank Account within three (3) business days of an effective rescission.

**CHECK CONVERSION NOTIFICATION:**  When you provide a check as payment, you agree Plain Green may use information from your check to (a) make a one-time electronic withdrawal from your Bank Account or (b) process the payment as a check transaction. When Plain Green uses information from your check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day Plain Green receives your payment, and you will not receive your check back from your financial institution. For questions, please call Plain Green's customer service phone number, (866) 420-7157.

**RETURNED PAYMENT FEES; BORROWER BANK CHARGES:**  If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay Plain Green a fee of $30.00 and you agree that Plain Green may recover court costs and reasonable attorney's fees incurred by Plain Green. If you have elected to repay this Loan via ACH debits to your Bank Account, for each returned payment, you authorize Plain Green and its agents and representatives to make a one-time withdrawal from your Bank Account to collect this fee. Your financial institution may also charge a fee if your Bank Account becomes overdrawn or if a payment is attempted against your Bank Account that would cause it to become overdrawn. You will not hold Plain Green or our agents, representatives, successors or assigns responsible for any such fee you must pay.

**SECURITY:**  No security interest is taken or given in connection with this Loan.

**REFINANCE POLICY:**  Subject to Plain Green credit policies, Plain Green will determine, in its sole discretion, whether your Loan may be refinanced.

**DEFAULT:**  "Default" of this Agreement will occur if: (a) you provide false or misleading information about yourself, your employment or your financial condition prior to entering into this Agreement, (b) you fail to make a payment in full by the applicable Payment Due Date or if your payment is returned to Plain Green for any reason, or (c) you file bankruptcy or become a debtor under U.S. federal bankruptcy laws.

**CONSEQUENCES OF DEFAULT:**  In the event of a Default, Plain Green may choose to do any one or more of the following things: (a) require you to immediately pay everything you owe under this Agreement; (b) if you have elected to repay this Loan via ACH debits to your Bank Account, continue to withdraw regularly scheduled payments and fees from your Bank Account; and (c) pursue all legally available means to collect the balance due. By signing this Agreement you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notice. Amounts you owe Plain Green may include the unpaid principal balance of this Loan, all unpaid accrued fees and interest (including unpaid interest owing on past due amounts), and any costs and fees Plain

Green incurs in connection with this Agreement. By choosing to exercise any one of more of these remedies, Plain Green does not waive its right to use another remedy later. Plain Green may decide not to use any of the remedies described above. In any event, Plain Green shall have and may exercise any and all rights and remedies available to it through tribal law and or in equity. Any claims or defenses whatsoever asserted by or on behalf of Borrower shall be subject to the dispute resolution process and jurisdiction agreed to in this Agreement.

**CREDIT REPORTING:**  You agree that Plain Green may make inquiries concerning your credit history and standing, and may report information concerning your performance under this Agreement to credit reporting agencies. Late payments, missed payments or other defaults on your Loan may be reflected in your credit report.

**CHANGE OF PRIMARY RESIDENCE:**  You agree to notify Plain Green of any change in your primary residence as soon as practicable, but no later than five (5) days after any change. You agree that the address provided on this Agreement will govern this Agreement until you have met all obligations under this Agreement and that any subsequent change in your primary residence will not affect the terms or enforceability of this Agreement.

**CORRESPONDENCE WITH LENDER:**  General correspondence with Plain Green concerning this Loan, this Agreement or your relationship with Plain Green must be directed to Plain Green at the following address: Plain Green, LLC, 93 Mack Road, Suite 600, PO Box 270, Box Elder, Montana 59521. Communications related to the bankruptcy of the Borrower must be directed to Plain Green at the following address: Plain Green, LLC, Attn: Bankruptcy Handling, 93 Mack Road, Suite 600, PO Box 270, Box Elder, Montana 59521.

**FORCE MAJEURE:**  Unavoidable delays as a result of inadvertent processing errors and/or "acts of God" may extend the time for the deposit of Loan proceeds and the processing of payments owing hereunder.

**TRANSFER OF RIGHTS; HYPOTHECATION AND MAINTENANCE OF REGISTER:**  This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in the possession and under the control of the payee named herein; and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.

You agree that Plain Green may assign or transfer this Agreement, or any of our rights hereunder, to any other person or entity without prior notice to or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and remain within jurisdiction of the courts of the Tribe. Plain Green (in its capacity as "Registrar"), acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located in the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner, assignees, and persons holding participation interests in the Loan, and the amounts of principal and interest owing to each from time to time pursuant to the terms of this Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Plain Green and all of its assignees and participants shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of this Agreement, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to Plain Green, as Registrar, at any reasonable time and from time to time upon reasonable prior notice. The foregoing is intended to result in this Agreement being in "registered form" within the meaning of U.S. Treasury Regulations Section 1.871-14(c) and Sections 163(f), 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and shall be interpreted and applied in a manner consistent therewith. Any fees and expenses of Plain Green as Registrar for its services shall be charged to the registered owner of the loan and not to you.

**SUCCESSORS AND ASSIGNS:**  This Agreement is binding upon your heirs and personal representatives in probate and upon anyone to whom you assign your assets or who succeeds you in any other way; provided, however, that you may not assign or transfer this Agreement except with Plain Green's prior written consent.

**SERVICING COMMUNICATIONS AND COMMUNICATIONS AFTER DEFAULT:**  You authorize Plain Green and its authorized representatives to contact you according to your consent provided in your application or according to your account preferences, as modified by you after submitting your application. This may include (i) calling you during reasonable hours at any of the phone numbers listed on your most recent application (a) prior to each Payment Due Date to remind you of the payment due and (b) and for other matters related to your account, (ii) contacting you by text message or other wireless communication method on the mobile phone number listed on your application, (iii) leaving a message with a person or a voice mail service, and (iv) contacting you using auto-dialers or pre-recorded messages, including calls to your mobile phone.

---

**ACH AUTHORIZATION**
**(applies only if (a) you select the electronic funding/payment option below or**
**(b) authorize recurring Debit Card payments)**

This ACH Authorization is a part of and relates to this Agreement. You voluntarily authorize Plain Green, and our successors, affiliates, agents, representatives, employees and assigns, to initiate automatic credit and debit entries to your Bank Account in accordance with this Agreement. You agree that Plain Green will initiate a credit entry to your Bank Account for the Amount Financed on or about the Disbursement Date. You agree that Plain Green will initiate a debit entry to your Bank Account on each

Payment Due Date in the payment amount described in the Payment Schedule. *For each scheduled payment, whenever a debit entry to your Bank Account is returned to Plain Green for any reason, Plain Green may initiate a debit entry to your Bank Account up to two additional times after the first attempt for each scheduled payment amount.* You also agree that Plain Green will initiate a debit entry for any accrued returned payment fees and any interest that accrues on overdue amounts. If your payment is due on a non-business day, it will be processed on the next business day.

You agree that this ACH Authorization is for repayment of a consumer installment loan and that payments shall recur at substantially regular intervals as set forth in this Agreement. This ACH Authorization is to remain in full force and effect for this transaction until you pay your Loan, including any interest and fees, in full. You may revoke this ACH Authorization by contacting Plain Green directly or by contacting your financial institution. If you revoke your ACH Authorization, you agree to make payments to Plain green by check, certified check or money order as set forth in the "Payments" section above. In no event will any revocation of this ACH Authorization be effective with respect to entries processed by Plain Green prior to its receiving such revocation.

You agree that Plain Green may obtain information about you and your Bank Account from your bank and/or consumer reporting agencies until all amounts owing pursuant to this Agreement are paid in full. If there is any missing or incorrect information in or with your application regarding your bank, bank routing number, or account number, then you authorize Plain Green to verify and correct such information.

Your bank may charge you a fee in connection with Plain Green's credit and/or debit entries. Contact your financial institution for more information specific to your Bank Account.

This ACH Authorization is subject to the following provisions:

(1) *Right to stop payment and procedure for doing so.* If you have told Plain Green in advance to make regular payments out of your Bank Account, you can stop any of these payments. Here's how: Call Plain Green at (866) 420-7157, or send a written request to Plain Green, 93 Mack Road, Suite 600, PO Box 270, Box Elder, Montana 59521. In order for a cancellation request to be effective by a specific date or for a specific payment, Plain Green must receive the cancellation request three (3) business days or more before that date or before that payment is scheduled to be made. If you call, Plain Green may also require you to put your request in writing and submit to Plain Green within 14 days of your call.

(2) *Liability for failure to stop payment of preauthorized transfer.* If you order Plain Green to stop a payment at least three (3) business days or more before the debit is scheduled, and Plain Green fails to stop such payment, Plain Green will be liable for your losses or damages.

(3) *Notice of varying amounts.* You will receive a notice at least 10 days before a payment is debited from your Bank Account if the payment Plain Green is going to debit from your Bank Account varies from the amount disclosed in the Schedule of Payments above. You have the right to receive notice of all varying amounts.

This ACH Authorization is a payment mechanism only and does not give Plain Green collection rights greater than those otherwise contained in this Agreement. This ACH Authorization does not constitute and is not intended to constitute a security interest under Tribal Law.

If you associate one or more debit cards with your account with Plain Green (each a "Debit Card") and authorize Plain Green to initiate recurring payments on your Loan using a Debit Card, the terms of the foregoing ACH Authorization will apply equally to recurring payments made by Debit Card.

**ENTIRE AGREEMENT; SEVERABILITY.** This Agreement, including the Waiver of Jury Trial and Arbitration Agreement, constitutes the entire agreement between Borrower and Plain Green, and it may not be contradicted by evidence of prior or contemporaneous oral agreements between them. If any provision of this Agreement is held unenforceable, including any provision of the Waiver of Jury Trial and Arbitration Agreement, the remainder of this Agreement shall remain in full force and effect.

**GOVERNING LAW; NON-APPLICABILITY OF STATE LAW; INTERSTATE COMMERCE:** This Agreement and the Agreement to Arbitrate are governed by Tribal Law. The Agreement to Arbitrate also comprehends the application of the Federal Arbitration Act, as provided below. Plain Green does not have a presence in Montana or any other state of the United States of America. Neither this Agreement nor the Plain Green is subject to the laws of any state of the United States. Plain Green may choose to voluntarily use certain federal laws as guidelines for the provision of services. Such voluntary use does not represent acquiescence of the Chippewa Cree Tribe to any federal law unless found expressly applicable to the operations of the Chippewa Cree Tribe. You and Plain Green agree that the transaction represented by this Agreement involves interstate commerce for all purposes.

<u>**WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT**</u>

**This Agreement includes the following binding Waiver of Jury Trial and Arbitration Agreement (the "Agreement to Arbitrate"). You may opt out of the Agreement to Arbitrate by following these instructions:**

***RIGHT TO OPT-OUT:*** IF YOU DO NOT AGREE TO ARBITRATE ALL DISPUTES (DEFINED BELOW) IN ACCORDANCE

WITH THE TERMS AND CONDITIONS OF THE AGREEMENT TO ARBITRATE, YOU MUST ADVISE PLAIN GREEN IN WRITING EITHER BY (A) MAIL DELIVERY OF A LETTER POSTMARKED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT, TO 93 MACK ROAD, PO BOX 270, BOX ELDER, MONTANA 59521, OR (B) EMAIL DATED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT TO **SUPPORT@PLAINGREENLOANS.COM**. YOUR OPT-OUT CORRESPONDENCE MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE IF IT IS NOT IN WRITING OR IF IT IS DATED LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT; IT IS NOT SUFFICIENT TO TELEPHONE PLAIN GREEN. IN THE EVENT YOU OPT OUT OF THE AGREEMENT TO ARBITRATE, ANY DISPUTES SHALL BE GOVERNED UNDER TRIBAL LAW AND MUST BE BROUGHT IN THE CHIPPEWA CREE TRIBAL COURT.

***PLEASE CAREFULLY READ THIS AGREEMENT TO ARBITRATE. UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED THROUGH BINDING ARBITRATION. ARBITRATION REPLACES LITIGATION. BY AGREEING TO ARBITRATE ANY DISPUTES, YOU WAIVE YOUR RIGHT TO GO TO COURT, YOUR RIGHT TO HAVE A JUDGE OR JURY, YOUR RIGHT TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.***

**AGREEMENT TO ARBITRATE:** You and Plain Green agree that any Dispute (defined below) will be resolved by Arbitration.

**WHAT ARBITRATION IS:** "Arbitration" is a form of alternative dispute resolution where Disputes are presented to an independent third party for resolution. A "Dispute" is any claim or controversy of any kind between you and Plain Green or otherwise involving this Agreement or the Loan. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all federal, state or Tribal Law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.

For purposes of this Agreement to Arbitrate, (a) the terms "you" and "your" include any co-signer and also your heirs, guardian, personal representative, or trustee in bankruptcy, and (b) the term "Plain Green" means Plain Green, LLC as the Lender, Plain Green's affiliated companies, the Tribe, Plain Green's servicing and collection representatives and agents, and each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns.

**HOW ARBITRATION WORKS:** If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or Plain Green may first try to resolve the matter informally or through customary business methods, including collection activity. The party requesting arbitration must choose either of the following arbitration firms for initiating and pursuing arbitration: the American Arbitration Association ("AAA") or JAMS, The Resolution Experts ("JAMS"). If you claim you have a Dispute with Plain Green, but do not initiate arbitration or select an arbitration firm, Plain Green may do so. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating arbitration by contacting them as follows:

| | |
|---|---|
| JAMS, The Resolution Experts | American Arbitration Association |
| 1920 Main Street, Ste 300 | 335 Madison Ave, Floor 10 |
| Irvine, CA 92614 | New York, NY 10017-4605 |
| Website: http://www.jamsadr.com/ | Website: http://www.adr.org/ |
| Telephone: (949) 224-1810 or (800) 352-5267 | Telephone: (800) 778-7879 |

The policies and procedures of the selected arbitration firm applicable to consumer transactions will apply provided such policies and procedures do not contradict this Agreement to Arbitrate or Tribal Law. To the extent the arbitration firm's rules or procedures are different than the terms of this Agreement to Arbitrate, the terms of this Agreement to Arbitrate will apply.

**WHAT ARBITRATION COSTS:** No matter which party initiates the arbitration, Plain Green will advance or reimburse filing fees and other costs or fees of arbitration, provided each party will be initially responsible for its own attorneys' fees and related costs. Unless prohibited by Tribal Law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

**LOCATION OF ARBITRATION:** Any arbitration under this Agreement may be conducted either on Tribal land or within thirty (30) miles of your then current residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the sovereign status or immunity of the Tribe, or (b) to allow for the application of any law other than Tribal Law.

**WAIVER OF RIGHTS:** BY ENTERING INTO THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO (A) HAVE A JURY TRIAL TO RESOLVE DISPUTES, (B) HAVE A COURT RESOLVE DISPUTES, (C) PARTICIPATE IN A CLASS ACTION LAWSUIT, AND (D) HAVE ACCESS TO DISCOVERY AND OTHER PROCEDURES

**THAT ARE AVAILABLE IN A LAWSUIT.**

The arbitrator has the ability to award all remedies available under Tribal Law, whether at law or in equity, to the prevailing party, except that you and Plain Green agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving individual Disputes. The validity, effect, and enforceability of the waivers of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a Tribal court of competent jurisdiction and not by the AAA, JAMS, or an arbitrator. If the Tribal court refuses to enforce the class-wide arbitration waiver, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable Tribal court rules and procedures, and not as a class action lawsuit. As an integral component of accepting this Agreement, you irrevocably consent to the exclusive jurisdiction of the Tribal courts for purposes of this Agreement.

**APPLICABLE LAW AND JUDICIAL REVIEW OF ARBITRATOR'S AWARD: THIS AGREEMENT TO ARBITRATE IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY TRIBAL LAW. THE PARTIES ADDITIONALLY AGREE TO LOOK TO THE FEDERAL ARBITRATION ACT AND JUDICIAL INTERPRETATIONS THEREOF FOR GUIDANCE IN ANY ARBITRATION THAT MAY BE CONDUCTED HEREUNDER.** The arbitrator shall apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall make written findings and the arbitrator's award may be filed with a Tribal court. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and Tribal Law, and if it is not, it may be set aside by a Tribal court upon judicial review. The parties will have the right to judicial review in a Tribal court of (a) whether the findings of fact rendered by the arbitrator are supported by substantial evidence and (b) whether the conclusions of law are erroneous under Tribal Law. Judgment confirming an award in such a proceeding may be entered only if a Tribal court determines that the award is supported by substantial evidence and is not based on legal error under Tribal Law.

**SURVIVAL:** This Agreement to Arbitrate will survive: (1) the cancellation, payment, charge-off, or assignment of this Agreement; (2) the bankruptcy of any party; and (3) any transfer, sale, or assignment of this Agreement, or any amounts owed under this Agreement, to any other person or entity.

**PLEASE CAREFULLY REVIEW THIS AGREEMENT, WHICH INCLUDES A WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT THAT MAY BE ENFORCED BY YOU AND PLAIN GREEN. IF YOU HAVE QUESTIONS, PLEASE CONTACT CUSTOMER SERVICE AT (866) 420-7157.**

*By electronically signing this Agreement:* You certify that all information you gave Plain Green in connection with your application and this Agreement is true and correct, and you authorize Plain Green to verify any information you provide. You give Plain Green consent to obtain information about you from one or more consumer reporting agencies and other sources. *You acknowledge that: (a) you have read, understand, and agree to all of the terms and conditions of (i) this Agreement, including the truth-in-lending disclosures and the Waiver of Jury Trial and Arbitration Agreement, and (ii) Plain Green's* Privacy Policy; *(b) this Agreement contains all of the terms of the agreement between you and Plain Green and that no representations or promises other than those contained in this Agreement have been made; (c) if you elect below to repay this Loan via ACH debits to your Bank Account, you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement; (d) you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code; (e) this Agreement was filled in before you signed it; (f) you have the ability to print or retain a completed copy of this Agreement; and (g) Plain Green has not made the Loan contingent upon your obtaining any other product or service from Plain Green or anyone else.* You further acknowledge that Plain Green may withhold funding of your Loan until (i) Plain Green confirms that you have made all payments on any previous loans with Plain Green, (ii) Plain Green verifies that all information you gave Plain Green on your application is true and (iii) Plain Green decides whether you meet the requirements to receive the Loan.

*Check Here*

☑ **By checking here and signing below, you understand, acknowledge and agree that Plain Green, LLC is a tribal lending entity wholly owned by Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana, a federally recognized tribe. You further understand, acknowledge and agree that this Loan is governed by the laws of the Chippewa Cree Tribe and is not subject to the provisions or protections of the laws of your home state or any other state. If you wish to have your resident state's law apply to any loan that you obtain, you should consider obtaining a loan from a licensed lender in your state.**

**Please review and select one of these funding options:**

*Check Here*

◉ **ELECTRONIC (as soon as the next business day):** By checking here and signing below, you agree to the ACH Authorization set forth in this Agreement, which allows Plain Green to debit and credit your Bank Account for this Loan. You acknowledge and agree that the ACH Authorization is for the benefit of Plain Green, LLC, its affiliates, agents, representatives, employees, successors, and registered assigns. You acknowledge that you are not required to consent to receive funds or repay your Loan by ACH or other electronic payment method.

◯ **POSTAL MAIL (allow 7 to 10 days for delivery):** By checking here and signing below, you request Loan proceeds be distributed to you by check and delivered by regular mail through the U.S. Postal Service. If you elect to receive your proceeds by mail, you must make payments as explained in the "Payments" section above. You acknowledge that interest begins accruing on the Effective Date set forth at the top of this Agreement.

| Your Full Name: | Type 'I Agree': | Date: |
|---|---|---|
| *Darlene Jones Gibbs* | *I Agree* | **1/6/2016** |

**Plain Green, LLC**

**Date:**
**1/6/2016**

By: Joel Rosette, CEO

*EXHIBIT 2*

THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"

## Consumer Installment Loan Agreement

**Loan Number: 74097924**

**Great Plains Lending, LLC**
**Otoe-Missouria Indian Reservation**
**Red Rock, OK 74651**
**(877) 836-1506**

**Lender:**
Great Plains Lending, LLC

**Origination Date:**  10/5/2016
This is the date you signed and submitted
this Agreement to the Lender.

**Disbursement Date:**  On or about  10/5/2016
This is the date that the Loan proceeds are released.

**Effective Date:**  10/6/2016
This is the date that interest begins to accrue.

**Final Payment Due Date:**  4/3/2018
This is the Loan maturity date.

**Borrower's Name:**
Lula Bell Williams

**Borrower's ID:**
*******1647

**Borrower's Address:**
REDACTED

**Borrower's Bank and Account Number for ACH Transfers (the "Bank Account"):**
united methodist credit union REDACTED

In this Consumer Installment Loan Agreement (this "Agreement"), "you" and "your" refer to the Borrower identified above. "We", "us", "our", and "Lender" refer to Great Plains Lending, LLC, a lender authorized by the laws of the Otoe-Missouria Tribe of Indians (the "Otoe-Missouria Tribe" or "Tribe"), a federally recognized Indian Tribe, and any assignee of Lender or subsequent holder of this Agreement. "Tribal" refers to the Otoe-Missouria Tribe, and "Tribal Law" means any law or regulation duly enacted by the Otoe-Missouria Tribe. "Loan" means the consumer installment loan made by Lender to Borrower under this Agreement.

IMPORTANT DISCLOSURE

PLEASE READ THIS DISCLOSURE CAREFULLY BEFORE SIGNING THIS AGREEMENT. LENDER IS AN ARM OF THE TRIBE, IT IS A COMMERCIAL ENTITY FORMED PURSUANT TO TRIBAL LAW, IT IS OWNED AND OPERATED BY THE TRIBE AND IT FUNCTIONS AS A NON-PROFIT COMMERCIAL ENTITY OF THE TRIBE, FORMED FOR THE EXPRESS PURPOSE OF ECONOMIC DEVELOPMENT. BOTH THE LENDER AND THE TRIBE ARE IMMUNE FROM SUIT IN ANY COURT UNLESS THE TRIBE, THROUGH ITS TRIBAL COUNCIL, EXPRESSLY WAIVES THAT IMMUNITY THROUGH A FORMAL, WRITTEN RESOLUTION OF THE TRIBE'S TRIBAL COUNCIL. THE LENDER IS REGULATED BY THE TRIBE'S CONSUMER FINANCE SERVICES REGULATORY COMMISSION (THE "COMMISSION"). YOUR RIGHT TO SUBMIT COMPLAINTS IS LIMITED TO THE DISPUTE RESOLUTION PROCESS SET FORTH IN THIS AGREEMENT AND TO THE COMMISSION IN ACCORDANCE WITH THE TRIBE'S CONSUMER LENDING CODE AND ACCOMPANYING REGULATIONS, IF ANY.

YOU AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND IS SUBJECT TO AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF YOUR RESIDENT STATE. IN MAKING THIS LOAN, YOU CONSENT TO TRIBAL JURISDICTION FOR THIS LOAN. YOUR RESIDENT STATE LAW

**MAY HAVE INTEREST RATE LIMITS AND OTHER CONSUMER PROTECTION PROVISIONS THAT ARE MORE FAVORABLE. IF YOU WISH TO HAVE YOUR RESIDENT STATE LAW APPLY TO ANY LOAN THAT YOU TAKE OUT, YOU SHOULD CONSIDER TAKING A LOAN FROM A LICENSED LENDER IN YOUR STATE. IN ANY EVENT, YOU SHOULD CAREFULLY EVALUATE YOUR FINANCIAL OPTIONS BEFORE TAKING OUT A LOAN. THIS LOAN HAS A HIGH INTEREST RATE AND IT IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS. PLEASE CONSIDER YOUR ABILITY TO REPAY THE LOAN. IF YOU ARE HAVING FINANCIAL DIFFICULTIES, YOU SHOULD SEEK THE ASSISTANCE OF FINANCIAL COUNSELORS. BEFORE SIGNING THIS AGREEMENT, PLEASE CAREFULLY READ ITS TERMS. YOUR SIGNATURE AND ACCEPTANCE OF THIS LOAN WILL BE DEEMED AS PROOF THAT YOU HAVE READ THIS AGREEMENT, YOU HAVE APPROVED OF ALL OF ITS TERMS, INCLUDING CONSENTING TO TRIBAL JURISDICTION, YOU HAVE PROVIDED THE LENDER WITH THE MOST CURRENT AND ACCURATE EMPLOYMENT, CREDIT, INCOME, AND ASSET HISTORY REQUIRED FOR LENDER TO ASSESS YOUR ELIGIBILITY AND CREDITWORTHINESS, AND AFFIRMATIVELY ACKNOWLEDGE THAT YOU ARE ABLE TO REPAY THE LOAN ACCORDING TO THE TERMS OF THIS AGREEMENT.**

**TRUTH IN LENDING DISCLOSURES:** We provide the following truth-in-lending disclosures so that you can compare the cost of this Loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we or any subsequent holder of this Agreement consent to application of state or federal law to us, to the Loan, or this Agreement.

TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after making all payments as scheduled. |
|---|---|---|---|
| 247.68% | $3,924.21 | $1,400.00 | $5,324.21 |

**PAYMENT SCHEDULE:** Your Payment Schedule will be as set forth in the following table, with each due date being referred to herein as a "Payment Due Date":

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 17 | $295.76 | 11/3/2016, 12/3/2016, 1/3/2017, 2/3/2017, 3/3/2017, 4/3/2017, 5/3/2017, 6/3/2017, 7/3/2017, 8/3/2017, 9/3/2017, 10/3/2017, 11/3/2017, 12/3/2017, 1/3/2018, 2/3/2018, 3/3/2018 |
| 1 | $296.29 | 4/3/2018 |

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See the Agreement below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Itemization of Amount Financed:**

| | |
|---|---:|
| Amount given to you directly: | 1400.00 |
| *Plus,* Amount paid on your account with Lender - Loan # _____: | $0.00 |
| *Equals,* Amount Financed: | $1,400.00 |

**PROMISE TO PAY:** You promise to pay to the order of Lender the principal sum of $1,400.00 plus interest from the Effective Date of this Loan at the rate of 249.0030% per year until this loan is repaid in full. You agree to make payments in the amounts and on or before the Payment Due Dates shown in the Payment Schedule above. You also promise to pay to Lender all other fees and charges provided for under this Agreement.

**INTEREST:**  Interest will accrue daily on the unpaid principal balance of this Loan, beginning on the Effective Date, until paid in full. We calculate interest based on a 365-day year. In calculating your payments, we have assumed you will make each payment on the day and in the amount due. If any payment is received after the Payment Due Date, you must pay any additional interest that accrues after the Payment Due Date. If any payment is made before a Payment Due Date, the interest due on the scheduled payment will be reduced, and you will owe less interest. The amount of any decrease or increase in interest due will affect the amount of your final payment. If the amount of any payment is not enough to pay the interest due, the unpaid interest will be paid from your next payment(s), if any, and will not be added to the principal balance. Time is of the essence, which means that there are no grace periods for when payments must be made. There is no separate late charge if you fail to make payments in accordance with the Payment Schedule. However, if you do not make each payment in full on the Payment Due Dates as agreed, Lender may continue to charge interest on past due amounts at the interest rate set forth in the "Promise to Pay" section. The interest rate and other charges under this Agreement will never exceed the highest rate or charge allowed by Tribal Law for this Loan. If the amount collected is found to exceed the highest rate or charge allowed, Lender will refund an amount necessary to comply with Tribal Law.

**PAYMENTS:**  Lender will apply your payments in the following order: (1) to any fees due, (2) to accrued but unpaid interest, and (3) to principal amounts outstanding. If you have chosen the ACH Authorization option, each scheduled payment, plus any fees due to us (if applicable), will be debited from your Bank Account on each Payment Due Date. See the ACH Authorization below for further information.

If you have chosen to receive your Loan proceeds via check and to repay all amounts due pursuant to this Agreement via check, money order or certified check, please mail each payment payable to Great Plains Lending, LLC, P.O. Box 42906, Philadelphia, PA 19101 (or by overnight mail or courier service to Great Plains Lending c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, PA 19007), for forwarding to and receipt and processing on the Otoe-Missouria Indian reservation, in time for Lender to receive the payment by 5:00 p.m. Eastern Time on the Payment Due Date.

**PREPAYMENT:**  You may prepay this Loan in whole or in part at any time without penalty. If you prepay in part, you must still make each later payment according to the Payment Schedule above until this Loan is paid in full. Any amounts you prepay will not continue to accrue interest.

**RIGHT OF RESCISSION:**  You may rescind or cancel this Loan if you do so on or before 5:30 p.m., Eastern Time, on the fifth business day after the Origination Date (the "Rescission Deadline"). To cancel, call Lender at (877) 836-1506 to tell us you want to rescind or cancel this Loan and provide us written notice of rescission as directed by our customer service representative.

*If you have provided an ACH Authorization:*  If we timely receive your written notice of rescission on or

before the Rescission Deadline but before the Loan proceeds have been credited to your Bank Account, we will not deposit your Loan proceeds to your Bank Account and both ours and your obligations under this Agreement will be rescinded. If we timely receive your written notice of rescission on or before the Rescission Deadline but after the Loan proceeds have been credited to your Bank Account, we will debit your Bank Account for the principal amount owing under this Agreement. If we receive payment of the principal amount via the debit, ours and your obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

*If you have elected to receive your Loan proceeds via check delivered by mail:*  If we timely receive your written notice of rescission on or before the Rescission Deadline, and (a) if we have not mailed the check representing the Loan proceeds to you or (b) if you have not cashed the check representing the Loan proceeds, then we will cancel the check and both ours and your obligations under this Agreement will be rescinded. If you have cashed the check representing the Loan proceeds, you must return the full amount of cash you received to us by the Rescission Deadline. If we receive the full amount by the Rescission Deadline, ours and your obligations under this Agreement will be rescinded. If we do not receive the full amount by the Rescission Deadline, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

Any pre-assessed fee shall not be deemed security for this Loan and shall be returned by a credit entry to your Bank Account within three (3) business days of an effective rescission.

**CHECK CONVERSION NOTIFICATION:**  When you provide a check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. For questions, please call our customer service phone number, (877) 836-1506.

**RETURNED PAYMENT FEES; BORROWER BANK CHARGES:**  If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay us a fee of $30.00 and you agree that we may recover court costs and reasonable attorney's fees incurred by us. If you have elected to repay this Loan via ACH debits to your Bank Account, for each returned payment, you authorize Lender and its agents and representatives to make a one-time withdrawal from your Bank Account to collect this fee. Your financial institution may also charge a fee if your Bank Account becomes overdrawn or if a payment is attempted against your Bank Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any such fee you must pay.

**SECURITY:**  No security interest is taken or given in connection with this Loan.

**REFINANCE POLICY:**  Subject to our credit policies, we will determine, in our sole discretion, whether your Loan may be refinanced.

**DEFAULT:**  You will have broken your promise you made to us in this Agreement (each, a "Default") if: (a) you provide false or misleading information about yourself, your employment or your financial condition prior to entering into this Agreement, (b) you fail to make a payment in full by the applicable Payment Due Date or if your payment is returned to us for any reason, or (c) you file bankruptcy or become a debtor under U.S. federal bankruptcy laws.

**CONSEQUENCES OF DEFAULT:**  Should you not do the things you agreed to under this Agreement, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us under this Agreement; (b) if you have elected to repay this Loan via ACH debits to your Bank Account, withdraw money from your Bank Account that was not available when we tried to withdraw it at an earlier time; and (c) pursue all legally available means to collect what you owe us. By signing this Agreement you waive notice of default, dishonor, demand for payment, protest, presentment,

and any other notices. Amounts you owe Lender includes the unpaid principal balance of this Loan, all unpaid accrued fees and interest (including unpaid interest owing on past due amounts), and any costs and fees Lender incurs in connection with this Agreement. In the event we declare all amounts owed under this Agreement immediately due because you did not pay us, then, if you have elected to repay this Loan via ACH debits to your Bank Account, you further authorize us and our agents and representatives to withdraw money from your Bank Account in the full amount due under this Agreement. By choosing to exercise any one or more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to get back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payment(s) and, if you fail to make those payment(s), we will consider you to be in Default. In any proceeding in which a Lender is a party in interest with respect to any transactions with Borrower under Tribal law, Lender's rights and remedies shall be granted based upon prima facie proof and entitlement based upon the terms of this Agreement and the payment and business records maintained by Lender in the ordinary course of business. Any claims or defenses whatsoever asserted by or on behalf of Borrower shall be subject to the dispute resolution process and jurisdiction agreed to in this Agreement.

