IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DARLENE GIBBS, *et al.*,**

          **Plaintiffs,**

v.                                                        Civil Action No. 3:18cv676

**MIKE STINSON, *et al.*,**

          **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs'[1] "Motion for Enlargement of Time and Motion for Jurisdictional and Venue Discovery" (the "Motion for Extension and Discovery"), (ECF No. 70),[2] and Plaintiffs' Motion to Strike (collectively with the Motion for Extension and Discovery, the "Motions"), (ECF No. 80). Defendants[3] responded to the Motion for Extension and Discovery, and Plaintiffs replied. (ECF Nos. 74, 76.) Defendants responded to the Motion to Strike, and Plaintiffs replied. (ECF Nos. 89, 97.)

---

[1] The Amended Complaint names the following Plaintiffs: Darlene Gibbs, Stephanie Edwards, Lula Williams, Patrick Inscho, Lawrence Mwethuku, George Hengle, Tamara Price, and Sherry Blackburn. (*See* Am. Compl., ECF No. 43.)

[2] Plaintiffs filed the same motion twice, (*see* ECF Nos. 70, 72), as well as identical supporting briefs, (*see* ECF Nos. 71, 73). The Docket describes the first filing as a motion for extension of time, and the second filing as a motion for discovery. For ease of reference, and because the briefing is identical, the Court refers to Motion for Extension and Discovery and its supporting brief throughout. (ECF Nos. 70, 71.)

[3] The Amended Complaint names the following defendants, who jointly responded to the Motions: 7HBF NO. 2, Sequoia Capital Franchise Fund, L.P., Sequoia Capital Franchise Partners, LLC, Sequoia Capital Growth Fund III, L.P., Sequoia Capital Growth III Principals Fund, LLC, Sequoia Capital Growth Partners III, L.P., Sequoia Capital IX, L.P., Sequoia Capital Operations, LLC, Sequoia Entrepreneurs Annex Fund, L.P., Stephen Shaper, Startup Capital Ventures, L.P., Linda Stinson, Mike Stinson, the Stinson 2009 Grantor Retained Annuity Trust. For ease of reference, the Court refers to these defendants collectively as "Defendants."

The matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[4] and 1367.[5] For the reasons that follow, the Court will grant in part and deny in part the Motion for Extension and Discovery and will grant the Motion to Strike.

## I. Background

### A. Summary of Allegations in the Amended Complaint[6]

This controversy arises out of Defendants' involvement in an allegedly unlawful lending operation. The lending operation, which Plaintiffs describe as a "rent-a-tribe" scheme,[7] allegedly

---

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Amended Complaint alleges violations of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO").

[5] The Court exercises supplemental jurisdiction over Plaintiffs' state usury claim and unjust enrichment claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

[6] For purposes of the instant Motions, the Court provides only a brief overview of the allegations in the Amended Complaint.

[7] Under this improper business model, actors establish entities to originate internet-based high interest loans so as to evade state and federal usury and lending laws. To effectuate the scheme, a non-tribal entity and a Native American Tribe agree to establish a lending company in the Tribe's name. According to Plaintiffs, the Native American Tribe nominally establishes the lending company to extend its tribal sovereign immunity to the newly-formed business entity. The tribal lending company, however, receives capital from a different, non-tribal person or company who seeks to use the tribal lending companies to cloak the unlawful high-interest internet loans with sovereign immunity. The non-tribal entity retains the vast majority of the profits and controls the tribal lending entity, from major business decisions to day-to-day operations. In exchange, the Native American Tribe receives only a small percentage of the revenue.

offered loans to Plaintiffs and charged interest rates ranging from 118% to 448%. (Am. Compl. ¶¶ 118–20.)

In this case,[8] Plaintiffs bring claims against individuals and entities that owned and invested in Think Finance and its subsidiaries (collectively, "Think Finance"). According to Plaintiffs, non-party Think Finance[9] spearheaded efforts to establish and control the three Native American-owned lending companies at the heart of the allegedly unlawful lending operation.[10] "For more than seven years, Think Finance . . . operated a rent-a-tribe scheme, which sought to evade the usury laws of certain states by using [the Tribes] as the conduit for their loans." (Am. Compl. ¶ 2.) Plaintiffs aver that Think Finance proposed the formation of the lending operation, asking the Tribes to establish the lending companies in their respective names. In exchange, "Think Finance agreed to provide the infrastructure to run the lending operations, including the software, 'risk management, application processing, underwriting assistance, payment processing, and ongoing service support' for [the] consumer loans." (*Id.* ¶ 80 (quoting Am. Compl. Ex. 6 "Chippewa Cree Term Sheet" 1, ECF No. 43-6).) Through this business arrangement, Think Finance maintained control over, and derived "the vast majority of the

