IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARLENE GIBBS, *et al.*,

     Plaintiffs,

v.

                                               Civil Action No. 3:18cv676

MICHAEL STINSON, *et al.*,

     Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on two motions:

(1) Defendants 7HBF NO. 2 ("7HBF"); Stephen Shaper; Startup Capital
Ventures, L.P.; Linda Stinson; and Michael Stinson's (collectively, "Defendants")
Motion for Protective Order (the "Motion for Protective Order" or "Defendants'
Motion"), (ECF No. 153); and,

(2) Plaintiffs Stephanie Edwards; Darlene Gibbs; George Hengle; Patrick Inscho;
Lawrence Mwethuku; Tamara Price; and Lula Williams's (collectively,
"Plaintiffs") Motion to Compel Information Withheld on the Basis of Attorney-
Client Privilege and Work Product (the "Motion to Compel" or "Plaintiffs'
Motion"), (ECF No. 155).[1]

The parties responded and replied to the Motion for Protective Order and the Motion to Compel.

(ECF Nos. 163, 164, 168, 171.) On February 1, 2021, the Court held a status conference on the

two Motions and ordered the parties to file supplemental cross-briefs. (Feb. 2, 2021 Order 2,

ECF No. 177.) The parties timely submitted their Supplemental Briefs in Support of their own

Motions, (ECF Nos. 196, 201), as well as Supplemental Briefs in Response, (ECF Nos.

208, 209).

---

[1] As discussed in the Court's opinion addressing class certification, Sherry Blackburn is
not a named plaintiff here because she did not take out a loan during the class period.

This matter is ripe for disposition.  For the reasons articulated below, the Court will grant in part and deny in part Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order.

## I. Factual and Procedural Background

These discovery disputes center largely around whether Defendants, as former directors and officers of Think Finance, Inc., may properly invoke attorney-client privilege on behalf of the company.  If so, the Court must determine whether Defendants have waived any privilege they seek to invoke on behalf of Think Finance.  The Court assumes familiarity with its September 30, 2019 Memorandum Opinion and incorporates by reference the facts and procedural history presented in that Opinion.  (Sept. 30, 2019 Mem. Op. & Order, ECF Nos. 114, 115.)  The Court presents only those facts and allegations relevant to the issues concerning these discovery disputes.

### A.    Factual Background

As explained in the Court's September 30, 2019 Memorandum Opinion, this case arises from Defendants' involvement in an allegedly unlawful online lending scheme operated by Think Finance.  (Sept. 30, 2019 Mem. Op. 4, ECF No. 114.)  Think Finance allegedly offered loans to Plaintiffs and charged interest rates ranging from 118% to 448%.  (*Id.*)

As of 2014, Defendants Linda Stinson, Stephen Shaper, Startup Capital Ventures, and 7HBF had substantial ownership interests in Think Finance.[2]  (*See* Pls.' Mem. Supp. Ex. 27 "April 30, 2014 Think Finance Cap Table" 1, ECF No. 156-27; *see also id.* Ex. 28 "December

---

[2] Linda Stinson possessed 19.4% of the company, Stephen Shaper possessed 0.26%, Startup Capital Ventures possessed 1.16%, and 7BHF possessed 13.11%.  (April 30, 2014 Think Finance Cap Table 1, ECF No. 156-27.)

31, 2009 ThinkCash Cap Table" 1, ECF No. 156-28.) During each Defendant's tenure, however, no Defendant functioned merely as a passive investor.[3]

For instance, Defendant Michael Stinson founded the original online lending entity that eventually became Think Finance. (Pls.' Mem. Supp. Ex. 29 "Linda Stinson Deposition" 2, ECF No. 156-29.) And during the period when Think Finance operated the tribal lending scheme, he, among other things: (1) lent the company $12.5 million, (Pls.' Mem. Supp. Ex. 30 "2010 Stinson Loan Agreement" 1, ECF No. 156-30); (2) approved certain operational decisions, (*see, e.g.*, *id.* Ex. 31 "July 7, 2011 Email Exchange" 1, ECF No. 156-31); (3) facilitated a financing deal with a nonparty investor, (*id.* Ex. 33 "July 4, 2012 Email Exchange" 1, ECF No. 156-33); (4) served as a mentor to the company's chief executive officer Ken Rees, (Defs.' Suppl. Br. Supp. Ex. 5 "Ken Rees Deposition" 5–6, ECF No. 201-5); (5) frequently served informally as a confidant, advisor, and observer of the Think Finance Board of Directors while attending meetings, (*id.* 5–10); and, (6) participated in strategic and financial planning discussions with the Think Finance Board, (*id.*).

For her part, Linda Stinson: (1) helped market the original lending entity Michael Stinson founded, (Linda Stinson Dep. 3, ECF No. 156-29); (2) served as a director of Think Finance, (*id.*); (3) appointed members to the Think Finance Board of Directors, (October 11, 2017 Email Exchange 1, ECF No. 156-32); and, (4) likely served as a "Key Holder" which

---

[3] Michael Stinson declared under penalty of perjury in a case in the Northern District of California with nearly identical facts that he had not been a shareholder or member of the Board of Directors, or made any decisions for Think Finance, since 2005. (Pls.' Reply Ex. 2 "Michael Stinson Declaration" 2, ECF No. 168-2); *see Brice v. Stinson*, No. 3:19cv1481 (N.D. Cal.). However, Linda Stinson likely remained involved on the Board, and Michael continued to attend meetings after 2005. (Pls.' Reply Ex. 2 "Michael Stinson Declaration" 2, ECF No. 168-2; Pls.' Mem. Supp. Ex. 32 "October 11, 2017 Email Exchange" 1, ECF No. 156-32; *id.* Ex. 43 "Second Amended and Restated Voting Agreement" 1–2, ECF No. 156-43.) Michael further explained that that while he did attend multiple Board meetings over the years, his presence was as an invited "observer," not as a voting member. (Pls.' Reply Ex. 2 "Michael Stinson Declaration" 2, ECF No. 168-2.)

allowed her to vote on Board matters that others could not, (Second Amended and Restated Voting Agreement 13, ECF No. 156-43.) Together, the Stinsons earned a substantial return on their investment in Think Finance, receiving $4,191,188.11 in dividends in 2015 and another $1,386,982.02 in dividends in 2016. (*Id.* Ex. 44 "The Stinsons' Interrogatory Responses in *Brice*" 3, ECF No. 156-44.)