**CREDIT REPORTING:**  You agree that Lender may make inquiries concerning your credit history and standing, and may report information concerning your performance under this Agreement to credit reporting agencies. Late payments, missed payments or other defaults on your Loan may be reflected in your credit report.

**CHANGE OF PRIMARY RESIDENCE:**  You agree to notify Lender of any change in your primary residence as soon as practicable, but no later than five (5) days after any change. You agree that the address provided on this Agreement will govern this Agreement until you have met all obligations under this Agreement and that any subsequent change in your primary residence will not affect the terms or enforceability of this Agreement.

**CORRESPONDENCE WITH LENDER:**  General correspondence with Lender concerning this Loan, this Agreement or your relationship with Lender must be directed to Lender at the following address: Great Plains Lending, LLC, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034. Communications related to the bankruptcy of the Borrower must be directed to Lender at the following address: Great Plains Lending, LLC, Attn: Bankruptcy Handling, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034.

**FORCE MAJEURE:**  Unavoidable delays as a result of inadvertent processing errors and/or "acts of God" may extend the time for the deposit of Loan proceeds and the processing of payments owing hereunder.

**TRANSFER OF RIGHTS; HYPOTHECATION AND MAINTENANCE OF REGISTER:**  This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in the possession and under the control of the payee named herein; and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.

You agree that we may assign or transfer this Agreement, or any of our rights hereunder, to any other person or entity without prior notice to or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and courts of the Otoe-Missouria Tribe. Great Plains Lending, LLC (the "Registrar"), acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located in the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner, assignees, and persons holding participation interests in the Loan, and the amounts of principal and interest owing to each from time to time pursuant to the terms of this Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees and participants shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of this Agreement, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. The foregoing is intended to result in

this Agreement being in "registered form" within the meaning of U.S. Treasury Regulations Section 1.871-14(c) and Sections 163(f), 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and shall be interpreted and applied in a manner consistent therewith. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the loan and not to you.

**SUCCESSORS AND ASSIGNS:** This Agreement is binding upon your heirs and personal representatives in probate and upon anyone to whom you assign your assets or who succeeds you in any other way; provided, however, that you may not assign or transfer this Agreement except with Lender's prior written consent.

**SERVICING COMMUNICATIONS AND COMMUNICATIONS AFTER DEFAULT:** You authorize Lender and its authorized representatives to contact you according to your consent provided in your application or according to your account preferences, as modified by you after submitting your application. This may include (i) calling you during reasonable hours at any of the phone numbers listed on your most recent application (a) prior to each Payment Due Date to remind you of the payment due and (b) and for other matters related to your account, (ii) contacting you by text message or other wireless communication method on the mobile phone number listed on your application, (iii) leaving a message with a person or a voice mail service, and (iv) contacting you using autodialers or pre-recorded messages, including calls to your mobile phone.

---

ACH AUTHORIZATION

**(applies only if (a) you select the electronic funding/payment option below or (b) authorize recurring Debit Card payments)**

This ACH Authorization is a part of and relates to this Agreement. You voluntarily authorize us, and our successors, affiliates, agents, representatives, employees and assigns, to initiate automatic credit and debit entries to your Bank Account in accordance with this Agreement. You agree that we will initiate a credit entry to your Bank Account for the Amount Financed on or about the Disbursement Date. You agree that we will initiate a debit entry to your Bank Account on each Payment Due Date in the payment amount described in the Payment Schedule. For each scheduled payment, whenever a debit entry to your Bank Account is returned to us for any reason, we may initiate a debit entry to your Bank Account up to two additional times after our first attempt for each scheduled payment amount. You also agree that we will initiate a debit entry for any accrued returned payment fees and any interest that accrues on overdue amounts. If your payment is due on a non-business day, it will be processed on the next business day.

You agree that this ACH Authorization is for repayment of a consumer installment loan and that payments shall recur at substantially regular intervals as set forth in this Agreement. This ACH Authorization is to remain in full force and effect for this transaction until you pay your Loan, including any interest and fees, in full. You may revoke this ACH Authorization by contacting us directly or your financial institution. If you revoke your ACH Authorization, you agree to make payments to us by check, certified check or money order as set forth in the "Payments" section above. In no event will any revocation of this ACH Authorization be effective with respect to entries processed by us prior to us receiving such revocation.

You agree that we may obtain information about you and your Bank Account from your bank and/or consumer reporting agencies until all amounts owing pursuant to this Agreement are paid in full. If there is any missing or incorrect information in or with your application regarding your bank, bank routing number, or account number, then you authorize us to verify and correct such information.

Your bank may charge you a fee in connection with our credit and/or debit entries. Contact your financial institution for more information specific to your Bank Account.

This ACH Authorization is subject to the following provisions:

(1) *Right to stop payment and procedure for doing so.* If you have told us in advance to make regular payments out of your Bank Account, you can stop any of these payments. Here's how: Call us at (877) 836-1506 or write us at 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after your call.

(2) *Liability for failure to stop payment of preauthorized transfer.* If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) *Notice of varying amounts.* You acknowledge that you will receive a notice at least 10 days before a payment is debited from your Bank Account if the payment we are going to debit from your Bank Account varies from the amount disclosed in the Schedule of Payments above. You have the right to receive notice of all varying amounts.

This ACH Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in this Agreement. This ACH Authorization does not constitute and is not intended to constitute a security interest under Tribal Law.

If you associate one or more debit cards with your account with Lender (each a "Debit Card") and authorize Lender to initiate recurring payments on your Loan using a Debit Card, the terms of the foregoing ACH Authorization will apply equally to recurring payments made by Debit Card.

**ENTIRE AGREEMENT; SEVERABILITY.**  This Agreement, including the Waiver of Jury Trial and Arbitration Agreement, constitutes the entire agreement between Borrower and Lender, and it may not be contradicted by evidence of prior or contemporaneous oral agreements between them. If any provision of this Agreement is held unenforceable, including any provision of the Waiver of Jury Trial and Arbitration Agreement, the remainder of this Agreement shall remain in full force and effect.

**GOVERNING LAW; NON-APPLICABILITY OF STATE LAW; INTERSTATE COMMERCE:**  This Agreement and the Agreement to Arbitrate are governed by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the Constitution of the United States of America. We do not have a presence in Oklahoma or any other state of the United States of America. Neither this Agreement nor the Lender is subject to the laws of any state of the United States. The Lender may choose to voluntarily use certain federal laws as guidelines for the provision of services. Such voluntary use does not represent acquiescence of the Otoe-Missouria Tribe to any federal law unless found expressly applicable to the operations of the Otoe-Missouria Tribe. You and we agree that the transaction represented by this Agreement involves interstate commerce for all purposes.

WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT

**This Agreement includes the following binding Waiver of Jury Trial and Arbitration Agreement (the "Agreement to Arbitrate"). You may opt out of the Agreement to Arbitrate by following these instructions:**

*RIGHT TO OPT-OUT:*  IF YOU DO NOT AGREE TO ARBITRATE ALL DISPUTES (DEFINED BELOW) IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE AGREEMENT TO ARBITRATE, YOU MUST ADVISE US IN WRITING EITHER BY (A) MAILING A LETTER POSTMARKED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT, TO 1050 EAST 2ND STREET, BOX 500, EDMOND, OKLAHOMA 73034, OR (B) BY EMAIL DATED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT TO SUPPORT@GREATPLAINSLENDING.COM. YOUR OPT-OUT CORRESPONDENCE MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. *YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE IF IT IS NOT IN WRITING OR IF IS DATED LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT; IT IS NOT SUFFICIENT TO TELEPHONE US.* IN THE EVENT YOU OPT

OUT OF THE AGREEMENT TO ARBITRATE, ANY DISPUTES SHALL NONETHELESS BE GOVERNED UNDER TRIBAL LAW AND MUST BE BROUGHT WITHIN THE COURT SYSTEM OF THE OTOE-MISSOURIA TRIBE.

**PLEASE CAREFULLY READ THIS AGREEMENT TO ARBITRATE. UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

**AGREEMENT TO ARBITRATE:**  You and we (defined below) agree that any Dispute (defined below) will be resolved by Arbitration.

**WHAT ARBITRATION IS:**  "Arbitration" is having an independent third-party resolve a Dispute. A "Dispute" is any claim or controversy of any kind between you and us or otherwise involving this Agreement or the Loan. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all federal, state or Tribal Law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.

For purposes of this Agreement to Arbitrate, (a) the terms "you" and "your" mean you, the borrower, and include your heirs, guardian, personal representative, or trustee in bankruptcy, and (b) the terms "we," "our," and "us" mean Lender, our agents servicers, assigns, vendors or any third-party, Lender's affiliated companies, the Tribe, Lender's servicing and collection companies, representatives and agents, and each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns.

**HOW ARBITRATION WORKS:**  If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. A party who intends to seek arbitration must first send to the other, by email, a Notice of Dispute (Notice). You must send the Notice to Lender at support@greatplainslending.com. The Notice must (a) have the subject heading "Notice of Dispute;" (b) describe the nature and basis of the claim or dispute; and (c) set for the specific relief sought (Demand). If Lender and you do not reach an agreement to resolve the claim within thirty (30) days after the Notice is received, you or Lender may commence an arbitration proceeding. The party requesting arbitration must choose either of the following arbitration firms for initiating and pursuing arbitration: the International Institute for Conflict Prevention & Resolution ("CPR") or JAMS, The Resolution Experts ("JAMS"). If you claim you have a Dispute with us, but do not initiate arbitration or select an arbitration firm, we may do so. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating arbitration by contacting them as follows:

International Institute for
Conflict Prevention & Resolution, Inc.
575 Lexington Ave, 21st Floor
New York, NY 10022
Website: http://www.cpradr.org/
Telephone: (212) 949-6490

JAMS, The Resolution Experts
1920 Main Street, Suite 300
Irvine, CA 92614
Website: http://www.jamsadr.com/
Telephone: (949) 224-1810 or
(800) 352-5267

The policies and procedures of the selected arbitration firm applicable to consumer transactions will apply provided such policies and procedures do not contradict this Agreement to Arbitrate or Tribal Law. To the extent the arbitration firm's rules or procedures are different than the terms of this Agreement to Arbitrate, the terms of this Agreement to Arbitrate will apply.

**WHAT ARBITRATION COSTS:**  No matter which party initiates the arbitration, we will advance or

reimburse filing fees and other costs or fees of arbitration for all non-frivolous claims, provided each party will be initially responsible for its own attorneys' fees and related costs. Unless prohibited by Tribal Law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration. If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of our last written settlement offer made before an arbitrator was selected, then we will pay you the amount of the award or the loan amount plus any finance fees paid, whichever is greater. If you would be entitled to a larger amount under applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs.

**LOCATION OF ARBITRATION:**  Any arbitration under this Agreement may be conducted either on Tribal land or within thirty (30) miles of your then current residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the sovereign status or immunity of the Tribe, (b) to allow for the application of any law other than Tribal Law, or (c) to constitute a transaction of business in any place other than the Indian country of the Tribe. Any party may participate in arbitration exclusively by telephonic or other electronic means.

**WAIVER OF RIGHTS: BY ENTERING INTO THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO (A) HAVE A JURY TRIAL TO RESOLVE DISPUTES, (B) HAVE A COURT RESOLVE DISPUTES, (C) PARTICIPATE IN A CLASS ACTION LAWSUIT, AND (D) HAVE ACCESS TO DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT.**

The arbitrator has the ability to award all remedies available under Tribal Law, whether at law or in equity, to the prevailing party, except that you and we agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving individual Disputes. The arbitrator may award such remedies only in favor of the individual party seeking relief and only to the extent necessary to prove relief warranted by that party's individual claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The validity, effect, and enforceability of the waivers of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a Tribal court of competent jurisdiction and not by the CPR, JAMS, or an arbitrator. If the Tribal court refuses to enforce the class-wide arbitration waiver, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable Tribal court rules and procedures, and not as a class action lawsuit. As an integral component of accepting this Agreement, you irrevocably consent to the exclusive jurisdiction of the Tribal courts for purposes of this Agreement.

**APPLICABLE LAW AND JUDICIAL REVIEW OF ARBITRATOR'S AWARD:  THIS AGREEMENT TO ARBITRATE SHALL BE GOVERNED BY TRIBAL LAW.**  The arbitrator shall apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall make written findings and the arbitrator's award may be filed with a Tribal court. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and Tribal Law, and if it is not, it may be set aside by a Tribal court upon judicial review. During the arbitration, the amount of any settlement offer made by us or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or we are entitled. The parties will have the right to judicial review in a Tribal court of (a) whether the findings of fact rendered by the arbitrator are supported by substantial evidence and (b) whether the conclusions of law are erroneous under Tribal Law. Judgment confirming an award in such a proceeding may be entered only if a Tribal court determines that the award is supported by substantial evidence and is not based on legal error under Tribal Law.

**SURVIVAL:**  This Agreement to Arbitrate will survive: (1) the cancellation, payment, charge-off, or assignment of this Agreement; (2) the bankruptcy of any party; and (3) any transfer, sale, or assignment of this Agreement, or any amounts owed under this Agreement, to any other person or entity.

**PLEASE CAREFULLY REVIEW THIS AGREEMENT, WHICH INCLUDES A WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT THAT MAY BE ENFORCED BY YOU AND US. IF YOU HAVE QUESTIONS, PLEASE CONTACT CUSTOMER SERVICE AT (877) 836-1506.**

***By electronically signing this Agreement:*** You certify that all information you gave us in connection with your application and this Agreement is true and correct, and you authorize us to verify any information you provided. You give us consent to obtain information about you from one or more consumer reporting agencies and other sources. You acknowledge that: (a) you have read, understand, and agree to all of the terms and conditions of (i) this Agreement, including the truth-in-lending disclosures and the Waiver of Jury Trial and Arbitration Agreement, and (ii) Lender's Privacy Policy (https://www.greatplainslending.com/faq/privacy-policy) (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made; (c) if you elect below to repay this Loan via ACH debits to your Bank Account, you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement; (d) you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code; (e) this Agreement was filled in before you signed it; (f) you have the ability to print or retain a completed copy of this Agreement; and (g) we have not made the Loan contingent upon your obtaining any other product or service from us or anyone else. You further acknowledge that we may withhold funding of your Loan until (i) we confirm that you have made all payments on any previous loans with Lender, (ii) we verify that all information you gave us on your application is true and (iii) we decide whether you meet our requirements to receive the Loan.

☑ **By checking here and signing below, you understand, acknowledge and agree that Great Plains Lending, LLC is a tribal lending entity wholly owned by Otoe-Missouria Tribe of Indians, a federally recognized tribe. You further understand, acknowledge and agree that this Loan is governed by the laws of the Otoe-Missouria Tribe and is not subject to the provisions or protections of the laws of your home state or any other state. If you wish to have your resident state law apply to any loan that you take out, you should consider taking a loan from a licensed lender in your state.**

**Please review and select one of these funding/payment options:**

🔘 **ELECTRONIC (as soon as the next business day):** By checking here and signing below, you agree to the ACH Authorization set forth in this Agreement, which allows us to debit and credit your Bank Account for this Loan. You acknowledge and agree that the ACH Authorization is for the benefit of Great Plains Lending, LLC, its affiliates, agents, representatives, employees, successors, and registered assigns. You acknowledge that you are not required to consent to receive funds or repay your Loan by ACH or other electronic payment method.

◯ **POSTAL MAIL (allow 7 to 10 days for delivery):** By checking here and signing below, you request Loan proceeds be distributed to you by check and delivered by regular mail through the U.S. Postal Service. If you elect to receive your proceeds by mail, you must make payments as explained in the "Payments" section above. You acknowledge that interest begins accruing on the Effective Date set forth at the top of this Agreement.

| **Your Full Name:** | **Type 'I Agree':** | **Date:** |
|---|---|---|
| *Lula Bell Williams* | *I Agree* | **10/5/2016** |

**Great Plains Lending, LLC**

Ver. 25

*EXHIBIT 3*

### THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"

**Consumer Installment Loan Agreement**

**Loan Number: 73346057**

**Great Plains Lending, LLC**
**Otoe-Missouria Indian Reservation**
**Red Rock, OK 74651**
**(877) 836-1506**

**Lender:**
Great Plains Lending, LLC

**Origination Date:** 7/17/2015
This is the date you signed and submitted this Agreement to the Lender.

**Disbursement Date:** On or about 7/17/2015
This is the date that the Loan proceeds are released.

**Effective Date:** 7/20/2015
This is the date that interest begins to accrue.

**Final Payment Due Date:** 9/16/2016
This is the Loan maturity date.

**Borrower's Name:**
Stephanie Lazette Edwards

**Borrower's ID:**
*******5819

**Borrower's Address:**
REDACTED

**Borrower's Bank and Account Number for ACH Transfers (the "Bank Account"):** Bayport Credit Union  REDACTE

In this Consumer Installment Loan Agreement (this "Agreement"), "you" and "your" refer to the Borrower identified above. "We", "us", "our", and "Lender" refer to Great Plains Lending, LLC, a lender authorized by the laws of the Otoe-Missouria Tribe of Indians (the "Otoe-Missouria Tribe" or "Tribe"), a federally recognized Indian Tribe, and any assignee of Lender or subsequent holder of this Agreement. "Tribal" refers to the Otoe-Missouria Tribe, and "Tribal Law" means any law or regulation duly enacted by the Otoe-Missouria Tribe. "Loan" means the consumer installment loan made by Lender to Borrower under this Agreement.

<u>IMPORTANT DISCLOSURE</u>

PLEASE READ THIS DISCLOSURE CAREFULLY BEFORE SIGNING THIS AGREEMENT. LENDER IS AN ARM OF THE TRIBE, IT IS A COMMERCIAL ENTITY FORMED PURSUANT TO TRIBAL LAW, IT IS OWNED AND OPERATED BY THE TRIBE AND IT FUNCTIONS AS A NON-PROFIT COMMERCIAL ENTITY OF THE TRIBE, FORMED FOR THE EXPRESS PURPOSE OF ECONOMIC DEVELOPMENT. BOTH THE LENDER AND THE TRIBE ARE IMMUNE FROM SUIT IN ANY COURT UNLESS THE TRIBE, THROUGH ITS TRIBAL COUNCIL, EXPRESSLY WAIVES THAT IMMUNITY THROUGH A FORMAL, WRITTEN RESOLUTION OF THE TRIBE'S TRIBAL COUNCIL. THE LENDER IS REGULATED BY THE TRIBE'S CONSUMER FINANCE SERVICES REGULATORY COMMISSION (THE "COMMISSION"). YOUR RIGHT TO SUBMIT COMPLAINTS IS LIMITED TO THE DISPUTE RESOLUTION PROCESS SET FORTH IN THIS AGREEMENT AND TO THE COMMISSION IN ACCORDANCE WITH THE TRIBE'S CONSUMER LENDING CODE AND ACCOMPANYING REGULATIONS, IF ANY.

YOU AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND IS SUBJECT TO AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF YOUR RESIDENT STATE. IN MAKING THIS LOAN, YOU CONSENT TO TRIBAL JURISDICTION FOR THIS LOAN. YOUR RESIDENT STATE LAW MAY HAVE INTEREST RATE LIMITS AND OTHER CONSUMER PROTECTION PROVISIONS THAT ARE MORE FAVORABLE. IF YOU WISH TO HAVE YOUR RESIDENT STATE LAW APPLY TO ANY LOAN THAT YOU TAKE OUT, YOU SHOULD CONSIDER TAKING A LOAN FROM A LICENSED LENDER IN YOUR STATE. IN ANY EVENT, YOU SHOULD CAREFULLY EVALUATE YOUR FINANCIAL OPTIONS BEFORE TAKING OUT A LOAN. THIS LOAN HAS A HIGH INTEREST RATE AND IT IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS. PLEASE CONSIDER YOUR ABILITY TO REPAY THE LOAN. IF YOU ARE HAVING FINANCIAL DIFFICULTIES, YOU SHOULD SEEK THE ASSISTANCE OF FINANCIAL COUNSELORS. BEFORE SIGNING THIS AGREEMENT, PLEASE CAREFULLY READ ITS TERMS. YOUR SIGNATURE AND ACCEPTANCE OF THIS LOAN WILL BE DEEMED AS PROOF THAT YOU HAVE READ THIS AGREEMENT, YOU HAVE APPROVED OF ALL OF ITS TERMS, INCLUDING CONSENTING TO TRIBAL JURISDICTION, YOU HAVE PROVIDED THE LENDER WITH THE MOST CURRENT AND ACCURATE EMPLOYMENT, CREDIT, INCOME, AND ASSET HISTORY REQUIRED FOR LENDER TO ASSESS YOUR ELIGIBILITY AND CREDITWORTHINESS, AND AFFIRMATIVELY ACKNOWLEDGE THAT YOU ARE ABLE TO REPAY THE LOAN ACCORDING TO THE TERMS OF THIS AGREEMENT.

**TRUTH IN LENDING DISCLOSURES:** We provide the following truth-in-lending disclosures so that you can compare the cost of this Loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we or any subsequent holder of this Agreement consent to application of state or federal law to us, to the Loan, or this Agreement.

**TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after making all payments as scheduled. |
|---|---|---|---|
| 247.98% | $2,786.47 | $1,300.00 | $4,086.47 |

**PAYMENT SCHEDULE:** Your Payment Schedule will be as set forth in the following table, with each due date being referred to herein as a "Payment Due Date":

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 29 | $136.23 | 8/7/2015, 8/21/2015, 9/4/2015, 9/18/2015, 10/2/2015, 10/16/2015, 10/30/2015, 11/13/2015, 11/27/2015, 12/11/2015, 12/25/2015, 1/8/2016, 1/22/2016, 2/5/2016, 2/19/2016, 3/4/2016, 3/18/2016, 4/1/2016, 4/15/2016, 4/29/2016, 5/13/2016, 5/27/2016, 6/10/2016, 6/24/2016, 7/8/2016, 7/22/2016, 8/5/2016, 8/19/2016, 9/2/2016 |
| 1 | $135.80 | 9/16/2016 |

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See the Agreement below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

---

**Itemization of Amount Financed:**

| | |
|---|---|
| Amount given to you directly: | $1,300.00 |
| *Plus,* Amount paid on your account with Lender - Loan #_____: | $0.00 |
| *Equals,* Amount Financed: | $1,300.00 |

**PROMISE TO PAY:** You promise to pay to the order of Lender the principal sum of $1,300.00 plus interest from the Effective Date of this Loan at the rate of 249.9885% per year until this loan is repaid in full. You agree to make payments in the amounts and on or before the Payment Due Dates shown in the Payment Schedule above. You also promise to pay to Lender all other fees and charges provided for under this Agreement.

**INTEREST:** Interest will accrue daily on the unpaid principal balance of this Loan, beginning on the Effective Date, until paid in full. We calculate interest based on a 365-day year. In calculating your payments, we have assumed you will make each payment on the day and in the amount due. If any payment is received after the Payment Due Date, you must pay any additional interest that accrues after the Payment Due Date. If any payment is made before a Payment Due Date, the interest due on the scheduled payment will be reduced, and you will owe less interest. The amount of any decrease or increase in interest due will affect the amount of your final payment. If the amount of any payment is not enough to pay the interest due, the unpaid interest will be paid from your next payment(s), if any, and will not be added to the principal balance. Time is of the essence, which means that there are no grace periods for when payments must be made. There is no separate late charge if you fail to make payments in accordance with the Payment Schedule. However, if you do not make each payment in full on the Payment Due Dates as agreed, Lender may continue to charge interest on past due amounts at the interest rate set forth in the "Promise to Pay" section. The interest rate and other charges under this Agreement will never exceed the highest rate or charge allowed by Tribal Law for this Loan. If the amount collected is found to exceed the highest rate or charge allowed, Lender will refund an amount necessary to comply with Tribal Law.

**PAYMENTS:** Lender will apply your payments in the following order: (1) to any fees due, (2) to accrued but unpaid interest,

and (3) to principal amounts outstanding. If you have chosen the ACH Authorization option, each scheduled payment, plus any fees due to us (if applicable), will be debited from your Bank Account on each Payment Due Date. See the ACH Authorization below for further information.

If you have chosen to receive your Loan proceeds via check and to repay all amounts due pursuant to this Agreement via check, money order or certified check, please mail each payment payable to Great Plains Lending, LLC, P.O. Box 42906, Philadelphia, PA 19101 (or by overnight mail or courier service to Great Plains Lending c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, PA 19007), for forwarding to and receipt and processing on the Otoe-Missouria Indian reservation, in time for Lender to receive the payment by 5:00 p.m. Eastern Time on the Payment Due Date.

**PREPAYMENT:**  You may prepay this Loan in whole or in part at any time without penalty. If you prepay in part, you must still make each later payment according to the Payment Schedule above until this Loan is paid in full. Any amounts you prepay will not continue to accrue interest.

**RIGHT OF RESCISSION:**  You may rescind or cancel this Loan if you do so on or before 5:30 p.m., Eastern Time, on the fifth business day after the Origination Date (the "Rescission Deadline"). To cancel, call Lender at (877) 836-1506 to tell us you want to rescind or cancel this Loan and provide us written notice of rescission as directed by our customer service representative.

*If you have provided an ACH Authorization:*  If we timely receive your written notice of rescission on or before the Rescission Deadline but before the Loan proceeds have been credited to your Bank Account, we will not deposit your Loan proceeds to your Bank Account and both ours and your obligations under this Agreement will be rescinded. If we timely receive your written notice of rescission on or before the Rescission Deadline but after the Loan proceeds have been credited to your Bank Account, we will debit your Bank Account for the principal amount owing under this Agreement. If we receive payment of the principal amount via the debit, ours and your obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

*If you have elected to receive your Loan proceeds via check delivered by mail:*  If we timely receive your written notice of rescission on or before the Rescission Deadline, and (a) if we have not mailed the check representing the Loan proceeds to you or (b) if you have not cashed the check representing the Loan proceeds, then we will cancel the check and both ours and your obligations under this Agreement will be rescinded. If you have cashed the check representing the Loan proceeds, you must return the full amount of cash you received to us by the Rescission Deadline. If we receive the full amount by the Rescission Deadline, ours and your obligations under this Agreement will be rescinded. If we do not receive the full amount by the Rescission Deadline, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

Any pre-assessed fee shall not be deemed security for this Loan and shall be returned by a credit entry to your Bank Account within three (3) business days of an effective rescission.

**CHECK CONVERSION NOTIFICATION:**  When you provide a check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. For questions, please call our customer service phone number, (877) 836-1506.

**RETURNED PAYMENT FEES; BORROWER BANK CHARGES:**  If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay us a fee of $30.00 and you agree that we may recover court costs and reasonable attorney's fees incurred by us. If you have elected to repay this Loan via ACH debits to your Bank Account, for each returned payment, you authorize Lender and its agents and representatives to make a one-time withdrawal from your Bank Account to collect this fee. Your financial institution may also charge a fee if your Bank Account becomes overdrawn or if a payment is attempted against your Bank Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any such fee you must pay.

**SECURITY:**  No security interest is taken or given in connection with this Loan.

**REFINANCE POLICY:**  Subject to our credit policies, we will determine, in our sole discretion, whether your Loan may be refinanced.

**DEFAULT:**  You will have broken your promise you made to us in this Agreement (each, a "Default") if: (a) you provide false or misleading information about yourself, your employment or your financial condition prior to entering into this Agreement, (b) you fail to make a payment in full by the applicable Payment Due Date or if your payment is returned to us for any reason, or (c) you file bankruptcy or become a debtor under U.S. federal bankruptcy laws.

**CONSEQUENCES OF DEFAULT:**  Should you not do the things you agreed to under this Agreement, we may, at our option,

do any one or more of the following things: (a) require you to immediately pay us everything you owe us under this Agreement; (b) if you have elected to repay this Loan via ACH debits to your Bank Account, withdraw money from your Bank Account that was not available when we tried to withdraw it at an earlier time; and (c) pursue all legally available means to collect what you owe us. By signing this Agreement you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notices. Amounts you owe Lender includes the unpaid principal balance of this Loan, all unpaid accrued fees and interest (including unpaid interest owing on past due amounts), and any costs and fees Lender incurs in connection with this Agreement. In the event we declare all amounts owed under this Agreement immediately due because you did not pay us, then, if you have elected to repay this Loan via ACH debits to your Bank Account, you further authorize us and our agents and representatives to withdraw money from your Bank Account in the full amount due under this Agreement. By choosing to exercise any one of more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to get back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payment(s) and, if you fail to make those payment(s), we will consider you to be in Default. In any proceeding in which a Lender is a party in interest with respect to any transactions with Borrower under Tribal law, Lender's rights and remedies shall be granted based upon prima facie proof and entitlement based upon the terms of this Agreement and the payment and business records maintained by Lender in the ordinary course of business. Any claims or defenses whatsoever asserted by or on behalf of Borrower shall be subject to the dispute resolution process and jurisdiction agreed to in this Agreement.

**CREDIT REPORTING:**  You agree that Lender may make inquiries concerning your credit history and standing, and may report information concerning your performance under this Agreement to credit reporting agencies. Late payments, missed payments or other defaults on your Loan may be reflected in your credit report.

**CHANGE OF PRIMARY RESIDENCE:**  You agree to notify Lender of any change in your primary residence as soon as practicable, but no later than five (5) days after any change. You agree that the address provided on this Agreement will govern this Agreement until you have met all obligations under this Agreement and that any subsequent change in your primary residence will not affect the terms or enforceability of this Agreement.

**CORRESPONDENCE WITH LENDER:**  General correspondence with Lender concerning this Loan, this Agreement or your relationship with Lender must be directed to Lender at the following address: Great Plains Lending, LLC, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034. Communications related to the bankruptcy of the Borrower must be directed to Lender at the following address: Great Plains Lending, LLC, Attn: Bankruptcy Handling, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034.

**FORCE MAJEURE:**  Unavoidable delays as a result of inadvertent processing errors and/or "acts of God" may extend the time for the deposit of Loan proceeds and the processing of payments owing hereunder.

**TRANSFER OF RIGHTS; HYPOTHECATION AND MAINTENANCE OF REGISTER:**  This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in the possession and under the control of the payee named herein; and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.

You agree that we may assign or transfer this Agreement, or any of our rights hereunder, to any other person or entity without prior notice to or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and courts of the Otoe-Missouria Tribe. Great Plains Lending, LLC (the "Registrar"), acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located in the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner, assignees, and persons holding participation interests in the Loan, and the amounts of principal and interest owing to each from time to time pursuant to the terms of this Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees and participants shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of this Agreement, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. The foregoing is intended to result in this Agreement being in "registered form" within the meaning of U.S. Treasury Regulations Section 1.871-14(c) and Sections 163(f), 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and shall be interpreted and applied in a manner consistent therewith. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the loan and not to you.

**SUCCESSORS AND ASSIGNS:**  This Agreement is binding upon your heirs and personal representatives in probate and upon anyone to whom you assign your assets or who succeeds you in any other way; provided, however, that you may not assign or transfer this Agreement except with Lender's prior written consent.

**SERVICING COMMUNICATIONS AND COMMUNICATIONS AFTER DEFAULT:**  You authorize Lender and its authorized representatives to contact you according to your consent provided in your application or according to your account preferences, as modified by you after submitting your application. This may include (i) calling you during reasonable hours at

any of the phone numbers listed on your most recent application (a) prior to each Payment Due Date to remind you of the payment due and (b) and for other matters related to your account, (ii) contacting you by text message or other wireless communication method on the mobile phone number listed on your application, (iii) leaving a message with a person or a voice mail service, and (iv) contacting you using autodialers or pre-recorded messages, including calls to your mobile phone.