---

[8] Plaintiffs have "filed four cases against other participants in the alleged enterprise." (Am. Compl. ¶ 1 (citing *Gibbs, et al. v. Rees, et al.*, No. 3:17-cv-386 (E.D. Va. 2017); *Gibbs, et al. v. Plain Green, LLC, et al.*, No. 3:17-cv-495 (E.D. Va. 2017); *Gibbs, et al. v. Haynes Investments, LLC, et al.*, No. 3:18-cv-48 (E.D. Va. 2018); *Gibbs, et al. v. Curry, et al.*, No. 3:18-cv-654 (E.D. Va. 2018)).)

[9] Plaintiffs, represented by the same Counsel, brought suit against Think Finance in *Gibbs et al. v. Rees et al.*, which the Court transferred to the Northern District of Texas on March 27, 2018. (Mar. 27, 2018 Order, ECF No. 132, Case No. 3:17cv386 (E.D. Va 2017).)

[10] The Chippewa Cree Tribe owns Plain Green, LLC ("Plain Green"). (*See* Am. Compl. ¶¶ 79–85.) The Otoe-Missouria Tribe owns Great Plains Lending, LLC ("Great Plains"). (*See* Am. Compl. ¶¶ 69–78.) The Tunica-Biloxi Tribe owns Mobiloans, LLC ("MobiLoans"). (*See* Am. Compl. ¶¶ 86–91.) The Court refers to the Chippewa Cree Tribe, the Otoe-Missouria Tribe, and the Tunica-Biloxi Tribe collectively as the "Tribes."

profits" from, the lending operation. (*Id.* ¶ 85.) Plaintiffs represent consumers who took out loans with the Tribal lending entities, including Great Plains, Plain Green, and MobiLoans.[11]

Here, Plaintiffs aver that each Defendant, in an attempt to avoid liability, either performed a role in the lending scheme or served as a holding company for one of the other companies. "Through their ownership of Think Finance, Defendants participated in the business's key decisions, strategies, and objectives and, in return, generated large profits from their ownership interest in Think Finance." (*Id.* ¶ 4.) Plaintiffs claim that "Defendants personally participated in and oversaw the illegal lending enterprise rendering them personally liable to consumers." (*Id.*)

### B. Procedural History

On February 1, 2019, Plaintiffs filed a putative class action Amended Complaint[12] against Defendants, asserting various federal and state violations associated with the allegedly unlawful lending operation. Plaintiffs pursue this suit on behalf of Virginia residents who entered into loan agreements with the Tribal lending entities Plain Green, Great Plains, or MobiLoans. They bring six class counts, including four RICO claims, a claim for violation of Virginia usury law, and a common law claim for unjust enrichment. Plaintiffs seek: (1) class certification; (2) declaratory and injunctive relief and damages; and, (3) attorney's fees, litigation expenses, and costs of suit.

---

[11] Plaintiffs state that Defendants received at least $711.02 from Gibbs "as a result of the illegal loans to her—most of which was credited as payment for interest or other fees." (Am. Compl. ¶ 123.) Similarly, Defendants allegedly received at least $15,369.15 from Edwards; $1,858.67 from Williams; $6,042.19 from Mwethuku; $16,210.84 from Inscho; $9,009 from Price; $12,940 from Hengle; and $2,451 from Blackburn. (Am. Compl. ¶¶ 124–30.)

[12] Plaintiffs originally filed this suit on October 4, 2018. (ECF No. 1.) On February 1, 2019, Plaintiffs filed this Amended Complaint as a matter of right.

4

### C. The Instant Motions: Background and Procedure

On February 15, 2019, Defendants filed a Motion to Transfer this Action to the Northern District of Texas (the "Motion to Transfer").[13] (ECF No. 61.) Defendants ask the Court to transfer this case to the United States District Court for the Northern District of Texas, so that this case may then be transferred to the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). Defendants aver that this case relates to *In re Think Finance*, an ongoing bankruptcy proceeding in the Bankruptcy Court.[14] In the alternative, Defendants argue that this Court should transfer this matter based on the first-to-file rule.[15]

In support of the Motion to Transfer, Defendants attached a declaration by Mr. Richard L. Scheff (the "Scheff Declaration"). (ECF No. 62-1.) Scheff self-identifies as an attorney of record in this matter,[16] as well as an attorney for Kenneth Rees, a former executive of Think Finance. (Scheff Decl. 1.) Scheff states that, through his representation of various defendants

---

[13] Also on February 15, 2019, Defendants filed several other motions, which are now ripe for disposition. (ECF Nos. 53, 54, 56, 57, 59, 63, 65.)