Like the Stinsons, Stephen Shaper participated in Think Finance in many ways. At various times while the company operated the tribal lending scheme, Shaper served on the executive committee of Think Finance and participated in their daily meetings. (Pls.' Mem. Supp. Ex. 9 "Stephen Shaper Deposition" 2–3 ECF No. 156-9; Second Amended and Restated Voting Agreement 2, ECF No. 156-43.) Similar to Linda Stinson, Shaper served as a member of the Board. (Pls.' Suppl. Br. Resp. Ex. 10 "Stephen Shaper's Revised Interrogatory Response" 6, ECF No. 208–10.) Indeed, also like Linda, Shaper likely served as a "Key Holder," which allowed him to vote on Board matters that others could not vote on. (Second Amended and Restated Voting Agreement 13, ECF No. 156-43.) Think Finance also tasked Shaper with mentoring Ken Rees and developing new business with Native American Tribes. (*Id.* Ex. 9 "Stephen Shaper Deposition" 3 ECF No. 156-9; *see also* Shaper's Revised Interrog. Resp. 5, ECF No. 208-10.)

As a shareholder of Think Finance, Shaper received $237,743.68 in dividends from 2015 to 2016. (Stephen Shaper's Revised Interrogatory Response 6, ECF No. 208-10.) In addition to being a shareholder, Shaper also held a multimillion-dollar indirect investment in the fund Think Finance used to finance payday loans to consumers. (Stephen Shaper Deposition 5, ECF No. 156-9.) That indirect investment, which Shaper made through a nonparty venture-capital fund, purportedly returned "18 percent for a couple of years." (*Id.*)

4

The remaining two Defendants—Startup Capital Ventures and 7HBF—like Linda Stinson and Stephen Shaper, were also likely "Key Holders" in Think Finance. (Second Amended and Restated Voting Agreement 13, ECF No. 156-43.) In addition, 7HBF likely retained the ability to designate a Board Member, a seat to which it appointed its managing partner Jason Harvison. (*Id.* 2.) Both Startup Capital Ventures and 7HBF received sizable returns on their investments in Think Finance. Startup Capital Ventures earned $729,797.92 in dividends from 2015 to 2016. (Pls.' Suppl. Br. Resp. Ex. 9 "Startup Capital Venture's Second Revised Interrogatory Response" 7 ECF No. 208-9.) And in addition to selling over six million dollars in shares of Think Finance in late 2005 and early 2006, 7HBF received $7,731,144.00 in dividends from 2015 to 2016, (*id.* Ex. 11 "7HBF's Second Revised Interrogatory Response" 6, ECF No. 208-11.)

Defendants admit that before 2017, while Defendants were Think Finance officers, directors, or employees, Think Finance shared with them materials that contained legal advice. (*See, e.g.*, Defs.' Suppl. Br Supp. 3, ECF No. 201; *see also* Defs.' Reply 7, ECF No. 171 (noting that Defendants' tenure within Think Finance ended in early 2017).) Those materials comprise nearly all of the documents at issue in the present discovery dispute. (*See generally* Pls.' Mem. Supp. Exs. 6 through 9, ECF Nos. 193-6 through 193-9.) Crucially, Defendants admit—and Plaintiffs do not contest—that "as a result of a corporate restructuring in early 2017, Defendants" no longer occupy their positions as "owners [or] managers," nor have they retained "any connection to Think Finance, LLC." (Defs.' Reply 7, ECF No. 171; *accord id.* 4.)

**B.**    **Procedural Background**

On December 31, 2020, Defendants filed their Motion for Protective Order pursuant to

Federal Rule of Civil Procedure 26,[4] asking the Court to enter a protective order to prevent

Plaintiffs from obtaining discovery of any privileged materials in Defendants' possession.

(Defs.' Mot. 1, ECF No. 153.)  In support of their Motion, Defendants argue that their plans to

assert a good faith defense do not constitute a waiver of the attorney-client privilege on these

facts. (Defs.' Mem. Supp. 5–6, ECF No. 154.)  Defendants also contend that Plaintiffs already

litigated during Think Finance's bankruptcy proceedings in the United States Bankruptcy Court

for the Northern District of Texas whether the crime-fraud exception applies to the documents at

issue, and the court refused to apply the crime-fraud exception against them. (*Id.* 8–10.)  Finally,

Defendants submit that because the pertinent attorney-client privilege belongs to Think Finance,

it renders them powerless to waive a privilege they do not hold. (*Id.* 7–8.)

The same day that Defendants' filed their Motion for Protective Order, Plaintiffs filed

their Motion to Compel pursuant to Federal Rule of Civil Procedure 37.[5]  (ECF No. 155.)

Plaintiffs seek an order compelling production of "the vast majority of documents" Defendants

have withheld because of attorney-client privilege and the attorney work-product doctrine. (Pls.'

Mot. 1, ECF No. 155.)  In support of their Motion, Plaintiffs maintain that Defendants' good

faith defense waives the attorney-client privilege, and that the crime-fraud exception applies to

most of the withheld documents. (Pls.' Mem. Supp. 20–31, ECF No. 156.)  Plaintiffs further

argue that even if Defendants "lack authority to waive Think Finance's privilege, they should not

---

[4] Federal Rule of Civil Procedure 26 permits a party to "move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1).

[5] Federal Rule of Civil Procedure 37 permits a party seeking discovery to "move for an order compelling . . . production." Fed. R. Civ. P. 37(a)(3)(B).

be able to summarily shield" two other sets of documents: communications between Michael

Stinson and his individual attorneys[6] and correspondence between Startup Capital Ventures and

its attorneys.[7] (Pls.' Resp. 7–8, ECF No. 163.)

Both parties filed timely responses and replies. (ECF Nos. 163, 164, 168, 171.) On

February 1, 2021, the parties appeared before the Court for a status conference on their Motions.