---

**ACH AUTHORIZATION**
**(applies only if (a) you select the electronic funding/payment option below or**
**(b) authorize recurring Debit Card payments)**

This ACH Authorization is a part of and relates to this Agreement. You voluntarily authorize us, and our successors, affiliates, agents, representatives, employees and assigns, to initiate automatic credit and debit entries to your Bank Account in accordance with this Agreement. You agree that we will initiate a credit entry to your Bank Account for the Amount Financed on or about the Disbursement Date. You agree that we will initiate a debit entry to your Bank Account on each Payment Due Date in the payment amount described in the Payment Schedule. For each scheduled payment, whenever a debit entry to your Bank Account is returned to us for any reason, we may initiate a debit entry to your Bank Account up to two additional times after our first attempt for each scheduled payment amount. You also agree that we will initiate a debit entry for any accrued returned payment fees and any interest that accrues on overdue amounts. If your payment is due on a non-business day, it will be processed on the next business day.

You agree that this ACH Authorization is for repayment of a consumer installment loan and that payments shall recur at substantially regular intervals as set forth in this Agreement. This ACH Authorization is to remain in full force and effect for this transaction until you pay your Loan, including any interest and fees, in full. You may revoke this ACH Authorization by contacting us directly or your financial institution. If you revoke your ACH Authorization, you agree to make payments to us by check, certified check or money order as set forth in the "Payments" section above. In no event will any revocation of this ACH Authorization be effective with respect to entries processed by us prior to us receiving such revocation.

You agree that we may obtain information about you and your Bank Account from your bank and/or consumer reporting agencies until all amounts owing pursuant to this Agreement are paid in full. If there is any missing or incorrect information in or with your application regarding your bank, bank routing number, or account number, then you authorize us to verify and correct such information.

Your bank may charge you a fee in connection with our credit and/or debit entries. Contact your financial institution for more information specific to your Bank Account.

This ACH Authorization is subject to the following provisions:

(1) *Right to stop payment and procedure for doing so.* If you have told us in advance to make regular payments out of your Bank Account, you can stop any of these payments. Here's how: Call us at (877) 836-1506 or write us at 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after your call.

(2) *Liability for failure to stop payment of preauthorized transfer.* If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) *Notice of varying amounts.* You acknowledge that you will receive a notice at least 10 days before a payment is debited from your Bank Account if the payment we are going to debit from your Bank Account varies from the amount disclosed in the Schedule of Payments above. You have the right to receive notice of all varying amounts.

This ACH Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in this Agreement. This ACH Authorization does not constitute and is not intended to constitute a security interest under Tribal Law.

If you associate one or more debit cards with your account with Lender (each a "Debit Card") and authorize Lender to initiate recurring payments on your Loan using a Debit Card, the terms of the foregoing ACH Authorization will apply equally to recurring payments made by Debit Card.

---

**ENTIRE AGREEMENT; SEVERABILITY.** This Agreement, including the Waiver of Jury Trial and Arbitration Agreement, constitutes the entire agreement between Borrower and Lender, and it may not be contradicted by evidence of prior or contemporaneous oral agreements between them. If any provision of this Agreement is held unenforceable, including any provision of the Waiver of Jury Trial and Arbitration Agreement, the remainder of this Agreement shall remain in full force and effect.

**GOVERNING LAW; NON-APPLICABILITY OF STATE LAW; INTERSTATE COMMERCE:** This Agreement and the

Agreement to Arbitrate are governed by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the Constitution of the United States of America. We do not have a presence in Oklahoma or any other state of the United States of America. Neither this Agreement nor the Lender is subject to the laws of any state of the United States. The Lender may choose to voluntarily use certain federal laws as guidelines for the provision of services. Such voluntary use does not represent acquiescence of the Otoe-Missouria Tribe to any federal law unless found expressly applicable to the operations of the Otoe-Missouria Tribe. You and we agree that the transaction represented by this Agreement involves interstate commerce for all purposes.

---

### WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT

**This Agreement includes the following binding Waiver of Jury Trial and Arbitration Agreement (the "Agreement to Arbitrate"). You may opt out of the Agreement to Arbitrate by following these instructions:**

***RIGHT TO OPT-OUT:*** IF YOU DO NOT AGREE TO ARBITRATE ALL DISPUTES (DEFINED BELOW) IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE AGREEMENT TO ARBITRATE, YOU MUST ADVISE US IN WRITING EITHER BY (A) MAILING A LETTER POSTMARKED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT, TO 1050 EAST 2ND STREET, BOX 500, EDMOND, OKLAHOMA 73034, OR (B) BY EMAIL DATED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT TO SUPPORT@GREATPLAINSLENDING.COM. YOUR OPT-OUT CORRESPONDENCE MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. *YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE IF IT IS NOT IN WRITING OR IF IS DATED LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT; IT IS NOT SUFFICIENT TO TELEPHONE US.* IN THE EVENT YOU OPT OUT OF THE AGREEMENT TO ARBITRATE, ANY DISPUTES SHALL NONETHELESS BE GOVERNED UNDER TRIBAL LAW AND MUST BE BROUGHT WITHIN THE COURT SYSTEM OF THE OTOE-MISSOURIA TRIBE.

**PLEASE CAREFULLY READ THIS AGREEMENT TO ARBITRATE. UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

**AGREEMENT TO ARBITRATE:** You and we (defined below) agree that any Dispute (defined below) will be resolved by Arbitration.

**WHAT ARBITRATION IS:** "Arbitration" is having an independent third-party resolve a Dispute. A "Dispute" is any claim or controversy of any kind between you and us or otherwise involving this Agreement or the Loan. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all federal, state or Tribal Law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.

For purposes of this Agreement to Arbitrate, (a) the terms "you" and "your" mean you, the borrower, and include your heirs, guardian, personal representative, or trustee in bankruptcy, and (b) the terms "we," "our," and "us" mean Lender, our agents servicers, assigns, vendors or any third-party, Lender's affiliated companies, the Tribe, Lender's servicing and collection companies, representatives and agents, and each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns.

**HOW ARBITRATION WORKS:** If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. A party who intends to seek arbitration must first send to the other, by email, a Notice of Dispute (Notice). You must send the Notice to Lender at support@greatplainslending.com. The Notice must (a) have the subject heading "Notice of Dispute;" (b) describe the nature and basis of the claim or dispute; and (c) set for the specific relief sought (Demand). If Lender and you do not reach an agreement to resolve the claim within thirty (30) days after the Notice is received, you, or Lender may commence an arbitration proceeding. The party requesting arbitration must choose either of the following arbitration firms for initiating and pursuing arbitration: the International Institute for Conflict Prevention & Resolution ("CPR") or JAMS, The Resolution Experts ("JAMS"). If you claim you have a Dispute with us, but do not initiate arbitration or select an arbitration firm, we may do so. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating arbitration by contacting them as follows:

| | |
|---|---|
| International Institute for Conflict Prevention & Resolution, Inc. | JAMS, The Resolution Experts 1920 Main Street, Suite 300 |

575 Lexington Ave, 21st Floor
New York, NY 10022
Website: http://www.cpradr.org/
Telephone: (212) 949-6490

Irvine, CA 92614
Website: http://www.jamsadr.com/
Telephone: (949) 224-1810 or
(800) 352-5267

The policies and procedures of the selected arbitration firm applicable to consumer transactions will apply provided such policies and procedures do not contradict this Agreement to Arbitrate or Tribal Law. To the extent the arbitration firm's rules or procedures are different than the terms of this Agreement to Arbitrate, the terms of this Agreement to Arbitrate will apply.

**WHAT ARBITRATION COSTS:**  No matter which party initiates the arbitration, we will advance or reimburse filing fees and other costs or fees of arbitration for all non-frivolous claims, provided each party will be initially responsible for its own attorneys' fees and related costs. Unless prohibited by Tribal Law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration. If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of our last written settlement offer made before an arbitrator was selected, then we will pay you the amount of the award or the loan amount plus any finance fees paid, whichever is greater. If you would be entitled to a larger amount under applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs.

**LOCATION OF ARBITRATION:**  Any arbitration under this Agreement may be conducted either on Tribal land or within thirty (30) miles of your then current residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the sovereign status or immunity of the Tribe, (b) to allow for the application of any law other than Tribal Law, or (c) to constitute a transaction of business in any place other than the Indian country of the Tribe. Any party may participate in arbitration exclusively by telephonic or other electronic means.

**WAIVER OF RIGHTS: BY ENTERING INTO THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO (A) HAVE A JURY TRIAL TO RESOLVE DISPUTES, (B) HAVE A COURT RESOLVE DISPUTES, (C) PARTICIPATE IN A CLASS ACTION LAWSUIT, AND (D) HAVE ACCESS TO DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT.**

The arbitrator has the ability to award all remedies available under Tribal Law, whether at law or in equity, to the prevailing party, except that you and we agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving individual Disputes. The arbitrator may award such remedies only in favor of the individual party seeking relief and only to the extent necessary to prove relief warranted by that party's individual claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The validity, effect, and enforceability of the waivers of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a Tribal court of competent jurisdiction and not by the CPR, JAMS, or an arbitrator. If the Tribal court refuses to enforce the class-wide arbitration waiver, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable Tribal court rules and procedures, and not as a class action lawsuit. As an integral component of accepting this Agreement, you irrevocably consent to the exclusive jurisdiction of the Tribal courts for purposes of this Agreement.

**APPLICABLE LAW AND JUDICIAL REVIEW OF ARBITRATOR'S AWARD:  THIS AGREEMENT TO ARBITRATE SHALL BE GOVERNED BY TRIBAL LAW.**  The arbitrator shall apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall make written findings and the arbitrator's award may be filed with a Tribal court. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and Tribal Law, and if it is not, it may be set aside by a Tribal court upon judicial review. During the arbitration, the amount of any settlement offer made by us or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or we are entitled. The parties will have the right to judicial review in a Tribal court of (a) whether the findings of fact rendered by the arbitrator are supported by substantial evidence and (b) whether the conclusions of law are erroneous under Tribal Law. Judgment confirming an award in such a proceeding may be entered only if a Tribal court determines that the award is supported by substantial evidence and is not based on legal error under Tribal Law.

**SURVIVAL:**  This Agreement to Arbitrate will survive: (1) the cancellation, payment, charge-off, or assignment of this Agreement; (2) the bankruptcy of any party; and (3) any transfer, sale, or assignment of this Agreement, or any amounts owed under this Agreement, to any other person or entity.

**PLEASE CAREFULLY REVIEW THIS AGREEMENT, WHICH INCLUDES A WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT THAT MAY BE ENFORCED BY YOU AND US. IF YOU HAVE QUESTIONS, PLEASE CONTACT CUSTOMER SERVICE AT (877) 836-1506.**

***By electronically signing this Agreement:***  You certify that all information you gave us in connection with your application and this Agreement is true and correct, and you authorize us to verify any information you provided. You give us consent to obtain information about you from one or more consumer reporting agencies and other sources. You acknowledge that: (a) you have read, understand, and agree to all of the terms and conditions of (i) this Agreement, including the truth-in-lending disclosures and the Waiver of Jury Trial and Arbitration Agreement, and (ii) Lender's Privacy Policy (https://www.greatplainslending.com/faq/privacy-policy) (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made; (c) if you elect below to repay this Loan via ACH debits to your Bank Account, you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement; (d) you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code; (e) this Agreement was filled in before you signed it; (f) you have the ability to print or retain a completed copy of this Agreement; and (g) we have not made the Loan contingent upon your obtaining any other product or service from us or anyone else. You further acknowledge that we may withhold funding of your Loan until (i) we confirm that you have made all payments on any previous loans with Lender, (ii) we verify that all information you gave us on your application is true and (iii) we decide whether you meet our requirements to receive the Loan.

☑ **By checking here and signing below, you understand, acknowledge and agree that Great Plains Lending, LLC is a tribal lending entity wholly owned by Otoe-Missouria Tribe of Indians, a federally recognized tribe. You further understand, acknowledge and agree that this Loan is governed by the laws of the Otoe-Missouria Tribe and is not subject to the provisions or protections of the laws of your home state or any other state. If you wish to have your resident state law apply to any loan that you take out, you should consider taking a loan from a licensed lender in your state.**

**Please review and select one of these funding/payment options:**

◉ **ELECTRONIC (as soon as the next business day):** By checking here and signing below, you agree to the ACH Authorization set forth in this Agreement, which allows us to debit and credit your Bank Account for this Loan. You acknowledge and agree that the ACH Authorization is for the benefit of Great Plains Lending, LLC, its affiliates, agents, representatives, employees, successors, and registered assigns. You acknowledge that you are not required to consent to receive funds or repay your Loan by ACH or other electronic payment method.

○ **POSTAL MAIL (allow 7 to 10 days for delivery):** By checking here and signing below, you request Loan proceeds be distributed to you by check and delivered by regular mail through the U.S. Postal Service. If you elect to receive your proceeds by mail, you must make payments as explained in the "Payments" section above. You acknowledge that interest begins accruing on the Effective Date set forth at the top of this Agreement.

| Your Full Name: | Type 'I Agree': | Date: |
|---|---|---|
| *Stephanie Lazette Edwards* | *I Agree* | **7/17/2015** |

**Great Plains Lending, LLC**

Ver. 24

*EXHIBIT 4*

THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"

## Consumer Installment Loan Agreement

**Loan Number: 73784134**

**Great Plains Lending, LLC**
**Otoe-Missouria Indian Reservation**
**Red Rock, OK 74651**
**(877) 836-1506**

**Lender:**
Great Plains Lending, LLC

**Borrower's Name:**
Patrick Inscho

**Origination Date:** 3/31/2016
This is the date you signed and submitted
this Agreement to the Lender.

**Borrower's ID:**
*******6616

**Borrower's Address:**
REDACTED

**Disbursement Date:** On or
about 3/31/2016
This is the date that the Loan proceeds
are released.

**Borrower's Bank and Account Number**
**for ACH Transfers (the "Bank Account"):**
pnc bank REDACTED

**Effective Date:** 4/1/2016
This is the date that interest begins to
accrue.

**Final Payment Due Date:** 7/17/2017
This is the Loan maturity date.

In this Consumer Installment Loan Agreement (this "Agreement"), "you" and "your" refer to the Borrower identified above. "We", "us", "our", and "Lender" refer to Great Plains Lending, LLC, a lender authorized by the laws of the Otoe-Missouria Tribe of Indians (the "Otoe-Missouria Tribe" or "Tribe"), a federally recognized Indian Tribe, and any assignee of Lender or subsequent holder of this Agreement. "Tribal" refers to the Otoe-Missouria Tribe, and "Tribal Law" means any law or regulation duly enacted by the Otoe-Missouria Tribe. "Loan" means the consumer installment loan made by Lender to Borrower under this Agreement.

IMPORTANT DISCLOSURE

PLEASE READ THIS DISCLOSURE CAREFULLY BEFORE SIGNING THIS AGREEMENT. LENDER IS AN ARM OF THE TRIBE, IT IS A COMMERCIAL ENTITY FORMED PURSUANT TO TRIBAL LAW, IT IS OWNED AND OPERATED BY THE TRIBE AND IT FUNCTIONS AS A NON-PROFIT COMMERCIAL ENTITY OF THE TRIBE, FORMED FOR THE EXPRESS PURPOSE OF ECONOMIC DEVELOPMENT. BOTH THE LENDER AND THE TRIBE ARE IMMUNE FROM SUIT IN ANY COURT UNLESS THE TRIBE, THROUGH ITS TRIBAL COUNCIL, EXPRESSLY WAIVES THAT IMMUNITY THROUGH A FORMAL, WRITTEN RESOLUTION OF THE TRIBE'S TRIBAL COUNCIL. THE LENDER IS REGULATED BY THE TRIBE'S CONSUMER FINANCE SERVICES REGULATORY COMMISSION (THE "COMMISSION"). YOUR RIGHT TO SUBMIT COMPLAINTS IS LIMITED TO THE DISPUTE RESOLUTION PROCESS SET FORTH IN THIS AGREEMENT AND TO THE COMMISSION IN ACCORDANCE WITH THE TRIBE'S CONSUMER LENDING CODE AND ACCOMPANYING REGULATIONS, IF ANY.

YOU AGREE THAT THIS LOAN IS MADE WITHIN THE TRIBE'S JURISDICTION AND IS SUBJECT TO AND GOVERNED BY TRIBAL LAW AND NOT THE LAW OF YOUR RESIDENT STATE. IN MAKING THIS LOAN, YOU CONSENT TO TRIBAL JURISDICTION FOR THIS LOAN. YOUR RESIDENT STATE LAW

**MAY HAVE INTEREST RATE LIMITS AND OTHER CONSUMER PROTECTION PROVISIONS THAT ARE MORE FAVORABLE. IF YOU WISH TO HAVE YOUR RESIDENT STATE LAW APPLY TO ANY LOAN THAT YOU TAKE OUT, YOU SHOULD CONSIDER TAKING A LOAN FROM A LICENSED LENDER IN YOUR STATE. IN ANY EVENT, YOU SHOULD CAREFULLY EVALUATE YOUR FINANCIAL OPTIONS BEFORE TAKING OUT A LOAN. THIS LOAN HAS A HIGH INTEREST RATE AND IT IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS. PLEASE CONSIDER YOUR ABILITY TO REPAY THE LOAN. IF YOU ARE HAVING FINANCIAL DIFFICULTIES, YOU SHOULD SEEK THE ASSISTANCE OF FINANCIAL COUNSELORS. BEFORE SIGNING THIS AGREEMENT, PLEASE CAREFULLY READ ITS TERMS. YOUR SIGNATURE AND ACCEPTANCE OF THIS LOAN WILL BE DEEMED AS PROOF THAT YOU HAVE READ THIS AGREEMENT, YOU HAVE APPROVED OF ALL OF ITS TERMS, INCLUDING CONSENTING TO TRIBAL JURISDICTION, YOU HAVE PROVIDED THE LENDER WITH THE MOST CURRENT AND ACCURATE EMPLOYMENT, CREDIT, INCOME, AND ASSET HISTORY REQUIRED FOR LENDER TO ASSESS YOUR ELIGIBILITY AND CREDITWORTHINESS, AND AFFIRMATIVELY ACKNOWLEDGE THAT YOU ARE ABLE TO REPAY THE LOAN ACCORDING TO THE TERMS OF THIS AGREEMENT.**

**TRUTH IN LENDING DISCLOSURES:** We provide the following truth-in-lending disclosures so that you can compare the cost of this Loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we or any subsequent holder of this Agreement consent to application of state or federal law to us, to the Loan, or this Agreement.

TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after making all payments as scheduled. |
| 219.38% | $3,392.68 | $1,700.00 | $5,092.68 |

**PAYMENT SCHEDULE:** Your Payment Schedule will be as set forth in the following table, with each due date being referred to herein as a "Payment Due Date":

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 33 | $149.79 | 4/11/2016, 4/25/2016, 5/9/2016, 5/23/2016, 6/6/2016, 6/20/2016, 7/4/2016, 7/18/2016, 8/1/2016, 8/15/2016, 8/29/2016, 9/12/2016, 9/26/2016, 10/10/2016, 10/24/2016, 11/7/2016, 11/21/2016, 12/5/2016, 12/19/2016, 1/2/2017, 1/16/2017, 1/30/2017, 2/13/2017, 2/27/2017, 3/13/2017, 3/27/2017, 4/10/2017, 4/24/2017, 5/8/2017, 5/22/2017, |

| | | 6/5/2017, 6/19/2017, 7/3/2017 |
|---|---|---|
| 1 | $149.61 | 7/17/2017 |

**PREPAYMENT:**  If you pay off early, you will not have to pay a penalty.

See the Agreement below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

---

**Itemization of Amount Financed:**

Amount given to you directly: 1700.00

*Plus,* Amount paid on your account with Lender - Loan # _____: $0.00

*Equals,* Amount Financed: $1,700.00

---

**PROMISE TO PAY:** You promise to pay to the order of Lender the principal sum of $1,700.00 plus interest from the Effective Date of this Loan at the rate of 219.9855% per year until this loan is repaid in full. You agree to make payments in the amounts and on or before the Payment Due Dates shown in the Payment Schedule above. You also promise to pay to Lender all other fees and charges provided for under this Agreement.

**INTEREST:**  Interest will accrue daily on the unpaid principal balance of this Loan, beginning on the Effective Date, until paid in full. We calculate interest based on a 365-day year. In calculating your payments, we have assumed you will make each payment on the day and in the amount due. If any payment is received after the Payment Due Date, you must pay any additional interest that accrues after the Payment Due Date. If any payment is made before a Payment Due Date, the interest due on the scheduled payment will be reduced, and you will owe less interest. The amount of any decrease or increase in interest due will affect the amount of your final payment. If the amount of any payment is not enough to pay the interest due, the unpaid interest will be paid from your next payment(s), if any, and will not be added to the principal balance. Time is of the essence, which means that there are no grace periods for when payments must be made. There is no separate late charge if you fail to make payments in accordance with the Payment Schedule. However, if you do not make each payment in full on the Payment Due Dates as agreed, Lender may continue to charge interest on past due amounts at the interest rate set forth in the "Promise to Pay" section. The interest rate and other charges under this Agreement will never exceed the highest rate or charge allowed by Tribal Law for this Loan. If the amount collected is found to exceed the highest rate or charge allowed, Lender will refund an amount necessary to comply with Tribal Law.

**PAYMENTS:**  Lender will apply your payments in the following order: (1) to any fees due, (2) to accrued but unpaid interest, and (3) to principal amounts outstanding. If you have chosen the ACH Authorization option, each scheduled payment, plus any fees due to us (if applicable), will be debited from your Bank Account on each Payment Due Date. See the ACH Authorization below for further information.

If you have chosen to receive your Loan proceeds via check and to repay all amounts due pursuant to this Agreement via check, money order or certified check, please mail each payment payable to Great Plains Lending, LLC, P.O. Box 42906, Philadelphia, PA 19101 (or by overnight mail or courier service to Great Plains Lending c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, PA 19007), for forwarding to and receipt and processing on the Otoe-Missouria Indian reservation, in time for Lender to receive the payment by 5:00 p.m. Eastern Time on the Payment Due Date.

**PREPAYMENT:**  You may prepay this Loan in whole or in part at any time without penalty. If you prepay in part, you must still make each later payment according to the Payment Schedule above until this Loan is paid

in full. Any amounts you prepay will not continue to accrue interest.

**RIGHT OF RESCISSION:**  You may rescind or cancel this Loan if you do so on or before 5:30 p.m., Eastern Time, on the fifth business day after the Origination Date (the "Rescission Deadline"). To cancel, call Lender at (877) 836-1506 to tell us you want to rescind or cancel this Loan and provide us written notice of rescission as directed by our customer service representative.

*If you have provided an ACH Authorization:*  If we timely receive your written notice of rescission on or before the Rescission Deadline but before the Loan proceeds have been credited to your Bank Account, we will not deposit your Loan proceeds to your Bank Account and both ours and your obligations under this Agreement will be rescinded. If we timely receive your written notice of rescission on or before the Rescission Deadline but after the Loan proceeds have been credited to your Bank Account, we will debit your Bank Account for the principal amount owing under this Agreement. If we receive payment of the principal amount via the debit, ours and your obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

*If you have elected to receive your Loan proceeds via check delivered by mail:*  If we timely receive your written notice of rescission on or before the Rescission Deadline, and (a) if we have not mailed the check representing the Loan proceeds to you or (b) if you have not cashed the check representing the Loan proceeds, then we will cancel the check and both ours and your obligations under this Agreement will be rescinded. If you have cashed the check representing the Loan proceeds, you must return the full amount of cash you received to us by the Rescission Deadline. If we receive the full amount by the Rescission Deadline, ours and your obligations under this Agreement will be rescinded. If we do not receive the full amount by the Rescission Deadline, then the Agreement will remain in full force and effect until all amounts owed under this Agreement are repaid in full, including any interest and fees.

Any pre-assessed fee shall not be deemed security for this Loan and shall be returned by a credit entry to your Bank Account within three (3) business days of an effective rescission.

**CHECK CONVERSION NOTIFICATION:**  When you provide a check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. For questions, please call our customer service phone number, (877) 836-1506.

**RETURNED PAYMENT FEES; BORROWER BANK CHARGES:**  If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay us a fee of $30.00 and you agree that we may recover court costs and reasonable attorney's fees incurred by us. If you have elected to repay this Loan via ACH debits to your Bank Account, for each returned payment, you authorize Lender and its agents and representatives to make a one-time withdrawal from your Bank Account to collect this fee. Your financial institution may also charge a fee if your Bank Account becomes overdrawn or if a payment is attempted against your Bank Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any such fee you must pay.

**SECURITY:**  No security interest is taken or given in connection with this Loan.

**REFINANCE POLICY:**  Subject to our credit policies, we will determine, in our sole discretion, whether your Loan may be refinanced.

**DEFAULT:**  You will have broken your promise you made to us in this Agreement (each, a "Default") if: (a) you provide false or misleading information about yourself, your employment or your financial condition prior to entering into this Agreement, (b) you fail to make a payment in full by the applicable Payment Due Date or if your payment is returned to us for any reason, or (c) you file bankruptcy or become a debtor under U.S.

federal bankruptcy laws.

**CONSEQUENCES OF DEFAULT:**  Should you not do the things you agreed to under this Agreement, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us under this Agreement; (b) if you have elected to repay this Loan via ACH debits to your Bank Account, withdraw money from your Bank Account that was not available when we tried to withdraw it at an earlier time; and (c) pursue all legally available means to collect what you owe us. By signing this Agreement you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notices. Amounts you owe Lender includes the unpaid principal balance of this Loan, all unpaid accrued fees and interest (including unpaid interest owing on past due amounts), and any costs and fees Lender incurs in connection with this Agreement. In the event we declare all amounts owed under this Agreement immediately due because you did not pay us, then, if you have elected to repay this Loan via ACH debits to your Bank Account, you further authorize us and our agents and representatives to withdraw money from your Bank Account in the full amount due under this Agreement. By choosing to exercise any one of more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to get back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payment(s) and, if you fail to make those payment(s), we will consider you to be in Default. In any proceeding in which a Lender is a party in interest with respect to any transactions with Borrower under Tribal law, Lender's rights and remedies shall be granted based upon prima facie proof and entitlement based upon the terms of this Agreement and the payment and business records maintained by Lender in the ordinary course of business. Any claims or defenses whatsoever asserted by or on behalf of Borrower shall be subject to the dispute resolution process and jurisdiction agreed to in this Agreement.

**CREDIT REPORTING:**  You agree that Lender may make inquiries concerning your credit history and standing, and may report information concerning your performance under this Agreement to credit reporting agencies. Late payments, missed payments or other defaults on your Loan may be reflected in your credit report.

**CHANGE OF PRIMARY RESIDENCE:**  You agree to notify Lender of any change in your primary residence as soon as practicable, but no later than five (5) days after any change. You agree that the address provided on this Agreement will govern this Agreement until you have met all obligations under this Agreement and that any subsequent change in your primary residence will not affect the terms or enforceability of this Agreement.

**CORRESPONDENCE WITH LENDER:**  General correspondence with Lender concerning this Loan, this Agreement or your relationship with Lender must be directed to Lender at the following address: Great Plains Lending, LLC, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034. Communications related to the bankruptcy of the Borrower must be directed to Lender at the following address: Great Plains Lending, LLC, Attn: Bankruptcy Handling, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034.

**FORCE MAJEURE:**  Unavoidable delays as a result of inadvertent processing errors and/or "acts of God" may extend the time for the deposit of Loan proceeds and the processing of payments owing hereunder.

**TRANSFER OF RIGHTS; HYPOTHECATION AND MAINTENANCE OF REGISTER:**  This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in the possession and under the control of the payee named herein; and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.

You agree that we may assign or transfer this Agreement, or any of our rights hereunder, to any other person or entity without prior notice to or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and courts of the Otoe-Missouria Tribe. Great Plains Lending, LLC (the "Registrar"), acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located in the United States a copy of each assignment of this Agreement delivered to it and a register

(the "Register") for the recordation of the names and addresses of the original owner, assignees, and persons holding participation interests in the Loan, and the amounts of principal and interest owing to each from time to time pursuant to the terms of this Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees and participants shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of this Agreement, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. The foregoing is intended to result in this Agreement being in "registered form" within the meaning of U.S. Treasury Regulations Section 1.871-14(c) and Sections 163(f), 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and shall be interpreted and applied in a manner consistent therewith. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the loan and not to you.

**SUCCESSORS AND ASSIGNS:**  This Agreement is binding upon your heirs and personal representatives in probate and upon anyone to whom you assign your assets or who succeeds you in any other way; provided, however, that you may not assign or transfer this Agreement except with Lender's prior written consent.

**SERVICING COMMUNICATIONS AND COMMUNICATIONS AFTER DEFAULT:**  You authorize Lender and its authorized representatives to contact you according to your consent provided in your application or according to your account preferences, as modified by you after submitting your application. This may include (i) calling you during reasonable hours at any of the phone numbers listed on your most recent application (a) prior to each Payment Due Date to remind you of the payment due and (b) and for other matters related to your account, (ii) contacting you by text message or other wireless communication method on the mobile phone number listed on your application, (iii) leaving a message with a person or a voice mail service, and (iv) contacting you using autodialers or pre-recorded messages, including calls to your mobile phone.

---

ACH AUTHORIZATION

**(applies only if (a) you select the electronic funding/payment option below or (b) authorize recurring Debit Card payments)**

This ACH Authorization is a part of and relates to this Agreement. You voluntarily authorize us, and our successors, affiliates, agents, representatives, employees and assigns, to initiate automatic credit and debit entries to your Bank Account in accordance with this Agreement. You agree that we will initiate a credit entry to your Bank Account for the Amount Financed on or about the Disbursement Date. You agree that we will initiate a debit entry to your Bank Account on each Payment Due Date in the payment amount described in the Payment Schedule. For each scheduled payment, whenever a debit entry to your Bank Account is returned to us for any reason, we may initiate a debit entry to your Bank Account up to two additional times after our first attempt for each scheduled payment amount. You also agree that we will initiate a debit entry for any accrued returned payment fees and any interest that accrues on overdue amounts. If your payment is due on a non-business day, it will be processed on the next business day.

You agree that this ACH Authorization is for repayment of a consumer installment loan and that payments shall recur at substantially regular intervals as set forth in this Agreement. This ACH Authorization is to remain in full force and effect for this transaction until you pay your Loan, including any interest and fees, in full. You may revoke this ACH Authorization by contacting us directly or your financial institution. If you revoke your ACH Authorization, you agree to make payments to us by check, certified check or money order as set forth in the "Payments" section above. In no event will any revocation of this ACH Authorization be effective with respect to entries processed by us prior to us receiving such revocation.

You agree that we may obtain information about you and your Bank Account from your bank and/or consumer reporting agencies until all amounts owing pursuant to this Agreement are paid in full. If

there is any missing or incorrect information in or with your application regarding your bank, bank routing number, or account number, then you authorize us to verify and correct such information.

Your bank may charge you a fee in connection with our credit and/or debit entries. Contact your financial institution for more information specific to your Bank Account.

This ACH Authorization is subject to the following provisions:

(1) *Right to stop payment and procedure for doing so.* If you have told us in advance to make regular payments out of your Bank Account, you can stop any of these payments. Here's how: Call us at (877) 836-1506 or write us at 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after your call.

(2) *Liability for failure to stop payment of preauthorized transfer.* If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) *Notice of varying amounts.* You acknowledge that you will receive a notice at least 10 days before a payment is debited from your Bank Account if the payment we are going to debit from your Bank Account varies from the amount disclosed in the Schedule of Payments above. You have the right to receive notice of all varying amounts.

This ACH Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in this Agreement. This ACH Authorization does not constitute and is not intended to constitute a security interest under Tribal Law.

If you associate one or more debit cards with your account with Lender (each a "Debit Card") and authorize Lender to initiate recurring payments on your Loan using a Debit Card, the terms of the foregoing ACH Authorization will apply equally to recurring payments made by Debit Card.