[14] Specifically, Think Finance filed for bankruptcy "pursuant to Chapter 11 of the Bankruptcy Code." (Mem. Supp. Mot. Transfer 8, ECF No. 62.) Defendants argue that because the outcome of this case could affect the Think Finance bankruptcy estate, this Court should transfer the matter under 28 U.S.C. § 1412. Defendants state: "This case presents the same ground for transferring it to the Northern District of Texas that this Court has already relied upon in transferring two other cases that Plaintiffs themselves have deemed related to this action." (Mem. Supp. Mot. Transfer 1, ECF No. 62.)

[15] In support of this argument, Defendants rely on *Gibbs et al. v. Rees et al.*, No. 3:17-cv-386 (E.D. Va. 2017). Defendants argue that comparing *Rees* and this matter satisfies all the requirements for transfer to Texas: first, *Rees* was filed first; second, the parties are sufficiently similar; and, third, the legal issues are substantively the same. *Victaulic Co. v. E. Indus. Supplies, Inc.*, No: 6:13-01939, 2013 WL 6388761, at *3 (D. S.C. Dec. 6, 2013) (quoting *Harris v. McDonnell*, No. 5:13-cv-000777, 2013 WL 5720355, at *3 (W.D. Va Oct. 18, 2013)).

[16] Scheff represents the following Defendants: Michael C. Stinson, Linda Stinson, the Stinson 2009 Grantor Retained Annuity Trust, 7HBF No. 2, Ltd., Startup Capital Ventures, L.P., and Stephen J. Shaper. (Scheff Decl. 1.)

5

across these related cases, he has become familiar with the allegations and proceedings in this matter, in *Rees*, and in *In re Think Finance*. Scheff states that, "[t]o the best of [his] knowledge," Think Finance's offices, employees, and operations are in Texas, as well as documents and witnesses related to Think Finance. (Scheff Decl. ¶¶ 10–20.)

In response to the Motion to Transfer, Plaintiffs filed the Motion for Extension and Discovery, asking the Court for venue-related discovery. Specifically, Plaintiffs seek to depose Scheff and "obtain discovery as to what he knows and how he knows it regarding" the assertions in the Scheff Declaration. (Mem. Supp. Mot. Extension & Disc. 2, ECF No. 71.) Plaintiffs also seek an extension of time to respond to the Motion to Transfer until fourteen days after the deposition and discovery take place, or, if the Court denies the request for discovery, for thirty days. Plaintiffs also stated that they would move to strike Scheff's declaration, citing Virginia Rule of Professional Conduct 3.7(a)(1)[17] because "Mr. Scheff cannot serve as both contested fact witness and counsel in this case." (Mem. Supp. Mot. Extension 1 n.2, ECF No. 71.) Defendants opposed the Motion for Extension and Discovery, (ECF No. 74), and Plaintiffs replied, (ECF No. 76).

On March 18, 2019, the Court ordered expedited briefing "on the issue of the propriety of the Scheff Declaration" and suspended further briefing on the Motion to Transfer. (Mar. 18, 2019 Order 2, ECF No. 79.)

On March 28, 2019, Plaintiffs filed the Motion to Strike. In the Motion to Strike, Plaintiffs ask the Court to strike the Scheff Declaration, or in the alternative, to disqualify Scheff as counsel for Defendants. On April 4, 2019, Defendants responded in opposition to the Motion

---

[17] Virginia Rule of Professional Conduct 3.7(a)(1) states: "A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where . . . the testimony relates to an uncontested issue." Va. R. Prof. Conduct 3.7(a)(1).

to Strike, (ECF No. 89), and filed a declaration by David F. Herman (the "Herman Declaration"), (ECF No. 90), as well as several attachments, (ECF No. 90). On April 11, 2019, Plaintiffs replied to Defendants' Response opposing the Motion to Strike. (ECF No. 97.)