(ECF No. 181.) During that status conference, the Court ordered the parties to submit

supplemental cross-briefs on five issues:

(1) Whether Michael Stinson classifies as the functional equivalent of a member of the Think Finance Board of Directors;

(2) Whether a common interest existed between Think Finance and Startup Capital Ventures such that the sharing of privileged materials between them did not waive Think Finance's privilege;

(3) What effect the United States Supreme Court's decision in *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985), has on Defendants' ability to address Think Finance's attorney-client privilege;

(4) If Think Finance holds the relevant privilege, whether Defendants may invoke that privilege on Think Finance's behalf; and,

(5) How a finding that Think Finance holds the relevant privilege, and that Defendants may not invoke that privilege on Think Finance's behalf, would affect Plaintiffs' arguments about the crime-fraud exception and Defendants' assertion of the good faith defense. (Feb. 2, 2021 Order 2–3, ECF No. 177.)

The Court also ordered Defendants to revise their privilege logs to comply with the Federal

Rules of Civil Procedure, the Local Rules for the Eastern District of Virginia, and the Court's

---

[6] *See, e.g.*, Michael and Linda Stinson Second Revised Privilege Log, ECF No. 193-7 at STINSONPL212, 219, 238, 243, 272, 289, 293, 296, 331, 332, 394, 447, 449, 457, 468, 531, 551, 573, 620, 629, 681, 697, 700, 716, 721, 732, 750, 753, 763, 830, 873, 894, 952, 960, 965, 974, 975, 987, 992, 1002, 1027, 1028, 1029, 1048, 1059, 1083, 1091, 1107, 1235, 1284, 1289, 1291, 1306, 1307, 1308, 1315, 1356, 1363, 1379, 1408, 1412, 1419.

[7] *See, e.g.*, Startup Capital Ventures Second Revised Privilege Log, ECF No. 193-8 at SCV_PRIV_0030, 35, 46, 47, 53, 54, 55, 56, 57, 58, 59, 62, 63, 64, 65, 66, 67, 68, 100, 243, 254.

instructions at the February 1, 2021 status conference. (*Id.* 2.) The Court further ordered the parties to jointly file a formalized chart of their discovery disputes. (*Id.*)

Both parties submitted timely supplemental cross-briefs and responses. (ECF Nos. 196, 201, 208, 209.) The parties also timely filed the Joint Statement, which contains a formalized chart of their discovery disputes, (ECF Nos. 193-1 through 193-5), and Defendants' revised privilege logs, (ECF Nos. 193-6 through 193-9).

For the reasons articulated below, the Court will grant in part and deny in part Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order. The Court will also review *in camera* the communications between Michael Stinson and his attorneys and Startup Capital Ventures and its attorneys to determine if the attorney-client privilege shields the communications.

## II. Standard of Review

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes to 1983 amendment ("1983 Amendment"). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also United States v. Bornstein*, 977 F.2d 112, 116 (4th Cir. 1992) (declaring that one who invokes a privilege "bear[s] the burden of proving that [it] applies"); *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 751 (E.D. Va. 2007) ("[I]t is incumbent upon the proponent to specifically and factually support his claim of privilege." (citation omitted)).

8

Despite the unambiguous dictates of the Federal Rules of Civil Procedure and related local rules that require attorneys to conduct discovery in a cooperative fashion, courts continue to find that "[h]ardball discovery . . . is still a problem in some cases." *Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 223 F.R.D. 392, 395 (D.S.C. 2004) (noting that such conduct "is costly to our system and consumes an inordinate amount of judicial resources"). Accordingly, although the Rules provide that the "primary responsibility for conducting discovery . . . rest[s] with the litigants, [who are] obliged to act responsibly and avoid abuse," 1983 Amendment, Subdivision (g), the Rules also "acknowledge[] the reality that [the discovery process] cannot always operate on a self-regulating basis," *id.* Subdivision (b).

Consequently, the Federal Rules of Civil Procedure provide a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B); *see also* Fed. R. Civ. P. 45(d)(2)(B) ("If an objection [to production of documents] is made . . . the serving party may move the [issuing court] for an order compelling production or inspection."). Here, the parties invoke provisions of Federal Rule of Civil Procedure 37 and Federal Rule of Civil Procedure 26 as the basis for judicial intervention in the instant discovery dispute.

### A.    **Motion for Protective Order**

Federal Rule of Civil Procedure 26 governs the scope of discovery, stating: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(c)(1) allows a party to "move for a protective order in the court where the action is pending." Fed. R.

9

Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). "District courts exercise broad discretion over discovery issues," including matters arising under Rule 26. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016).

### B.   <u>Motion to Compel Production</u>

Under Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Rule 37 expressly permits a party seeking discovery to "move for an order compelling . . . production." Fed. R. Civ. P. 37(a)(3)(B). The decision to grant or to deny a motion to compel production rests within the broad discretion of the trial court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion." (citation omitted)); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."). A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### <u>III.  Analysis</u>

The Court will grant in part and deny in part the Motion for Protective Order and the Motion to Compel. The Court will further review *in camera* the correspondence between Michael Stinson and his attorneys and Startup Capital Ventures and its attorneys to determine if the attorney-client privilege shields those communications.

This discovery dispute turns primarily on whether Think Finance or Defendants, as former directors and officers of that company, hold the attorney-client privilege Defendants seek to invoke.  The Court concludes that for the vast majority of documents at issue here, the attorney-client privilege belongs to Think Finance, not to these Defendants.

For the small subset of documents that remain in dispute—*i.e.*, correspondence between Michael Stinson and his attorneys, and between Startup Capital Ventures and its attorneys—the Court finds that a reasonable basis exists that the crime-fraud exception may render these documents discoverable.  Accordingly, the Court will request to review this subset of documents *in camera*.  The Court will hold in abeyance its consideration of whether Defendants waived their own attorney-client privilege by asserting a good faith defense or by filing a deficient privilege log until it reviews these documents *in camera*.

Finally, the Court examines five additional discovery disputes that arise beyond the applicability of the attorney-client privilege.

### A.   Think Finance, Not the Individual Defendants, Holds the Attorney-Client Privilege for the Vast Majority of Documents in Dispute Because the Defendants Are No Longer Officers or Employees of the Company

Because Defendants do not hold the attorney-client privilege applicable to the documents sought, they cannot invoke it here.  As explained later, with a short window of time to allow Think Finance to intervene should it wish to, the Court will grant the Motion to Compel in part and order Defendants to produce all documents for which Think Finance holds the privilege.