**ENTIRE AGREEMENT; SEVERABILITY.**  This Agreement, including the Waiver of Jury Trial and Arbitration Agreement, constitutes the entire agreement between Borrower and Lender, and it may not be contradicted by evidence of prior or contemporaneous oral agreements between them. If any provision of this Agreement is held unenforceable, including any provision of the Waiver of Jury Trial and Arbitration Agreement, the remainder of this Agreement shall remain in full force and effect.

**GOVERNING LAW; NON-APPLICABILITY OF STATE LAW; INTERSTATE COMMERCE:**  This Agreement and the Agreement to Arbitrate are governed by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the Constitution of the United States of America. We do not have a presence in Oklahoma or any other state of the United States of America. Neither this Agreement nor the Lender is subject to the laws of any state of the United States. The Lender may choose to voluntarily use certain federal laws as guidelines for the provision of services. Such voluntary use does not represent acquiescence of the Otoe-Missouria Tribe to any federal law unless found expressly applicable to the operations of the Otoe-Missouria Tribe. You and we agree that the transaction represented by this Agreement involves interstate commerce for all purposes.

WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT

**This Agreement includes the following binding Waiver of Jury Trial and Arbitration Agreement (the "Agreement to Arbitrate"). You may opt out of the Agreement to Arbitrate by following these instructions:**

*RIGHT TO OPT-OUT:*  IF YOU DO NOT AGREE TO ARBITRATE ALL DISPUTES (DEFINED BELOW) IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE AGREEMENT TO ARBITRATE, YOU MUST ADVISE US IN WRITING EITHER BY (A) MAILING A LETTER POSTMARKED NO LATER THAN 60 DAYS

FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT, TO 1050 EAST 2ND STREET, BOX 500, EDMOND, OKLAHOMA 73034, OR (B) BY EMAIL DATED NO LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT TO SUPPORT@GREATPLAINSLENDING.COM. YOUR OPT-OUT CORRESPONDENCE MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. *YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE IF IT IS NOT IN WRITING OR IF IS DATED LATER THAN 60 DAYS FOLLOWING THE ORIGINATION DATE SET FORTH AT THE TOP OF THIS AGREEMENT; IT IS NOT SUFFICIENT TO TELEPHONE US.* IN THE EVENT YOU OPT OUT OF THE AGREEMENT TO ARBITRATE, ANY DISPUTES SHALL NONETHELESS BE GOVERNED UNDER TRIBAL LAW AND MUST BE BROUGHT WITHIN THE COURT SYSTEM OF THE OTOE-MISSOURIA TRIBE.

**PLEASE CAREFULLY READ THIS AGREEMENT TO ARBITRATE. UNLESS YOU EXERCISE YOUR RIGHT TO OPT-OUT OF ARBITRATION AS DESCRIBED ABOVE, YOU AGREE THAT ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS OR IN ANY CONSOLIDATED ARBITRATION PROCEEDING OR AS A PRIVATE ATTORNEY GENERAL. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION.**

**AGREEMENT TO ARBITRATE:**  You and we (defined below) agree that any Dispute (defined below) will be resolved by Arbitration.

**WHAT ARBITRATION IS:**  "Arbitration" is having an independent third-party resolve a Dispute. A "Dispute" is any claim or controversy of any kind between you and us or otherwise involving this Agreement or the Loan. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all federal, state or Tribal Law claims or demands (whether past, present, or future), based on any legal or equitable theory and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.

For purposes of this Agreement to Arbitrate, (a) the terms "you" and "your" mean you, the borrower, and include your heirs, guardian, personal representative, or trustee in bankruptcy, and (b) the terms "we," "our," and "us" mean Lender, our agents servicers, assigns, vendors or any third-party, Lender's affiliated companies, the Tribe, Lender's servicing and collection companies, representatives and agents, and each of their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns.

**HOW ARBITRATION WORKS:**  If a Dispute arises, the party asserting the claim or demand must initiate arbitration, provided you or we may first try to resolve the matter informally or through customary business methods, including collection activity. A party who intends to seek arbitration must first send to the other, by email, a Notice of Dispute (Notice). You must send the Notice to Lender at support@greatplainslending.com. The Notice must (a) have the subject heading "Notice of Dispute;" (b) describe the nature and basis of the claim or dispute; and (c) set for the specific relief sought (Demand). If Lender and you do not reach an agreement to resolve the claim within thirty (30) days after the Notice is received, you or Lender may commence an arbitration proceeding. The party requesting arbitration must choose either of the following arbitration firms for initiating and pursuing arbitration: the International Institute for Conflict Prevention & Resolution ("CPR") or JAMS, The Resolution Experts ("JAMS"). If you claim you have a Dispute with us, but do not initiate arbitration or select an arbitration firm, we may do so. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating arbitration by contacting them as follows:

International Institute for
Conflict Prevention & Resolution, Inc.
575 Lexington Ave, 21st Floor
New York, NY 10022
Website: http://www.cpradr.org/

JAMS, The Resolution Experts
1920 Main Street, Suite 300
Irvine, CA 92614
Website: http://www.jamsadr.com/
Telephone: (949) 224-1810 or

Telephone: (212) 949-6490                    (800) 352-5267

The policies and procedures of the selected arbitration firm applicable to consumer transactions will apply provided such policies and procedures do not contradict this Agreement to Arbitrate or Tribal Law. To the extent the arbitration firm's rules or procedures are different than the terms of this Agreement to Arbitrate, the terms of this Agreement to Arbitrate will apply.

**WHAT ARBITRATION COSTS:**  No matter which party initiates the arbitration, we will advance or reimburse filing fees and other costs or fees of arbitration for all non-frivolous claims, provided each party will be initially responsible for its own attorneys' fees and related costs. Unless prohibited by Tribal Law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration. If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of our last written settlement offer made before an arbitrator was selected, then we will pay you the amount of the award or the loan amount plus any finance fees paid, whichever is greater. If you would be entitled to a larger amount under applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs.

**LOCATION OF ARBITRATION:**  Any arbitration under this Agreement may be conducted either on Tribal land or within thirty (30) miles of your then current residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the sovereign status or immunity of the Tribe, (b) to allow for the application of any law other than Tribal Law, or (c) to constitute a transaction of business in any place other than the Indian country of the Tribe. Any party may participate in arbitration exclusively by telephonic or other electronic means.

**WAIVER OF RIGHTS: BY ENTERING INTO THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO (A) HAVE A JURY TRIAL TO RESOLVE DISPUTES, (B) HAVE A COURT RESOLVE DISPUTES, (C) PARTICIPATE IN A CLASS ACTION LAWSUIT, AND (D) HAVE ACCESS TO DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT.**

The arbitrator has the ability to award all remedies available under Tribal Law, whether at law or in equity, to the prevailing party, except that you and we agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving individual Disputes. The arbitrator may award such remedies only in favor of the individual party seeking relief and only to the extent necessary to prove relief warranted by that party's individual claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The validity, effect, and enforceability of the waivers of class action lawsuit and class-wide arbitration, if challenged, are to be determined solely by a Tribal court of competent jurisdiction and not by the CPR, JAMS, or an arbitrator. If the Tribal court refuses to enforce the class-wide arbitration waiver, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable Tribal court rules and procedures, and not as a class action lawsuit. As an integral component of accepting this Agreement, you irrevocably consent to the exclusive jurisdiction of the Tribal courts for purposes of this Agreement.

**APPLICABLE LAW AND JUDICIAL REVIEW OF ARBITRATOR'S AWARD:  THIS AGREEMENT TO ARBITRATE SHALL BE GOVERNED BY TRIBAL LAW.**  The arbitrator shall apply Tribal Law and the terms of this Agreement, including this Agreement to Arbitrate and the waivers included herein. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. The arbitrator shall make written findings and the arbitrator's award may be filed with a Tribal court. The arbitration award shall be supported by substantial evidence and must be consistent with this Agreement and Tribal Law, and if it is not, it may be set aside by a Tribal court upon judicial review. During the arbitration, the amount of any settlement offer made by us or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or we are entitled. The parties will have the right to judicial review in a Tribal court of (a) whether the findings of fact rendered by the arbitrator

are supported by substantial evidence and (b) whether the conclusions of law are erroneous under Tribal Law. Judgment confirming an award in such a proceeding may be entered only if a Tribal court determines that the award is supported by substantial evidence and is not based on legal error under Tribal Law.

**SURVIVAL:**  This Agreement to Arbitrate will survive: (1) the cancellation, payment, charge-off, or assignment of this Agreement; (2) the bankruptcy of any party; and (3) any transfer, sale, or assignment of this Agreement, or any amounts owed under this Agreement, to any other person or entity.

**PLEASE CAREFULLY REVIEW THIS AGREEMENT, WHICH INCLUDES A WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT THAT MAY BE ENFORCED BY YOU AND US. IF YOU HAVE QUESTIONS, PLEASE CONTACT CUSTOMER SERVICE AT (877) 836-1506.**

***By electronically signing this Agreement:***  You certify that all information you gave us in connection with your application and this Agreement is true and correct, and you authorize us to verify any information you provided. You give us consent to obtain information about you from one or more consumer reporting agencies and other sources. You acknowledge that: (a) you have read, understand, and agree to all of the terms and conditions of (i) this Agreement, including the truth-in-lending disclosures and the Waiver of Jury Trial and Arbitration Agreement, and (ii) Lender's Privacy Policy (https://www.greatplainslending.com/faq/privacy-policy) (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made; (c) if you elect below to repay this Loan via ACH debits to your Bank Account, you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement; (d) you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code; (e) this Agreement was filled in before you signed it; (f) you have the ability to print or retain a completed copy of this Agreement; and (g) we have not made the Loan contingent upon your obtaining any other product or service from us or anyone else. You further acknowledge that we may withhold funding of your Loan until (i) we confirm that you have made all payments on any previous loans with Lender, (ii) we verify that all information you gave us on your application is true and (iii) we decide whether you meet our requirements to receive the Loan.

☑ **By checking here and signing below, you understand, acknowledge and agree that Great Plains Lending, LLC is a tribal lending entity wholly owned by Otoe-Missouria Tribe of Indians, a federally recognized tribe. You further understand, acknowledge and agree that this Loan is governed by the laws of the Otoe-Missouria Tribe and is not subject to the provisions or protections of the laws of your home state or any other state. If you wish to have your resident state law apply to any loan that you take out, you should consider taking a loan from a licensed lender in your state.**

**Please review and select one of these funding/payment options:**

◉ **ELECTRONIC (as soon as the next business day):**  By checking here and signing below, you agree to the ACH Authorization set forth in this Agreement, which allows us to debit and credit your Bank Account for this Loan. You acknowledge and agree that the ACH Authorization is for the benefit of Great Plains Lending, LLC, its affiliates, agents, representatives, employees, successors, and registered assigns. You acknowledge that you are not required to consent to receive funds or repay your Loan by ACH or other electronic payment method.

○ **POSTAL MAIL (allow 7 to 10 days for delivery):** By checking here and signing below, you request Loan proceeds be distributed to you by check and delivered by regular mail through the U.S. Postal Service. If you elect to receive your proceeds by mail, you must make payments as explained in the "Payments" section above. You acknowledge that interest begins accruing on the Effective Date set forth at the top of this Agreement.

| **Your Full Name:** | **Type 'I Agree':** | **Date:** |
|---|---|---|
| *Patrick Inscho* | *I AGREE* | **3/31/2016** |

**Great Plains Lending, LLC**

Ver. 25

*EXHIBIT 5*

**THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"**

**CONSUMER LOAN AGREEMENT**
**LOAN NUMBER: 67893953**

Plain Green, LLC
93 Mack Road, Suite 600
PO Box 270
Box Elder, MT 59521

**BORROWER'S INFORMATION:**

| | |
|---|---|
| **Lender: Plain Green, LLC** | **Borrower's Name:** |
| | Lawrence Mwethuku |
| **Origination Date: 5/28/2013** | **Borrower's ID:** |
| This is the date you signed and submitted this loan agreement to the lender. | *******7657 |
| **Effective Date: 5/29/2013** | **Borrower's Address:** |
| The date you begin to pay interest on the loan. | REDACTED |
| **Final Payment Due Date:** | **Borrower's Bank and Account Number for ACH** |
| **11/12/2013** | **Transfers (the "Bank Account"):** |
| | Wells fargo REDACTED |

**This Loan Agreement (the "Agreement") is subject solely to the exclusive laws and jurisdiction of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana ("Chippewa Cree").** In this Agreement, "you" and "your" refer to the Borrower identified above. "We", "us", "our", and Lender refer to **Plain Green, LLC**, a lender authorized by the laws of the Chippewa Cree. "Loan" means this consumer installment loan. By executing this Agreement, you hereby acknowledge and consent to be bound to the terms of this Agreement, consent to the sole subject matter and personal jurisdiction of the Chippewa Cree Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Agreement, its enforcement or interpretation.

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we or any subsequent holder of this Agreement consent to application of state or federal law to us, to the Loan, or this Agreement.

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| **373.97%** | **$568.20** | **$500.00** | **$1,068.20** |

Your payment schedule (the "Payment Schedule") will be:

| Number of Payments | Amount of Payments | When Payments Are Due (each, a "Payment Due Date") |
|---|---|---|
| 11 | $89.02 | 6/11/2013, 6/25/2013, 7/9/2013, 7/23/2013, 8/6/2013, 8/20/2013, 9/3/2013, 9/17/2013, 10/1/2013, 10/15/2013, 10/29/2013 |
| 1 | $88.98 | 11/12/2013 |

PREPAYMENT: If you pay off the Loan early, you will not have to pay a penalty, and you may be entitled to a refund of part of the finance charge.

SECURITY INTEREST: If you have chosen the ACH Debit Authorization option, your ACH authorization is security for this loan.

See the Loan Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment penalties.

| | |
|---|---|
| Itemization of Amount Financed: | **$500.00** |
| **Amount given to you directly:** | **$500.00** |

**PROMISE TO PAY:** You promise to pay to the order of Lender or any registered assignee of this Agreement the principal sum of $500.00 plus interest from the date of this Loan at the rate of 375.0010% per year until this Loan is repaid in full. You promise to pay these amounts on the dates listed in the Payment Schedule above. You also promise to pay to us or to any subsequent holder of this Agreement any other fees provided for under this Agreement.

**PAYMENTS:** You promise to pay the amount of the Total of Payments shown above on or before the Payment Due Date. If you have chosen the ACH Debit Authorization option, you must make arrangements with us by 5:00 PM Eastern Time, on the business day prior to the Payment Due Date, so an authorized ACH entry is not initiated. If you choose to mail a payment, (i) all payments shall be mailed to PO Box 270, Box Elder, MT 59521, (ii) payment must reach this address by the Payment Due Date, and (iii) you should notify us prior to 5:00 PM Eastern Time the business day prior to Payment Due Date so an authorized ACH entry is not initiated prior to receipt of the payment. In addition, you agree that we cannot make and have not made the Loan contingent upon your obtaining any other product or service from us or anyone else. If you have chosen to receive your loan proceeds via check please mail your payments by the dates indicated within "When Payments Are Due" section of this Agreement to 93 Mack Road, Suite 600, PO Box 270, Box Elder, MT 59521.

**CALCULATION OF INTEREST AND PAYMENTS:** The interest charged hereunder is calculated using the simple interest method and has been computed upon the basis that you will pay all installments on the scheduled Payment Dates. Interest shall not be payable in advance or compounded.

**WHEN YOU BEGIN PAYING INTEREST:** You begin to pay us interest on the Loan on the date the proceeds of the Loan are deposited into your Bank Account, or, if you elect to receive Loan proceeds by check through the mail, the date we issue the check (the "Effective Date"). You will be charged interest on the unpaid amount of the Loan each day from the Effective Date until the Loan is paid in full. In calculating your payments, we have assumed you will make each payment on the day and in the amount due. If any payment is received after the payment due date, you must pay any additional interest that accrues after such date. If any payment is made before the payment due date, the interest due will be reduced. The amount of this decrease or increase in interest due will be reflected in the final payment that is due. Time is of the essence, which means that there are no grace periods for when payments must be made. If any payment is due on a day on which your bank is not

open, then such payment shall be due on the next day upon which your Bank is open.

**VERIFICATION:** You authorize us to verify the information you provided to us in connection with your Loan application. You give us consent to obtain information about you from a consumer reporting agency or other sources. We reserve the right to withhold funding of this Loan, at any time prior to disbursement, to allow us to verify the information you have provided to us.

**ACH AUTHORIZATION TO CREDIT BANK ACCOUNT:** Unless the proceeds of this Agreement are applied to any outstanding loan balance that you may owe to us, and you do not elect to receive the Loan proceeds by check through regular mail, you authorize us and our agents to initiate an Automated Clearing House ("ACH") credit entry to your Bank Account to disburse the proceeds of this Loan.

**ACH AUTHORIZATION TO DEBIT BANK ACCOUNT:** Unless you chose to mail to us a check or money order as payment for this Loan, you authorize us, and our agents, successors, employees, and registered assigns to withdraw money from your Bank Account for each payment you owe us, including any returned payment charges and the total amount you owe if you do not pay us when you agreed in this Agreement. You agree we can withdraw money from your Bank Account (called an 'ACH debit entry') on each scheduled payment date shown on the Payment Schedule above. This right to withdraw money from your Bank Account will remain in full force until the earlier of the following occurs: (i) you pay us everything that you owe us under this Agreement or (ii) you tell us or the institution holding your Bank Account (the "Paying Bank") that we can no longer withdraw money from your Bank Account in enough time to let the Paying Bank or us stop taking the money out of your Bank Account. You acknowledge and agree that this ACH Authorization to Debit Bank Account inures to the benefit of Plain Green, LLC, its affiliates, agents, employees, successors, and registered assigns.

**NOTICE OF VARYING AMOUNTS:** For those customers who have chosen the ACH Debit Authorization, please note that you have the right to receive notice of all withdrawals from your Bank Account by an ACH Debit that vary in amount. However, by agreeing to let us withdraw the money from your Bank Account, you agree we only have to tell you the range of withdrawals that we can make. The range of withdrawals will be either an amount equal to your installment payment or an amount equal to the outstanding balance under the Loan (which may be greater than or less than an installment payment based upon your payment history), plus a returned payment fee as specified below. For any withdrawal outside of this specified range, we will send you a notice. Therefore, by signing this Agreement below, you are choosing to only receive notice when a withdrawal exceeds the amount in the specified range. You authorize us to vary the amount of the amount of any withdrawal as needed to repay installments due on the Loan as modified by any partial prepayments you make.

**TERMINATING ACH DEBIT AUTHORIZATION:** For those customers who have chosen the ACH Debit Authorization, the ACH debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Agreement or (ii) you tell us or the Paying Bank that we can no longer withdraw money from your Bank Account in enough time to let the Paying Bank or us stop taking the money out of your Bank Account. Terminating your ACH authorization does not relieve you of your obligation to pay your Loan in full.

**REMOTELY CREATED CHECK AUTHORIZATION:** If you terminate any previous ACH Debit Authorization you provided to us or we do not receive a payment by the Payment Due Date, you authorize us and our agents, successors and assigns to create and submit remotely created checks for payment to us in the amount of each payment owing under this Agreement, including any returned payment charges or other amounts owing to us upon acceleration of this Loan as a result of your Default. Your typed signature below shall constitute your authorization to us to authenticate remotely created checks, which are also known as demand drafts, telechecks, preauthorized drafts, or paper drafts. If you believe we charged your Bank Account in a manner not contemplated by this authorization, then please contact us. You authorize us to vary the amount of any preauthorized payment by remotely created check as needed to repay installments and any other payments due under this Agreement.

**PAYMENT BY CHECK OR MONEY ORDER:** You may pay each payment owing under this Agreement by check or money order.

**CHECK CONVERSION NOTIFICATION:** When you provide a check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. For questions, please call our customer service phone number: (866) 420-7157.

**PAYMENT APPLICATION:** Lender will apply your payments in the following order: (1) to any fees due, (2) to earned but

unpaid interest; and (5) to principal amounts outstanding.

**SECURITY INTEREST DISCLOSURE:** To the extent that your agreement to have us withdraw money from your Bank Account is deemed a security interest under the law of the Chippewa Cree Tribe, you hereby grant to us a security interest in such withdrawal authorization using the ACH system.

**PREPAYMENT:** You may prepay all or part of the amount you owe us at any time without penalty. If you do so, you must pay the interest accrued on your Loan and all other amounts due up to the date of your payment.

**REFINANCE POLICY:** We, in our sole discretion, will determine whether your Loan may be refinanced.

**RETURNED PAYMENT FEE:** If any payment made by you on this Loan is not honored or cannot be processed for any reason, including not enough money in your Bank Account, you agree to pay us a fee of $30.00. You authorize us and our agents to make a one-time withdrawal from your Bank Account to collect this fee, if you have also selected the ACH Debit Authorization. Your financial institution may also impose a fee.

**DEFAULT:** You will have broken your promise you made to us in this Agreement (each a "Default") if: (a) you provide false or misleading information about yourself, your employment, or your financial condition prior to entering into this Agreement, (b) if you fail to make a payment by the due date or if your payment is returned to us for any reason, or (c) if you file bankruptcy or become a debtor under the Federal Bankruptcy Laws.

**CONSEQUENCES OF DEFAULT:** Should you not do the things you agreed to under this Agreement, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us; (b) withdraw money from your Bank Account that was not available when we tried to withdraw it at an earlier time, if you have selected the ACH Debit Authorization; and (c) pursue all legally available means to collect what you owe us. In the event we declare all amounts owed under this Agreement immediately due because you did not pay us, then you further authorize us and our agents to withdraw money from your Bank Account in the full amount due under this Agreement, if you have selected the ACH Debit Authorization. By choosing any one of more of these, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to get back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payment(s) and, if you fail to make those payment(s), we will consider you to be in Default.

**CREDIT REPORTING:** We may report information about your Loan to credit bureaus. Late payments, missed payments, or other things you do may be reflected on your credit report.

**RIGHT TO CANCEL:** You may rescind or cancel this Loan, without cost or further obligation to Lender, if you do so on or before 5:30 p.m., Eastern Time, on the fifth business day after the Origination Date (the "Rescission Deadline"). To cancel, call Lender at (866) 420-7157 to tell us you wish to rescind this Loan and provide us written notice of rescission as directed by our customer service representative. *If you have provided an ACH Authorization*: In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but before the Loan proceeds have been credited to your Bank Account, we will not effect a credit entry to your Bank Account and both ours and your obligations under this Agreement will be rescinded. In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but after the Loan proceeds have been credited to your Bank Account because you have provided an ACH Authorization, we will effect a debit to your Bank Account for the principal amount owing under this Agreement. If we receive payment of the principal amount via the debit, ours and your obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all sums due and owing under this Agreement are repaid in full inclusive of interest and fees, if any. *If you have elected to receive your Loan proceeds via check delivered by mail*: In the event that we timely receive your written notice of rescission on or before the Rescission Deadline, and (a) if we have not mailed the check representing the Loan proceeds to you or (b) if you have not cashed the check representing the Loan proceeds, then we will cancel the check and both ours and your obligations under this Agreement will be rescinded.

**BORROWER'S BANK CHARGES:** You will not hold us or our agents responsible for any fees you must pay as a result of any check or withdrawal request being presented at your bank in connection with this Agreement.

**TRANSFER OF RIGHTS AND MAINTENANCE OF REGISTER:** We may assign or transfer this Agreement, or any of our rights hereunder, to another person or entity without notice or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to the laws and courts of the Chippewa-Cree Tribe. Plain Green, LLC, (the "Registrar") acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located in the United States a copy of

each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner and assignees, and the amounts of principal and interest owing to each from time to time pursuant to the terms of this Loan. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal and interest payments for all purposes of this Agreement, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. In addition to the foregoing, the Registrar shall include on the Register the names and addresses of those persons holding participation interests in the Loan of which it has notice. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the loan and not to you.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**RIGHT TO OPT OUT.** IF YOU DO NOT WISH YOUR ACCOUNT TO BE SUBJECT TO THIS AGREEMENT TO ARBITRATE, YOU MUST ADVISE US IN WRITING AT 93 MACK ROAD, SUITE 600, PO BOX 270, BOX ELDER, MT 59521 OR VIA E-MAIL AT SUPPORT@PLAINGREENLOANS.COM. YOU MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. YOU MUST GIVE WRITTEN NOTICE; IT IS NOT SUFFICIENT TO TELEPHONE US. WE MUST RECEIVE YOUR LETTER OR E-MAIL WITHIN SIXTY (60) DAYS AFTER THE DATE YOUR LOAN FUNDS OR YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE. IN THE EVENT YOU OPT OUT OF THIS AGREEMENT TO ARBITRATE, ANY DISPUTES HEREUNDER SHALL NONETHELESS BE GOVERNED UNDER THE LAWS OF THE CHIPPEWA CREE TRIBE AND MUST BE BROUGHT WITHIN THE COURT SYSTEM THEREOF.

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described above, any dispute you have with Lender or anyone else under this Agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any arbitration will be limited to addressing your dispute individually and will not be part of a class-wide or consolidated arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute (defined below) will be resolved by arbitration in accordance with Chippewa Cree tribal law.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Lender, its marketing agent, collection agent, any subsequent holder of this Note, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder" for purposes of this Agreement). The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the loan and the handling or servicing of your account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Agreement to Arbitrate.

You acknowledge and agree that by entering into this Arbitration Provision:

**(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**

**(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**

**(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

**Choice of Arbitrator.** Any party to a Dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent

to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Chippewa Cree Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Chippewa Cree's Tribes sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Chippewa Cree Tribe.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by the law of the Chippewa Cree Tribe, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

**Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under the Chippewa Cree Tribe's tribal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual Disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration is to be determined solely by a court of competent jurisdiction located within the Chippewa Cree Tribe, and not by the arbitrator. If the court refuses to enforce the class-wide arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures and may be enforced by such court through any measures or reciprocity provisions available.

**Applicable Law and Judicial Review.** THIS AGREEMENT TO ARBITRATE IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHIPPEWA CREE TRIBE. The arbitrator will apply the laws of the Chippewa Cree Tribe and the terms of this Agreement, including the Agreement to Arbitrate. The arbitrator must apply the terms of this Agreement to Arbitrate, including without limitation the waiver of class-wide arbitration. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. The arbitrator will make written findings and the arbitrator's award may be filed with the tribal court. The arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by the tribal court upon judicial review.

**Other Provisions.** This Agreement to Arbitrate will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Agreement to Arbitrate benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Agreement to Arbitrate continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Agreement to Arbitrate survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Agreement to Arbitrate is held invalid, the remainder shall remain in effect.

**GOVERNING LAW.** This Agreement and the Agreement to Arbitrate are governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Chippewa Cree Tribe. We do not have a presence in Montana or any other state of the United States of America. Neither this Agreement nor the Lender is subject to the laws of any state of the United States.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your Loan, we may call you at any number, including any cell phone number you have provided, and that we may leave an autodialed or prerecorded message or use other technology (including, but not limited to, SMS messaging or other text messaging) to contact or to communicate with you.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**This Agreement includes a Waiver of Jury Trial and Arbitration Provision that may be enforced by you and us.** By signing this Agreement you agree that it was filled in before you did so and that you have received a completed copy of it. **You further agree that you have read and understand all of the terms of this Agreement, including the part entitled "Waiver of Jury Trial and Arbitration Provision."**

*By electronically signing this Agreement* you certify that the information given in connection with this Agreement is true and correct. You authorize us to verify the information given in connection with this Agreement, and you give us consent to obtain information about you from a consumer reporting agency or other sources. *You acknowledge, represent and warrant that (a) you have read, understand, and agree to all of the terms and conditions of this Agreement, including the Disclosures and the Arbitration Agreement and Waiver of Jury Trial, (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made, (c) you specifically authorize withdrawals and deposits to and from your Bank Account as described in this Agreement, if you have selected the ACH Debit Authorization, (d) you are not a debtor under any proceeding in Bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code, (e) this Agreement was filled in before you signed it, and (f) you have the ability to print or retain a completed copy of this Agreement. You further acknowledge that we may withhold funding of your Loan until we check to make sure all the information you gave us on your application is true and we decide whether you meet our requirements to receive the Loan.*

☑ **I understand, acknowledge and agree that Plain Green, LLC is a tribal lending entity wholly owned by Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana, a federally recognized tribe. I further understand, acknowledge and agree that this loan is governed by the laws of the Chippewa Cree Tribe and is not subject to the provisions or protections of the laws of my home state or any other state.**

☑ By checking here you authorize us to verify all of the information that you have provided, including past and/or current information. **You certify that you have made or will make all payments on any previous loans with Lender, and you agree that Lender may cancel this loan if any payment on your previous loans is not made or is returned unpaid.** You agree that we may obtain information about you and your Bank Account from your Bank and/or consumer reporting agencies until all amounts owing pursuant to this Agreement are paid in full. If there is any missing or erroneous information in or with your loan application regarding your bank, bank routing number, or account number, then you authorize us to verify and correct such information.

**Please review and select one of these funding options:**

◉ **ELECTRONIC (as soon as the next business day):** By checking here you authorize us to effect ACH debit and credit entries for this Loan and you agree to the ACH Authorization set forth in this Agreement. You acknowledge and agree that the ACH Authorization inures to the benefit of Plain Green, LLC, its affiliates, agents, representatives, employees, successors, and registered assigns. You agree that the ACH Authorization is subject to our approving this Agreement. If you agree to the ACH Authorization in this Agreement and authorize debit and credit entries for this Loan, you also agree that the ACH Authorization set forth in this Agreement is to remain in full force and effect for this Loan until your indebtedness to us for the unpaid principal balance of this Loan, plus accrued interest (including interest owing on past due amounts) and fees, is fully satisfied. If you revoke your ACH Authorization, you agree to provide us with another means of payment acceptable to us in our sole discretion. Check this box if you agree to the ACH Authorization in this Agreement.

◉ **POSTAL MAIL (up to 7 to 10 days):** By checking here, you request Loan proceeds be distributed to you by check and delivered by regular mail through the United States Postal System. If you elect to receive your proceeds by mail, you must also make your payments via money order or certified check by mail as explained in the "Payments" section above. You should allow 7 to 10 days for delivery of the Loan proceeds, and you acknowledge that your Loan proceeds check may not be mailed to you until your "Right of Rescission" (as described above) has expired. You acknowledge that interest begins accruing on the Effective Date set forth at the top of this Agreement. If you have elected to receive your Loan proceeds by check, the ACH Authorization set forth above does not apply to the funding or repayment of your Loan.

**Plain Green, LLC**

**Date:**
**5/28/2013**

By: Billi Anne Raining Bird-Morsette, CEO

| **Your Full Name:** | **Type 'I Agree':** | **Date:** |
|---|---|---|
| *Lawrence Mwethuku* | *I Agree* | **5/28/2013** |

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| TAMARA PRICE, et al., | | |
| | Plaintiffs, | Civil Action No. 3:18-cv-711 |
| v. | | |
| MOBILOANS, LLC, | | |
| | Defendant. | |

## DECLARATION OF KIM PALERMO IN SUPPORT OF DEFENDANT MOBILOANS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

I, KIM PALERMO, do hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1.     I am over 18 years of age and competent to make this declaration. The statements contained herein are based on my personal knowledge, and I could testify competently about them if called to do so.

2.     I am the Chief Compliance Officer (CCO) of MobiLoans, LLC (MobiLoans), the defendant in this lawsuit. I have held that position since 2013.

3.     In my capacity as CCO, I am familiar with and have access to MobiLoans' business records that are discussed in this declaration. I am also personally familiar with the methods, processes, and functions of MobiLoans' lending activities. The MobiLoans business records that are discussed in or attached to this declaration are maintained in the ordinary course of business and are updated at or near the time of the acts, conditions, or events to which such records relate. Those records are recorded or caused to be recorded by persons whose job it is to make such records, populated by the consumer, or populated automatically via electronic means.

4.    MobiLoans' is in the business of providing credit to consumers, with a focus on online-originated consumer lending.