## II. The Court Will Strike the Scheff Declaration Pursuant to Its Inherent Authority

Plaintiffs argue in their Motion to Strike that, pursuant to Virginia Rule of Professional Conduct 3.7 ("VRPC 3.7" or "Rule 3.7"), "one cannot act as fact witness and attorney in the same case." (Mem. Supp. Mot. Strike 1, ECF No. 81.) Although the Court finds that Rule 3.7 does not compel disqualification, it provides an appropriate guiding principle because the Scheff Declaration raises the same concerns that Rule 3.7 seeks to guard against. Accordingly, the Court will exercise its inherent authority to strike the Scheff Declaration. The Court will also deny Plaintiffs' request to depose Scheff and grant Plaintiffs an extension of time to respond to the Motion to Transfer.

### A. Relevant Legal Principles: VRPC 3.7

Virginia Rule of Professional Conduct 3.7(a), often referred to as the witness-advocate rule, states: "A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness." Va. R. Prof. Conduct 3.7(a). Aside from three enumerated exceptions,[18] the Rule "is mandatory and may not be waived." *Premium Prods., Inc. v. Pro Performance Sports, LLC*, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014). The witness-advocate rule "is a 'prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole." *Id.* (quoting *Estate of Andrews by Andrews v. United States*, 804 F. Supp. 820, 823 (E.D. Va. 1992)). "Ultimately, a

---

[18] These include situations in which: "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Va. R. Prof. Conduct 3.7(a).

testifying advocate threatens the interests of the judicial system as a whole because of the 'public perception that a testifying advocate has distorted the truth on the stand in order to advance his or her client's cause and prevail in the litigation." *Id.* (quoting *Andrews*, 804 F. Supp. at 824).

Pursuant to Rule 3.7, the Court "must first determine whether the attorney is a 'necessary' witness." *Metro. P'ship, Ltd. v. Harris*, No. 3:06CV522-W, 2007 WL 2733707, at *2 (W.D.N.C. Sept. 17, 2007). The moving party—here, Plaintiffs—bears the burden to "demonstrate that the lawyer's testimony is 'strictly necessary,' and not merely relevant and useful." *Tattoo Art, Inc. v. TAT Int'l, LLC*, No. 2:10CV323, 2010 WL 11469802, at *2 (E.D. Va. Oct. 18, 2010) (quoting *Sutherland v. Jagdmann*, No. 3:05CV042-JRS, 2005 WL 5654314, at *2 (E.D. Va. Oct. 31, 2005)). The court may either disqualify the attorney from acting as an advocate, or proscribe the attorney from acting as a witness. *See, e.g., id.*

### B. Scheff Does Not Constitute a Necessary Witness Within the Scope of Rule 3.7

In the Motion to Strike, Plaintiffs seek to strike the Scheff Declaration, or, in the alternative, disqualify Scheff as counsel, pursuant to Rule 3.7.[19] Because Plaintiffs fail to meet their burden to show that Scheff's testimony is "strictly necessary" to the action, Rule 3.7 does not compel the Court to disqualify Scheff as counsel of record.

---

[19] Plaintiffs present an unusual request for two reasons. First, Plaintiffs primarily seek to strike the Scheff Declaration, not disqualify Scheff. The scant case law interpreting and applying Rule 3.7 presents situations where parties primarily seek disqualification of counsel early in proceedings, before any testimony has taken place. *See, e.g., Premium Prods.*, 997 F. Supp. 2d at 436.
 Further, parties invoking Rule 3.7 tend to do so before a witness-advocate testifies. *See, e.g., id.* Parties tend to disagree about whether the attorney's testimony will be necessary; and if so, whether the hypothetical testimony fits into one of the enumerated exceptions in Rule 3.7. *See id.*; *Jagdmann*, 2005 WL 5654314, *2. The limited case law suggests that, when a court deems that an attorney is not a necessary witness, as a result, the attorney may not offer testimony at all. *See id.*; *Jagdmann*, 2005 WL 5654314, *2. Neither party here cites to any case invoking Rule 3.7 in a scenario where the Court considers a previously-filed declaration by an alleged advocate-witness.

In support of their argument that Scheff amounts to a necessary witness, Plaintiffs state that the Scheff Declaration "is all that Defendants have to support their fact-based arguments for transfer." (Mem. Supp. Mot. Strike 5.) But this alone does not signify that Scheff's declaration rises to a level above "relevant and useful" to the level of "strictly necessary." *Tattoo Art*, 2010 WL 11469802 at *2 (quotation omitted). Specifically, nothing compels Defendants to attach any evidentiary support to their Motion to Transfer, meaning that the mere existence of the Scheff Declaration, and the absence of other evidence to support the Motion to Transfer, does not suffice to establish Scheff as a "necessary witness."[20] Defendants appear to adopt this position and extend this reasoning, arguing that the Court "can readily" decide the Motion to Transfer "without any resort to the" Scheff Declaration. (Resp. Mot. Strike 2, ECF No. 89.)