### 1.   Legal Standard:  The Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).  The United States Court of Appeals for the Fourth Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

11

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (citation omitted). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id.* (citations omitted). "The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *Id.* (citations omitted).

"The party claiming the privilege must be a client who has sought legal advice." *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 444 (E.D. Va. 2018) (citing *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011)). In other words, "the attorney-client privilege must be asserted and established by the privilege holder." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 346 (E.D. Va. 2015) (stating that nonparty intervenors "may claim the [attorney-client] privilege . . . only if one of them . . . is the client")

In the corporate context, the company is the client and holds the corresponding attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *see also Upjohn*, 449 U.S. at 394 (holding that the corporate attorney-client privilege attached to communications that "concerned matters within the scope of the employees' corporate duties"). "As an inanimate entity, a corporation must act through agents." *Weintraub*, 471 U.S. at 348. Thus, control over the privilege "must necessarily be undertaken by individuals empowered to act on behalf of the corporation," which are normally the corporation's *current* "officers and directors." *Id.*; *accord Big Picture I*, 303 F. Supp. 3d at 445. Consequently, "when

12

control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Weintraub*, 471 U.S. at 349; *accord Big Picture I*, 303 F. Supp. 3d at 445. Displaced management, disempowered to act on behalf of the corporation, "retain[] no control over the corporation's privilege," "even as to statements that [they] might have made to counsel concerning matters within the scope of their corporate duties." *Weintraub*, 471 U.S. at 349, 349 n.5. *See also Big Picture I*, 303 F. Supp. at 444–46 (finding former manager lacked standing to assert the corporation's attorney-client privilege).

### 2. Defendants, as Former Officers and Directors of Think Finance, Do Not Hold the Attorney-Client Privilege for Nearly All Documents at Issue

Think Finance holds the attorney-client privilege for the vast majority of documents at issue here because the vast majority of documents at issue involve communications between Think Finance and its counsel.[8] (*See generally* Pls.' Mem. Supp. Exs. 6 through 9, ECF Nos. 193-6 through 193-9.) As such, Defendants, as former directors, cannot invoke it on behalf of the company. *Cf. Big Picture I*, 303 F. Supp. 3d at 444–46 (concluding that a former manager no longer possessed the privilege after leaving the company). Although Defendants obtained Think Finance's privileged documents while acting as directors of the company,[9] Defendants lost "the

---

[8] Indeed, Defendants have consistently argued as much throughout their briefing. (Defs.' Mem. Supp. 7–8, ECF No. 154; Defs.' Suppl. Br. Resp. 10–13, ECF No. 209; Defs.' Reply 4–8, ECF No. 171; Defs.' Suppl. Br. Supp. 3–6, ECF No. 201.) Although Plaintiffs initially disputed this point, (Pls.' Resp. 3–6, ECF No. 163), they now agree that Think Finance holds the privilege for most documents being withheld, (Pls.' Suppl. Br. 18, ECF No. 196 ("Think Finance is the purported privilege holder . . . ."); Pls.' Suppl. Br. Resp. 1–2, ECF No. 208 ("[T]he privilege belongs to Think Finance . . . .").)

[9] Plaintiffs initially contested Defendants' argument that Michael Stinson qualified as a functional equivalent of a board member, but in their Supplemental Brief in Response they concede that: (1) Stinson "'was a trusted advisor' to Think Finance's executives and its Board of Directors;" (2) Stinson participated in "the strategic decision making for Think Finance;" and, (3) "Think Finance's executives frequently called on Michael Stinson's deep understanding and experience in the lending profession." (Pls.' Suppl. Br. Resp. 6, ECF No. 208.)

authority to assert . . . [Think Finance's] attorney-client privilege" "when control of [Think Finance] passe[d] to new management" around 2017. *Weintraub*, 471 U.S. at 349. Because Defendants cannot assert Think Finance's attorney-client privilege, the Court must deny in part Defendants' Motion for Protective Order and grant in part Plaintiffs' Motion to Compel as to the documents over which Think Finance controls the attorney-client privilege.

3. **Agency Law Does Not Prevent Disclosure of These Documents**

Despite not holding the attorney-client privilege, Defendants suggest that agency law prevents them from disclosing Think Finance's privileged documents. (*See* Defs.' Suppl. Br. Supp. 4–5, ECF No. 201.) According to Defendants, they "have no right to disclose that information and [have] a duty not to." (Defs.' Suppl. Br. Resp. 12, ECF No. 209.) Their confidentiality obligations derive from their agency relationship with Think Finance, and those obligations "concerning confidential information do not end when the agency relationship terminates." (Defs.' Suppl. Br. Supp. 5, ECF No. 201 (quoting Restatement (Third) of Agency § 8.05 cmt. c (2006)).)

"While [Defendants] may have an ethical obligation to bring the privilege issue to the Court's attention, that obligation does not confer standing on [Defendants] to assert privilege on [Think Finance's] behalf . . . ." *United States v. Martoma*, 962 F. Supp. 2d 602, 604 (S.D.N.Y. 2013) (citation omitted) (finding government lacked standing to assert privilege held by nonparty). To be sure, Think Finance has advised Defendants that it "is not waiving its attorney-

---

These facts support the conclusion that Michael Stinson served as the "functional equivalent" of a director of Think Finance. *See Digit. Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, No. 2:09-cv-555, 2013 WL 1560212, at *9 (E.D. Va. Apr. 12, 2013) (finding a former founder of a corporation to be the functional equivalent of a director when he "was a trusted advisor" to the board of directors, participated "in a number of discussions and strategic decisions," and "was a person who the Board of Directors frequently called upon for advice"). Because Michael Stinson acted as the "functional equivalent" of a director, Think Finance likely did not waive its attorney-client privilege by sharing privileged materials with him. *See id.* at *10.

client privilege," and it has instructed them not "to do something different than what Think Finance wants to do with respect to its privilege." (Defs.' Suppl. Br. Supp. Ex. 1 "Deposition of Jason Harvison" 4, ECF No. 201-1.) But Defendants are "not authorized to assert [Think Finance's] privilege merely because [the company] has expressed a desire to preserve the confidentiality of the communications at issue." *Martoma*, 962 F. Supp. 2d at 605. In other words, Defendants cannot assert attorney-client privilege merely because they *formerly* acted as Think Finance's agents.