5.    In order to obtain credit from MobiLoans, an applicant visits the MobiLoans website, available at www.mobiloans.com, enters certain required personal and financial information, and reviews, acknowledges review of, and agrees to MobiLoans' Line of Credit Account Terms and Conditions (MobiLoans T&C).

6.    Each of the four plaintiffs in this lawsuit applied for and received credit from MobiLoans through MobiLoans' website.

7.    As part of their credit application, each of the four plaintiffs were required to review and confirm their understanding of the MobiLoans T&C.

8.    The MobiLoans T&C prominently state, in more than one place, that they include a waiver of any right to a jury trial as well as an arbitration agreement. This information appears in bold-face type on the front page of the MobiLoans T&C as well as in a detailed Dispute Resolution section.

9.    The MobiLoans T&C are updated periodically and have been updated since each of the four plaintiffs filled out their online applications and opened their lines of credit with MobiLoans. The MobiLoans T&C expressly state that such modifications may occur, and a consumer accepts such applications as a condition of continuing to carry a line of credit with MobiLoans. Consumers, including the plaintiffs, are notified when MobiLoans makes material changes to its T&C. If a consumer does not agree to the material modification of the MobiLoans T&C, the consumer may contact customer service and close his or her account. The most current version of the MobiLoans T&C, a copy of which is attached to this Declaration as Exhibit 1, is dated September 28, 2018. This is the version of the MobiLoans T&C that was in effect when

2

the plaintiffs filed this lawsuit. None of the plaintiffs ever objected to any material changes of the Mobiloans T&C or sought to terminate their lines of credit with MobiLoans in response to such changes.

10.     The arbitration agreement in the MobiLoans T&C allows any borrower to opt out of the arbitration agreement by providing written notice of their intent to do so within 60 days of establishing an account with MobiLoans. None of the four plaintiffs in this case opted out of the arbitration agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this $\underline{1^{th}}$ day of January, 2019.

Kim W. Palermo
Chief Compliance Officer
MobiLoans, LLC

3

*EXHIBIT 1*

Mobiloans Line of Credit Account Terms and Conditions
Effective **September 28**, 2018

MOBILOANS, LLC IS AN ENTITY OWNED AND OPERATED BY THE TUNICA-BILOXI TRIBE OF LOUISIANA. THE CREDIT ISSUED TO YOU AND INFORMATION PROVIDED UNDER THIS AGREEMENT BY MOBILOANS IS DONE SO SOLELY UNDER THE PROVISIONS OF LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND CERTAIN FEDERAL LAWS AS SPECIFIED IN SECTION XIX BELOW.

This Mobiloans Line of Credit Account Terms and Conditions (these "Terms and Conditions" or this "Agreement") govern your Mobiloans Credit Account. In this Agreement, "you" and "your" refer to those persons who have applied for and been approved for Mobiloans Credit. "We", "us", "our" or "Lender" refer to MobiLoans, LLC, a tribal lending entity wholly owned by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America that is operating within the Tunica-Biloxi Reservation, and possessing the inherent characteristics and immunities of the Tribal government. "Tribe" or "Tribal" refers to the Tunica-Biloxi Tribe of Louisiana. Each advance made by us hereunder is being made from the Tunica-Biloxi Reservation. These Terms and Conditions contain an arbitration provision. Unless you act promptly to reject the arbitration provision, it will have a substantial effect on your rights in the event of a dispute.

You should review these Terms and Conditions to fully understand how Mobiloans Credit works. If you have questions, you may contact Customer Support at 877-836-1518. You should retain a copy of these Terms and Conditions for your records.

HIGH COST CREDIT DISCLOSURE: MOBILOANS CREDIT IS AN EXPENSIVE FORM OF CREDIT. MOBILOANS CREDIT IS DESIGNED TO HELP CUSTOMERS MEET THEIR SHORT-TERM BORROWING NEEDS. THIS SERVICE IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER-TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS.

Palermo Decl.
**EXHIBIT 1**

Please scroll down to read important information about rates, fees, and other cost information before submitting your application

<u>Truth-in-Lending Disclosures</u>

IMPORTANT INFORMATION REGARDING RATES, FEES, AND OTHER COST INFORMATION

<table>
<tr>
<td>Annual Percentage Rate on Mobiloans Credit Advanced</td>
<td colspan="5">206.<b>14</b>% - 442.31%<br><br>This APR will vary based on the amount of the line of credit and the maximum number of billing cycles available for payment. Below are examples of some of our credit amounts with their respective APR.<br><br>APR = ((Total Fees/Avg. Principal Balance)/Number of Billing Cycles)*Billing Cycles per year * 100</td>
</tr>
<tr>
<td></td>
<td>Line of Credit Amount</td>
<td>Number of Billing Cycles (1 Billing Cycle = approximately 14 days or 26 per year)</td>
<td>Total Fees (Cash Advance and Fixed Finance Fees)</td>
<td>APR % (No Rewards Discount)</td>
<td>Rewards Level – Diamond APR % (65% reduction in Cash Advance Fees and Fixed Finance Charges, see www.mobiloans.com/rewards for information on how to qualify)</td>
</tr>
<tr>
<td></td>
<td>$200</td>
<td>13</td>
<td>$230</td>
<td>442.31%</td>
<td>154.81%</td>
</tr>
<tr>
<td></td>
<td>$1,000</td>
<td>25</td>
<td>$1600</td>
<td>320.00%</td>
<td>112.00%</td>
</tr>
<tr>
<td></td>
<td>$1,300</td>
<td>38</td>
<td>$2,879</td>
<td>295.28%</td>
<td>103.35%</td>
</tr>
<tr>
<td></td>
<td>$1,500</td>
<td>50</td>
<td>$4,010</td>
<td>272.58%</td>
<td>95.40%</td>
</tr>
<tr>
<td></td>
<td>$2,500</td>
<td>60</td>
<td>$6,045</td>
<td>206.14%</td>
<td>72.15%</td>
</tr>
<tr>
<td></td>
<td colspan="5"></td>
</tr>
<tr>
<td></td>
<td colspan="5"></td>
</tr>
<tr>
<td></td>
<td colspan="5"></td>
</tr>
</table>

Minimum Charge

- Fixed Finance Charge

Each Billing Cycle you will be charged a Fixed Finance Charge of:

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0-$10.00 | No charge |
| $10.01 - $100 | $10 |
| $100.01 - $200 | $25 |
| $200.01 - $300 | $35 |
| $300.01 - $400 | $45 |
| $400.01 - $600 | $65 |
| $600.01 - $900 | $95 |
| $900.01 - $1,000 | $105 |
| $1,000.01 - $1,400 | $110 |
| $1,400.01-$2,000 | $125 |
| $2,000.01-$2,500 | $135 |

Fees

US2008 11999151 1

| Transaction Fees | |
|---|---|
| • Cash Advance Fee | $3.00 for each $20.00 of Mobiloans Cash advanced, for draws of up to $500 |
| | $2.00 for each $20.00 of Mobiloans Cash advanced, for draws over $500 up to $1,000 |
| | $1.60 for each $20.00 of Mobiloans Cash advanced, for draws over $1,000 up to $1,400 |
| | $1.40 for each $20.00 of Mobiloans Cash advanced, for draws over $1,400 up to $2,000 |
| | $1.00 for each $20.00 of Mobiloans Cash advanced, for draws over $2,000 |

How we will calculate your balance: To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of new Mobiloans Cash advances made during the Billing Cycle.

Billing Rights: Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions.

See Section VI for further details on costs and charges and Section XIV for further details on billing rights.

I. Definitions

"Account" and "Mobiloans Credit Account" mean your Mobiloans Credit relationship established under this Agreement. Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions.

"Application" or "Mobiloans Credit Application" means each initial and supplemental credit application you submitted to Lender in connection with establishing your Mobiloans Credit Account with Lender.

US2008 11999151 1

"AutoPay" means the automatic payment of the Minimum Payment Amount from your designated Demand Deposit Account.

"Billing Cycle" means the interval between the days or dates of regular Periodic Statements. All Pay Frequencies have at least two Billing Cycles per month. Bi-weekly and weekly paid customers will have up to twenty-six (26) Billing Cycles per year.

"Business Day" means any day a bank in Louisiana is open for business not including weekends or bank holidays.

"Cash Advance Fee" means the nonrefundable fee charged for each draw on your Mobiloans Credit Account, regardless of the time the Mobiloans Cash you receive from that draw is outstanding.

"Credit Limit" means the maximum amount you can borrow under your Mobiloans Credit Account. Your available credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges.

"Demand Deposit Account" means a bank checking account you have identified for distribution of Mobiloans Cash and/or collection of payments due pursuant to the terms of this Agreement.

"Due Date" means the date reflected on your periodic statement on which your payment is due. All Pay Frequencies have at least two Billing Cycles per month, and therefore at least two Due Dates per month. Bi-weekly and weekly paid customers will have up to twenty-six (26) Billing Cycles per year, and therefore up to twenty-six (26) Due Dates per year.

"Finance Charge" means Fixed Financed Charges and Cash Advance Fees.

"Fixed Finance Charge" means a minimum charge, calculated on a tiered level, based upon the unpaid principal balance in your Mobiloans Credit Account and charged to your Account each Billing Cycle that you have an unpaid balance.

"Minimum Payment Amount" means the minimum payment you agree to make each Billing Cycle, consisting of the Minimum Principal Amount and Cash Advance Fees and Fixed Finance Charges.

"Minimum Principal Amount" means that portion of your Minimum Payment Amount that is applied to the outstanding principal balance of your Mobiloans Credit Account. The formula for calculating the Minimum Principal Amount is set forth in <u>Section VII</u> below.

"Mobiloans Cash" means the amount of cash you receive from a draw under your Mobiloans Credit Account.

"Mobiloans Credit" means the line of credit governed by this Agreement that allows eligible customers to receive short-term cash draws under this Agreement.

"Pay Date" means the date that you submitted in your initial or updated Mobiloans Credit Application as the date on which you are paid wages or receive other sources of income or benefits.

"Pay Frequency" means the frequency you receive your income payments which are either, weekly, bi-weekly, semi-monthly, or monthly. If your Pay Frequency is weekly, your Pay Dates are considered to be bi-weekly for determining your Billing Cycle under this Agreement. If your Pay Frequency is monthly, your Pay Dates are considered to be semi-monthly for determining your Billing Cycle under this Agreement. All Pay Frequencies have at least two Billing Cycles per month and are required to remit at least two Minimum Payment Amounts per month.

"Periodic Statement" means the written statement issued for each Billing Cycle that describes, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, your new balance and your payment Due Date for that Billing Cycle.

"Tribal Law" means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America.

II.   Eligibility for Mobiloans Credit

You may be eligible for Mobiloans Credit if you meet certain eligibility criteria established by us, which may change from time to time at our sole discretion. As of the date of this Agreement, the eligibility criteria are as follows:

- You have a regular source of income or benefits deposited to a qualified Demand Deposit Account;

- You are at least 18 years old (or at least 19 years old if you are a resident of Alabama or Nebraska);

- You meet credit underwriting standards established by the Lender;

- You have identified a qualified Demand Deposit Account on the Application;

- You authorize the Lender to initiate automated transfers from your qualified Demand Deposit Account(s) to repay amounts owed under this Agreement or you enroll for payments by mail, as described below;

- Your qualified Demand Deposit Account(s) are not frozen or subject to legal process (such as a garnishment order); and

- You are not in default of this Agreement.

## III. Establishing your Mobiloans Credit Account

Upon approval and verification by Lender of the information you submitted on your Application, your Mobiloans Credit Account will be established. Your Mobiloans Credit Account will be terminated if you do not request Mobiloans Cash for a period of 24 consecutive months. By applying for and using your Mobiloans Credit, you acknowledge that you have received a copy of this Agreement and that you understand and accept its terms and conditions. Access to Mobiloans Cash is subject to the eligibility criteria provided in this Agreement and your compliance with the terms of this Agreement.

You can obtain your current Credit Limit by: (a) logging in to your Mobiloans Credit Account online at https://www.mobiloans.com; (b) calling Customer Support at 877-836-1518; or (c) writing Mobiloans Customer Support at MobiLoans, LLC, **P.O. Box** 1409, Marksville, LA 71351.

## IV. Accessing your Account and Receiving Mobiloans Cash

Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions. Requests for Mobiloans Cash are made in increments of twenty dollars ($20.00). You may request Mobiloans Cash online at https://www.mobiloans.com. Aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Proceeds deposited to a qualified Demand Deposit Account may be effectuated via Automate Clearing House (ACH) or mailed by check. If your request was to receive cash via ACH and was received before 4:00 p.m. Central Time on a Business Day, your requested Mobiloans Cash may be available on the next day your financial institution holding your Demand Deposit Account is open for business. Whether you receive your Mobiloans Cash by check or ACH, always check with your financial institution to accurately determine when the money will be available for use.

You may cancel a request for Mobiloans Cash at no cost to you by calling Customer Support at 877-836-1518 within 5 days of requesting funds and, if you already received your Mobiloans Cash, you return the received Mobiloans Cash immediately as instructed by Customer Support. In the event that your draw of Mobiloans Cash will be funded by check and you desire to cancel your request, (a) if we have not mailed the check representing the Mobiloans Cash to you or (b) if you have not cashed the check representing the Mobiloans Cash, then we will cancel the check and your obligations with respect to that draw of Mobiloans Cash will be canceled. If you have cancelled funding three (3) times in the last twelve (12) months, additional requests to cancel funds will require management approval and may be declined. Draw Restrictions: As noted above, aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Additional draws may be restricted if you have not made one or more required Minimum Periodic Payments in full and on time, if we have reduced your Credit Limit as described in Section V or if your Account is not otherwise in good standing. If the outstanding principal amount of Mobiloans Cash at any time exceeds your Credit Limit for any reason, any such additional amounts will be subject to all provisions of this Agreement. Furthermore, any such excess amount outstanding will not increase your Credit Limit. In addition, if you have had an outstanding principal balance of Mobiloans Cash on your Account for at least thirty (30) consecutive months, then you may not obtain additional Mobiloans Cash until you pay down the balance of your Mobiloans Credit Account to zero dollars ($0). Once you have brought your Account balance to zero dollars ($0), your ability to draw Mobiloans Cash will be reinstated. See Section VIII below for further information on this pay down requirement and the reinstatement of your ability to draw Mobiloans Cash.

## V.    Credit Limit

Your Credit Limit is the maximum amount that you may borrow under your Mobiloans Credit Account. Your Credit Limit is assigned by the Lender and is between two hundred dollars ($200) and two thousand five hundred dollars ($2,500). This Credit Limit is subject to change with changes in your Demand Deposit Account status and/or underwriting eligibility. Your available credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges. We reserve the right, at any time, and upon notice when required by Tribal Law or applicable federal law, to adjust your Credit Limit, including reducing it to zero dollars ($0), based on your use of Mobiloans Credit, your payment history with us, your moving to a state we do not service or we discontinue service in your state, and other factors, at the Lender's sole discretion. We also reserve the right to review your credit status at any time, including after obtaining credit reports and other credit information we believe to be relevant. Our review of such information may also result in our modifying your Credit

Limit, including reducing your Credit Limit to zero dollars ($0), or closing your Account.

## VI.   Costs and Charges

### Cash Advance Fee

We charge a Cash Advance Fee for each draw on your Mobiloans Credit Account, regardless of the period of time for which the Mobiloans Cash you receive from that draw is outstanding. The Cash Advance Fee is a FINANCE CHARGE. The Cash Advance Fee is assessed each time a draw is requested, and there is no grace period within which you may repay an advance and avoid payment of the related Cash Advance Fee. The amount of the Cash Advance Fee that will be assessed on a draw of Mobiloans Cash is as follows:

| Fees | |
| --- | --- |
| Cash Advance Fee | $3.00 for each $20.00 of Mobiloans Cash advanced, for draws of up to $500 |
| | $2.00 for each $20.00 of Mobiloans Cash advanced, for draws over $500 up to $1,000 |
| | $1.60 for each $20.00 of Mobiloans Cash advanced, for draws over $1,000 up to $1,400 |
| | $1.40 for each $20.00 of Mobiloans Cash advanced, for draws over $1,400 up to $2,000 |
| | $1.00 for each $20.00 of Mobiloans Cash advanced, for draws over $2,000 |

### Fixed Finance Charge

A Fixed Finance Charge will be assessed at the beginning of each Billing Cycle based on the unpaid principal balance of Mobiloans Cash at the end of the prior Billing Cycle, excluding the amount of any new Mobiloans Cash advanced during that Billing Cycle, in accordance with the table below. The Fixed Finance Charge is a FINANCE CHARGE. If you pay the entire balance of a Mobiloans Cash draw in full by the applicable Due Date specified in the Periodic Statement for the Billing Cycle in which such draw was made, you will not be charged a Fixed Finance Charge on the amount of such Mobiloans Cash advance.

| Minimum Charge | |
|---|---|
| • Fixed Finance Charge | Each Billing Cycle you will be charged a Fixed Finance charge, as follows: |

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0-$10.00 | No charge |
| $10.01 - $100 | $10 |
| $100.01 - $200 | $25 |
| $200.01 - $300 | $35 |
| $300.01 - $400 | $45 |
| $400.01 - $600 | $65 |
| $600.01 - $900 | $95 |
| $900.01 - $1,000 | $105 |
| $1,000.01 - $1,400 | $110 |
| $1,400.01-$2,000 | $125 |
| $2,000.01-$2,500 | $135 |

How we will calculate your balance: To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic

Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of new Mobiloans Cash advances made during the Billing Cycle.

<u>Billing Rights:</u> Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions. See <u>Section XIV</u> for further details on billing disputes.

VII.   Your Promise to Pay

You promise to pay the total of all outstanding Mobiloans Cash along with all accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement. You agree to make the Minimum Payment Amount shown on each Periodic Statement on or before the applicable Due Date for such payment. The Minimum Payment Amount consists of the Minimum Principal Payment and accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement. Payments are credited to your Account effective as of the day they are received.

You may experience a delay between the date of your payment and the time you are able to take additional Mobiloans Cash while we verify that sufficient funds are available and/or we receive credit for any payments drawn on another depository institution. This action will not result in more cost to you, but it may delay the availability and/or amount of your future Mobiloans Cash.

If you fail to pay the Minimum Payment Amount on or before the applicable Due Date, an AutoPay payment will automatically be deducted by us from your Demand Deposit Account (see <u>Section VIII</u> below) if you have authorized the AutoPay feature.

To minimize the amount of Finance Charges you may incur, you are encouraged to pay your Mobiloans Cash balances in full on or before the applicable Due Date. You also may make payments toward your unpaid balance at any time without penalty.

Your payment options are discussed more fully in <u>Section VIII</u> below.

Calculation of Minimum Principal Amount

The Minimum Principal Amount will be calculated using a percentage of the outstanding Mobiloans Cash balance immediately after the most recent draw, or a Minimum Principal Amount of sixteen dollars ($16), whichever is greater. See chart below for the applicable percentages to

calculate the Minimum Principal Amount.

| *Calculation of Minimum Principal Amount* | | |
|---|---|---|
| | Outstanding Mobiloans Cash balance immediately after the most recent Cash draw…. | Percentage or minimum amount of Mobiloans Cash balance to be included in the Minimum Payment Amount…… |
| | Up to $400 | $16 |
| | $400.01- $1099.99 | 4.0000% |
| | $1,100 - $1,399.99 | 2.6316% |
| | $1,400 - $1,999.99 | 2.0000% |
| | $2,000 - $2,500.00 | 1.6667% |

## VIII. Payment Options

**Payments in Full and Partial Payments:** You may pay your outstanding balance in full at any time. We also accept partial payments as further described in this Section VIII.

**AutoPay:** AutoPay is the automatic payment of the Minimum Payment Amount specified in the applicable Periodic Statement. If you elect to make AutoPay payments via ACH debit, we process an ACH payment from your Demand Deposit Account for the amount of each AutoPay payment so that such payment is received on the applicable Due Date. You do not need to agree to AutoPay as a condition to opening or using your Mobiloans Credit Account. If you have enrolled in the AutoPay feature, the payment of the Minimum Payment Amount will be made from your Demand Deposit Account unless you have otherwise paid the Minimum Payment Amount by other means by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. If you are an AutoPay customer and you remit a payment, whether by mail or electronically, that is received and processed before the AutoPay processing date and that results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement, then we will not process an AutoPay payment for that Periodic Statement. See Section XXI for more details.

**Borrower-Scheduled Electronic Payments:** You may schedule an electronic payment at any time up to the full amount of the outstanding balance of your Mobiloans Credit Account prior to the applicable Due Date. You may schedule these payments online at https://www.mobiloans.com, by calling Customer Support at 877-836-1518 or by mail. In order for an electronic payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on· the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue. See Section VI and Section VII above.

**Borrower-Scheduled Debit Payments:** Mobiloans may work with a third-party to enable you to schedule a payment using a debit card to pay up to the full amount of the outstanding balance (or any portion thereof) of your Mobiloans Credit Account at any time up to 4:00p.m. Central Time on the Business Day prior to the applicable Due Date. If applicable, you may schedule these payments online at https://www.mobiloans.com or by calling Customer Support at 877-836-1518. Once you provide Mobiloans with your debit card number, it will be securely stored with your Mobiloans Credit Account. If you provide a debit card number to Mobiloans, such debit card will not be used for any payment unless you schedule a payment or unless Mobiloans is unable to process your payment by your Due Date using the AutoPay feature. Please note that Mobiloans relies on third parties to provide this service and therefore reserves the right to terminate or suspend this service at any time. If you elect to pay your Mobiloans Credit Account via AutoPay or by mail, you can make an additional payment at any time using your debit card; however, providing a debit card to your Mobiloans Credit Account will not remove you from AutoPay or otherwise change your payment obligations. In order for a debit card payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue.

**Payments by Mail:** Extension of Mobiloans Credit is not conditioned on your repayment by electronic means of the amounts you owe. You may make payments by mail, using personal check, certified check or money order payable to "MobiLoans, LLC", and any such payment must be received at our payment address, P.O. Box 42917, Philadelphia, PA 19101, by 5:00 p.m. Eastern Time on the applicable payment Due Date. To send your check via overnight mail or courier service, please send to MobiLoans, LLC c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, Pennsylvania 19007 in time for Mobiloans to receive your payment prior to 5:00 p.m. Eastern Time on your Due Date. If you are an AutoPay customer and you remit a payment by mail, your AutoPay payment

for the current Billing Cycle will still process unless your mailed payment is received and processed by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date and results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement. If you remit payment by mail and such payment is received on a non-Business Day, your payment will be posted to your account on the day it is received.

**Check Conversion Notification:** When you provide a personal check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your personal check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. For questions, please call Customer Support at 877-836-1518.

**Required Paydown to Zero Dollars ($0) after Thirty (30) Months with an Outstanding Principal Balance of Mobiloans Cash:** As described in <u>Section IV,</u> if you have had an outstanding principal balance of Mobiloans Cash on your Mobiloans Credit Account for at least thirty (30) consecutive months, then your ability to initiate additional draws of Mobiloans Cash will be restricted until such time as you pay down the balance of your Mobiloans Credit Account to zero dollars ($0). Repayment of your outstanding balance to zero dollars ($0) can be made by paying the Minimum Payment Amount over the maximum term for the outstanding principal balance. Principal balances under one thousand one hundred dollars ($1,100.00) have a maximum bi-weekly term of up to twenty-five (25) Billing Cycles; principal balances between one thousand one hundred dollars ($1,100.00) and one thousand three hundred ninety-nine dollars and ninety-nine cents ($1,399.99) have a maximum bi-weekly term of thirty-eight (38) Billing Cycles; principal balances between one thousand four hundred dollars ($1,400.00) and one thousand nine hundred ninety-nine dollars and ninety-nine cents ($1,999.99) have a maximum bi-weekly term of fifty (50) Billing Cycles; and principal balances between two thousand dollars ($2,000.00) and two thousand five hundred dollars ($2,500.00) have a maximum bi-weekly term of sixty (60) Billing Cycles. You can pay off the outstanding balance in full or over a shorter time frame by scheduling additional electronic payments, sending additional payments by mail, paying more than the Minimum Payment Amount or just remitting a payment in full. Once you have paid in full, the outstanding balance of your Account, your ability to make draws of Mobiloans Cash, up to your Credit Limit, will be reinstated. Depending on the method by which you make the final payment that brings your Account balance to zero dollars ($0), it may take up to ten (10) Business

US2008 11999151 1

Days to process the payment and reinstate your ability to make draws of Mobiloans Cash.

Payment Extensions:   You may extend or "push" a payment to a later date as is described herein.  The maximum payment date that a payment may be extended will be the next scheduled payment date. If you choose to extend the payment to the maximum payment date, you will have two payments processed on that date (the extended payment and the current payment due).  You may not extend two payments in a row. A payment that has been extended cannot be delayed a second time if the maximum number of days allowed was granted the first time.

Your ability to utilize this payment extension option is limited to a maximum of ninety-nine (99) times throughout the life of your account.

IX.    Application of Payments

All payments received (whether electronically or otherwise) will be applied first to any accrued and unpaid Cash Advance Fees and Fixed Finance Charges, and then to the outstanding principal balance of your Mobiloans Credit Account.

X.    Balance Computation Method

We calculate your balance as shown under "How we will calculate your balance" above.

XI.    Servicing Your Account

In connection with the servicing of your Mobiloans Credit Account, you hereby authorize us to contact you, including through the use of an autodialer, text messaging (if you have opted-in to text messaging in your Application), or prerecorded message, at any phone number you have provided to us in your Application or otherwise, including mobile phone numbers, and at any address and email address we have for you in our records or from other public and nonpublic databases we may lawfully access. Where allowed by law, we also may contact other individuals who may be able to provide updated employment, location, and contact information for you.

XII. Default

Events of Default: We may declare you to be in default of this Agreement at any time if: (a) you fail to comply with the terms of this Agreement, including your repayment obligations with respect to borrowings under your Mobiloans Credit Account; (b) we discover that any information you have provided to us is false or misleading in any material respect; (c) you have exceeded the limitations regarding the usage of your Mobiloans Credit Account as set forth in this Agreement; or (d) you have not provided us

with information we may request from time to time to satisfy our obligations to comply with the Bank Secrecy Act or other statutes or regulations that apply to us.

<u>Consequences of Default:</u> If an event of default has occurred, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us on your Mobiloans Credit Account, including, without limitation, all outstanding Mobiloans Cash and accrued Cash Advance Fees and Fixed Finance Charges; (b) withdraw money from your Demand Deposit Account that was not available when we tried to withdraw it at an earlier time, if you have authorized electronic payments; (c) we may suspend or terminate your right to access your Mobiloans Credit Account and to receive draws of Mobiloans Cash; and (d) pursue all legally available means under Tribal Law and applicable federal law to collect what you owe us. Except as expressly prohibited by Tribal Law and applicable federal law, by agreeing to these Terms and Conditions you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notices. In the event we declare all amounts owed on your Mobiloans Credit Account immediately due because you did not pay us, then, if you have authorized electronic payments, you further authorize us and our agents and representatives to withdraw money from your Demand Deposit Account in the full amount due. By choosing to exercise any one or more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to be paid back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payments and, if you fail to make those payment(s), we will consider you to be in default.

XIII.   Periodic Statements

Not less than once each Billing Cycle during which there is (i) one or more Mobiloans Cash transactions, (ii) a payment is received, or (iii) an outstanding balance owing on your Mobiloans Credit Account, we will make available to you electronically, or if you specifically request, by mail, a Periodic Statement reflecting, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, and your new balance. In addition, we will provide you from time to time with any other disclosures or information required by this Agreement, Tribal Law, and applicable federal law.

Your Periodic Statements will be generated fourteen (14) days prior to the applicable Due Date for such Billing Cycle. A notification will be emailed to the email account you have on file in your Account, and your statement will be available electronically at https://www.mobiloans.com. You may choose not to receive your statements

electronically. If you choose to receive paper statements, please notify us by writing to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351.

## XIV.    Billing Rights

---
### YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under Tribal law and applicable federal law.
---

## What To Do If You Find a Mistake on Your Periodic Statement

If you think there is an error on your Periodic Statement, write to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, contact us electronically at https://www.mobiloans.com, or call us at 877-836-1518.

In your correspondence, give us the following information:

- Account information - your name and Account number;
- Dollar amount - the dollar amount of the suspected error; and
- Description of problem - if you think there is an error on your Periodic Statement, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within sixty (60) days after the error first appeared on your Periodic Statement; and
- By 4:00 p.m. Central Time at least two (2) Business Days before an automated payment is scheduled if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do no send in the required written information, we are not required to investigate any potential errors and you may have to pay the amount in question.

## What Will Happen After We Receive Your Correspondence

When we receive your correspondence, we must do two things:

1. Within thirty (30) days of receiving your correspondence, we must tell you that we received your correspondence. We will also tell you if we have already corrected the error.

2. Within ninety (90) days of receiving your correspondence, we must either correct the error or explain to you why we believe the Periodic Statement is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your Periodic Statement, and we may continue to charge Finance Charges on that amount in accordance with this Agreement.
- While you do not have to pay the amount in question, you are responsible for the remainder of the outstanding balance of your Account.
- We can apply any unpaid amount against your Credit Limit.

After we finish our investigation, one of two things will happen:

1. If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.

2. If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable Finance Charges on that amount in accordance with this Agreement. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your Periodic Statement is wrong, you must write to us within ten (10) days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your Periodic Statement. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first fifty dollars ($50) of the amount you question even if your Periodic Statement is correct.

XV. Change in Terms

We reserve the right to change the terms of this Agreement at any time with notice to you as required by Tribal Law and applicable federal law. Such changes may apply to Mobiloans Credit and any current amounts of outstanding Mobiloans Cash as well as to future Mobiloans Cash balances. By continuing to use the Mobiloans Credit service, you are accepting the change in terms.  You may contact Mobiloans Customer Support at any time and request that your Mobiloans Credit Account be closed. If you close your account, you will still be required to repay all amounts that you owe on your Mobiloans Credit Account pursuant to the continuing terms of the Agreement.

## XVI. Mobiloans Rewards Program

As a MobiLoans, LLC customer, you are automatically enrolled in the MobiLoans, LLC Rewards Program ("Mobiloans Rewards"). Mobiloans Rewards terms and conditions may be found at https://www.mobiloans.com/Rewards and are hereby incorporated into these Terms and Conditions as if fully set out herein.

## XVII. Transfer of Rights; Maintenance of Register

We may assign or transfer this Agreement, or any of our rights hereunder, to another person or entity without notice or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and applicable federal law . MobiLoans, LLC, (the "Registrar") acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located within the geographic boundaries of the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner and assignees, and the amounts of the principal, interest, fees, charges and other amounts owing to each from time to time pursuant to the terms of this Agreement. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal, interest, fees, charges and other amounts for all purposes of this Agreement and any rights hereunder, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. In addition to the foregoing, the Registrar shall include on the Register the names and addresses of those persons holding participation interests in the receivables outstanding from time to time in the Accounts of which it has notice. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the Account and not to you.

## XVIII. Dispute Resolution; Arbitration

### Notice of Waiver of Jury Trial and Arbitration Agreement

This Agreement includes a binding Waiver of Jury Trial and Arbitration Agreement.  You may opt out of the Waiver of Jury Trial and Arbitration Agreement by following the instructions below.

RIGHT TO OPT OUT.  IF YOU DO NOT WISH YOUR ACCOUNT TO BE SUBJECT TO THE FOLLOWING WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT, YOU MUST ADVISE US IN WRITING AT MOBILOANS, LLC, P.O. BOX 1409, MARKSVILLE, LA 71351 OR VIA EMAIL AT SUPPORT@MOBILOANS.COM.  YOU MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION.  YOU MUST GIVE WRITTEN NOTICE; IT IS NOT SUFFICIENT TO TELEPHONE US.  WE MUST RECEIVE YOUR LETTER OR E-MAIL WITHIN SIXTY (60) DAYS AFTER THE DATE YOUR MOBILOANS CREDIT ACCOUNT IS ESTABLISHED OR YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE.  IN THE EVENT YOU OPT OUT OF THE ARBITRATION AGREEMENT, ANY DISPUTES UNDER THIS AGREEMENT OR RELATED TO YOUR MOBILOANS CREDIT ACCOUNT SHALL NONETHELESS BE GOVERNED UNDER THE LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND APPLICABLE FEDERAL LAW AND MUST BE BROUGHT WITHIN THE TRIBAL COURT SYSTEM, TO WHOSE JURISDICTION YOU IRREVOCABLY CONSENT FOR THE PURPOSES OF THIS AGREEMENT.

### WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT

In this Waiver of Jury Trial and Arbitration Agreement (this "Arbitration Agreement"), "Tribe" or "Tribal" refers to the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America, and "Tribal Law" means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana.

PLEASE READ THIS WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT CAREFULLY.  Unless you exercise your right to opt-out of arbitration in the manner described above, any dispute related to this Agreement will be resolved by binding arbitration.  Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding.  In arbitration, a dispute is resolved by an arbitrator instead of a judge or jury.  Arbitration procedures are simpler and more limited than court procedures.  Any arbitration will be limited to addressing your dispute individually and will not be part of a class-wide or consolidated arbitration proceeding.

Agreement to Arbitrate.  You agree that any Dispute (defined below) will be resolved by arbitration in accordance with Tribal Law and applicable federal law.

Arbitration Defined.  Arbitration is a means of having an independent third party resolve a Dispute.  A "Dispute" is any controversy or claim related in any way to your Mobiloans Credit Account or your application for a Mobiloans Credit Account, involving you and Lender, its marketing agent, collection agent, any subsequent holder of your Mobiloans Credit Account, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder" for purposes of this Agreement).  The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of your Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief).  A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the Mobiloans Credit Account and the handling or servicing of your Account whether such Dispute is based on a Tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement.

You acknowledge and agree that by entering into this Arbitration Agreement:

(a)  YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b)  YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR ANY HOLDER; and

(c)  YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

Choice of Arbitrator.  Any party to a Dispute, including a Holder, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of the Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) https://www.adr.org; JAMS (1-800-352-5267) https://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute.  The chosen arbitrator will utilize the rules and procedures applicable to consumer disputes of the chosen arbitration organization, but only to the extent that those rules and procedures are consistent with the terms of this Agreement, Tribal Law and applicable federal law.  The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within

twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization in accordance with Tribal Law or applicable federal law. Any arbitration under this Agreement may be conducted either on Tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than Tribal Law or applicable federal law.

Cost of Arbitration. We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by Tribal Law or applicable federal law, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by Tribal Law or applicable federal law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action. YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under Tribal Law and applicable federal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual Disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration is to be determined by the arbitrator. If the arbitrator fails or refuses to enforce the waiver of class-wide arbitration, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable court rules and procedures and may be enforced by such court through any measures or reciprocity provisions available. As an integral component of accepting this Agreement, you consent to the jurisdiction of the Tribal courts for purposes of this Agreement.

Judicial Review. The arbitrator will apply the terms of this Agreement, including the Arbitration Agreement, Tribal Law, and federal law as appropriate. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If allowed by Tribal or federal statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. The arbitrator will make written findings and the arbitrator's award may be filed with the Tribal court. The arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by the Tribal court upon judicial review.

Other Provisions.  This Arbitration Agreement will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Account, or any amounts owed on my account, to any other person or entity.  This Arbitration Agreement benefits and is binding upon you, your respective heirs, successors and assigns.  It also benefits and is binding upon us, our successors and assigns, and related third parties.  The Arbitration Agreement continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy.  The Arbitration Agreement survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.  If any of this Arbitration Agreement is held invalid, the remainder shall remain in effect.

## XIX. Governing Law

This Agreement and the Arbitration Agreement are governed by the laws of the Tunica-Biloxi Tribe of Louisiana, the Indian Commerce Clause of the United States Constitution, the Federal Arbitration Act ("FAA"), and any applicable federal law  necessary to uphold federal substantive statutory rights or.

## XX. Electronic Signature and Electronic Records

We are required by law to provide you with initial disclosures, Periodic Statements and certain other disclosures and notices (collectively, "Disclosures"). By checking the "Sign Here" box on the Application, that action will signify your agreement that this Agreement and the Disclosures we provide to you constitute electronic records under the Electronic Signatures in Global and National Commerce Act (15 U.S.C. Sections 7001 and following) in a manner consistent with Tribal Law and applicable federal law.

By checking the "Sign Here" box on your Application, you agree to receive all such disclosures electronically. To access these Disclosures, in most cases, we will provide you with such disclosures at our web site or the web sites of our vendors. By checking the box, you acknowledge that you are able to electronically access the Mobiloans website (https://www.mobiloans.com), and to electronically access and print the periodic statements and other Disclosures we will be providing to you in connection with your Mobiloans Credit Account. We will notify you of Disclosures by email and will provide copies of any Disclosures to you in electronic form by including them in the email, posting them on the Mobiloans website or by providing a link to them on the website. In order to access, view and retain Disclosures in electronic form, you must have a computer with Internet

access. The minimum system requirements include software that supports 128-bit security encryption and Adobe Reader® version 9.0.

Your agreement to receive disclosures and notices from us in electronic form does not mean you cannot obtain a paper copy of any such disclosure or notice. If you wish to obtain a paper copy of any document or withdraw your consent to receive Disclosures electronically, contact us in writing at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. You will be charged a five dollar ($5.00) fee for the provision of each paper copy. The same fee will apply to customers who withdraw their consent to receive electronic disclosures and notices.

By checking the "Sign Here" box for Electronic Delivery of Disclosures on your Application, you acknowledge receipt of the Terms and Conditions governing your Mobiloans Credit Account, that you have read and agreed to these Terms and Conditions, and that you agree to receive Disclosures from us in electronic form.

---

### XXI. Electronic Payment Authorization

Mobiloans gives you the option to receive your Mobiloans Cash electronically and to repay amounts owing on your Mobiloans Credit Account electronically. If you choose to receive your Mobiloans Cash electronically and agree to repay electronically, then the following provisions apply.

### Consent to Pre-Authorized Electronic Payments

By choosing to receive your Mobiloans Cash electronically and agreeing to repay electronically selecting the "Electronic" option on the Select Cash Amount page, you agree to this Electronic Payment Authorization and authorize and request MobiLoans, LLC to initiate ACH debits to your Demand Deposit Account for your regularly scheduled AutoPay payments equal to the Minimum Payment Amount disclosed on each Periodic Statement in time for such payments to be received by MobiLoans, LLC on the payment Due Date set forth in each such Periodic Statement. For each payment, whenever an ACH debit entry to your Demand Deposit Account is returned to us for any reason, we may reinitiate an ACH debit entry to your Demand Deposit Account up to two additional times after our first presentation for each scheduled payment amount. If your payment is due on a non-business day, it will be processed on the next business day. This Electronic Payment Authorization is to remain in full force and effect until MobiLoans, LLC shall have received notification from you stating that you terminate this authorization in such time and in such manner as to afford MobiLoans, LLC a reasonable opportunity to act upon such notice.

This Electronic Payment Authorization applies to the repayment of all amounts owing on your Mobiloans Credit Account, including amounts outstanding on or before the date on which you agreed to this Electronic Payment Authorization. If your Mobiloans Credit

Account is in Default you agree we may initiate an ACH debit to your Demand Deposit Account for the entire amount you owe us (see <u>Section XII</u>, Default, above). This Electronic Payment Authorization is to remain in full force and effect for as long as your Mobiloans Credit Account is open. You may revoke this Electronic Payment Authorization by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If you revoke this Electronic Payment Authorization, you agree to make payments to us by another method acceptable to us as set forth in these Terms and Conditions. In no event shall any revocation of this Electronic Payment Authorization be effective with respect to payment entries processed by us prior to our receipt of a notice to withdraw such Electronic Payment Authorization.

Your bank may impose a fee if your Demand Deposit Account becomes overdrawn or if a payment is attempted against your Demand Deposit Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any fees you must pay as a result of payment being presented at your bank in connection with this Electronic Payment Authorization. Contact your bank for more information specific to your Demand Deposit Account.

You authorize us to verify and correct all information you have provided to us about your Demand Deposit Account, including, without limitation, past and/or current information about your bank, your bank routing and transit number and your Demand Deposit Account number.

This Electronic Payment Authorization is subject to the following provisions:

(1) Right to stop payment and procedure for doing so. If you have told us in advance to make payments out of your Demand Deposit Account, you can stop any of these payments by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, in time for us to receive your request by 4:00 p.m. Central Time at least 2 Business Days before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within fourteen (14) days after your call.

(2) Liability for failure to stop payment of preauthorized transfer. If you order us to stop a pre-authorized transfer by 4:00 p.m. Central Time at least two (2) Business Days before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) Notice of varying amounts. You agree that you will receive a notice at least ten (10) days before a payment is debited from your Demand Deposit Account in an amount that varies from the amount disclosed (a) in your periodic billing statement or (b) in your payment schedule on the My Account page.

This Electronic Payment Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in your Mobiloans Credit Account terms and conditions. This Electronic Payment Authorization does not constitute and is not intended to constitute a security interest under Tribal law.

## Error Resolution

In case of errors or questions about an AutoPay or electronic payment, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351.  We must hear from you no later than sixty (60) days after we sent the FIRST Periodic Statement on which the problem or error appeared.

- Tell us your name and account number;
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information; and
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) <u>Business Days</u>.

We will determine whether an error occurred within ten (10) <u>Business Days</u> after we hear from you and will correct any error promptly.  If we need more time, however, we may take up to 45 days to investigate your complaint or question.  If we decide to do this, we will credit your account within ten (10) <u>Business Days</u> for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.  If we ask you to put your complaint or question in writing and we do not receive it within ten (10) <u>Business Days</u>, we may not credit your account.

For errors involving new Accounts (Accounts that have been open less than forth-five (45) days), we may take up to ninety (90) days to investigate your complaint or question.  For new Accounts, we may take up to twenty (20) <u>Business Days</u> to credit your Account for the amount you think is in error.

You will be liable for any unauthorized Electronic Funds Transfer (EFT) that occurs more than sixty (60) days after transmittal of the first periodic statement showing the unauthorized EFT and before you provide written notice, provided that we establish that the unauthorized EFT would not have occurred had you notified us within the sixty (60) day period. If we are unable to prove that the unauthorized EFT would not have occurred with proper notification, you will not be liable for the disputed amount.

We will tell you the results within three (3) <u>Business Days</u> after completing our investigation.  If we decide that there was no error, we will send you a written explanation.  You may ask for copies of the documents that we used in our investigation.  If you need more information about our error-resolution procedures, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If provisional credit was provided, the amount will be debited from your account. We will notify you of the date and the amount of the debit.

**You acknowledge that you are not required to consent to receive funds or repay amounts owing on your Mobiloans Credit Account by ACH debits and credits to your Demand Deposit Account.  If**

> you authorize us to effect ACH debit entries to your Demand Deposit Account for your Account, you also agree that this Electronic Payment Authorization is to remain in full force and effect unless you terminate such authority.  If you terminate such authority, you agree to provide us with another means of payment acceptable to us in our sole discretion.

XXII. Credit Bureau

As part of the credit review process, we may obtain information about your credit history and standing from one or more consumer reporting agencies and/or other data providers. Once you have an account with us, we may also review your credit information for account monitoring purposes as permitted by the Fair Credit Reporting Act.

We are currently reporting loan transaction history to one or more major credit reporting agencies. We will report payment history from your account on a monthly basis. Because we report on a monthly basis, please allow up to thirty (30) days for a recent transaction to appear on your credit report. If you have a question, complaint, or dispute regarding information reported to a credit bureau, contact us at disputes@mobiloans.com, or call us at 877-836-1518, or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409 Marksville, LA 71351. Please provide, in writing, the specific information being disputed, a basis for the dispute, and include all documents that support the dispute. We will conduct an investigation with regards to the information provided within thirty (30) days of receipt. If it is determined that an error was made, we will immediately notify each consumer reporting agency we report to of the error and provide them with the correct information.

Mobiloans Line of Credit Account Terms and Conditions
Effective Ju**ly 3**, 2018 **– September 27, 2018**

MOBILOANS, LLC IS AN ENTITY OWNED AND OPERATED BY THE TUNICA-BILOXI TRIBE OF LOUISIANA. THE CREDIT ISSUED TO YOU AND INFORMATION PROVIDED UNDER THIS AGREEMENT BY MOBILOANS IS DONE SO SOLELY UNDER THE PROVISIONS OF LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND CERTAIN FEDERAL LAWS AS SPECIFIED IN SECTION XIX BELOW.

This Mobiloans Line of Credit Account Terms and Conditions (these "Terms and Conditions" or this "Agreement") govern your Mobiloans Credit Account. In this Agreement, "you" and "your" refer to those persons who have applied for and been approved for Mobiloans Credit. "We", "us", "our" or "Lender" refer to MobiLoans, LLC, a tribal lending entity wholly owned by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America that is operating within the Tunica-Biloxi Reservation, and possessing the inherent characteristics and immunities of the Tribal government. "Tribe" or "Tribal" refers to the Tunica-Biloxi Tribe of Louisiana. Each advance made by us hereunder is being made from the Tunica-Biloxi Reservation. These Terms and Conditions contain an arbitration provision. Unless you act promptly to reject the arbitration provision, it will have a substantial effect on your rights in the event of a dispute.

You should review these Terms and Conditions to fully understand how Mobiloans Credit works. If you have questions, you may contact Customer Support at 877-836-1518. You should retain a copy of these Terms and Conditions for your records.

<u>HIGH COST CREDIT DISCLOSURE:</u> MOBILOANS CREDIT IS AN EXPENSIVE FORM OF CREDIT. MOBILOANS CREDIT IS DESIGNED TO HELP CUSTOMERS MEET THEIR SHORT-TERM BORROWING NEEDS. THIS SERVICE IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER-TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS.

Please scroll down to read important information about rates, fees, and other cost information before submitting your application

<u>Truth-in-Lending Disclosures</u>

IMPORTANT INFORMATION REGARDING RATES, FEES, AND OTHER COST INFORMATION

| Annual Percentage Rate on Mobiloans Credit Advanced | **206.79% – 442.31%** |
|---|---|
| | This APR will vary based on the amount of the line of credit and the maximum number of billing cycles available for payment. Below are examples of some of our credit amounts with their respective APR. |

APR = ((Total Fees/Avg. Principal Balance)/Number of Billing Cycles)*Billing Cycles per year * 100

| Line of Credit Amount | Number of Billing Cycles (1 Billing Cycle = approximately 14 days or 26 per year) | Total Fees (Cash Advance and Fixed Finance Fees) | APR % (No Rewards Discount) | Rewards Level – Diamond APR % (65% reduction in Cash Advance Fees and Fixed Finance kCharges, see www.mobiloans.com/rewards for information on how to qualify) |
|---|---|---|---|---|
| $200 | 13 | $230 | 442.31% | 154.81% |
| $1,000 | 25 | $1600 | 320.00% | 112.00% |
| $1,300 | 38 | $2,859 | 293.23% | 102.63% |
| $1,500 | 50 | $4,025 | 273.59% | 95.76% |
| $2,500 | 60 | $6,064 | 206.79% | 72.38% |

Minimum Charge

- Fixed Finance Charge

Each Billing Cycle you will be charged a Fixed Finance Charge of:

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0-$10.00 | No charge |
| $10.01 - $100 | $10 |
| $100.01 - $200 | $25 |
| $200.01 - $300 | $35 |
| $300.01 - $400 | $45 |
| $400.01 - $600 | $65 |
| $600.01 - $900 | $95 |
| $900.01 - $1,000 | $105 |
| $1,000.01 - $1,400 | $110 |
| $1,400.01-$2,000 | $125 |
| $2,000.01-$2,500 | $135 |

Fees

| Transaction Fees | |
|---|---|
| • Cash Advance Fee | $3.00 for each $20.00 of Mobiloans Cash advanced, for draws of up to $500 |
| | $2.00 for each $20.00 of Mobiloans Cash advanced, for draws over $500 up to $1,000 |
| | $1.60 for each $20.00 of Mobiloans Cash advanced, for draws over $1,000 up to $1,400 |
| | $1.40 for each $20.00 of Mobiloans Cash advanced, for draws over $1,400 up to $2,000 |
| | $1.00 for each $20.00 of Mobiloans Cash advanced, for draws over $2,000 |

<u>How we will calculate your balance:</u> To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of new Mobiloans Cash advances made during the Billing Cycle.

<u>Billing Rights:</u> Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions.

See <u>Section VI</u> for further details on costs and charges and <u>Section XIV</u>
for further details on billing rights.

I. Definitions

"Account" and "Mobiloans Credit Account" mean your Mobiloans Credit relationship established under this Agreement. Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions.

"Application" or "Mobiloans Credit Application" means each initial and supplemental credit application you submitted to Lender in connection with establishing your Mobiloans Credit Account with Lender.

"AutoPay" means the automatic payment of the Minimum Payment Amount from your designated Demand Deposit Account.

"Billing Cycle" means the interval between the days or dates of regular Periodic Statements. All Pay Frequencies have at least two Billing Cycles per month. Bi-weekly and weekly paid customers will have up to twenty-six (26) Billing Cycles per year.

"Business Day" means any day a bank in Louisiana is open for business not including weekends or bank holidays.

"Cash Advance Fee" means the nonrefundable fee charged for each draw on your Mobiloans Credit Account, regardless of the time the Mobiloans Cash you receive from that draw is outstanding.

"Credit Limit" means the maximum amount you can borrow under your Mobiloans Credit Account. Your available credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges.

"Demand Deposit Account" means a bank checking account you have identified for distribution of Mobiloans Cash and/or collection of payments due pursuant to the terms of this Agreement.

"Due Date" means the date reflected on your periodic statement on which your payment is due. All Pay Frequencies have at least two Billing Cycles per month, and therefore at least two Due Dates per month. Bi-weekly and weekly paid customers will have up to twenty-six (26) Billing Cycles per year, and therefore up to twenty-six (26) Due Dates per year.

"Finance Charge" means Fixed Financed Charges and Cash Advance Fees.

"Fixed Finance Charge" means a minimum charge, calculated on a tiered level, based upon the unpaid principal balance in your Mobiloans Credit Account and charged to your Account each Billing Cycle that you have an unpaid balance.

"Minimum Payment Amount" means the minimum payment you agree to make each Billing Cycle, consisting of the Minimum Principal Amount and Cash Advance Fees and Fixed Finance Charges.

"Minimum Principal Amount" means that portion of your Minimum Payment Amount that is applied to the outstanding principal balance of your Mobiloans Credit Account. The formula for calculating the Minimum Principal Amount is set forth in <u>Section VII</u> below.

US2008 11999151 1

"Mobiloans Cash" means the amount of cash you receive from a draw under your Mobiloans Credit Account.

"Mobiloans Credit" means the line of credit governed by this Agreement that allows eligible customers to receive short-term cash draws under this Agreement.

"Pay Date" means the date that you submitted in your initial or updated Mobiloans Credit Application as the date on which you are paid wages or receive other sources of income or benefits.

"Pay Frequency" means the frequency you receive your income payments which are either, weekly, bi-weekly, semi-monthly, or monthly. If your Pay Frequency is weekly, your Pay Dates are considered to be bi-weekly for determining your Billing Cycle under this Agreement. If your Pay Frequency is monthly, your Pay Dates are considered to be semi-monthly for determining your Billing Cycle under this Agreement. All Pay Frequencies have at least two Billing Cycles per month and are required to remit at least two Minimum Payment Amounts per month.

"Periodic Statement" means the written statement issued for each Billing Cycle that describes, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, your new balance and your payment Due Date for that Billing Cycle.

"Tribal Law" means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America.

## II.  Eligibility for Mobiloans Credit

You may be eligible for Mobiloans Credit if you meet certain eligibility criteria established by us, which may change from time to time at our sole discretion. As of the date of this Agreement, the eligibility criteria are as follows:

- You have a regular source of income or benefits deposited to a qualified Demand Deposit Account;

- You are at least 18 years old (or at least 19 years old if you are a resident of Alabama or Nebraska);

- You meet credit underwriting standards established by the Lender;

- You have identified a qualified Demand Deposit Account on the Application;

- You authorize the Lender to initiate automated transfers from your qualified Demand Deposit Account(s) to repay amounts owed under this Agreement or you enroll for payments by mail, as described below;

- Your qualified Demand Deposit Account(s) are not frozen or subject to legal process (such as a garnishment order); and

- You are not in default of this Agreement.

## III. Establishing your Mobiloans Credit Account

Upon approval and verification by Lender of the information you submitted on your Application, your Mobiloans Credit Account will be established. Your Mobiloans Credit Account will be terminated if you do not request Mobiloans Cash for a period of 24 consecutive months. By applying for and using your Mobiloans Credit, you acknowledge that you have received a copy of this Agreement and that you understand and accept its terms and conditions. Access to Mobiloans Cash is subject to the eligibility criteria provided in this Agreement and your compliance with the terms of this Agreement.

You can obtain your current Credit Limit by: (a) logging in to your Mobiloans Credit Account online at https://www.mobiloans.com; (b) calling Customer Support at 877-836-1518; or (c) writing Mobiloans Customer Support at MobiLoans, LLC, **P.O. Box** 1409, Marksville, LA 71351.

## IV. Accessing your Account and Receiving Mobiloans Cash

Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions. Requests for Mobiloans Cash are made in increments of twenty dollars ($20.00). You may request Mobiloans Cash online at https://www.mobiloans.com. Aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Proceeds deposited to a qualified Demand Deposit Account may be effectuated via Automate Clearing House (ACH) or mailed by check. If your request was to receive cash via ACH and was received before 4:00 p.m. Central Time on a Business Day, your requested Mobiloans Cash may be available on the next day your financial institution holding your Demand Deposit Account is open for business. Whether you receive your Mobiloans Cash by check or ACH, always check with your financial institution to accurately determine when the money will be available for use.

You may cancel a request for Mobiloans Cash at no cost to you by calling Customer Support at 877-836-1518 within 5 days of requesting funds and, if you already received your Mobiloans Cash, you return the received Mobiloans Cash immediately as instructed by Customer Support. In the event that your draw of Mobiloans Cash will be funded by check and you desire to cancel your request, (a) if we have not mailed the check representing the Mobiloans Cash to you or (b) if you have not cashed the check representing the Mobiloans Cash, then we will cancel the check and your obligations with respect to that draw of Mobiloans Cash will be canceled. If you have cancelled funding three (3) times in the last twelve (12) months, additional requests to cancel funds will require management approval and may be declined. Draw Restrictions: As noted above, aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Additional draws may be restricted if you have not made one or more required Minimum Periodic Payments in full and on time, if we have reduced your Credit Limit as described in <u>Section V</u> or if your Account is not otherwise in good standing. If the outstanding principal amount of Mobiloans Cash at any time exceeds your Credit Limit for any reason, any such additional amounts will be subject to all provisions of this Agreement. Furthermore, any such excess amount outstanding will not increase your Credit Limit. In addition, if you have had an outstanding principal balance of Mobiloans Cash on your Account for at least thirty (30) consecutive months, then you may not obtain additional Mobiloans Cash until you pay down the balance of your Mobiloans Credit Account to zero dollars ($0). Once you have brought your Account balance to zero dollars ($0), your ability to draw Mobiloans Cash will be reinstated. See <u>Section VIII</u> below for further information on this pay down requirement and the reinstatement of your ability to draw Mobiloans Cash.

V.    Credit Limit

Your Credit Limit is the maximum amount that you may borrow under your Mobiloans Credit Account. Your Credit Limit is assigned by the Lender and is between two hundred dollars ($200) and two thousand five hundred dollars ($2,500). This Credit Limit is subject to change with changes in your Demand Deposit Account status and/or underwriting eligibility. Your available credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges. We reserve the right, at any time, and upon notice when required by Tribal Law or applicable federal law, to adjust your Credit Limit, including reducing it to zero dollars ($0), based on your use of Mobiloans Credit, your payment history with us, your moving to a state we do not service or we discontinue service in your state, and other factors, at the Lender's sole discretion. We also reserve the right to review your credit status at any time, including after obtaining credit reports and other credit information we believe to be relevant. Our review of such information may also result in our modifying your Credit

US2008 11999151 1

Limit, including reducing your Credit Limit to zero dollars ($0), or closing your Account.

## VI.   Costs and Charges

### Cash Advance Fee

We charge a Cash Advance Fee for each draw on your Mobiloans Credit Account, regardless of the period of time for which the Mobiloans Cash you receive from that draw is outstanding. The Cash Advance Fee is a FINANCE CHARGE. The Cash Advance Fee is assessed each time a draw is requested, and there is no grace period within which you may repay an advance and avoid payment of the related Cash Advance Fee. The amount of the Cash Advance Fee that will be assessed on a draw of Mobiloans Cash is as follows:

| Fees | |
|---|---|
| Cash Advance Fee | $3.00 for each $20.00 of Mobiloans Cash advanced, for draws of up to $500 |
| | $2.00 for each $20.00 of Mobiloans Cash advanced, for draws over $500 up to $1,000 |
| | $1.60 for each $20.00 of Mobiloans Cash advanced, for draws over $1,000 up to $1,400 |
| | $1.40 for each $20.00 of Mobiloans Cash advanced, for draws over $1,400 up to $2,000 |
| | $1.00 for each $20.00 of Mobiloans Cash advanced, for draws over $2,000 |

### Fixed Finance Charge

A Fixed Finance Charge will be assessed at the beginning of each Billing Cycle based on the unpaid principal balance of Mobiloans Cash at the end of the prior Billing Cycle, excluding the amount of any new Mobiloans Cash advanced during that Billing Cycle, in accordance with the table below. The Fixed Finance Charge is a FINANCE CHARGE. If you pay the entire balance of a Mobiloans Cash draw in full by the applicable Due Date specified in the Periodic Statement for the Billing Cycle in which such draw was made, you will not be charged a Fixed Finance Charge on the amount of such Mobiloans Cash advance.

US2008 11999151 1

| Minimum Charge | |
|---|---|
| • Fixed Finance Charge | Each Billing Cycle you will be charged a Fixed Finance charge, as follows: |

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0-$10.00 | No charge |
| $10.01 - $100 | $10 |
| $100.01 - $200 | $25 |
| $200.01 - $300 | $35 |
| $300.01 - $400 | $45 |
| $400.01 - $600 | $65 |
| $600.01 - $900 | $95 |
| $900.01 - $1,000 | $105 |
| $1,000.01 - $1,400 | $110 |
| $1,400.01-$2,000 | $125 |
| $2,000.01-$2,500 | $135 |

How we will calculate your balance: To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic

US2008 11999151 1

Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of new Mobiloans Cash advances made during the Billing Cycle.

<u>Billing Rights:</u> Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions. See <u>Section XIV</u> for further details on billing disputes.

VII.   Your Promise to Pay

You promise to pay the total of all outstanding Mobiloans Cash along with all accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement. You agree to make the Minimum Payment Amount shown on each Periodic Statement on or before the applicable Due Date for such payment. The Minimum Payment Amount consists of the Minimum Principal Payment and accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement. Payments are credited to your Account effective as of the day they are received.

You may experience a delay between the date of your payment and the time you are able to take additional Mobiloans Cash while we verify that sufficient funds are available and/or we receive credit for any payments drawn on another depository institution. This action will not result in more cost to you, but it may delay the availability and/or amount of your future Mobiloans Cash.

If you fail to pay the Minimum Payment Amount on or before the applicable Due Date, an AutoPay payment will automatically be deducted by us from your Demand Deposit Account (see <u>Section VIII</u> below) if you have authorized the AutoPay feature.

To minimize the amount of Finance Charges you may incur, you are encouraged to pay your Mobiloans Cash balances in full on or before the applicable Due Date. You also may make payments toward your unpaid balance at any time without penalty.

Your payment options are discussed more fully in <u>Section VIII</u> below.

Calculation of Minimum Principal Amount

The Minimum Principal Amount will be calculated using a percentage of the outstanding Mobiloans Cash balance immediately after the most recent draw, or a Minimum Principal Amount of sixteen dollars ($16), whichever is greater. See chart below for the applicable percentages to

calculate the Minimum Principal Amount.

| Calculation of Minimum Principal Amount | | |
|---|---|---|
| | Outstanding Mobiloans Cash balance immediately after the most recent Cash draw…. | Percentage or minimum amount of Mobiloans Cash balance to be included in the Minimum Payment Amount…… |
| | Up to $400 | $16 |
| | $400.01- $1099.99 | 4.0000% |
| | $1,100 - $1,399.99 | 2.6316% |
| | $1,400 - $1,999.99 | 2.0000% |
| | $2,000 - $2,500.00 | 1.6667% |

## VIII. Payment Options

**Payments in Full and Partial Payments:** You may pay your outstanding balance in full at any time. We also accept partial payments as further described in this <u>Section VIII.</u>

**AutoPay:** AutoPay is the automatic payment of the Minimum Payment Amount specified in the applicable Periodic Statement. If you elect to make AutoPay payments via ACH debit, we process an ACH payment from your Demand Deposit Account for the amount of each AutoPay payment so that such payment is received on the applicable Due Date. You do not need to agree to AutoPay as a condition to opening or using your Mobiloans Credit Account. If you have enrolled in the AutoPay feature, the payment of the Minimum Payment Amount will be made from your Demand Deposit Account unless you have otherwise paid the Minimum Payment Amount by other means by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. If you are an AutoPay customer and you remit a payment, whether by mail or electronically, that is received and processed before the AutoPay processing date and that results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement, then we will not process an AutoPay payment for that Periodic Statement. See <u>Section XXI</u> for more details.

**Borrower-Scheduled Electronic Payments:** You may schedule an electronic payment at any time up to the full amount of the outstanding balance of your Mobiloans Credit Account prior to the applicable Due Date. You may schedule these payments online at https://www.mobiloans.com, by calling Customer Support at 877-836-1518 or by mail. In order for an electronic payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on· the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue. See Section VI and Section VII above.

**Borrower-Scheduled Debit Payments:** Mobiloans may work with a third-party to enable you to schedule a payment using a debit card to pay up to the full amount of the outstanding balance (or any portion thereof) of your Mobiloans Credit Account at any time up to 4:00p.m. Central Time on the Business Day prior to the applicable Due Date. If applicable, you may schedule these payments online at https://www.mobiloans.com or by calling Customer Support at 877-836-1518. Once you provide Mobiloans with your debit card number, it will be securely stored with your Mobiloans Credit Account. If you provide a debit card number to Mobiloans, such debit card will not be used for any payment unless you schedule a payment or unless Mobiloans is unable to process your payment by your Due Date using the AutoPay feature. Please note that Mobiloans relies on third parties to provide this service and therefore reserves the right to terminate or suspend this service at any time. If you elect to pay your Mobiloans Credit Account via AutoPay or by mail, you can make an additional payment at any time using your debit card; however, providing a debit card to your Mobiloans Credit Account will not remove you from AutoPay or otherwise change your payment obligations. In order for a debit card payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue.

**Payments by Mail:** Extension of Mobiloans Credit is not conditioned on your repayment by electronic means of the amounts you owe. You may make payments by mail, using personal check, certified check or money order payable to "MobiLoans, LLC", and any such payment must be received at our payment address, P.O. Box 42917, Philadelphia, PA 19101, by 5:00 p.m. Eastern Time on the applicable payment Due Date. To send your check via overnight mail or courier service, please send to MobiLoans, LLC c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, Pennsylvania 19007 in time for Mobiloans to receive your payment prior to 5:00 p.m. Eastern Time on your Due Date. If you are an AutoPay customer and you remit a payment by mail, your AutoPay payment

for the current Billing Cycle will still process unless your mailed payment is received and processed by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date and results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement. If you remit payment by mail and such payment is received on a non-Business Day, your payment will be posted to your account on the day it is received.

**Check Conversion Notification:** When you provide a personal check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your personal check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. For questions, please call Customer Support at 877-836-1518.