On the record as developed thus far, the Court finds that Scheff does not constitute a necessary witness, meaning Rule 3.7 does not require the Court to disqualify Scheff at this stage of proceedings.

### C. The Court Will Strike the Scheff Declaration Pursuant to its Inherent Authority

Although the Court finds that Scheff is not a necessary witness within the meaning of Rule 3.7, the Court nevertheless concludes that the Scheff Declaration raises concerns over the integrity of the judicial system which Rule 3.7 serves to protect. *See Premium Prods.*, 997 F. Supp. 2d at 436. The Court therefore will exercise its inherent authority to strike the Scheff Declaration and will order continued briefing on the pending Motion to Transfer.

---

[20] Furthermore, Defendants have since added the Herman Declaration in support of the Motion to Transfer. Plaintiffs do not challenge the propriety of the Herman Declaration.

1. <u>**Legal Standard: A Court's Inherent Powers**</u>

The Supreme Court of the United States "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). The Supreme Court recognizes this inherent power because the Federal Rules of Civil Procedure "are not all encompassing." *Id.*

A district court's "exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Id.* (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)). "Second, the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id.*

2. **The Court Will Strike the Scheff Declaration to Protect the <u>Integrity of the Judicial System</u>**

A declaration by an attorney of record in this matter—the Scheff Declaration—would plainly raise concerns over the integrity of the judicial system should the Court consider it. *Premium Prods.*, 997 F. Supp. 2d at 436 ("Ultimately, a testifying advocate threatens the interests of the judicial system as a whole because of the 'public perception that a testifying advocate has distorted the truth on the stand in order to advance his or her client's cause and prevail in the litigation." (quoting *Estate of Andrews*, 804 F. Supp. at 824)).

Having reviewed the matter, the Court concludes that the Scheff Declaration may create the "public perception that [Scheff] . . . has distorted the truth . . . to advance [Defendants'] . . .

cause and prevail in the litigation."[21] *Id.* This potential threat to judicial integrity creates a challenge "confronting the court's fair administration of justice." *Dietz*, 136 S. Ct. at 1891.

To meet this challenge, the Court exercises its discretion to decline giving any weight to the Scheff Declaration in ruling on the Motion to Transfer, especially because Scheff is not a necessary witness.[22] Because the Court will strike the Scheff Declaration,[23] the Court will not permit Plaintiffs to depose Scheff.[24] As such, the Court will grant Plaintiffs an extension of time to respond to the Motion to Transfer.

### III. Conclusion

For the foregoing reasons, the Court will grant the Motion to Strike, (ECF No. 80), and strike the Scheff Declaration, (ECF No. 62-1). Because the Court will strike the Scheff Declaration, the Court will deny without prejudice the Motion for Extension and Discovery, (ECF Nos. 70, 72), to the extent it seeks to depose Scheff or conduct venue-related discovery.

---

[21] Importantly, the Court takes no position on the propriety of Scheff's testimony, as an individual: instead, the witness-advocate rule "derives from the fundamental fact that the roles of advocate and witness are inconsistent, it being the function of the advocate to argue the cause of another and the role of a witness to state facts objectively." *Tattoo Art*, 2010 WL 11469802 at *2 (quoting *Personalized Mass Media Corp. v. Weather Channel, Inc.*, 899 F. Supp. 239, 242 (E.D. Va. 1995)).

[22] Indeed, Defendants have already taken the position that the Court need not consider the Scheff Declaration to resolve the Motion to Transfer.

[23] The Court's action falls within its inherent authority as delineated by the Supreme Court because it is not "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz*, 136 S. Ct. at 1892.

[24] Plaintiffs sought to depose Scheff and to "obtain discovery as to what he knows and how he knows it" regarding Scheff's assertions in his declaration. (Mem. Supp. Mot. Extension & Disc. 2.) Because the Court will strike the Scheff Declaration, this basis for discovery no longer exists.

11

The Court will grant Plaintiffs an extension to respond to the Motion to Transfer, as requested in the Motion for Extension and Discovery.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
M. Hannah Lauck
United States District Judge

Date: 5/7/19
Richmond, Virginia