### 4. The Court Will Allow Think Finance Seven Days to Intervene in This Case

Defendants also argue that if Think Finance holds the privilege, one of two consequences should follow: either Plaintiffs should "seek to have Think Finance intervene," or "the Court should order production of the documents and permit Think Finance to take an immediate appeal to the Fourth Circuit."[10] (Defs.' Suppl. Br. Supp. 7, ECF No. 201.)

Nothing prevents Think Finance as the holder of the privilege from seeking to intervene in this matter, obviating the need for interlocutory appeal to the Fourth Circuit.[11] (*See* Defs.'

---

[10] Defendants ground this argument on principles primarily deduced from *United States v. Wells Fargo, N.A.*, 132 F. Supp. 3d 558 (S.D.N.Y. 2015). *Wells Fargo* presented the question of "whether an employee can pursue an advice-of-counsel defense that requires disclosure of his employer's privileged communications where the employer will not waive the privilege." *Id.* at 561. Concluding that the attorney-client privilege trumps the defendant's right to present every available defense, the *Wells Fargo* court noted that finding otherwise would "create a perverse incentive for plaintiffs to pursue claims against individual employees in the hopes of forcing a waiver of the corporation's privilege." *Id.* at 564 (internal quotation marks and citation omitted).

But that "perverse incentive" does not exist here. Unlike in *Wells Fargo*, Defendants are *former* directors of the privilege-holding corporation. This distinction matters. Former employees, as opposed to current ones, cannot waive the corporate attorney-client privilege because they do not hold it. *Weintraub*, 471 U.S. at 349.

[11] Plaintiffs, not without cause, urge that intervention would be untimely under Federal Rule of Civil Procedure 24, which governs motions to intervene, and under applicable Fourth Circuit precedent. (*See* Pls.' Suppl. Br. Supp. 18–21, ECF No. 196.) As discussed, as a matter of fairness, the Court will give Think Finance seven days to file a motion to intervene and

15

Suppl. Br. Supp. 7, ECF No. 201.) To the extent Think Finance seeks to do so, it should seek intervention. The Court will afford it seven days from the issuance of this Memorandum Opinion and accompanying Amended Order "to raise objections to production of the documents here at issue or otherwise move for a Protective Order," but it must explain why it would have a basis to do so after this issue has been open for such a long period of time. [12] *In re Behr Dayton Thermal Prods., LLC*, 298 F.R.D. 536, 543 (S.D. Ohio 2014) (affording nonparty privilege holder the opportunity to intervene after finding that the party moving for protective order "lack[ed] standing to assert the attorney-client and/or work product privileges").

In sum, Defendants do not hold Think Finance's attorney-client privilege and may not invoke that privilege to withhold production of most documents at issue. Think Finance may seek to intervene within seven days of the issuance of this Memorandum Opinion and Amended Order. The Court will thus grant Plaintiffs' Motion to Compel in part and deny Defendants' Motion for Protective Order in part, and will order Defendants to produce all materials for which Think Finance possesses the attorney-client privilege, unless Think Finance intervenes to assert its privilege within seven days of the entry of the Memorandum Opinion and Amended Order.

---

establish the legal and factual basis as to why the Court should allow it to intervene. Defendants and Think Finance have had an extraordinary amount of time to resolve this issue, sufficient for swift briefing in accord with high standards. As a result, the Court will limit the briefing window given to Think Finance to seven days.

[12] To the extent any *bona fide* representative of Think Finance would seek to invoke its own privilege, that representative has seven days from the entry of this Memorandum Opinion and Amended Order to establish why and how it should be allowed to do so. This discovery dispute has been pending for roughly ten months. (*See* Defs.' Mem. Supp. 7, ECF No. 154.) Ample time to seek to intervene has passed. Further, Plaintiffs' counsel has represented to this Court that he "called counsel for [Think Finance's successor in interest]" who told him that they would not "assert an objection to [their] request for these documents." (2/4/21 Tr. 32, ECF No. 182.) Nevertheless, out of an abundance of caution, the Court will allow seven more days for a party to seek intervention.

**B.      The Court Will Review the Remaining Documents to Determine if the Crime-Fraud Exception Applies to Them**

The Court next considers whether the crime-fraud exception applies to the remaining documents over which Defendants invoke their own attorney-client privilege.[13]   (*See* Pls.' Resp. 13–15, ECF No. 163; Pls.' Reply 14–21, ECF No. 168; Pls.' Suppl. Br. Supp. 21–22, ECF No. 196; Pls.' Suppl. Br. Resp. 10–12, ECF No. 208.)   Because *in camera* review may reveal evidence indicating that the crime-fraud exception applies, the Court will order Defendants to submit the correspondence between Michael Stinson and Startup Capital Ventures and their respective attorneys for *in camera* review.

**1.      Legal Standard:  The Crime-Fraud Exception to the Attorney-Client Privilege**

"[T]he attorney-client [privilege] may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *Grand Jury Proc. #5 Empanelled January 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005).  "Although labeled as an exception to the [attorney-client] privilege, the crime/fraud jurisprudence is better considered as an exclusion of certain activity from within the reach of the attorney-client privilege." *Williams v. Big Picture Loans, LLC*, No. 3:17cv461, 2019 WL 1983048, at *12 (E.D. Va. May 3, 2019) ("*Big Picture II*") (internal quotation marks, alterations, and citations omitted).  The party

---

[13] The issue of whether this exception pertains to documents for which Think Finance holds the privilege is moot given the Court's conclusion that Defendants must produce those documents.  That conclusion also renders moot two subsidiary issues on which the parties are diametrically opposed:  (1) what weight this Court should give to the Northern District of Texas Bankruptcy Court's finding that the crime-fraud exception did *not* apply to 10,000 documents over which *Think Finance* asserted the attorney-client privilege in its bankruptcy proceeding, (Defs.' Mem. Supp. Ex. 3 "Order Denying Motion to Compel in *In re Think Finance, LLC, et al.*" 3, 11, ECF No. 154-4); and, (2) what degree of overlap exists between the 10,000 documents there and *Think Finance's* privileged documents here. (*Compare* Pls.' Suppl. Br. Supp. 2–5, ECF No. 196; Pls.' Suppl. Br. Resp. 10–12, ECF No. 208 *with* Defs.' Mem. Supp. 8–10, ECF No. 154; Defs.' Resp. 4–8, ECF No. 164; Defs.' Reply 17–19, ECF No. 171; Defs.' Suppl. Br. Supp. 16–17, ECF No. 201; Defs.' Suppl. Br. Resp. 14–15, ECF No. 209.)

invoking the crime-fraud exception must make a *prima facia* showing that the privileged communications fall within the exception by satisfying two prongs:

> (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.