**Required Paydown to Zero Dollars ($0) after Thirty (30) Months with an Outstanding Principal Balance of Mobiloans Cash:** As described in <u>Section IV,</u> if you have had an outstanding principal balance of Mobiloans Cash on your Mobiloans Credit Account for at least thirty (30) consecutive months, then your ability to initiate additional draws of Mobiloans Cash will be restricted until such time as you pay down the balance of your Mobiloans Credit Account to zero dollars ($0). Repayment of your outstanding balance to zero dollars ($0) can be made by paying the Minimum Payment Amount over the maximum term for the outstanding principal balance. Principal balances under one thousand one hundred dollars ($1,100.00) have a maximum bi-weekly term of up to twenty-five (25) Billing Cycles; principal balances between one thousand one hundred dollars ($1,100.00) and one thousand three hundred ninety-nine dollars and ninety-nine cents ($1,399.99) have a maximum bi-weekly term of thirty-eight (38) Billing Cycles; principal balances between one thousand four hundred dollars ($1,400.00) and one thousand nine hundred ninety-nine dollars and ninety-nine cents ($1,999.99) have a maximum bi-weekly term of fifty (50) Billing Cycles; and principal balances between two thousand dollars ($2,000.00) and two thousand five hundred dollars ($2,500.00) have a maximum bi-weekly term of sixty (60) Billing Cycles. You can pay off the outstanding balance in full or over a shorter time frame by scheduling additional electronic payments, sending additional payments by mail, paying more than the Minimum Payment Amount or just remitting a payment in full. Once you have paid in full, the outstanding balance of your Account, your ability to make draws of Mobiloans Cash, up to your Credit Limit, will be reinstated. Depending on the method by which you make the final payment that brings your Account balance to zero dollars ($0), it may take up to ten (10) Business

Days to process the payment and reinstate your ability to make draws of Mobiloans Cash.

Payment Extensions: You may extend or "push" a payment to a later date as is described herein. The maximum payment date that a payment may be extended will be the next scheduled payment date. If you choose to extend the payment to the maximum payment date, you will have two payments processed on that date (the extended payment and the current payment due). You may not extend two payments in a row. A payment that has been extended cannot be delayed a second time if the maximum number of days allowed was granted the first time.

Your ability to utilize this payment extension option is limited to a maximum of ninety-nine (99) times throughout the life of your account.

IX.    Application of Payments

All payments received (whether electronically or otherwise) will be applied first to any accrued and unpaid Cash Advance Fees and Fixed Finance Charges, and then to the outstanding principal balance of your Mobiloans Credit Account.

X.    Balance Computation Method

We calculate your balance as shown under "How we will calculate your balance" above.

XI.    Servicing Your Account

In connection with the servicing of your Mobiloans Credit Account, you hereby authorize us to contact you, including through the use of an autodialer, text messaging (if you have opted-in to text messaging in your Application), or prerecorded message, at any phone number you have provided to us in your Application or otherwise, including mobile phone numbers, and at any address and email address we have for you in our records or from other public and nonpublic databases we may lawfully access. Where allowed by law, we also may contact other individuals who may be able to provide updated employment, location, and contact information for you.

XII. Default

Events of Default: We may declare you to be in default of this Agreement at any time if: (a) you fail to comply with the terms of this Agreement, including your repayment obligations with respect to borrowings under your Mobiloans Credit Account; (b) we discover that any information you have provided to us is false or misleading in any material respect; (c) you have exceeded the limitations regarding the usage of your Mobiloans Credit Account as set forth in this Agreement; or (d) you have not provided us

with information we may request from time to time to satisfy our obligations to comply with the Bank Secrecy Act or other statutes or regulations that apply to us.

<u>Consequences of Default:</u> If an event of default has occurred, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us on your Mobiloans Credit Account, including, without limitation, all outstanding Mobiloans Cash and accrued Cash Advance Fees and Fixed Finance Charges; (b) withdraw money from your Demand Deposit Account that was not available when we tried to withdraw it at an earlier time, if you have authorized electronic payments; (c) we may suspend or terminate your right to access your Mobiloans Credit Account and to receive draws of Mobiloans Cash; and (d) pursue all legally available means under Tribal Law and applicable federal law to collect what you owe us. Except as expressly prohibited by Tribal Law and applicable federal law, by agreeing to these Terms and Conditions you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notices. In the event we declare all amounts owed on your Mobiloans Credit Account immediately due because you did not pay us, then, if you have authorized electronic payments, you further authorize us and our agents and representatives to withdraw money from your Demand Deposit Account in the full amount due. By choosing to exercise any one or more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to be paid back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payments and, if you fail to make those payment(s), we will consider you to be in default.

## XIII.   Periodic Statements

Not less than once each Billing Cycle during which there is (i) one or more Mobiloans Cash transactions, (ii) a payment is received, or (iii) an outstanding balance owing on your Mobiloans Credit Account, we will make available to you electronically, or if you specifically request, by mail, a Periodic Statement reflecting, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, and your new balance. In addition, we will provide you from time to time with any other disclosures or information required by this Agreement, Tribal Law, and applicable federal law.

Your Periodic Statements will be generated fourteen (14) days prior to the applicable Due Date for such Billing Cycle. A notification will be emailed to the email account you have on file in your Account, and your statement will be available electronically at <u>https://www.mobiloans.com.</u> You may choose not to receive your statements

US2008 11999151 1

electronically. If you choose to receive paper statements, please notify us by writing to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351.

## XIV.  Billing Rights

---

### YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under Tribal law and applicable federal law.

---

## What To Do If You Find a Mistake on Your Periodic Statement

If you think there is an error on your Periodic Statement, write to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, contact us electronically at https://www.mobiloans.com, or call us at 877-836-1518.

In your correspondence, give us the following information:

- Account information - your name and Account number;
- Dollar amount - the dollar amount of the suspected error; and
- Description of problem - if you think there is an error on your Periodic Statement, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within sixty (60) days after the error first appeared on your Periodic Statement; and
- By 4:00 p.m. Central Time at least two (2) Business Days before an automated payment is scheduled if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do no send in the required written information, we are not required to investigate any potential errors and you may have to pay the amount in question.

## What Will Happen After We Receive Your Correspondence

When we receive your correspondence, we must do two things:

1. Within thirty (30) days of receiving your correspondence, we must tell you that we received your correspondence. We will also tell you if we have already corrected the error.

2. Within ninety (90) days of receiving your correspondence, we must either correct the error or explain to you why we believe the Periodic Statement is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your Periodic Statement, and we may continue to charge Finance Charges on that amount in accordance with this Agreement.
- While you do not have to pay the amount in question, you are responsible for the remainder of the outstanding balance of your Account.
- We can apply any unpaid amount against your Credit Limit.

After we finish our investigation, one of two things will happen:

1. If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.

2. If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable Finance Charges on that amount in accordance with this Agreement. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your Periodic Statement is wrong, you must write to us within ten (10) days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your Periodic Statement. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first fifty dollars ($50) of the amount you question even if your Periodic Statement is correct.

XV. Change in Terms

We reserve the right to change the terms of this Agreement at any time with notice to you as required by Tribal Law and applicable federal law. Such changes may apply to Mobiloans Credit and any current amounts of outstanding Mobiloans Cash as well as to future Mobiloans Cash balances. By continuing to use the Mobiloans Credit service, you are accepting the change in terms. You may contact Mobiloans Customer Support at any time and request that your Mobiloans Credit Account be closed. If you close your account, you will still be required to repay all amounts that you owe on your Mobiloans Credit Account pursuant to the continuing terms of the Agreement.

## XVI. Mobiloans Rewards Program

As a MobiLoans, LLC customer, you are automatically enrolled in the MobiLoans, LLC Rewards Program ("Mobiloans Rewards"). Mobiloans Rewards terms and conditions may be found at https://www.mobiloans.com/Rewards and are hereby incorporated into these Terms and Conditions as if fully set out herein.

## XVII. Transfer of Rights; Maintenance of Register

We may assign or transfer this Agreement, or any of our rights hereunder, to another person or entity without notice or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and applicable federal law. MobiLoans, LLC, (the "Registrar") acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located within the geographic boundaries of the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner and assignees, and the amounts of the principal, interest, fees, charges and other amounts owing to each from time to time pursuant to the terms of this Agreement. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal, interest, fees, charges and other amounts for all purposes of this Agreement and any rights hereunder, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. In addition to the foregoing, the Registrar shall include on the Register the names and addresses of those persons holding participation interests in the receivables outstanding from time to time in the Accounts of which it has notice. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the Account and not to you.

## XVIII. Dispute Resolution; Arbitration

<u>Notice of Waiver of Jury Trial and Arbitration Agreement</u>

This Agreement includes a binding Waiver of Jury Trial and Arbitration Agreement.  You may opt out of the Waiver of Jury Trial and Arbitration Agreement by following the instructions below.

RIGHT TO OPT OUT.  IF YOU DO NOT WISH YOUR ACCOUNT TO BE SUBJECT TO THE FOLLOWING WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT, YOU MUST ADVISE US IN WRITING AT MOBILOANS, LLC, P.O. BOX 1409, MARKSVILLE, LA 71351 OR VIA EMAIL AT <u>SUPPORT@MOBILOANS.COM</u>.  YOU MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION.  YOU MUST GIVE WRITTEN NOTICE; IT IS NOT SUFFICIENT TO TELEPHONE US.  WE MUST RECEIVE YOUR LETTER OR E-MAIL WITHIN SIXTY (60) DAYS AFTER THE DATE YOUR MOBILOANS CREDIT ACCOUNT IS ESTABLISHED OR YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE.  IN THE EVENT YOU OPT OUT OF THE ARBITRATION AGREEMENT, ANY DISPUTES UNDER THIS AGREEMENT OR RELATED TO YOUR MOBILOANS CREDIT ACCOUNT SHALL NONETHELESS BE GOVERNED UNDER THE LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND APPLICABLE FEDERAL LAW AND MUST BE BROUGHT WITHIN THE TRIBAL COURT SYSTEM, TO WHOSE JURISDICTION YOU IRREVOCABLY CONSENT FOR THE PURPOSES OF THIS AGREEMENT.

<u>WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT</u>

In this Waiver of Jury Trial and Arbitration Agreement (this "Arbitration Agreement"), "Tribe" or "Tribal" refers to the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America, and "Tribal Law" means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana.

<u>PLEASE READ THIS WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT CAREFULLY</u>.  Unless you exercise your right to opt-out of arbitration in the manner described above, any dispute related to this Agreement will be resolved by binding arbitration.  Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding.  In arbitration, a dispute is resolved by an arbitrator instead of a judge or jury.  Arbitration procedures are simpler and more limited than court procedures.  Any arbitration will be limited to addressing your dispute individually and will not be part of a class-wide or consolidated arbitration proceeding.

Agreement to Arbitrate. You agree that any Dispute (defined below) will be resolved by arbitration in accordance with Tribal Law and applicable federal law.

Arbitration Defined. Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim related in any way to your Mobiloans Credit Account or your application for a Mobiloans Credit Account, involving you and Lender, its marketing agent, collection agent, any subsequent holder of your Mobiloans Credit Account, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder" for purposes of this Agreement). The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of your Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the Mobiloans Credit Account and the handling or servicing of your Account whether such Dispute is based on a Tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement.

You acknowledge and agree that by entering into this Arbitration Agreement:

(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR ANY HOLDER; and

(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

Choice of Arbitrator. Any party to a Dispute, including a Holder, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of the Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) https://www.adr.org; JAMS (1-800-352-5267) https://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The chosen arbitrator will utilize the rules and procedures applicable to consumer disputes of the chosen arbitration organization, but only to the extent that those rules and procedures are consistent with the terms of this Agreement, Tribal Law and applicable federal law. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within

twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization in accordance with Tribal Law or applicable federal law. Any arbitration under this Agreement may be conducted either on Tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than Tribal Law or applicable federal law.

Cost of Arbitration. We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by Tribal Law or applicable federal law, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by Tribal Law or applicable federal law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action. YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under Tribal Law and applicable federal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual Disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration is to be determined by the arbitrator. If the arbitrator fails or refuses to enforce the waiver of class-wide arbitration, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable court rules and procedures and may be enforced by such court through any measures or reciprocity provisions available. As an integral component of accepting this Agreement, you consent to the jurisdiction of the Tribal courts for purposes of this Agreement.

Judicial Review. The arbitrator will apply the terms of this Agreement, including the Arbitration Agreement, Tribal Law, and federal law as appropriate. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If allowed by Tribal or federal statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. The arbitrator will make written findings and the arbitrator's award may be filed with the Tribal court. The arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by the Tribal court upon judicial review.

Other Provisions. This Arbitration Agreement will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Account, or any amounts owed on my account, to any other person or entity. This Arbitration Agreement benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Agreement continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Agreement survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Agreement is held invalid, the remainder shall remain in effect.

XIX. Governing Law

This Agreement and the Arbitration Agreement are governed by the laws of the Tunica-Biloxi Tribe of Louisiana, the Indian Commerce Clause of the United States Constitution, the Federal Arbitration Act ("FAA"), and any applicable federal law necessary to uphold federal substantive statutory rights or.

XX. Electronic Signature and Electronic Records

We are required by law to provide you with initial disclosures, Periodic Statements and certain other disclosures and notices (collectively, "Disclosures"). By checking the "Sign Here" box on the Application, that action will signify your agreement that this Agreement and the Disclosures we provide to you constitute electronic records under the Electronic Signatures in Global and National Commerce Act (15 U.S.C. Sections 7001 and following) in a manner consistent with Tribal Law and applicable federal law.

By checking the "Sign Here" box on your Application, you agree to receive all such disclosures electronically. To access these Disclosures, in most cases, we will provide you with such disclosures at our web site or the web sites of our vendors. By checking the box, you acknowledge that you are able to electronically access the Mobiloans website (https://www.mobiloans.com), and to electronically access and print the periodic statements and other Disclosures we will be providing to you in connection with your Mobiloans Credit Account. We will notify you of Disclosures by email and will provide copies of any Disclosures to you in electronic form by including them in the email, posting them on the Mobiloans website or by providing a link to them on the website. In order to access, view and retain Disclosures in electronic form, you must have a computer with Internet

access. The minimum system requirements include software that supports 128-bit security encryption and Adobe Reader® version 9.0.

Your agreement to receive disclosures and notices from us in electronic form does not mean you cannot obtain a paper copy of any such disclosure or notice. If you wish to obtain a paper copy of any document or withdraw your consent to receive Disclosures electronically, contact us in writing at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. You will be charged a five dollar ($5.00) fee for the provision of each paper copy. The same fee will apply to customers who withdraw their consent to receive electronic disclosures and notices.

By checking the "Sign Here" box for Electronic Delivery of Disclosures on your Application, you acknowledge receipt of the Terms and Conditions governing your Mobiloans Credit Account, that you have read and agreed to these Terms and Conditions, and that you agree to receive Disclosures from us in electronic form.

---

XXI. Electronic Payment Authorization

Mobiloans gives you the option to receive your Mobiloans Cash electronically and to repay amounts owing on your Mobiloans Credit Account electronically. If you choose to receive your Mobiloans Cash electronically and agree to repay electronically, then the following provisions apply.

Consent to Pre-Authorized Electronic Payments

By choosing to receive your Mobiloans Cash electronically and agreeing to repay electronically selecting the "Electronic" option on the Select Cash Amount page, you agree to this Electronic Payment Authorization and authorize and request MobiLoans, LLC to initiate ACH debits to your Demand Deposit Account for your regularly scheduled AutoPay payments equal to the Minimum Payment Amount disclosed on each Periodic Statement in time for such payments to be received by MobiLoans, LLC on the payment Due Date set forth in each such Periodic Statement. For each payment, whenever an ACH debit entry to your Demand Deposit Account is returned to us for any reason, we may reinitiate an ACH debit entry to your Demand Deposit Account up to two additional times after our first presentation for each scheduled payment amount. If your payment is due on a non-business day, it will be processed on the next business day. This Electronic Payment Authorization is to remain in full force and effect until MobiLoans, LLC shall have received notification from you stating that you terminate this authorization in such time and in such manner as to afford MobiLoans, LLC a reasonable opportunity to act upon such notice.

This Electronic Payment Authorization applies to the repayment of all amounts owing on your Mobiloans Credit Account, including amounts outstanding on or before the date on which you agreed to this Electronic Payment Authorization. If your Mobiloans Credit

Account is in Default you agree we may initiate an ACH debit to your Demand Deposit Account for the entire amount you owe us (see <u>Section XII</u>, Default, above). This Electronic Payment Authorization is to remain in full force and effect for as long as your Mobiloans Credit Account is open. You may revoke this Electronic Payment Authorization by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If you revoke this Electronic Payment Authorization, you agree to make payments to us by another method acceptable to us as set forth in these Terms and Conditions. In no event shall any revocation of this Electronic Payment Authorization be effective with respect to payment entries processed by us prior to our receipt of a notice to withdraw such Electronic Payment Authorization.

Your bank may impose a fee if your Demand Deposit Account becomes overdrawn or if a payment is attempted against your Demand Deposit Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any fees you must pay as a result of payment being presented at your bank in connection with this Electronic Payment Authorization. Contact your bank for more information specific to your Demand Deposit Account.

You authorize us to verify and correct all information you have provided to us about your Demand Deposit Account, including, without limitation, past and/or current information about your bank, your bank routing and transit number and your Demand Deposit Account number.

This Electronic Payment Authorization is subject to the following provisions:

(1) Right to stop payment and procedure for doing so. If you have told us in advance to make payments out of your Demand Deposit Account, you can stop any of these payments by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, in time for us to receive your request by 4:00 p.m. Central Time at least 2 Business Days before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within fourteen (14) days after your call.

(2) Liability for failure to stop payment of preauthorized transfer. If you order us to stop a pre-authorized transfer by 4:00 p.m. Central Time at least two (2) Business Days before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) Notice of varying amounts. You agree that you will receive a notice at least ten (10) days before a payment is debited from your Demand Deposit Account in an amount that varies from the amount disclosed (a) in your periodic billing statement or (b) in your payment schedule on the My Account page.

This Electronic Payment Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in your Mobiloans Credit Account terms and conditions. This Electronic Payment Authorization does not constitute and is not intended to constitute a security interest under Tribal law.

## Error Resolution

In case of errors or questions about an AutoPay or electronic payment, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. We must hear from you no later than sixty (60) days after we sent the FIRST Periodic Statement on which the problem or error appeared.

- Tell us your name and account number;
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information; and
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) <u>Business Days</u>.

We will determine whether an error occurred within ten (10) <u>Business Days</u> after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) <u>Business Days</u> for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) <u>Business Days</u>, we may not credit your account.

For errors involving new Accounts (Accounts that have been open less than forth-five (45) days), we may take up to ninety (90) days to investigate your complaint or question. For new Accounts, we may take up to twenty (20) <u>Business Days</u> to credit your Account for the amount you think is in error.

You will be liable for any unauthorized Electronic Funds Transfer (EFT) that occurs more than sixty (60) days after transmittal of the first periodic statement showing the unauthorized EFT and before you provide written notice, provided that we establish that the unauthorized EFT would not have occurred had you notified us within the sixty (60) day period. If we are unable to prove that the unauthorized EFT would not have occurred with proper notification, you will not be liable for the disputed amount.

We will tell you the results within three (3) <u>Business Days</u> after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation. If you need more information about our error-resolution procedures, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If provisional credit was provided, the amount will be debited from your account. We will notify you of the date and the amount of the debit.

**You acknowledge that you are not required to consent to receive funds or repay amounts owing on your Mobiloans Credit Account by ACH debits and credits to your Demand Deposit Account. If**

you authorize us to effect ACH debit entries to your Demand Deposit Account for your Account, you also agree that this Electronic Payment Authorization is to remain in full force and effect unless you terminate such authority.  If you terminate such authority, you agree to provide us with another means of payment acceptable to us in our sole discretion.

XXII. Credit Bureau

As part of the credit review process, we may obtain information about your credit history and standing from one or more consumer reporting agencies and/or other data providers. Once you have an account with us, we may also review your credit information for account monitoring purposes as permitted by the Fair Credit Reporting Act.

We are currently reporting loan transaction history to one or more major credit reporting agencies. We will report payment history from your account on a monthly basis. Because we report on a monthly basis, please allow up to thirty (30) days for a recent transaction to appear on your credit report. If you have a question, complaint, or dispute regarding information reported to a credit bureau, contact us at disputes@mobiloans.com, or call us at 877-836-1518, or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409 Marksville, LA 71351. Please provide, in writing, the specific information being disputed, a basis for the dispute, and include all documents that support the dispute. We will conduct an investigation with regards to the information provided within thirty (30) days of receipt. If it is determined that an error was made, we will immediately notify each consumer reporting agency we report to of the error and provide them with the correct information.

Mobiloans Line of Credit Account Terms and Conditions Effective May 24, 2017 - July 2, 2018

**MOBILOANS, LLC IS AN ENTITY OWNED AND OPERATED BY THE TUNICA-BILOXI TRIBE OF LOUISIANA. THE CREDIT ISSUED TO YOU AND INFORMATION PROVIDED UNDER THIS AGREEMENT BY MOBILOANS IS DONE SO SOLELY UNDER THE PROVISIONS OF LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND CERTAIN FEDERAL LAWS AS SPECIFIED IN SECTION XIX BELOW.**

This Mobiloans Line of Credit Account Terms and Conditions (these *"Terms and Conditions"* or this *"Agreement"*) govern your Mobiloans Credit Account. In this Agreement, "you" and "your" refer to those persons who have applied for and been approved for Mobiloans Credit. *"We", "us", "our" or "Lender"* refer to MobiLoans, LLC, a tribal lending entity wholly owned by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America that is operating within the Tunica-Biloxi Reservation, and possessing the inherent characteristics and immunities of the Tribal government. *"Tribe"* or *"Tribal"* refers to the Tunica-Biloxi Tribe of Louisiana. Each advance made by us hereunder is being made from the Tunica-Biloxi Reservation. **These Terms and Conditions contain an arbitration provision. Unless you act promptly to reject the arbitration provision, it will have a substantial effect on your rights in the event of a dispute.**

You should review these Terms and Conditions to fully understand how Mobiloans Credit works. If you have questions, you may contact Customer Support at 877-836-1518. You should retain a copy of these Terms and Conditions for your records.

**HIGH COST CREDIT DISCLOSURE:** MOBILOANS CREDIT IS AN EXPENSIVE FORM OF CREDIT. MOBILOANS CREDIT IS DESIGNED TO HELP CUSTOMERS MEET THEIR SHORT-TERM BORROWING NEEDS. THIS SERVICE IS NOT INTENDED TO PROVIDE A SOLUTION FOR LONGER-TERM CREDIT OR OTHER FINANCIAL NEEDS. ALTERNATIVE FORMS OF CREDIT MAY BE LESS EXPENSIVE AND MORE SUITABLE FOR YOUR FINANCIAL NEEDS.

Please scroll down to read important information about rates, fees, and other cost information before submitting your application.

**Truth-in-Lending Disclosures**

**IMPORTANT INFORMATION REGARDING RATES, FEES, AND OTHER COST INFORMATION**

| Annual Percentage Rate<br>on Mobiloans Credit Advanced | **==206.73% - 425.45%==** |
|---|---|
| | **This APR will vary based on the amount of the line of credit and the maximum number of billing cycles available for payment. Below are examples of some of our credit amounts with their respective APR.** |
| | APR = ((Total Fees/Avg. Principal Balance)/Number of Billing Cycles) * Billing Cycles per year * 100 |

| Line of Credit Amount | Number of Billing Cycles (1 Billing Cycle = approximately 14 days or 26 per year) | Total Fees (Cash Advance and Fixed Finance Fees) | APR % (No Rewards Discount) | Rewards Level – Diamond (80% reduction in Cash Advance Fees and Fixed Finance Charges) |
|---|---|---|---|---|
| $200 | 10 | $180 | 425.45% | 85.09% |
| $1,000 | 20 | $1,265 | 313.24% | 62.65% |
| $1,500 | 40 | $3,215 | 271.84% | 54.37% |
| $2,500 | 48 | $4,870 | 206.73% | 41.35% |

**Minimum Charge**
- *Fixed Finance Charge*

Each Billing Cycle you will be charged a Fixed Finance Charge of:

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0 | No charge |

| $.01-$100 | $10 |
| --- | --- |
| $100.01-$200 | $25 |
| $200.01-$300 | $35 |
| $300.01-$400 | $45 |
| $400.01-$600 | $65 |
| $600.01-$900 | $95 |
| $900.01-$1,000 | $105 |
| $1,000.01-$1,400 | $110 |
| $1,400.01-$2,000 | $125 |
| $2,000.01-$2,500 | $135 |

### Fees

**Transaction Fees**
- *Cash Advance Fee*

**$3.00** for each **$20.00** of Mobiloans Cash advanced, **for draws of up to $500**

**$2.00** for each **$20.00** of Mobiloans Cash advanced, **for draws over $500 up to $1,000**

**$1.60** for each **$20.00** of Mobiloans Cash advanced, **for draws over $1,000 up to $1,400**

**$1.40** for each **$20.00** of Mobiloans Cash advanced, **for draws over $1,400 up to $2,000**

**$1.00** for each **$20.00** of Mobiloans Cash advanced, **for draws over $2,000**

**How we will calculate your balance:** To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of

new Mobiloans Cash advances made during the Billing Cycle.IV.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions.

See <u>Section VI</u> for further details on costs and charges and <u>Section XIV</u> for further details on billing rights.

## I. Definitions

*"Account"* and *"Mobiloans Credit Account"* mean your Mobiloans Credit relationship established under this Agreement. Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions.

*"Application"* or *"Mobiloans Credit Application"* means each initial and supplemental credit application you submitted to Lender in connection with establishing your Mobiloans Credit Account with Lender.

*"AutoPay"* means the automatic payment of the Minimum Payment Amount from your designated Demand Deposit Account.

*"Billing Cycle"* means the interval between the days or dates of regular Periodic Statements. All Pay Frequencies have at least two Billing Cycles per month. Bi-weekly and weekly paid customers will have up to 26 Billing Cycles per year.

*"Business Day"* means any day a bank in Louisiana is open for business not including weekends or bank holidays.

*"Cash Advance Fee"* means the nonrefundable fee charged for each draw on your Mobiloans Credit Account, regardless of the time the Mobiloans Cash you receive from that draw is outstanding.

*"Credit Limit"* means the maximum amount you can borrow under your Mobiloans Credit Account. Your available credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges.

*"Demand Deposit Account"* means a bank checking account you have identified for distribution of Mobiloans Cash and/or collection of payments due pursuant to the terms of this Agreement.

*"Due Date"* means the date reflected on your periodic statement on which your payment is due. All Pay Frequencies have at least two Billing Cycles per month, and therefore at least two Due Dates per month. Bi-weekly and weekly paid customers will have up to 26 Billing Cycles per year, and therefore up to 26 Due Dates per year.

*"Finance Charge"* means Fixed Financed Charges and Cash Advance Fees.

*"Fixed Finance Charge"* means a minimum charge, calculated on a tiered level, based upon the unpaid principal balance in your Mobiloans Credit Account and charged to your Account each Billing Cycle that you have an unpaid balance.

*"Minimum Payment Amount"* means the minimum payment you agree to make each Billing Cycle, consisting of the Minimum Principal Amount and Cash Advance Fees and Fixed Finance Charges.

*"Minimum Principal Amount"* means that portion of your Minimum Payment Amount that is applied to the

outstanding principal balance of your Mobiloans Credit Account. The formula for calculating the Minimum Principal Amount is set forth in <u>Section VII</u> below.

*"Mobiloans Cash"* means the amount of cash you receive from a draw under your Mobiloans Credit Account.

*"Mobiloans Credit"* means the line of credit governed by this Agreement that allows eligible customers to receive short-term cash draws under this Agreement.

*"Pay Date"* means the date that you submitted in your initial or updated Mobiloans Credit Application as the date on which you are paid wages or receive other sources of income or benefits.

*"Pay Frequency"* means the frequency you receive your income payments which are either, weekly, bi-weekly, semi-monthly, or monthly. If your Pay Frequency is weekly, your Pay Dates are considered to be bi-weekly for determining your Billing Cycle under this Agreement. If your Pay Frequency is monthly, your Pay Dates are considered to be semi-monthly for determining your Billing Cycle under this Agreement. All Pay Frequencies have at least two Billing Cycles per month and are required to remit at least two Minimum Payment Amounts per month.

*"Periodic Statement"* means the written statement issued for each Billing Cycle that describes, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, your new balance and your payment Due Date for that Billing Cycle.

*"Tribal Law"* means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America.

## II. Eligibility for Mobiloans Credit

You may be eligible for Mobiloans Credit if you meet certain eligibility criteria established by us, which may change from time to time at our sole discretion. As of the date of this Agreement, the eligibility criteria are as follows:

- You have a regular source of income or benefits deposited to a qualified Demand Deposit Account;
- You are at least 18 years old (or at least 19 years old if you are a resident of Alabama or Nebraska);
- You meet credit underwriting standards established by the Lender;
- You have identified a qualified Demand Deposit Account on the Application;
- You authorize the Lender to initiate automated transfers from your qualified Demand Deposit Account(s) to repay amounts owed under this Agreement or you enroll for payments by mail, as described below;
- Your qualified Demand Deposit Account(s) are not frozen or subject to legal process (such as a garnishment order); and
- You are not in default of this Agreement.

## III. Establishing your Mobiloans Credit Account

Upon approval and verification by Lender of the information you submitted on your Application, your Mobiloans Credit Account will be established. Your Mobiloans Credit Account will be terminated if you do not request Mobiloans Cash for a period of 24 consecutive months. By applying for and using your

Mobiloans Credit, you acknowledge that you have received a copy of this Agreement and that you understand and accept its terms and conditions. Access to Mobiloans Cash is subject to the eligibility criteria provided in this Agreement and your compliance with the terms of this Agreement.

You can obtain your current Credit Limit by: (a) logging in to your Mobiloans Credit Account online at https://www.mobiloans.com; (b) calling Customer Support at 877-836-1518; or (c) writing Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351.

## IV. Accessing your Account and Receiving Mobiloans Cash

Your Mobiloans Credit Account is an open-end line of credit pursuant to which you may borrow, repay and re-borrow amounts from time to time, up to your Credit Limit, subject to your continuing eligibility and these Terms and Conditions. Requests for Mobiloans Cash are made in increments of $20.00. You may request Mobiloans Cash online at https://www.mobiloans.com. Aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Proceeds deposited to a qualified Demand Deposit Account may be effectuated via Automate Clearing House (ACH) or mailed by check. If your request was to receive cash via ACH and was received before 4:00 p.m. Central Time on a Business Day, your requested Mobiloans Cash may be available on the next day your financial institution holding your Demand Deposit Account is open for business. Whether you receive your Mobiloans Cash by check or ACH, always check with your financial institution to accurately determine when the money will be available for use.

You may cancel a request for Mobiloans Cash at no cost to you by calling Customer Support at 877-836-1518 within 5 days of requesting funds and, if you already received your Mobiloans Cash, you return the received Mobiloans Cash immediately as instructed by Customer Support. In the event that your draw of Mobiloans Cash will be funded by check and you desire to cancel your request, (a) if we have not mailed the check representing the Mobiloans Cash to you or (b) if you have not cashed the check representing the Mobiloans Cash, then we will cancel the check and your obligations with respect to that draw of Mobiloans Cash will be canceled.

*Draw Restrictions:* As noted above, aggregate Mobiloans Cash requests may not exceed your Credit Limit, and individual draws are limited to the availability under your Account. Additional draws may be restricted if you have not made one or more required Minimum Periodic Payments in full and on time, if we have reduced your Credit Limit as described in Section V or if your Account is not otherwise in good standing. If the outstanding principal amount of Mobiloans Cash at any time exceeds your Credit Limit for any reason, any such additional amounts will be subject to all provisions of this Agreement. Furthermore, any excess amount outstanding will not increase your Credit Limit. In addition, if you have had an outstanding principal balance of Mobiloans Cash on your Account for at least 24 consecutive months, then you may not obtain additional Mobiloans Cash until you pay down the balance of your Mobiloans Credit Account to $0. Once you have brought your Account balance to $0, your ability to draw Mobiloans Cash will be reinstated. See Section VIII below for further information on this pay down requirement and the reinstatement of your ability to draw Mobiloans Cash.