*Grand Jury Proc. #5*, 401 F.3d at 251 (citing *Chaudry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)).

"The first [prong] of the test is satisfied by a 'showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.'" *Big Picture II*, 2019 WL 1983048, at *12 (quoting *Grand Jury Proc. #5*, 401 F.3d at 254–55). "The second [prong] is satisfied if 'the privileged communications . . . bear a close relationship to [the party's] existing or future scheme to commit a crime of fraud,' which is demonstrated by 'evidence of the contents of the . . . documents.'" *Id.* (second alteration in original) (quoting *Grand Jury Proc. #5*, 401 F.3d at 255). The court can "examine the actual documents (or summaries thereof) *in camera*" or other evidence of the documents' contents to "determine whether they satisfy prong two of the crime-fraud exception." *Grand Jury Proc. #5*, 401 F.3d at 255. For this prong, "[t]he focus is on the client's knowledge, and 'it is enough that the communication furthered, or was intended by the client to further, that illegality.'" *Big Picture II*, 2019 WL 1983048, at *12 (quoting *Grand Jury Proc. #5*, 401 F.3d at 251).

> ### 2. Plaintiffs Make a *Prima Facie* Showing That Defendants Engaged in a Criminal or Fraudulent Scheme, so the Court Will Review the Remaining Documents to Determine Whether They Bear a Close Relationship to Defendants' Unlawful Scheme

Plaintiffs have made a *prima facie* showing as to the first prong of the *Grand Jury Proceedings #5* test. In its September 30, 2019 Memorandum Opinion, the Court found that Plaintiffs had stated a *prima facie* case that Defendants violated Virginia usury laws, Va. Code

§ 6.2-1501, as well as the federal RICO statute, 18 U.S.C. § 1962.  (Sep. 30, 2019 Mem. Op. 53–
63, ECF No. 114.).  Violating either of those laws constitutes a crime.  *See* Va. Code
§ 6.2-1540;[14] 18 U.S.C. § 1963.[15]  Hence, Plaintiffs have satisfied prong one of the crime-fraud
exception.

      The Court will review the documents *in camera* to determine if they satisfy the second
prong.  "Before engaging in *in camera* review to determine the applicability of the crime-fraud
exception, the judge should require a showing of a factual basis to support a good faith belief by
a reasonable person that *in camera* review of the materials may reveal evidence to establish the
claim that the crime-fraud exception applies."  *United States v. Zolin*, 491 U.S. 554, 572 (1989)
(internal quotation marks and citation omitted).  The Court finds that such a basis exists.  For
instance, Defendants describe one document as "[c]ommunication from attorney Sean Cosgrove
providing legal advice and guidance to Mike Stinson regarding state regulations."  (Michael and
Linda Stinson Second Revised Privilege Log 99, ECF 193-7.)  They describe another as
"[c]ommunication from attorney Lin Barbee providing legal advice and guidance to Mike
Stinson regarding Think Finance agreements," (*id.* 177), and a third as "[e]mail correspondence
between counsel Sean Cosgrove and Mike Stinson providing legal analysis and guidance
regarding legality of tribal lending," (*id.* 366.)  And Startup Capital Ventures claims privilege

---

[14] That statute provides in pertinent part:

    Any person . . . who violates or participates in the violation of any provision of
    § 6.2-1501 is guilty of a Class 2 misdemeanor.

Va. Code § 6.2-1540.

[15] That statute provides in pertinent part:

    Whoever violates any provision of section 1962 of this chapter shall be fined
    under this title or imprisoned not more than 20 years . . . .

18 U.S.C. § 1963.

over, for example, a "[c]onfidential presentation sent to counsel Jordan Silber (Cooley [LLP]) from Tim Dick providing information to counsel for the purpose of obtaining legal advice regarding venture." (Startup Capital Ventures Second Revised Privilege Log 18, ECF No. 193-8.) Plaintiffs' *prima facie* showing that Defendants committed crimes, alongside such opaque references to attorney advice, provide this Court with a reasonable basis to believe that *in camera* review of the remaining documents may reveal evidence that the crime-fraud exception applies to them.

The Court will thus order Defendants to produce the correspondence between Michael Stinson and Startup Capital Ventures and their respective counsel for *in camera* review so that this Court may "determine whether they satisfy [the second] prong . . . of the crime-fraud exception." *Grand Jury Proc. #5*, 401 F.3d at 255. The Court will hold in abeyance its consideration of whether to grant or deny Plaintiffs' Motion to Compel or Defendants' Motion for Protective Order with respect to these documents until it reviews them.

With regard to the remaining disputes over privilege, the Court will hold its considerations of these matters in abeyance. First, the parties dispute whether Defendants waived their attorney-client privilege with their *individual* attorneys by asserting a good faith defense. (Defs.' Mem. Supp. 5–6, ECF No. 154; Pls.' Mem. Supp. 20–22, ECF No. 156.) Although Defendants seem to claim that they relied in good faith on representations made by *Think Finance's* counsel and not their own (and therefore their good faith arguments would not render the communications with their attorneys subject to disclosure), the Court will hold this issue in abeyance while it reviews these documents *in camera*. (*See* Pls.' Suppl. Br. Resp. Ex. 8 "Michael Stinson's Second Revised Interrogatory Response" 6–7, ECF No. 208-8; Startup Capital Venture's Second Revised Interrog. Resp. 5–6, ECF No. 208-9.) Second, as it reviews these documents *in camera*, the Court will likewise hold in abeyance its consideration of whether

20

to bar Defendants from asserting a good faith defense, as that issue requires the Court to consider whether the *only* attorney advice on which Defendants relied came from Think Finance's attorneys. Finally, although Defendants' privilege logs appear deficient in several respects, the Court will hold in abeyance its consideration of whether waiver of privilege or any other sanction is appropriate given these deficiencies.