## V. Credit Limit

Your Credit Limit is the maximum amount that you may borrow under your Mobiloans Credit Account. Your Credit Limit is assigned by the Lender and is between $20 and $2,500. This Credit Limit is subject to change with changes in your Demand Deposit Account status and/or underwriting eligibility. Your available

credit is based on the outstanding principal balance of Mobiloans Cash and is not reduced by accrued Cash Advance Fees or Fixed Finance Charges. We reserve the right, at any time, and upon notice when required by Tribal Law or applicable federal law, to adjust your Credit Limit, including reducing it to $0, based on your use of Mobiloans Credit, your payment history with us, your moving to a state we do not service or we discontinue service in your state, and other factors, at the Lender's sole discretion. We also reserve the right to review your credit status at any time, including after obtaining credit reports and other credit information we believe to be relevant. Our review of such information may also result in our modifying your Credit Limit, including reducing your Credit Limit to $0, or closing your Account.

## VI. Costs and Charges

### Cash Advance Fee

We charge a Cash Advance Fee for each draw on your Mobiloans Credit Account, regardless of the period of time for which the Mobiloans Cash you receive from that draw is outstanding. The Cash Advance Fee is a **FINANCE CHARGE.** The Cash Advance Fee is assessed each time a draw is requested, and there is no grace period within which you may repay an advance and avoid payment of the related Cash Advance Fee. The amount of the Cash Advance Fee that will be assessed on a draw of Mobiloans Cash is as follows:

| Fees |
| --- |
| *Cash Advance Fee* |
| **$3.00** for each **$20.00** of Mobiloans Cash advanced, **for draws of up to $500** |
| **$2.00** for each **$20.00** of Mobiloans Cash advanced, **for draws over $500 up to $1,000** |
| **$1.60** for each **$20.00** of Mobiloans Cash advanced, **for draws over $1,000 up to $1,400** |
| **$1.40** for each **$20.00** of Mobiloans Cash advanced, **for draws over $1,400 up to $2,000** |
| **$1.00** for each **$20.00** of Mobiloans Cash advanced, **for draws over $2,000** |

### Fixed Finance Charge

A Fixed Finance Charge will be assessed at the beginning of each Billing Cycle based on the unpaid principal balance of Mobiloans Cash at the end of the prior Billing Cycle, excluding the amount of any new Mobiloans Cash advanced during that Billing Cycle, in accordance with the table below. The Fixed Finance Charge is a **FINANCE CHARGE.** If you pay the entire balance of a Mobiloans Cash draw in full by the applicable Due Date specified in the Periodic Statement for the Billing Cycle in which such draw was made, you will not be charged a Fixed Finance Charge on the amount of such Mobiloans Cash advance.

**Minimum Charge**
  - *Fixed Finance Charge*

Each Billing Cycle you will be charged a Fixed Finance Charge, as follows:

| If the principal balance as of the last day of your prior Billing Cycle, excluding the amount of new Mobiloans Cash advances made during that Billing Cycle was | ...your Fixed Finance Charge will be: |
|---|---|
| $0 | No charge |
| $.01-$100 | **$10** |
| $100.01-$200 | **$25** |
| $200.01-$300 | **$35** |
| $300.01-$400 | **$45** |
| $400.01-$600 | **$65** |
| $600.01-$900 | **$95** |
| $900.01-$1,000 | **$105** |
| $1,000.01-$1,400 | **$110** |
| $1,400.01-$2,000 | **$125** |
| $2,000.01-$2,500 | **$135** |

**How we will calculate your balance:** To calculate the total balance of your Account, at the beginning of each Billing Cycle we subtract all payments and credits made to your Account. Then we will add to your existing unpaid balance the applicable Fixed Finance Charge, the amount of any Mobiloans Cash draws made since your last Periodic Statement, and any applicable Cash Advance Fees for draws of Mobiloans Cash advanced during that Billing Cycle. Fixed Finance Charges are imposed based on the outstanding principal balance of Mobiloans Cash as of the end of the applicable Billing Cycle, excluding the amount of new Mobiloans Cash advances made during the Billing Cycle.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in these Terms and Conditions. See Section XIV for further details on billing disputes.

**VII. Your Promise to Pay**

You promise to pay the total of all outstanding Mobiloans Cash along with all accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement.

You agree to make the Minimum Payment Amount shown on each Periodic Statement on or before the applicable Due Date for such payment. The Minimum Payment Amount consists of the Minimum Principal Payment and accrued Cash Advance Fees and Fixed Finance Charges as described in this Agreement. Payments are credited to your Account effective as of the day they are received.

You may experience a delay between the date of your payment and the time you are able to take additional Mobiloans Cash while we verify that sufficient funds are available and/or we receive credit for any payments drawn on another depository institution. This action will not result in more cost to you, but it may delay the availability and/or amount of your future Mobiloans Cash.

If you fail to pay the Minimum Payment Amount on or before the applicable Due Date, an AutoPay payment will automatically be deducted by us from your Demand Deposit Account (see <u>Section VIII</u> below) if you have authorized the AutoPay feature.

To minimize the amount of Finance Charges you may incur, you are encouraged to pay your Mobiloans Cash balances in full on or before the applicable Due Date. **You also may make payments toward your unpaid balance at any time without penalty.**

Your payment options are discussed more fully in <u>Section VIII</u> below.

*Calculation of Minimum Principal Amount*

The Minimum Principal Amount will be calculated using a percentage of the outstanding Mobiloans Cash balance immediately after the most recent draw, or a Minimum Principal Amount of $20 whichever is greater. See chart below for the applicable percentages to calculate the Minimum Principal Amount.

| Calculation of Minimum Principal Amount | |
|---|---|
| Outstanding Mobiloans Cash balance immediately after the most recent Cash draw…. | Percentage or minimum amount of Mobiloans Cash balance to be included in the Minimum Payment Amount…… |
| Up to $400 | **$20** |
| $400.01- $1099.99 | **5.00%** |
| $1,100 - $1,399.99 | **3.3333%** |
| $1,400 - $1,999.99 | **2.50%** |
| $2,000 - $2,500.00 | **2.0833%** |

## VIII. Payment Options

*Payments in Full and Partial Payments:* You may pay your outstanding balance in full at any time. We also accept partial payments as further described in this Section VIII.

*AutoPay:* AutoPay is the automatic payment of the Minimum Payment Amount specified in the applicable Periodic Statement. If you elect to make AutoPay payments via ACH debit, we process an ACH payment from your Demand Deposit Account for the amount of each AutoPay payment so that such payment is received on the applicable Due Date. You do not need to agree to AutoPay as a condition to opening or using your Mobiloans Credit Account. If you have enrolled in the AutoPay feature, the payment of the Minimum Payment Amount will be made from your Demand Deposit Account unless you have otherwise paid the Minimum Payment Amount by other means by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. If you are an AutoPay customer and you remit a payment, whether by mail or electronically, that is received and processed before the AutoPay processing date and that results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement, then we will not process an AutoPay payment for that Periodic Statement. See Section XXI for more details.

*Borrower-Scheduled Electronic Payments:* You may schedule an electronic payment at any time up to the full amount of the outstanding balance of your Mobiloans Credit Account prior to the applicable Due Date. You may schedule these payments online at https://www.mobiloans.com, by calling Customer Support at 877-836-1518 or by mail. In order for an electronic payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue. See Section VI and Section VII above.

*Borrower-Scheduled Debit Payments:* Mobiloans may work with a third-party to enable you to schedule a payment using a debit card to pay up to the full amount of the outstanding balance (or any portion thereof) of your Mobiloans Credit Account at any time up to 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. If applicable, you may schedule these payments online at https://www.mobiloans.com or by calling Customer Support at 877-836-1518. Once you provide Mobiloans with your debit card number, it will be securely stored with your Mobiloans Credit Account. If you provide a debit card number to Mobiloans, such debit card will not be used for any payment unless you schedule a payment or unless Mobiloans is unable to process your payment by your Due Date using the AutoPay feature. Please note that Mobiloans relies on third parties to provide this service and therefore reserves the right to terminate or suspend this service at any time. If you elect to pay your Mobiloans Credit Account via AutoPay or by mail, you can make an additional payment at any time using your debit card; however, providing a debit card to your Mobiloans Credit Account will not remove you from AutoPay or otherwise change your payment obligations. In order for a debit card payment to be received on your payment Due Date, we must receive your scheduled payment request by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date. Depending on the amount and timing of the early or partial payment, such payments may not reduce the Cash Advance Fees or Fixed Finance Charges that may accrue.

*Payments by Mail:* Extension of Mobiloans Credit is not conditioned on your repayment by electronic means of the amounts you owe. You may make payments by mail, using personal check, certified check

or money order payable to "MobiLoans, LLC", and any such payment must be received at our payment address, P.O. Box 42917, Philadelphia, PA 19101, by 5:00 p.m. Eastern Time on the applicable payment Due Date. To send your check via overnight mail or courier service, please send to MobiLoans, LLC c/o MetaSource, 1900 Frost Road, Suite 100, Bristol, Pennsylvania 19007 in time for Mobiloans to receive your payment prior to 5:00 p.m. Eastern Time on your Due Date. If you are an AutoPay customer and you remit a payment by mail, your AutoPay payment for the current Billing Cycle will still process unless your mailed payment is received and processed by 4:00 p.m. Central Time on the Business Day prior to the applicable Due Date and results in the payment in full of the Minimum Payment Amount set forth in the applicable Periodic Statement. If you remit payment by mail and such payment is received on a non-Business Day, your payment will be posted to your account on the day it is received.

*Check Conversion Notification:* When you provide a personal check as payment, you agree we can either use information from your check to make a one-time electronic withdrawal from your Bank Account or to process the payment as a check transaction. When we use information from your personal check to make a withdrawal from your Bank Account, funds may be withdrawn from your Bank Account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. For questions, please call Customer Support at 877-836-1518.

*Required Paydown to $0 after 24 Months with an Outstanding Principal Balance of Mobiloans Cash:* As described in <u>Section IV</u>, if you have had an outstanding principal balance of Mobiloans Cash on your Mobiloans Credit Account for at least 24 consecutive months, then your ability to initiate additional draws of Mobiloans Cash will be restricted until such time as you pay down the balance of your Mobiloans Credit Account to $0. Repayment of your outstanding balance to $0 can be made by paying the Minimum Payment Amount over the maximum term for the outstanding principal balance. Principal balances under $1,100 have a maximum bi-weekly term of 20 Billing Cycles; principal balances between $1,100 and $1,399.99 have a maximum bi-weekly term of 30 Billing Cycles; principal balances between $1,400 and $1,999.99 have a maximum bi-weekly term of 40 Billing Cycles; and principal balances between $2,000 and $2,500 have a maximum bi-weekly term of 48 Billing Cycles. You can pay off the outstanding balance in full or over a shorter time frame by scheduling additional electronic payments, sending additional payments by mail, paying more than the Minimum Payment Amount or just remitting a payment in full. Once you have paid in full the outstanding balance of your Account, your ability to make draws of Mobiloans Cash up to your Credit Limit will be reinstated. Depending on the method by which you make the final payment that brings your Account balance to $0, it may take one to seven Business Days to process the payment and reinstate your ability to make draws of Mobiloans Cash.

*Payment Extensions:* You may extend or "push" a payment to a later date as is described herein. The maximum payment date that a payment may be extended will be the next scheduled payment date. If you choose to extend the payment to the maximum payment date, you will have two payments processed on that date (the extended payment and the current payment due). You may not extend two payments in a row. A payment that has been extended cannot be delayed a second time if the maximum number of days allowed was granted the first time.

Your ability to utilize this payment extension option is limited to a maximum of 99 times throughout the life of your account.

## IX. Application of Payments

All payments received (whether electronically or otherwise) will be applied first to any accrued and unpaid Cash Advance Fees and Fixed Finance Charges, and then to the outstanding principal balance of your Mobiloans Credit Account.

## X. Balance Computation Method

We calculate your balance as shown under "How we will calculate your balance" above.

## XI. Servicing Your Account

In connection with the servicing of your Mobiloans Credit Account, you hereby authorize us to contact you, including through the use of an autodialer, text messaging (if you have opted-in to text messaging in your Application), or prerecorded message, at any phone number you have provided to us in your Application or otherwise, including mobile phone numbers, and at any address and email address we have for you in our records or from other public and nonpublic databases we may lawfully access. Where allowed by law, we also may contact other individuals who may be able to provide updated employment, location, and contact information for you.

## XII. Default

<u>Events of Default:</u> We may declare you to be in default of this Agreement at any time if: (a) you fail to comply with the terms of this Agreement, including your repayment obligations with respect to borrowings under your Mobiloans Credit Account; (b) we discover that any information you have provided to us is false or misleading in any material respect; (c) you have exceeded the limitations regarding the usage of your Mobiloans Credit Account as set forth in this Agreement; or (d) you have not provided us with information we may request from time to time to satisfy our obligations to comply with the Bank Secrecy Act or other statutes or regulations that apply to us.

<u>Consequences of Default:</u> If an event of default has occurred, we may, at our option, do any one or more of the following things: (a) require you to immediately pay us everything you owe us on your Mobiloans Credit Account, including, without limitation, all outstanding Mobiloans Cash and accrued Cash Advance Fees and Fixed Finance Charges; (b) withdraw money from your Demand Deposit Account that was not available when we tried to withdraw it at an earlier time, if you have authorized electronic payments; (c) we may suspend or terminate your right to access your Mobiloans Credit Account and to receive draws of Mobiloans Cash; and (d) pursue all legally available means under Tribal law and applicable federal law to collect what you owe us. Except as expressly prohibited by Tribal law and applicable federal law, by agreeing to these Terms and Conditions you waive notice of default, dishonor, demand for payment, protest, presentment, and any other notices. In the event we declare all amounts owed on your Mobiloans Credit Account immediately due because you did not pay us, then, if you have authorized electronic payments, you further authorize us and our agents and representatives to withdraw money from your Demand Deposit Account in the full amount due. By choosing to exercise any one or more of these remedies, we do not give up our right to use another way to collect the money you owe us later. We may decide not to use any of the ways described above to be paid back the money that you owe us. If so, we do not give up our right to consider what you said you would do to make payments and, if you fail to make those payment(s), we will consider you to be in default.

## XIII. Periodic Statements

Not less than once each Billing Cycle during which there is (i) one or more Mobiloans Cash transactions, (ii) a payment is received, or (iii) an outstanding balance owing on your Mobiloans Credit Account, we will make available to you electronically, or if you specifically request, by mail, a Periodic Statement reflecting, among other things, Mobiloans Cash transactions, accrued Cash Advance Fees and Fixed Finance Charges, payments made, other credits, balances that are past due, your previous balance, and your new balance. In addition, we will provide you from time to time with any other disclosures or information required by this Agreement, Tribal Law, and applicable federal law.

Your Periodic Statements will be generated fourteen (14) days prior to the applicable Due Date for such Billing Cycle. A notification will be emailed to the email account you have on file in your Account, and your statement will be available electronically at https://www.mobiloans.com. You may choose not to receive your statements electronically. If you choose to receive paper statements, please notify us by writing to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351.

## XIV. Billing Rights

> **YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE**
>
> This notice contains important information about your rights and our responsibilities under Tribal law and applicable federal law.

### *What To Do If You Find a Mistake on Your Periodic Statement*

If you think there is an error on your Periodic Statement, write to Mobiloans Customer Support at MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, contact us electronically at https://www.mobiloans.com, or call us at 877-836-1518.

In your correspondence, give us the following information:

- Account information - your name and Account number;
- Dollar amount - the dollar amount of the suspected error; and
- Description of problem - if you think there is an error on your Periodic Statement, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error first appeared on your Periodic Statement; and
- By 4:00 p.m. Central Time at least 2 Business Days before an automated payment is scheduled if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### *What Will Happen After We Receive Your Correspondence*

When we receive your correspondence, we must do two things:

1. Within 30 days of receiving your correspondence, we must tell you that we received your correspondence. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your correspondence, we must either correct the error or explain to you why we believe the Periodic Statement is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your Periodic Statement, and we may continue to charge Finance Charges on that amount in accordance with this Agreement.
- While you do not have to pay the amount in question, you are responsible for the remainder of the outstanding balance of your Account.
- We can apply any unpaid amount against your Credit Limit.

After we finish our investigation, one of two things will happen:

1. *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
2. *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable Finance Charges on that amount in accordance with this Agreement. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your Periodic Statement is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your Periodic Statement. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your Periodic Statement is correct.

## XV. Change in Terms

We reserve the right to change the terms of this Agreement at any time with notice to you as required by Tribal Law and applicable federal law. Such changes may apply to Mobiloans Credit and any current amounts of outstanding Mobiloans Cash as well as to future Mobiloans Cash balances. By continuing to use the Mobiloans Credit service, you are accepting the change in terms, or you may decline the change in terms by no longer using Mobiloans Credit prior to the effective date of the change or by requesting that access to your Mobiloans Credit Account be discontinued. If you discontinue access, you will still be required to repay all amounts that you owe on your Mobiloans Credit Account pursuant to the continuing terms of the Agreement.

## XVI. Mobiloans Rewards Program

As a MobiLoans, LLC customer, you are automatically enrolled in the MobiLoans, LLC Rewards Program ("Mobiloans Rewards"). Mobiloans Rewards terms and conditions may be found at https://www.mobiloans.com/rewards and are hereby incorporated into these Terms and Conditions as if fully set out herein.

## XVII. Transfer of Rights; Maintenance of Register

We may assign or transfer this Agreement, or any of our rights hereunder, to another person or entity without notice or consent from you. Regardless of any transfer, this Agreement shall remain exclusively subject to Tribal Law and applicable federal law. MobiLoans, LLC, (the "Registrar") acting solely for this purpose as your irrevocably appointed agent, shall maintain at an office located within the geographic boundaries of the United States a copy of each assignment of this Agreement delivered to it and a register (the "Register") for the recordation of the names and addresses of the original owner and assignees, and the amounts of the principal, interest, fees, charges and other amounts owing to each from time to time pursuant to the terms of this Agreement. The Register may be in electronic form. The entries of the Register shall be conclusive, and you, the Registrar, the Lender and all of its assignees shall treat each person whose name is recorded in the Register pursuant to these terms as the owner of such principal, interest, fees, charges and other amounts for all purposes of this Agreement and any rights hereunder, notwithstanding notice to the contrary. The name of the owner in the Register shall be available to you by written request to the Registrar at any reasonable time and from time to time upon reasonable prior notice. In addition to the foregoing, the Registrar shall include on the Register the names and addresses of those persons holding participation interests in the receivables outstanding from time to time in the Accounts of which it has notice. Any fees and expenses of the Registrar for its services shall be charged to the registered owner of the Account and not to you.

## XVIII. Dispute Resolution; Arbitration

### Notice of Waiver of Jury Trial and Arbitration Agreement

**This Agreement includes a binding Waiver of Jury Trial and Arbitration Agreement. You may opt out of the Waiver of Jury Trial and Arbitration Agreement by following the instructions below.**

*RIGHT TO OPT OUT*. **IF YOU DO NOT WISH YOUR ACCOUNT TO BE SUBJECT TO THE FOLLOWING WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT, YOU MUST ADVISE US IN WRITING AT MOBILOANS, LLC, P.O. BOX 1409, MARKSVILLE, LA 71351 OR VIA EMAIL AT SUPPORT@MOBILOANS.COM. YOU MUST CLEARLY PRINT OR TYPE YOUR NAME AND ACCOUNT NUMBER OR SOCIAL SECURITY NUMBER AND STATE THAT YOU REJECT ARBITRATION. YOU MUST GIVE WRITTEN NOTICE; IT IS NOT SUFFICIENT TO TELEPHONE US. WE MUST RECEIVE YOUR LETTER OR E-MAIL WITHIN SIXTY (60) DAYS AFTER THE DATE YOUR MOBILOANS CREDIT ACCOUNT IS ESTABLISHED OR YOUR REJECTION OF ARBITRATION WILL NOT BE EFFECTIVE. IN THE EVENT YOU OPT OUT OF THE ARBITRATION AGREEMENT, ANY DISPUTES UNDER THIS AGREEMENT OR RELATED TO YOUR MOBILOANS CREDIT ACCOUNT SHALL NONETHELESS BE GOVERNED UNDER THE LAWS OF THE TUNICA-BILOXI TRIBE OF LOUISIANA AND MUST BE BROUGHT WITHIN THE COURT SYSTEM, TO WHOSE JURISDICTION YOU IRREVOCABLY CONSENT FOR THE PURPOSES OF THIS AGREEMENT.**

### WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT

In this Waiver of Jury Trial and Arbitration Agreement (this "Arbitration Agreement"), "Tribe" or "Tribal" refers to the Tunica-Biloxi Tribe of Louisiana, a sovereign nation located within the United States of America, and "Tribal Law" means any law or regulation duly enacted by the Tunica-Biloxi Tribe of Louisiana.

PLEASE READ THIS WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT CAREFULLY. Unless you exercise your right to opt-out of arbitration in the manner described above, any dispute related to this Agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any arbitration will be limited to addressing your dispute individually and will not be part of a class-wide or consolidated arbitration proceeding.

*Agreement to Arbitrate*. You agree that any Dispute (defined below) will be resolved by arbitration in accordance with Tribal Law and applicable federal law.

*Arbitration Defined*. Arbitration is a means of having an independent third party resolve a Dispute. A *"Dispute"* is any controversy or claim related in any way to your Mobiloans Credit Account or your application for a Mobiloans Credit Account, involving you and Lender, its marketing agent, collection agent, any subsequent holder of your Mobiloans Credit Account, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a *"Holder"* for purposes of this Agreement). The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of your Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim arising from, related to or based upon marketing or solicitations to obtain the Mobiloans Credit Account and the handling or servicing of your Account whether such Dispute is based on a Tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this Account or the Arbitration Agreement.

You acknowledge and agree that by entering into this Arbitration Agreement:

> (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
> (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR ANY HOLDER; and
> (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

*Choice of Arbitrator*. Any party to a Dispute, including a Holder, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of the Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the

arbitration: the American Arbitration Association (1-800-778-7879) https://www.adr.org; JAMS (1-800-352-5267) https://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The chosen arbitrator will utilize the rules and procedures applicable to consumer disputes of the chosen arbitration organization, but only to the extent that those rules and procedures are consistent with the terms of this Agreement, Tribal Law and applicable federal law. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization in accordance with Tribal Law or applicable federal law. Any arbitration under this Agreement may be conducted either on Tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than Tribal Law or applicable federal law.

*Cost of Arbitration*. We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by Tribal Law or applicable federal law, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by Tribal Law or applicable federal law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

*Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action*. YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under Tribal Law and applicable federal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual Disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration is to be determined by the arbitrator. If the arbitrator fails or refuses to enforce the waiver of class-wide arbitration, the parties agree that the Dispute will proceed in Tribal court and will be decided by a Tribal court judge, sitting without a jury, under applicable court rules and procedures and may be enforced by such court through any measures or reciprocity provisions available. As an integral component of accepting this Agreement, you consent to the jurisdiction of the Tribal courts for purposes of this Agreement.

*Judicial Review*. The arbitrator will apply the terms of this Agreement, including the Arbitration Agreement, Tribal Law, and federal law as appropriate. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If allowed by Tribal or federal statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. The arbitrator will make written findings and the arbitrator's award may be filed with the Tribal court. The arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by the Tribal court upon judicial review.

*Other Provisions*. This Arbitration Agreement will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Account, or any amounts owed on my account, to any other person or entity. This Arbitration Agreement benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Agreement continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Agreement survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Agreement is held invalid, the remainder shall remain in effect.

## XIX. Governing Law

This Agreement and the Arbitration Agreement are governed by the laws of the Tunica-Biloxi Tribe of Louisiana, the Indian Commerce Clause of the United States Constitution, the Federal Arbitration Act (*"FAA"*), and any applicable federal law necessary to uphold federal substantive statutory rights or remedies.

## XX. Electronic Signature and Electronic Records

We are required by law to provide you with initial disclosures, Periodic Statements and certain other disclosures and notices (collectively, *"Disclosures"*). **By checking the *"Sign Here"* box on the Application, that action will signify your agreement that this Agreement and the Disclosures we provide to you constitute electronic records under the Electronic Signatures in Global and National Commerce Act (15 U.S.C. Sections 7001 and following) in a manner consistent with Tribal Law and applicable federal law.**

By checking the *"Sign Here"* box on your Application, you agree to receive all such disclosures electronically. To access these Disclosures, in most cases, we will provide you with such disclosures at our web site or the web sites of our vendors. By checking the box, you acknowledge that you are able to electronically access the Mobiloans website (https://www.mobiloans.com), and to electronically access and print the periodic statements and other Disclosures we will be providing to you in connection with your Mobiloans Credit Account. We will notify you of Disclosures by email and will provide copies of any Disclosures to you in electronic form by including them in the email, posting them on the Mobiloans website or by providing a link to them on the website. In order to access, view and retain Disclosures in electronic form, you must have a computer with Internet access. The minimum system requirements include software that supports 128-bit security encryption and Adobe Reader® version 9.0.

Your agreement to receive disclosures and notices from us in electronic form does not mean you cannot obtain a paper copy of any such disclosure or notice. If you wish to obtain a paper copy of any document or withdraw your consent to receive Disclosures electronically, contact us in writing at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. You will be charged a $5.00 fee for the provision of each paper copy. The same fee will apply to customers who withdraw their consent to receive electronic disclosures and notices.

By checking the *"Sign Here"* box for Electronic Delivery of Disclosures on your Application, you acknowledge receipt of the Terms and Conditions governing your Mobiloans Credit Account, that you have read and agreed to these Terms and Conditions, and that you agree to receive Disclosures from us in electronic form.

## XXI. Electronic Payment Authorization

Mobiloans gives you the option to receive your Mobiloans Cash electronically and to repay amounts owing on your Mobiloans Credit Account electronically. If you choose to receive your Mobiloans Cash electronically and agree to repay electronically, then the following provisions apply.

### *Consent to Pre-Authorized Electronic Payments*

By choosing to receive your Mobiloans Cash electronically and agreeing to repay electronically selecting the "Electronic" option on the Select Cash Amount page, you agree to this Electronic Payment Authorization and authorize and request MobiLoans, LLC to initiate ACH debits to your Demand Deposit Account for your regularly scheduled AutoPay payments equal to the Minimum Payment Amount disclosed on each Periodic Statement in time for such payments to be received by MobiLoans, LLC on the payment Due Date set forth in each such Periodic Statement. For each payment, whenever an ACH debit entry to your Demand Deposit Account is returned to us for any reason, we may reinitiate an ACH debit entry to your Demand Deposit Account up to two additional times after our first presentation for each scheduled payment amount. If your payment is due on a non-business day, it will be processed on the next business day. This Electronic Payment Authorization is to remain in full force and effect until MobiLoans, LLC shall have received notification from you stating that you terminate this authorization in such time and in such manner as to afford MobiLoans, LLC a reasonable opportunity to act upon such notice.

This Electronic Payment Authorization applies to the repayment of all amounts owing on your Mobiloans Credit Account, including amounts outstanding on or before the date on which you agreed to this Electronic Payment Authorization. If your Mobiloans Credit Account is in Default you agree we may initiate an ACH debit to your Demand Deposit Account for the entire amount you owe us (see <u>Section XII</u>, Default, above). This Electronic Payment Authorization is to remain in full force and effect for as long as your Mobiloans Credit Account is open. You may revoke this Electronic Payment Authorization by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If you revoke this Electronic Payment Authorization, you agree to make payments to us by another method acceptable to us as set forth in these Terms and Conditions. In no event shall any revocation of this Electronic Payment Authorization be effective with respect to payment entries processed by us prior to our receipt of a notice to withdraw such Electronic Payment Authorization.

Your bank may impose a fee if your Demand Deposit Account becomes overdrawn or if a payment is attempted against your Demand Deposit Account that would cause it to become overdrawn. You will not hold us or our agents, representatives, successors or assigns responsible for any fees you must pay as a result of payment being presented at your bank in connection with this Electronic Payment Authorization. Contact your bank for more information specific to your Demand Deposit Account.

You authorize us to verify and correct all information you have provided to us about your Demand

Deposit Account, including, without limitation, past and/or current information about your bank, your bank routing and transit number and your Demand Deposit Account number.

This Electronic Payment Authorization is subject to the following provisions:

(1) *Right to stop payment and procedure for doing so*. If you have told us in advance to make payments out of your Demand Deposit Account, you can stop any of these payments by calling us at 877-836-1518 or writing to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351, in time for us to receive your request by 4:00 p.m. Central Time at least 2 Business Days before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after your call.

(2) *Liability for failure to stop payment of preauthorized transfer*. If you order us to stop a pre-authorized transfer by 4:00 p.m. Central Time at least 2 Business Days before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

(3) *Notice of varying amounts*. You agree that you will receive a notice at least 10 days before a payment is debited from your Demand Deposit Account in an amount that varies from the amount disclosed (a) in your periodic billing statement or (b) in your payment schedule on the My Account page.

This Electronic Payment Authorization is a payment mechanism only and does not give us collection rights greater than those otherwise contained in your Mobiloans Credit Account terms and conditions. This Electronic Payment Authorization does not constitute and is not intended to constitute a security interest under Tribal law.

***Error Resolution***

In case of errors or questions about an AutoPay or electronic payment, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. We must hear from you no later than 60 days after we sent the FIRST Periodic Statement on which the problem or error appeared.

- Tell us your name and account number;
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information; and
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 Business Days.

We will determine whether an error occurred within 10 Business Days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 Business Days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 Business Days, we may not credit your account.

For errors involving new Accounts (Accounts that have been open less than 45 days), we may take up to 90 days to investigate your complaint or question. For new Accounts, we may take up to 20 Business Days to credit your Account for the amount you think is in error.

You will be liable for any unauthorized Electronic Funds Transfer (EFT) that occurs more than 60 days after transmittal of the first periodic statement showing the unauthorized EFT and before you provide written notice, provided that we establish that the unauthorized EFT would not have occurred had you notified us within the 60 day period. If we are unable to prove that the unauthorized EFT would not have occurred with proper notification, you will not be liable for the disputed amount.

We will tell you the results within 3 <u>Business Days</u> after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation. If you need more information about our error-resolution procedures, call us at 877-836-1518 or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409, Marksville, LA 71351. If provisional credit was provided, the amount will be debited from your account. We will notify you of the date and the amount of the debit.

**You acknowledge that you are not required to consent to receive funds or repay amounts owing on your Mobiloans Credit Account by ACH debits and credits to your Demand Deposit Account. If you authorize us to effect ACH debit entries to your Demand Deposit Account for your Account, you also agree that this Electronic Payment Authorization is to remain in full force and effect unless you terminate such authority. If you terminate such authority, you agree to provide us with another means of payment acceptable to us in our sole discretion.**

## XXII. Credit Bureau

As part of the credit review process, we may obtain information about your credit history and standing from one or more consumer reporting agencies and/or other data providers. Once you have an account with us, we may also review your credit information for account monitoring purposes as permitted by the Fair Credit Reporting Act.

We are currently reporting loan transaction history to one or more major credit reporting agencies. We will report payment history from your account on a monthly basis. Because we report on a monthly basis, please allow up to 30 days for a recent transaction to appear on your credit report. If you have a question, complaint, or dispute regarding information reported to a credit bureau, contact us at disputes@mobiloans.com, or call us at 877-836-1518, or write to us at Mobiloans Customer Support, MobiLoans, LLC, P.O. Box 1409 Marksville, LA 71351. Please provide, in writing, the specific information being disputed, a basis for the dispute, and include all documents that support the dispute. We will conduct an investigation with regards to the information provided within 30 days of receipt. If it is determined that an error was made, we will immediately notify each consumer reporting agency we report to of the error and provide them with the correct information.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2019, I will electronically file the foregoing document with the Clerk of the Court using the CM /ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


*/ s / William V. O'Reilly*
William V.  O'Reilly