### C. The Five Remaining Discovery Disputes That Do Not Pertain to Privilege Are Addressed Below

In supplemental briefing, Defendants raise five additional discovery disputes apart from their privilege assertions. (Defs.' Suppl. Br. Supp. 21–30, ECF No. 201.)[16] The Court will hold in abeyance its determination of the first, *i.e.*, whether Defendants' specific objections are timely. The Court's simultaneously-issued opinion in *Gibbs v. Elevate Credit*, No. 3:20-cv-632, counsels allowing the parties to meet and confer about their dispute over the number of shares Defendants received as part of Elevate Credit. Accordingly, the Court will deny Plaintiffs' Motion to Compel as it relates to information related to Defendants' receipt of shares as part of the separate entity Elevate Credit without prejudice. Thus, the Court need only consider three issues here: (1) the sufficiency of Defendants' responses to interrogatory one from Plaintiffs' first set of

---

[16] These disputes are:

  (1) Whether Defendants' specific privilege objections were timely;

  (2) Whether Defendants must produce information related to Defendants' receipt of shares as part of the separate entity Elevate Credit;

  (3) Whether Defendants must supplement their responses to Interrogatory 1;

  (4) Whether Defendants must produce specific financial information including tax returns; and,

  (5) Whether Plaintiffs' definition of "you" and "yours" in their discovery requests is overbroad.

(Defs.' Suppl. Br. Supp. 21–30, ECF No. 201.)

interrogatories ("Interrogatory 1"); (2) the propriety of seeking pre-judgment discovery of

Defendants' financial information and tax returns; and, (3) whether Plaintiffs' definition of

"you" and "your" in their first set of interrogatories (the "Interrogatories") and first set of

requests for production (the "RFP") is overbroad.

## 1.    Defendants Must Supplement Their Insufficient Responses to Interrogatory 1

Defendant's responses to Interrogatory 1 are insufficient and must be supplemented.

Interrogatory 1 instructs each Defendant to:

> [i]dentify all individuals known to you or your attorney who are witnesses to the
> events described in Plaintiffs' complaint or to any event that is the subject of any
> defense you have raised to this lawsuit.  For each person, please provide a brief
> summary of facts to which each person might or could testify.

(Michael Stinson's Second Revised Interrog. Resp. 2, ECF No. 208-8; Linda Stinson's Revised

Interrog. Resp. 3, ECF No. 208-13; Startup Capital Venture's Second Revised Interrog. Resp. 2,

ECF No. 208-9; Shaper's Revised Interrog. Resp. 2, ECF No. 208-10; 7HBF's Second Revised

Interrog. Resp. 2, ECF No. 208-11.)  In response, each Defendant identified all witnesses to

events related to this lawsuit and directed Plaintiffs to consult with those witnesses' deposition

testimony for the factual narratives they seek.  (Michael Stinson's Second Revised Interrog.

Resp. 2, ECF No. 208-8; Linda Stinson's Revised Interrog. Resp. 3, ECF No. 208-13; Startup

Capital Venture's Second Revised Interrog. Resp. 2, ECF No. 208-9; Shaper's Revised Interrog.

Resp. 2, ECF No. 208-10; 7HBF's Second Revised Interrog. Resp. 2, ECF No. 208-11.)

Plaintiffs assert that each Defendants' "response is incomplete because it does not identify the

scope of each witnesses' knowledge." (Pls.' Suppl. Br. Resp. 14, ECF No. 208.)  Defendants

contend that their responses are adequate under Federal Rule of Civil Procedure 33(d), (Defs.'

Suppl. Br. Supp. 21–25, ECF No. 201), a rule Plaintiffs maintain does not apply to depositions,

(Pls.' Suppl. Br. Resp. 15, ECF No. 208).

Federal Rule of Civil Procedure 33(d) provides in pertinent part:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . , and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . .

Fed. R. Civ. P. 33(d). To properly invoke Federal Rule of Civil Procedure 33(d), the responding party "must (1) affirm that the information sought by the interrogatory in fact is available in the specified records, (2) be able to demonstrate that answering the interrogatory in the traditional manner would impose a burden on it, (3) establish that the burden of compiling information is substantially the same for the inquiring and responding parties, and (4) specify which records contain the information sought by the interrogatory." *Clark v. Trans Union*, No. 3:15-cv-391, 2017 WL 11504623, at *4 (E.D. Va. Mar. 1, 1017) (quoting *Christian Coal. Int'l v. United States*, No. 2:01-cv-377, 2002 WL 1482523, at *2 (E.D. Va. May 31, 2002)).

Here, Defendants do not properly invoke Rule 33(d) because they do not "specify which records contain the information sought by the interrogatory." *Id.* (*Cf.* Michael Stinson's Second Revised Interrog. Resp. 2–3, ECF No. 208-8; Linda Stinson's Revised Interrog. Resp. 3, ECF No. 208-13; Startup Capital Venture's Second Revised Interrog. Resp. 2–3, ECF No. 208-9; Shaper's Revised Interrog. Resp. 2–3, ECF No. 208-10; 7HBF's Second Revised Interrog. Resp. 2–3, ECF No. 208-11.) Nor have Defendants "establish[ed] that the burden of compiling information is substantially the same for the inquiring and responding parties." *Clark*, 2017 WL 11504623, at *4. While Defendants argue that the respective burdens are equal, (*see* Defs.' Suppl. Br. Supp. 24–25, ECF No. 201), this claim is specious: "If the statements are as readily available as [Defendants] claim[], [they] can simply copy them into [their] interrogatory response," *Williams v. AT&T Mobility*, No. 5:19-cv-475, 2021 WL 1842713, at *1 (E.D.N.C. Apr. 13, 2021). Because Defendants have not properly invoked Rule 33(d), the Court will order

23

them to supplement their responses to Interrogatory 1. *See id.* at *1–2 (ordering supplemental responses upon failure to properly invoke Rule 33(d)).

### 2.    Defendants Must Produce Their Financial Information and Tax Returns

Regarding the next issue, Plaintiffs are entitled to discovery of Defendants' financial information, including their tax returns, to the extent Defendants control this information. Defendants urge that the information sought constitutes "prejudgment discovery" of Defendants' financial condition, which courts "generally do not allow" on relevancy grounds. (Defs.' Suppl. Br. Supp. 26–27, ECF No. 201 (quoting *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011).)

This does not persuade. In *Sierrapine*, the court stated that "district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or *ability to satisfy a judgment*." 275 F.R.D. at 609 (emphasis added). The court then provided a string cite of cases in which courts prohibited such discovery for settlement purposes or for ascertaining the defendant's ability to pay. *See id.* (collecting cases). But Plaintiffs do not seek discovery of Defendants' financial information to discern their ability to satisfy a judgment. Rather, Plaintiffs seek this information "to establish that: (1) the Defendants received money from the usurious loans; (2) Defendants received money as part of the RICO enterprise; and, (3) that the Defendants were enriched (unjustly) by [the] lending enterprise." (Pls.' Suppl. Br. Resp. 17, ECF No. 208 (internal citations omitted).) Indeed, *Big Picture* found that tax returns and other financial information were "highly relevant" to the claims against participants in a tribal lending scheme. (Mar. 28, 2019 Mem. Order 2–3, ECF No. 441 in *Williams v. Big Picture, LLC*, 3:17cv461 (E.D. Va.).) Accordingly, this Court will overrule Defendants' objection and order them to supplement their discovery responses with their financial information, including their tax returns.

24

**3.     Plaintiffs' Definition of "You" and "Your" Is Overbroad to the Extent
It Requires Production of Documents Outside Defendants' Control**

Finally, the Court concludes that Plaintiffs overbroadly define "you" and "your" in their

Interrogatories and requests for production ("RFPs").

In the instructions of the Interrogatories, Plaintiffs define "you" and "your" as:

> the party separately answering these Interrogatories, together with its wholly or
> partly owned subsidiaries, and its affiliates or parent companies, and each and every
> other legal entity within its direct or indirect control or in which it holds any equity
> or other interests, as well as its merged or acquired predecessors in interest (if any),
> its present and former officers, directors, employees, agents, representatives, and
> any other persons or corporations acting in a consulting or advisory capacity or
> acting or purporting to act on behalf of any of the foregoing. "You" includes your
> company, entity, institution, agency, subsidiary(ies), parent corporation(s) and/or
> any of its branches, departments, employees, agents contractual affiliates, or
> otherwise connected by legal relationship, in the broadest sense . . . .

(Defs.' Suppl. Br. Supp. Ex. 17 "Plaintiffs' First Set of Interrogatories" 3, ECF No. 201-17

(emphasis removed).)  Plaintiffs incorporated this definition in their RFPs.  (*Id.* Ex. 18

"Plaintiffs' First Set of Requests for Production" 2, ECF No. 201-18.)  Defendants object to this

definition because it requires production of documents not in their custody, possession, or

control and ignores the distinction between a corporation and its officers, directors, and

shareholders.  (Defs.' Suppl Br. Supp. 28–29, ECF No. 201.)  Defendants also represent that they

have already responded with documents in their possession or control.  (*Id.* 29.)  Plaintiffs defend

their definition of "you" and "your" insofar as it requires production of documents within

Defendants' control.  (Pls.' Suppl. Br. Resp. 18–19, ECF No. 208.)  However, they "agree" that

documents outside Defendants' control are "not discoverable under [Federal Rule of Civil

Procedure] 34."[17]  (*Id.* 19.)  Despite the apparent agreement, Plaintiffs resist Defendants'

objection because they are "skeptical" Defendants are only withholding documents outside their

control, although they do not specifically seek relief on this issue.  (*Id.*)[18]

In this context, "control is defined as actual possession of a document or 'the legal right

to obtain the document on demand.'"  *Hatfill v. N.Y. Times Co.*, 242 F.R.D. 353, 355 (E.D. Va.

2006) (quoting *Terry v. Modern Investment Co. Ltd.,* No. 3:04cv85, 2006 WL 2434264, at \*6

n.15 (W.D. Va. Aug. 21, 2006)).  Based on the parties' agreement, the Court sustains the

objection to the definition of "you" and "your" and concludes that Defendants need not produce

documents outside their control.

---

[17] Federal Rule of Civil Procedure 34 provides in pertinent part:

> A party may serve on any other party a request made within the scope of Rule
> 26(b) . . . to produce and permit the requesting party or its representative to inspect,
> copy, test, or sample [certain] items in the responding party's possession, custody,
> or control . . . .

Fed. R. Civ. P. 34(a)(1).

[18] Plaintiffs also lodge a timeliness argument against Defendants' objection. (Pls.' Suppl.
Br. Resp. 18, ECF No. 208.)  The Court, however, finds this argument largely unpersuasive.  The
Court ordered the parties to submit a formalized chart of any remaining discovery disputes
following the February 1, 2021 hearing. (*See* Feb. 2, 2021 Order 2, ECF No. 177.)  Defendants
followed that Order and raised their objection to the definition of "you" and "your" in exhibits
attached to the responsive Joint Statement. (*See* 7HBF's Dispute Chart 4–5, 8, 14–15, 19, ECF
No. 193-1; Linda Stinson's Dispute Chart 4–5, 7–8, 13–14, ECF No. 193-2; Michael Stinson's
Dispute Chart 5, 8, 13–14, 29–30, ECF No. 193-3; Startup Capital Ventures' Dispute Chart 4–5,
7–8, 14–15, 18–19, ECF No. 193-4; Shaper's Dispute Chart 5–6, 8–9, 14–15, 18–19, 30–31,
ECF No. 193-5.)

## IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Motion to
Compel (ECF No. 155) and the Motion for Protective Order (ECF No. 153.)  The Court will
order Defendants to produce the correspondence between Michael Stinson and his attorneys and
Startup Capital Ventures and its attorneys for *in camera* review.  Given the outcome of these
motions, both sides shall bear their own costs and fees.  *See* Fed. R. Civ. P. 37(a)(5).

An appropriate Amended Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 10/17/2021
Richmond, Virginia

27